Timothy P. Duggan, Esq.
Marshall T. Kizner, Esq.
Joseph Lemkin, Esquire
**STARK & STARK**
A Professional Corporation
993 Lenox Drive, Bldg. 2
Lawrenceville, NJ 08648-2389
(609) 896-9060
*Attorneys for Plaintiff, JLS Equities, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JLS EQUITIES, LLC, A NEW YORK LIMITED LIABILITY COMPANY, | DOCKET NO: _____ |
| | Civil Action |
| vs. | |
| RIVER FUNDING, LLC; LENOX HUSDON, LLC; LENOX TEMPLE, LLC; TEANECK PLAZA VENTURES, LLC; SETH LEVINE; and SHIRA LEVINE, | **VERIFIED COMPLAINT** |
| Defendants. | |

Plaintiff, JLS Equities, LLC, as and for its Complaint against Defendants River Funding, LLC, Lenox Hudson, LLC, Lenox Temple, LLC, Teaneck Plaza Ventures, LLC, Seth Levine and Shira Levine,  allege the following:

### NATURE OF ACTION

1. The Plaintiff made a secured loan in excess of $1 million to Defendant River Funding, LLC.  The loan is in default.

2. This is an action seeking appointment of a receiver to manage the Defendants' businesses and real estate pending further order of the Court, including an Order allowing the

1

receiver to sell the real estate.  The Plaintiff also seeks a money judgment for monies loaned to certain defendants, foreclosure of liens granted to Plaintiff, and damages arising from certain fraudulent activities.

## **PARTIES**

3.  Plaintiff JLS Equities, LLC, is a New York Limited Liability Company ("JLS").

    A.    The members of JLS Equites, LLC are (a) Jacob Sod 2017 Family Trust, a Trust organized under the laws of the State of New York with the Trustee of this trust being a resident of the State of Florida, and (b) Leah Sod 2017 Family Trust, a Trust organized under the laws of the State of New York with the co-Trustees being residents of the State of Florida and State of New York.

4.  Defendant River Funding, LLC, is a New Jersey is a New Jersey Limited Liability Company ("River Funding") with a registered office of 210 River Street, Suite 24, Hackensack New Jersey 07601.  A true and correct copy of the Certificate of Formation of River Funding is attached hereto as Exhibit "A".

    A.    The sole member of River Funding is Seth Levine, a resident of the State of New Jersey with an address of  636 South Forest Drive, Teaneck New Jersey ("Seth Levine"). A true and correct copy of the Limited Liability Operating Agreement for River Funding is attached hereto as Exhibit "B" (see pages 29 and 30).

5.  Defendant Lenox Hudson, LLC is a New Jersey Limited Liability Company ("Lenox Hudson") with a main business address of P.O. Box 2018, Fort Lee New Jersey 07024. A true and correct copy of the Certificate of Formation for Lenox Hudson is attached hereto as Exhibit "C".

4815-4999-5427, v. 1

    A.     The sole member of Lenox Hudson is River Funding. A true and correct copy of the Share Certificate representing 100% of the membership interest in Lenox Hudson is attached hereto as Exhibit "D".

6. Defendant Lenox Temple, LLC is a New Jersey Limited Liability Company ("Lenox Temple") with a main business address of P.O. Box 2018, Fort Lee New Jersey 07024.  A true and correct copy of the Certificate of Formation for Lenox Temple is attached hereto as Exhibit "E".

    A.     The sole member of Lenox Temple is River Funding. A true and correct copy of the Share Certificate representing 100% of the membership interest in Lenox Hudson is attached hereto as Exhibit "F".

7. Defendant Teaneck Plaza Ventures, LLC is a New Jersey Limited Liability Company ("Teaneck Plaza") with a main business address of 210 River Street, Hackensack New Jersey 07601.  A true and correct copy of the Certificate of Formation for Teaneck Plaza is attached hereto as Exhibit "G".

    A.     The sole member of Teaneck Plaza is River Funding. A true and correct copy of the Share Certificate representing 100% of the membership interest in Teaneck Plaza is attached hereto as Exhibit "H".

8. Defendant Seth Levine is an individual with an address of 636 South Forest Drive, Teaneck New Jersey ("Seth Levine").  See Guarantee, Exhibit "L".

9. Defendant Shira Levine is an individual with an address of 636 South Forest Drive, Teaneck New Jersey ("Shira Levine"). See Guarantee, Exhibit "L".

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction through 28 U.S.C. § 1332(a) because there is complete diversity between Plaintiff and all Defendants and because there is more than $75,000 in controversy.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Defendants reside in this District and a substantial part of the events giving rise to the claims asserted occurred in this District.

## LOAN DOCUMENTS AND TRANSACTION

12. River Funding and Norse Holdings, LLC, being indebted to JLS in the sum of $1,100,000.00, executed and delivered to JLS a Secured Promissory Note dated January 17, 2019 (the "Note") to evidence that sum payable, plus interest and other terms.  A true and correct copy of the Note is attached hereto as Exhibit "I".

13. Upon information and belief, Norse Holdings, LLC does not own any assets.

14. To secure payment and performance of the obligations evidenced by the Note, River Funding executed and delivered to JLS a Pledge and Security Agreement dated January 17, 2019 (the "Pledge Agreement"), wherein River Funding granted JLS a security interest and pledge as follows:

> As security for the full and punctual payment of the Obligations when due and payable (whether upon stated maturity, by acceleration or otherwise), Pledgor hereby grants and pledges a continuing lien on and security interest in, and, as a part of such grant and pledge, hereby transfers and assigns to Pledgee as collateral security, all of the following (collectively, the "Pledgor's Collateral") whether now owned or hereafter acquired, now existing or hereafter arising and wherever located: Pledgor's Pledged Interest and all of Pledgor's right, title and interest in and to Issuer, including, without limitation: (i) all of Pledgor's interest in the capital of Issuer and Pledgor's interest in all profits and distributions to which Pledgor shall at any time be entitled in respect of the Pledged Interest; (ii) all of Pledgor's right, title and interest to the assets of Issuer including,

without limitation, real property, profits, revenues, operating accounts, account receivables, fixtures, chattels and articles of personal property, (iii) all other payments, if any, due or to become due to Pledgor in respect of the Pledged Interest under or arising out of the Organizational Documents, whether as contractual obligations, damages, insurance proceeds, condemnation awards or otherwise; (iv) all of Pledgor's claims, rights, powers, privileges, authority, options, security interests, liens and remedies, if any, under or arising out of the organizational Documents or the ownership of the Pledged Interest pursuant thereto; (v) all present and future claims, if any, of Pledgor against Issuer under or arising out of the Organizational Documents for monies loaned or advanced, for services rendered or otherwise; (vi) all of Pledgor's rights, if any, in Issuer pursuant to the Organizational Documents or at law, to exercise and enforce every right, power, remedy, authority, option and privilege of the Pledgor relating to the Pledged Interest, including any power to terminate, cancel or modify the Organizational Documents, to execute any instruments and to take any and all other action on behalf of and in the name of Pledgor in respect of the Pledged Interest and Issuer, to make determinations, to exercise any election (including, but not limited to, election of remedies) or option or to give or receive any notice, consent, amendment, waiver or approval, together with full power and authority to demand, receive, enforce or collect any of the foregoing or any property of Issuer, to enforce or execute any checks, or other instruments or orders, to file any claims and to take any action in connection with any of the foregoing; and (vii) to the extent not otherwise included, all Proceeds of any or all of the foregoing.

A true and correct copy of the Pledge Agreement is attached hereto as Exhibit "J".

15. Among the assets pledge to JLS is River Funding's interest in the "Issuers" listed on

Schedule I to the Pledge Agreement as follows:

| PLEDGOR | ISSUER | INTERESTS PLEDGED |
|---|---|---|
| River Funding LLC, a New Jersey limited liability company | Lenox Temple LLC, a New Jersey limited liability company | 100% membership interest |
| River Funding LLC, a New Jersey limited liability company | Lenox Hudson LLC, a New Jersey limited liability company | 100% membership interest |
| River Funding LLC, a New Jersey limited liability company | Teaneck Plaza Ventures, LLC, a New Jersey limited liability company | 100% membership interest |

5

| Norse Holdings, LLC, a New York limited liability company | Orange Norse Limited Liability Company, a New Jersey limited liability company | 100% membership interest |
|---|---|---|

16. Lenox Hudson, Lenox Temple and Teaneck Plaza "opted in" to Article 8 of the Uniform Commercial Code.

17. JLS perfected is security interest and pledge in the Pledgor's Collateral (as defined above) by (a) taking control of the Share Certificates of Lenox Hudson, Lenox Temple and Teaneck Plaza, (b) taking possession of the Share Certificates of Lenox Hudson, Lenox Temple and Teaneck Plaza, and (c) filing UCC financing statements with the Secretary of the State of New Jersey. A copy of the UCC financing statements filed with the Secretary of State of New Jersey is attached hereto as Exhibit "K".

18. The Pledge Agreement contains several Exhibits executed by the Defendants which are relevant to this matter, including:

   A. Acknowledgment and Consent of Lenox Hudson, Lenox Temple and Teaneck Plaza (Exhibit "A");

   B. Instruction to Register Pledge Agreement (Exhibit "B"); and

   C. Confirmation Statement and Instruction Agreement (Exhibit "D").

19. To induce JLS to lend money to River Funding, Seth Levine and Shira Levine executed and delivered to JLS a certain Guarantee Agreement dated January 17, 2019 (the "Guarantee") wherein Seth Levine and Shira Levine guaranteed payment of all of River Funding's obligations to JLS. A true and correct copy of the Guarantee is attached hereto as Exhibit "L".

4815-4999-5427, v. 1

20. The Note, Pledge Agreement (with Exhibits), Guarantee, and all other loan documents executed in connection therewith are collectively referred to as the "Loan Documents". The description of the Loan Documents is not exhaustive and failure to reference any specific loan document shall not be deemed a waiver of JLS rights.

### ISSUERS – REAL ESTATE HOLDING COMPANIES

21. Lenox Hudson, Lenox Temple and Teaneck Plaza are sometimes referred to as the "Issuers".

22. The Issuers each own one parcel of real estate which they each manage as follows:

A.      Lenox Hudson LLC – 107 Hudson Street, Hackensack, New Jersey ("Lenox Hudson Property").

B.      Lenox Temple LLC – 54-78 Temple Avenue, Hackensack, New Jersey ("Lenox Temple Property").

C.      Teaneck Plaza Ventures, LLC – 1407 Palisade Avenue, Teaneck, New Jersey ("Teaneck Plaza Property").

23. JLS does not have a mortgage on any parcel of property, but relied upon the available equity in each property and the ability of the management of each entity to operate the properties and preserve the equity.

24. Based upon tax assessment records, the three properties have the following tax assessments:

| Owner | Assessment | Ratio | Imputed Value |
|---|---|---|---|
| Lenox Hudson | $2,103,500 | 91.98 | $2,286,910 |
| Lenox Temple | $6,067,800 | 91.98 | $6,596,868 |
| Teaneck plaza | $2,209,000 | 86.37 | $2,557,601 |

4815-4999-5427, v. 1

Copies of the tax assessment records from a third party source are attached hereto as Exhibit "M". The "Ratio" is the common level ratio of assessments for each town.

25. Title searches were ordered for each property, copies of which are attached hereto.

A. Lenox Hudson LLC – 107 Hudson Street, Hackensack, New Jersey (Exh." N")

B. Lenox Temple LLC – 54-78 Temple Avenue, Hackensack, New Jersey. (Exh. "O")

C. Teaneck Plaza Ventures, LLC – 1407 Palisade Avenue, Teaneck, New Jersey. (Exh. "P").

## EVENTS OF DEFAULT AND MISMANAGEMENT

26. River Funding represented and warranted that it is the legal and beneficial owner of the Pledgor's Collateral, which includes the 100% membership interest in Lenox Hudson, Lenox Temple and Teaneck Plaza. See Pledge Agreement, ¶ 4(d).

27. The Pledge Agreement prohibits River Funding from selling, assigning, transfer or encumbering the Pledge's Interest, which includes the membership interest in Lenox Hudson, Lenox Temple and Teaneck Plaza. See Pledge Agreement, ¶ 4(f).

28. When JLS made the loan to River Funding, the operating agreements for Lenox Hudson, Lenox Temple and Teaneck Plaza were all amended to provide certain protections to JLS under the section captioned "Single Purpose Entity Provisions" which include restricting the company from incurring additional debt and conduct until the loan to JLS was paid in full. Specifically, the Amendments state:

A. Each Issuer shall not incur any indebtedness, other than an existing secure mortgage identified in each First Amendment; and

B. Each issuer shall remain solvent and pay its debts and liabilities as they become due. A true and correct copy of the Amendment to Operating Agreement for Lenox

Hudson is attached hereto as Exhibit "Q", a copy of the Amendment to Operating Agreement for Lenox Temple is attached hereto as Exhibit "R" and a copy of the Amendment to Operating Agreement for Teaneck Plaza is attached hereto as Exhibit "S".

29. JLS was advised by a third party that the Federal Bureau of Investigation (FBI) may have started an investigation into the financial affairs of Seth Levine.

30. Upon information and belief, certain other individuals may be alleging an ownership interest in Lenox Hudson, Lenox Temple and/or Teaneck Plaza contrary to the representations made by Lenox Hudson, Lenox Temple and/or Teaneck Plaza.

31. Upon information and belief, River Funding, Lenox Hudson, Lenox Temple and/or Teaneck Plaza incurred indebtedness which was not disclosed to JLS and is in violation of the Loan Documents.

32. Upon information and belief, insurance payments due on several properties have not been paid.

33. Upon information and belief, JLS does not intend to make the insurance payments.

34. On August 26, 2019, JLS sent a Notice of Default to River Funding.  A true and correct copy of the Notice of Default is attached hereto as Exhibit "T."

35. The unpaid principal balance due on the Loan is $1,100,000.

## COUNT I
## (BREACH OF CONTRACT AND FORECLOSURE OF LIEN)

36. Plaintiff realleges and incorporates by reference, as if set forth fully herein, the allegations contained in the prior paragraphs of this Complaint.

37. River Funding is in default under the Loan Documents by, among other things, misrepresenting ownership of some or all of the Issuers, incurring indebtedness in violation of the Loan Documents, and failing to pay debts when due.

4815-4999-5427, v. 1

.

38. As a direct and proximate cause of River Funding's breach of the loan documents, JLS has been damaged.

39. JLS is entitled to exercise all remedies under the Uniform Commercial Code and the Loan Documents, including foreclosing on the lien and pledge of Pledgor's Collateral.

40. JLS is entitled to a charging Order.

41. The Loan Documents require River Funding to pay JLS' legal fees and expenses, and costs of suit.

**COUNT II**
**(RECEIVER)**

42. Plaintiff realleges and incorporates by reference, as if set forth fully herein, the allegations contained in the prior paragraphs of this Complaint.

43. The three properties owned by the Issuers are the primary source of recovery for the payment of the debt owed to JLS.

44. Upon information and belief, the three properties owned by the Issuers are not being managed or preserved as evidenced by (a) delinquent property insurance bills, (b) inability of JLS or its counsel to have direct contact with Seth Levine, and (c) information obtained from third parties pertaining to the lack of day-to-day management of the properties.

45. The present management of the three Issuers have engaged in fraud and gross mismanagement.

46. In accordance with Rule 66 of the federal Rules of Civil Procedure and the Court's equitable powers, JLS asks the Court to appoint a receiver to take possession of and manage, subject to the Court's direction, the operations of River Funding, Lenox Hudson,

Lenox Temple and Teaneck Plaza, and the real estate owned by Lenox Hudson, Lenox Temple and Teaneck Plaza, and to sell same.

## COUNT III
## (FRAUD)

47. Plaintiff realleges and incorporates by reference, as if set forth fully herein, the allegations contained in the prior paragraphs of this Complaint.

48. Upon information and belief, Defendants materially misrepresented financial information and ownership information to JLS.

49. Such false representations and omissions were material to JLS's decision to make the loan to River Funding.

50. JLS justifiably relied on such false representations when it made its decision to make a loan to River Funding.

51. As a direct and proximate cause of the fraudulent activities of Seth Levine and the other Defendants, JLS has been damaged.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court grant the following relief:

A.     Court Grant Plaintiff the relief it seeks on all counts;

B.      Grant judgment in favor of JLS for the balance due and owing on the Loan Documents, plus interest, legal fees and expenses;

C.      Grant judgment allowing Plaintiff to foreclose on its lien and pledge, and sell its collateral or conduct a strict foreclosure, in Plaintiff's discretion;

D.      Grant the immediate appointment of a receiver to take possession of, control and hold the assets of River Funding, River Funding, Lenox Hudson,

Lenox Temple and Teaneck Plaza, and the real estate owned by Lenox Hudson, Lenox Temple and Teaneck Plaza, and to sell same, as set forth in the form of Order filed in support of the Plaintiff's Order to Show Cause;

E.      Grant all other relief as is just and equitable.

Dated:  September 4, 2019

STARK & STARK
A Professional Corporation

/ s/*Timothy P. Duggan*
TIMOTHY P. DUGGAN
Attorney ID # 037691991

**STARK & STARK**
A Professional Corporation
993 Lenox Drive, Bldg. 2
Lawrenceville, NJ 08648-2389
(609) 896-9060
Fax:  (609)895-7395
Email: dug@stark-stark.com

4815-4999-5427, v. 1

# VERIFICATION

I,  Jacob Sod, Trustee of the Jacob Sod 2017 Family Trust and Leah Sod 2017 Family Trust, make this Verification on behalf of the Plaintiffs.  I verify that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief.  I understand that the statements herein are made subject to the penalties relating to unsworn falsification to authorities.

Dated:  September _4_, 2019

_____
Jacob Sod

13

4826-4727-5427, v. 1

# EXHIBIT A



CERTIFICATE OF FORMATION

OF

RIVER FUNDING LLC

This Certificate of Formation dated April 08, 2011 is being duly executed and filed by R. W. Worthington, Jr., as an authorized person, to form a limited liability company under the New Jersey Limited Liability Company Act.

1. The name of the limited liability company is

RIVER FUNDING LLC

2. The name and address of the limited liability company's initial registered office and agent is:

        Seth P. Levine
        210 River Street
        Suite 24
        Hackensack,   NJ      07601

3. The duration of the limited liability company's existence shall be perpetual.

The undersigned represents that this Limited Liability Company has one or more members, and that this filing complies with the requirements detailed in NJSA 42:2B.  The undersigned hereby attests that he is authorized to sign this certificate on behalf of the Limited Liability Company.

Dated: April 08, 2011

                          _____
                          R. W. Worthington, Jr.
                          Authorized person

2401655
4316480

# EXHIBIT B

LIMITED LIABILITY COMPANY OPERATING AGREEMENT

of

RIVER FUNDING, LLC

A NEW JERSEY LIMITED LIABILITY COMPANY

Adopted as of January 15 2019

-i-

OPERATING AGREEMENT

OF

RIVER FUNDING, LLC

A New Jersey Limited Liability Company

This Operating Agreement of RIVER FUNDING, LLC (the "Operating Agreement"), dated as of January ___, 2019 is (a) adopted by the Members (as defined below) and (b) executed and agreed to, for good and valuable consideration, by the Members (as defined below).

## ARTICLE I
## DEFINITIONS

1.01 Definitions. As used in this Operating Agreement, the following terms have the following meanings (unless otherwise expressly provided herein):

"Act" means the New Jersey Limited Company Law, Chapter 34 of the Consolidated Laws, as amended from time to time, and including any successor statute of similar import.

"Adjusted Capital Contribution" means a Member's Capital Contribution adjusted downward for distributions made pursuant to section 5.01(b)(ii).

"Affiliate" means, with respect to any Person, any other Person that directly or indirectly controls, is controlled by, or is under common control with, the Person in question.

"Agreed Value" means with respect to a Member's Membership Interest, the fair market value of such Membership Interest as determined in good faith by a Majority In Interest. If the affected Member shall not agree with said valuation, then the Members shall hire an independent 3rd party appraiser, unanimously agreed to, to determine the fair market value of such Membership Interest.

"Articles" means the articles of formation of the Company as provided for pursuant to the Act, as originally filed with the Office of the Secretary of State of New Jersey, as amended and restated from time to time as herein provided.

"Business Day" means any day other than a Saturday, a Sunday, or a holiday on which

-1-

national banking associations in the State of New Jersey are closed or are authorized by law or executive action to close.

"Capital Account" means the capital account maintained for a Member pursuant to Section 4.05.

"Capital Contribution" means any contribution by a Member to the capital of the Company.

"Capital Proceeds" means the net proceeds from the disposition of any assets of the Company, any net insurance proceeds or net condemnation proceeds paid to the Company and/or any net refinancing proceeds of the Company.

"Code" means the Internal Revenue Code of 1986 and any successor statute as amended from time to time.

"Company" means RIVER FUNDING, LLC, a New Jersey limited liability company.

"Depreciation" means, for each Fiscal Year, an amount equal to the depreciation, amortization, or other cost recovery deduction allowable with respect to an asset for such Fiscal Year, except that if the Gross Asset Value of an asset differs from its adjusted tax basis at the beginning of such Fiscal Year, Depreciation shall be an amount which bears the same ratio to such beginning Gross Asset Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Fiscal Year bears to such beginning adjusted tax basis; provided, however, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such Fiscal Year is zero, Depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the Manager.

"Dispose," "Disposing," or "Disposition" means a sale, assignment, transfer, exchange, mortgage, pledge, grant of a security interest, or other disposition or encumbrance (including, without limitation, by operation of law), or the acts thereof.

"Economic Interest" means a Member's or a Transferee's share of the Company's Profits, Losses, items of income, gain, loss, deduction, and credit, and distributions pursuant to this Operating Agreement and the Act but shall not include any right to vote or participate in management or the affairs of the Company. The Economic Interest of a Member or Transferee shall be equal to such Member's or Transferee's Sharing Ratio, as set forth on Exhibit B.

"Fiscal Year" means (i) the period commencing on the effective date of this Operating Agreement and ending on December 31, 2018, (ii) any subsequent twelve (12) month period commencing on January 1 and ending on December 31, or (iii) any portion of the period

-2-

described in clause (ii) for which the Company is required to allocate Profits, Losses and other items of income, gain, loss, deduction or credit pursuant to Article V hereof.

"Gross Asset Value" means, with respect to any asset, the asset's Adjusted Basis except as follows:

> (i) The initial Gross Asset Value of any asset contributed by a Member to the Company shall be the gross fair market value of such asset, as determined by a Majority in Interest of the Members;

(ii) The Gross Asset Values of all Company assets shall be adjusted to equal their respective gross fair market values, as reasonably determined by a Super Majority in Interest of the Members as of the following times: (a) the acquisition of a Membership Interest in the Company by any new Member or the acquisition of an additional Economic Interest in the Company by any existing Member in exchange for more than a de minimis Capital Contribution and (b) the distribution by the Company to a Member of more than a de minimis amount of Company assets as consideration for such Member's Membership Interest in the Company or in connection with the complete liquidation of the Company; and

(iii) The Gross Asset Value of any Company asset distributed to any Member shall be adjusted to equal the gross fair market value of such asset on the date of distribution as determined by a Super Majority in Interest of the Members.

"Incapacity" means the inability of an employee or the Manager to perform his employment or management function in his customary manner by reason of mental, emotional or physical disease or disability.

"Majority In Interest" means one or more Members having among them more than fifty percent (50%) of the Voting Power of all Members.

"Manager" means Seth Levine, or any successor manager elected by the Members in accordance with this Operating Agreement.

"Member" means a Person who (i) has been admitted to the Company as an initial Member in accordance with the Articles or this Operating Agreement, (ii) has been admitted to the Company as an additional Member pursuant to Section 3.03 hereof or (iii) is a qualified Transferee under Section 3.02(a) or Section 3.02(b) who is admitted to the Company pursuant to Section 3.03 hereof. As of the

-3-

date hereof, the Members are those Persons set forth on Exhibit A hereof.

"Membership Interest" means a Member's rights in the Company collectively, including the Member's Economic Interest, the Member's Capital Account in the Company, the Member's right to vote or participate in the management of the Company, and the Member's right, if any, to information concerning the business and affairs of the Company provided by the Act.

"Net Cash Flow" means for any applicable period the excess, if any, of Operating Revenues over the sum of (i) Operating Expenses and (ii) Reserves.

"Nonrecourse Deductions" has the meaning set forth in Treasury Regulations § 1.704-2(b)(1).

"Nonrecourse Liability" has the meaning set forth in Treasury Regulations § 1.704-2(b)(3).

"Operating Agreement" has the meaning given that term in the introductory paragraph.

"Operating Expenses" means, for any applicable period, the aggregate amount of expenses paid or incurred by the Company in connection with its operations other than expenses properly allocable to transactions and activities giving rise to Capital Proceeds.

"Operating Revenues" means, for any applicable period, the aggregate amount of revenues derived by the Company in connection with its operations; provided, however, that Operating Revenues shall not include Capital Proceeds or Capital Contributions.

"Person" means an individual, partnership, trust, estate, association, corporation, limited liability company, or other entity, whether residing in or formed pursuant to the laws of the State of New Jersey or otherwise.

"Profits" and "Losses" means, for each Fiscal Year, an amount equal to the Company's taxable income or loss for such Fiscal Year, determined in accordance with Section 703(a) of the Code (for this purposes, all items of income, gain, loss, or deduction required to be stated separately pursuant to Section 703(a)(1) of the Code shall be included in taxable income or loss) with the following adjustments:

> (i) Any income of the Company that is exempt from federal income tax and not otherwise taken into account in computing Profits or Losses pursuant to this definition shall be added to such taxable income or loss;

> (ii) Any expenditures of the Company described in Section 705(a)(2)(B) of the Code

-4-

or treated as Section 705(a)(2)(B) of the Code as expenditures pursuant to Treasury Regulations §1.704-1(b)(2)(iv)(i), and not otherwise taken into account in computing Profits or Losses pursuant to this definition shall be subtracted from such taxable income or loss;

(iii) In the event the Gross Asset Value of any asset is adjusted (in accordance with the definition thereof), the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Profits or Losses;

(iv) Gain or loss resulting from any disposition of an asset with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Gross Asset Value of such asset disposed of, notwithstanding that the adjusted basis (as determined under the Code) of such asset differs from its Gross Asset Value;

(v) In lieu of the depreciation, amortization, and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation for such Fiscal Year, computed in accordance with the definition thereof; and

(vi) Notwithstanding any other provision of this definition, any items which are specially allocated pursuant to Section 5.02 of this Operating Agreement shall not be taken into account in computing Profits or Losses. The amounts of the items of Company income, gain, loss or deduction available to be specially allocated pursuant to this Operating Agreement shall be determined by applying rules analogous to those set forth in this definition.

"Reserves" means the amount of operating reserves, capital reserves and other reasonable reserves established by the Manager.

"Securities Act" means the Securities Act of 1933, as amended.

"Sharing Ratio" with respect to any Member or Transferee means the Sharing Ratio of each Member or Transferee as set forth on Exhibit B hereof, as amended from time to time. The Sharing Ratios of the Members and Transferees shall be subject to adjustment pursuant to Section 5.02 hereof.

"Supermajority In Interest" means Member or Members having, individually or among them, sixty-six percent (66%) or more of the Voting Power of all Members.

-5-

"Tax Matters Partner" means any Member designated under Section 9.03 to be the "tax matters partner" of the Company pursuant to Section 6231(a)(7) of the Code, but does not include any Member who has ceased to be such "tax matters partner" of the Company.

"Transferee" means an owner of an Economic Interest who is not admitted as a Member of the Company. A Member's Transferees are those Transferees to whom such Member transferred Economic Interests.

"Treasury Regulations" means the regulations promulgated under the Code from time to time.

"Voting Power" with respect to any Member means the Voting Power, expressed as a percentage, as set forth on Exhibit B.

Other terms defined herein have the meanings so given them.

1.02 Construction. Whenever the context requires, the gender of all words used in this Operating Agreement includes the masculine, feminine, and neuter. Unless otherwise expressly provided herein, all references to Articles and Sections refer to articles and sections of this Operating Agreement, and all references to Exhibits, if any, are to Exhibits attached hereto, each of which is made a part hereof for all purposes.

## ARTICLE II
## ORGANIZATION

2.01 Formation. The Company has been organized as a New Jersey limited liability company by the filing of the Articles. The Members hereby agree to execute, file and record (or the Manager shall execute, file and record) all such other certificates and documents, including amendments to the Articles, and to such other acts as may be appropriate to comply with all requirements for the formation, continuation and operation of a limited liability company, the ownership of property and the conduct of business under the laws of the State of New Jersey and any other jurisdiction in which the Company may own property or conduct business.

2.02 Name. The name of the Company is "RIVER FUNDING, LLC" and all Company business must be conducted in that name or such other names that comply with applicable law as a Majority in Interest of the Members may select from time to time.

2.03 Registered Office; Registered Agent Principal Office in the United States; Other Offices. The registered office of the Company required by the Act to be maintained in the State of New Jersey shall be the office of the initial registered agent named in the Articles or such other office

-6-

(which need not be a place of business of the Company) as the Manager may designate, from time to time in the manner provided by law. The registered agent of the Company in the State of New Jersey shall be the initial registered agent named in the Articles or such other Person or Persons as the Manager may designate from time to time in the manner provided by law. The principal office of the Company in the United States shall be at 210 River Street, Suite #24, Hackensack, New Jersey 07601, or such place as the Manager may designate from time to time, which need not be in the State of New Jersey, and the Company shall maintain records there as required by the Act and shall keep the street address of such principal office in the registered office of the Company. The Company may have such other offices as the Majority in Interest of the Members may designate, from time to time.

2.04 Purposes. The purposes for which the Company is organized are to purchase, lease, acquire, own, manage, operate and dispose of real estate.

2.05 Foreign Qualification. Prior to the Company's conducting business in any jurisdiction other than New Jersey, the Manager shall cause the Company to comply, to the extent procedures are available and those matters are reasonably within the control of the Manager, with all requirements necessary to qualify the Company as a foreign limited liability company in that jurisdiction. Each Member shall execute, acknowledge, swear to, and deliver all certificates and other instruments conforming with this Operating Agreement that are necessary or appropriate to qualify, continue, and terminate the Company as a foreign limited liability company in all such jurisdictions in which the Company may conduct business.

2.06 Term. The Company commenced on the date the Articles were filed with the Secretary of State of New Jersey and shall continue in existence for the period fixed in the Articles for the duration of the Company, or such earlier time as this Operating Agreement may specify.

2.07 Mergers and Exchanges. Subject to the requirements of the Act, the Articles, and Section 6.02(b)(ii) hereof, the Company may be a party to a merger, consolidation, share or interest exchange, reorganization or other transaction authorized by the Act.

## ARTICLE III
## MEMBERSHIP; DISPOSITIONS OF INTERESTS

3.01 Initial Members. The initial Members of the Company are the Persons executing this Operating Agreement as of the date of this Operating Agreement as Members, each of whom is admitted to the Company as a Member effective contemporaneously with the execution by such Person of this Operating Agreement and each of whom is set forth on Exhibit A hereto.

3.02 Restrictions on the Disposition of Membership Interests. (a) Except as otherwise

-7-

3.02 Restrictions on the Disposition of Membership Interests. (a) Except as otherwise expressly provided in this Article III, no Member shall Dispose of all or any portion of his Membership Interest, including his Economic Interest, whether voluntarily, involuntarily or by operation by law, and any attempted Disposition of a Membership Interest in violation of this prohibition shall not be effective to pass any right, title or interest therein, but shall instead be null, void and of no effect. Notwithstanding the preceding prohibition against any Disposition of a Membership Interest (including an Economic Interest), any Member may Dispose of its Membership Interest (or a portion thereof) to a Person provided such Member obtains the prior written consent of the Majority In Interest of the Members (other than the Member whose Membership Interest is to be transferred) which written consent may be withheld by the Majority In Interest of such nontransferring Members, at his (or their) sole and absolute discretion. Anything in this Article III to the contrary notwithstanding, no Transferee shall be admitted to the Company as a Member without the prior written consent of the Majority of Interest of the Members (other than the Member whose Transferee is being considered for admission) which written consent may be withheld by the Majority In Interest of the Members at his (or their) sole and absolute discretion. In the event the Manager shall opt to sell his interest, the other Members shall have the right to include their interest, or any portion of their interest, in said sale, at the same price (on a pro-rated basis).

(b) Notwithstanding the prohibition against any Disposition of a Membership Interest (including an Economic Interest) set forth in Section 3.02(a) hereof, a Member may Dispose of all or any portion of his Membership Interest without the requisite written consent of Section 3.02(a) if the Disposition is to a Permitted Transferee. A "Permitted Transferee" is a (i) parent, child or spouse of such Member, (ii) a corporation, limited liability company or partnership which is directly or indirectly controlled by such Member or by a parent, child or spouse of such Member, (iii) a corporation, limited liability company or partnership which directly or indirectly controls such Member, or an entity directly or indirectly under the same control as such member, or (iv) a trust (or similar entity thereto) of which such Member, or a parent, child or spouse of such Member, is a principal beneficiary. Notwithstanding the right of any Member to Dispose of his Membership Interest (or any position thereof) to his Permitted Transferee, such Permitted Transferee shall not be admitted as a Member without (i) the prior written consent of a Majority In Interest of the Members (other than the Member whose Permitted Transferee is under consideration for admission) which written consent may be withheld by such Majority In Interest of the Members at his (or their) sole and absolute discretion, and (ii) satisfaction of the conditions set forth in Section 3.02(c) hereof.

(c) A Transferee shall only be admitted to the Company as a Member upon satisfaction of the following conditions, as applicable:

> (i) the Transferee shall be admitted as a substitute Member upon the requisite written consent pursuant to Section 3.02(a) or Section 3.02(b) hereof, with the Capital

Account, Sharing Ratio and other rights, duties and obligations (or the applicable portion thereof) of the Disposing Member;

(ii) the Manager shall cause this Operating Agreement to be amended to reflect such Disposition and admission of a substitute Member, if applicable;

(iii) the Transferee shall in writing assume and agree to perform all of its duties and obligations as a Member under this Operating Agreement;

(iv) the Disposing Member shall pay, or agree to reimburse the Company for, all costs incurred by the Company in connection with the Disposition;

(v) the Disposing Member shall agree fully to indemnify on an after-tax basis the other Members against any adverse tax consequences to them which might result from any termination of the Company for tax purposes on account of such transfer; and

(vi) the Company shall have received from counsel reasonably satisfactory to the Members an opinion that the Disposition was made in accordance with all applicable laws and regulations (including securities laws), and that the Disposition, when added to the total of all other Dispositions within the preceding 12 months, would not result in the Company's being considered to have terminated within the meaning of Section 708 of the Code.

(d)  If a Member disposes of his Membership Interest (or a portion thereof), to a Transferee in accordance with Section 3.02(a) or Section 3.02(b) hereof, and such Transferee is not admitted to the Company as a Member in accordance with Section 3.02(c) hereof, then for purposes of this Operating Agreement, such Transferee shall be treated as having acquired the Economic Interest, Sharing Ratio and Capital Account (or a corresponding portion thereof) of such Member; however, such Transferee shall not be treated as having been transferred the Voting Power (or corresponding portion thereof) of such Member.

3.03  Additional Members.  Membership Interests may be issued to additional Persons and such Persons may become Members only upon the prior consent of all the Members, which consent may be withheld in his (or their) sole and absolute discretion, and on such terms and conditions as may be specified in such written consent. The terms and conditions of any such additional Membership Interests may include, without limitation, provisions regarding the removal of such new Member upon, for example, the termination of such new Member's employment with the Company, the material breach by such new Member of a provision of this Operating Agreement or such other reason as the Manager shall deem appropriate, and the payment by the Company to such removed

-9-

Member in redemption of its Membership Interests. Any admission of a new Member under this Section 3.03 shall be effective only after the new Member has executed and delivered to the Company its agreement to be bound by this Operating Agreement.

3.04  Interests in a Member.  A Member that is not a natural person may not cause or permit an interest, direct or indirect, in itself to be Disposed of such that, after the Disposition, (a) the Company would be considered to have terminated within the meaning of section 708 of the Code or (b) without the written consent of the Majority in Interest of the Members, which consent may be withheld in his (or their) sole and absolute discretion, that Member shall cease to be controlled by substantially the same Persons who control it as of the date of its admission to the Company. Transfer to a Permitted Transferee shall not require the aforementioned consent. On any breach of the provisions of clause (b) of the immediately preceding sentence, the Company shall have the option to buy, and on exercise of that option the breaching Member shall sell, at a price consisting of the Agreed Value, the breaching Member's Membership Interest.

3.05  Liability to Third Parties.  Except as otherwise expressly agreed in writing, no Member shall be liable for the debts, obligations or liabilities of the Company, including under a judgment decree or order of a court.

3.06  Withdrawal of Capital Contributions.  No Member or Transferee shall have the right or power to withdraw any part of his Capital Contribution or Capital Account from the Company without the consent of a Supermajority In Interest.

## ARTICLE IV
## CAPITAL CONTRIBUTIONS

4.01  Initial Contributions. Contemporaneously with the execution by such Member of this Operating Agreement (except as otherwise provided), each Member shall make Capital Contributions as follows:

    (a) Seth Levine                $500,000.00

4.02  Return of Contributions.  A Member is not entitled to the return of any part of his Capital Contributions or to be paid interest in respect of either his Capital Account or his Capital Contributions. An un-repaid Capital Contribution is not a liability of the Company or of any Member. A Member is not required to contribute or to lend any cash or property to the Company to enable the Company to return any Member's Capital Contributions.

-10-

4.03  Advances by Members.  Except as otherwise provided in the Articles or this Operating Agreement, if the Company does not have sufficient cash to pay its obligations, any Member(s) that may agree to do so with the written consent of the Majority In Interest of the Members may advance all or part of the needed funds to or on behalf of the Company (a "Member Advance"). A Member Advance shall be an obligation of the Company, and shall bear interest at a rate agreed upon by the Member making such advance and the Majority in Interest.

4.04  Capital Accounts.  The Company shall maintain for each Member a separate Capital Account in accordance with the rules of the Treasury Regulations promulgated from time to time under Section 704(b) of the Code. For purposes of computing the amount of each item of income, gain, deduction, or loss to be reflected in the Capital Accounts of the Members, the determination, recognition, and classification of such items shall be the same as the determination, recognition, and classification for federal income tax purposes, unless otherwise required by such Treasury Regulations. Upon a qualified Disposition of a Membership Interest or an Economic Interest in the Company (or a portion thereof), the Capital Account of the transferor Member (or the applicable portion thereof) shall become the Capital Account of the Transferee.

## ARTICLE V
## ALLOCATIONS AND DISTRIBUTIONS

5.01  Distributions of Net Cash Flow & Capital Proceeds.  Distributions of the Company's Net Cash Flow and Capital Proceeds for any Fiscal Year shall be made at least annually (and Manager shall use its best efforts to make distributions at least quarterly), and in no event later than the date of filing of the federal income tax return for such Fiscal Year (in which case the Company's accountants shall designate in writing the amount of any such distributions that are attributable to such Fiscal Year), or at such other times as the Manager designates. Any such distribution shall be made to the Members in proportion to their respective Sharing Ratios as of the date of such distribution.  In additional to the foregoing, distributions shall be made to the members in an amount equal to such Members' income taxes attributable to any profits allocated to such members under 5.03 (a) exceed actual distributions made to such members.

5.02  Distribution Upon Liquidation.  (a) On liquidation, the Company assets shall be distributed in payment of the liabilities of the Company and to the Members in the following order:

(i) To the payment of the debts and liabilities of the Company (including any Member Advances) and the expenses of liquidation, including a sales commission to the selling agent, if any.

-11-

(ii) To the setting up of any reserves which the Manager deems reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company or of the Members arising out of or in connection with the Company. At the expiration of such period as the Manager shall deem advisable, the balance thereof, if any, shall be distributed in the manner provided in this Article, and in the order named. Such reserves shall not be unreasonable and shall be in accordance with acceptable accounting and business standards.

(iii) To the Members in accordance with Section 5.01.

(b) A reasonable time, as determined by the Manager, shall be allowed for the orderly liquidation of the assets of the Company and the discharge of liabilities to creditors so as to enable the Members or their representatives to minimize any losses attendant upon liquidation.

(c) Anything in this Agreement to the contrary notwithstanding, no Member shall be personally liable for the return of the Capital Contribution of any other Member, or any portion thereof, or of the monetary value thereof; it is expressly understood that any such return shall be made solely from Company assets. No Member shall have the right to demand or receive any property other than cash in connection with termination and liquidation of the Company.

5.03 Allocation of Profits and Losses. Except as otherwise provided by Section 704 of the Code and the related Treasury Regulations, Profits and Losses shall be allocated among the Members as follows:

(a) Allocation of Profits. Profits for any Fiscal Year shall be allocated as follows:

(i) First, if any Member's Adjusted Capital Contribution at the end of such Fiscal Year shall exceed the credit balance in such Member's Capital Account at the end of such Fiscal Year (as determined prior to the allocation of Profits for such Fiscal Year and by adding to the actual balance in such Capital Account such Member's share of partnership minimum gain of the Company and such Member's share of partner nonrecourse debt minimum gain of the Company), to the Member or Members whose Adjusted Capital Contribution so exceeds such balance (as so determined), in proportion to such excesses (as so determined), until such excesses (as so determined) are reduced to zero;

(ii) then, to the Members, pro rata, until each Member has received an amount equal to the amount distributed or required to be distributed to such Member pursuant to

-12-

Section 5.01; and

(iii) thereafter, to the Members in accordance with their respective Sharing Ratios.

(b) <u>Allocation of Losses</u>. Losses for any Fiscal Year shall be allocated as follows:

(i) First, if the Profits allocated to the Members for all prior Fiscal Years exceed the sum of distributions made to them pursuant to Section 5.01 hereof and Losses allocated to them pursuant to this Section 5.03 for all prior Fiscal Years and for the Fiscal Year in question, then to such Members ratably until such excess is reduced to zero;

(ii) then, to the Members in proportion to the respective credit balances in their Capital Accounts (as determined immediately after the allocation described in Section 5.05(i) for such Fiscal Year and by adding to the actual balance in each Member's Capital Account such Member's share of partnership minimum gain of the Company and such Member's share of partner nonrecourse debt minimum gain of the Company), determined as of the last day of such Fiscal Year, until such credit balances (as so determine) are reduced to zero; and

(iii) thereafter, to the Members in accordance with their respective Sharing Ratios.

## ARTICLE VI
## MANAGER

6.01 Number, Tenure, and Qualifications. The Company shall have one (1) Manager. The initial Manager shall be Seth Levine. Any successor Manager shall be elected by the affirmative vote of a Majority In Interest of the Members. The successor Manager (a) must be a Member of the Company and (b) need not be a resident of the State of New Jersey.

6.02 Management by Manager. (a) Subject to the provisions of Sections 6.02(b) and 6.07, the powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of, the Manager. The Manager may make all decisions and take all actions for the Company not otherwise provided for in this Operating Agreement, including, without limitation, the following:

(i) subject to Section 6.02(b)(i), sell, lease, exchange, transfer, assign, license, mortgage, pledge, grant a security interest in, or otherwise dispose of or encumber any and all the properties or assets of the Company, or interests therein;

-13-

(ii) entering into, making and performing contracts, agreements, and other undertakings binding the Company that may be necessary, appropriate, or advisable in furtherance of the purposes of the Company and making all decisions and waivers thereunder;

(iii) select and hire a management company and agree to pay such management company such fees upon the prior written consent of all the members, which consent may be withheld in its sole and absolute discretion. Such fees shall be at a rate of 4% of the gross rental or the industry standard whichever is lower;

(iv) maintaining the assets of the Company in good order;

(v) select, remove, or change the authority and responsibility of lawyers, accountants, and other advisers and consultants retained by the Company;

(vi) obtaining insurance for the Company;

(vii) paying any and all taxes, charges and assessments which may be levied, assessed or imposed upon any property of the Company;

(viii) demanding, suing for, collecting, recovering and receiving all goods, claims, debts, monies, interests and demands whatsoever now due or that may hereafter become due, and commencing or maintaining any action, suit or other legal proceeding for the recovery of any property to the possession of which the Company may be entitled, and making, executing and delivering receipts, releases or other discharges therefor under seal or otherwise;

(ix) making, executing, endorsing, accepting, collecting and delivering any and all bills of exchange, checks, drafts, notes and trade acceptances, and opening, paying into and drawing from a bank account or accounts of the Company;

(x) paying all sums of money at any time or times that may hereafter be owing by the Company upon any bill of exchange, check, draft, note or trade acceptance made, executed, endorsed, accepted or delivered by or for the Company;

(xi) defending, settling, adjusting, compounding, submitting to arbitration and compromising all actions, suits, accounts, reckonings, claims and demands whatsoever that now are or hereafter shall be pending between the Company and any Person, firm,

-14-

association or corporation, in such manner and all respects as he shall think fit;

(xii) filing any proof of debt or taking any other proceedings, under any bankruptcy law of the United States or of any state in the United States, in connection with any claim, debt, money or demand due to the Company, including the election of any trustee or trustees or the designation of any assignee or assignees, and demanding, receiving and accepting any dividend or dividends or distributions that may be or become payable thereon;

(xiii) without in any way limiting the foregoing, but subject to the foregoing and to the provisions of Section 6.02(b) hereof, generally doing, executing and performing any other act, deed, matter or thing whatsoever that ought to be done, executed or performed, or that in his opinion ought to be done, executed or performed, of every nature and kind whatsoever relating to the normal day-to-day operation of the Company; and

(xiv) make any decision regarding the establishment, application and amount of any Reserves, Depreciation and accounting methods or the treatment of various transactions for Federal income tax purposes;

(b)  Notwithstanding the provisions of Section 6.02(a), the Manager may not cause the Company to do any of the following without the affirmative vote or consent of a Majority In Interest of the Members:

(i) sell or otherwise dispose of real property owned by the Company;

(ii) borrowing money or otherwise committing the credit of the Company for Company activities and voluntary prepayments or extensions of debt;

(iii) be a party to any merger, consolidation, reorganization, exchange, or similar transaction, including, but not limited to, a merger, consolidation, share or interest exchange, reorganization or other transaction authorized by the Act;

(iv) during any calendar year, incur or agree to incur any indebtedness, obligations, or liabilities for the repayment of borrowed money or the equivalent thereof (whether to Members or other persons or entities) representing, in the aggregate, an expenditure of an amount or value in excess of $10,000,

-15-

(v) grant any general power of attorney or other unlimited authority to act on behalf of or in the name of the Company, provided that grantee is an attorney licensed to practice within the State of New Jersey;

(vi) amend, repeal, restate, modify, supplement, or alter the Articles or adopt a new certificate of formation of the Company (this provision shall need the approval of a Supermajority in interest);

(vii) amend, repeal, restate, modify, supplement, or alter this Operating Agreement or adopt a new operating agreement of the Company, provided that membership interest and associated rights shall not diminish (this provision shall need the approval of a Supermajority of the members in interest) ;

(viii) authorize any transaction, agreement, or action on behalf of the Company that is unrelated to its purposes as set forth in the Articles or this Operating Agreement or that otherwise contravenes this Operating Agreement; or

(ix) authorize any act that would make it impossible to carry on the ordinary business of the Company.

(x) transact any business with an affiliate other than on substantially arms length market terms.

(c) The Manager shall devote as much time to the management of the Company in accordance with this Agreement as is necessary to ensure that the purposes of this Agreement are fulfilled as provided for herein, which time may be less than full time.

6.03 Liability for Certain Acts. The Manager shall perform his managerial duties in good faith, in a manner he reasonably believes to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. The Manager, under such circumstances, shall not have any liability by reason of being or having been a Manager of the Company. The Manager shall not be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member, unless the loss or damage shall have been the result of fraud, deceit, gross negligence, willful misconduct, breach of fiduciary duty, or' a wrongful taking by the Manager.

6.04 Removal. At a meeting called expressly for that purpose the Manager may be removed at any time, with or without cause, by the affirmative vote of the Majority in Interest of the Members. For purposes of this Section, cause shall mean the permanent Incapacity of the Manager or a material

-16-

breach by the Manager of any of his duties or obligations, whether as a Manager or a Member, pursuant to this Operating Agreement. The removal of the Manager shall not affect his rights as a Member and shall not constitute his withdrawal from the Company.

6.05 Delegation of Authority and Duties. The Manager may, from time to time and in his sole discretion, appoint officers of the Company and delegate to such officers such authority and duties as the Manager may deem advisable. Unless otherwise provided in the Articles or other provision of law, such officers need not be Members of the Company. Any officer to whom a delegation is made pursuant to this section shall serve in the capacity delegated unless and until such delegation is revoked by the Manager. The officers, if appointed, shall exercise such powers and perform such duties as specified in this Operating Agreement and as shall be determined from time to time by the Manager and in any event a decision or veto by the Manager shall supersede any decision made by any of the officers of the Company.

6.06 Actions by Members. In managing the business and affairs of the Company and exercising its powers, the Members shall act collectively through meetings and written consents consistent as may be provided or limited in the Articles or other provisions of this Operating Agreement.

## ARTICLE VII
## MEETINGS OF MEMBERS

7.01 Meetings. (a) A quorum shall be present at a meeting of Members if the holders of a Majority In Interest are represented at the meeting in person or by proxy. With respect to any matter, other than a matter for which the affirmative vote of the holders of a specified portion of the Voting Power of all Members entitled to vote is required by the Act, the Articles, or this Operating Agreement, the affirmative vote of a Majority In Interest at a meeting of Members at which a quorum is present shall be the act of the Members.

(b) All meetings of the Members shall be held at the principal place of business of the Company or at such other place within or without the State of New Jersey as shall be specified or fixed in the notices or waivers of notice thereof; provided that any or all Members may participate in any such meeting by means of conference telephone or similar communications equipment pursuant to Section 7.05.

(c) Notwithstanding the other provisions of the Articles or this Operating Agreement, the chairman of a meeting of the Members at which a quorum is present shall have the power to adjourn such meeting from time to time, without any notice other than announcement at the meeting of the

-17-

time and place of the holding of the adjourned meeting. If such meeting is adjourned by the Members, such time and place shall be determined by a vote of the holders of a Majority In Interest. Upon the resumption of such adjourned meeting, any business may be transacted that might have been transacted at the meeting as originally called.

(d) An annual meeting of the Members, for the transaction of all business as may properly come before the meeting, may be held at such place, within or without the State of New Jersey, on such date and at such time as the Non-Manager Member shall set forth in the notice of the meeting.

(e) Special meetings of the Members for any proper purpose or purposes may be called at any time by the holders of at least twenty five percent (25%) of the Voting Power of all Members. If not otherwise stated in or fixed in accordance with the remaining provisions hereof, the record date for determining Members entitled to call a special meeting is the date any Member first signs the notice of that meeting. Only business within the purpose or purposes described in the notice (or waiver thereof) required by this Operating Agreement may be conducted at a special meeting of the Members.

(f) Written or printed notice stating the place, day and hour of the meeting and, in the case of a special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than ten nor more than 60 days before the date of the meeting, either personally or by mail, by or at the direction of the Person or Persons calling the meeting, to each Member entitled to vote at such meeting. If mailed, any such notice shall be deemed to be delivered when deposited in the United States mail, addressed to the Member at his address as set forth on Exhibit A (or such other address as provided by such Member), with postage thereon prepaid.

(g) The date on which notice of a meeting of Members is mailed or the date on which a resolution declaring a distribution is adopted by the Members, as the case may be, shall be the record date for the determination of the Members entitled to notice of or to vote at such meeting, including any adjournment thereof, or the Members and Transferees entitled to receive such distribution.

7.02  Voting List.  The Member or other Person having charge of the records reflecting the Membership Interest of each Member shall make, at least ten days before each meeting of Members, a complete list of the Members (and their proxies, if any) entitled to vote at such meeting or any adjournment thereof, arranged in alphabetical order, with the address of and the Voting Power held by each, which list, for a period of ten days prior to such meeting, shall be kept on file at the registered office or principal place of business of the Company and shall be subject to inspection by any Member at any time during usual business hours. Such list shall also be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any Member during the

-18-

whole time of the meeting. The original membership records shall be prima-facie evidence as to who are the Members entitled to examine such list or transfer records or to vote at any meeting of Members. Failure to comply with the requirements of this Section shall not affect the validity of any action taken at the meeting.

7.03  Proxies.  A Member may vote either in person or by proxy executed in writing by the Member. A telegram, telex, cablegram or similar transmission by the Member, or a photographic, photostatic, facsimile or similar reproduction of a writing executed by the Member shall be treated as an execution in writing for purposes of this Section. Proxies for use at any meeting of Members or in connection with the taking of any action by written consent shall be filed with the Company, before or at the time of the meeting or execution of the written consent, as the case may be.  All proxies shall be received and taken charge of and all ballots shall be received and canvassed by the chairman of the meeting, who shall decide all questions touching upon the qualifications of voters, the validity of the proxies, and the acceptance or rejection of votes, unless an inspector or inspectors shall have been appointed by the chairman of the meeting, in which event such inspector or inspectors shall decide all such questions.  No proxy shall be valid after 11 months from the date of its execution unless otherwise provided in the proxy.  A proxy shall be revocable unless the proxy form conspicuously states that the proxy is irrevocable, and the proxy is coupled with an interest.  Should a proxy designate two or more Persons to act as proxies, unless that instrument shall provide to the contrary, a majority of such Persons present at any meeting at which their powers thereunder are to be exercised shall have and may exercise all the powers of voting or giving consents thereby conferred, or if only one be present, then such powers may be exercised by that one; or, if an even number attend and a majority do not agree on any particular issue, the Company shall not be required to recognize such proxy with respect to such issue if such proxy does not specify how the Voting Power that is the subject of such proxy is to be voted with respect to such issue.

7.04  Conduct of Meetings.  All meetings of the Members shall be presided over by the chairman of the meeting, who shall be a Member (or representative thereof) designated by a Majority In Interest. The chairman of any meeting of Members shall determine the order of business and the procedure at the meeting, including such regulation of the manner of voting and the conduct of discussion as seem to him in order.

7.05  Action by Written Consent or Telephone Conference.  Any action required or permitted to be taken at any annual or special meeting of Members may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holder or holders of not less than the supermajority of the members. Every written consent shall bear the date of signature of each Member who signs the consent.  A telegram, telex, cablegram or similar transmission by a Member, or a photographic, photostatic, facsimile or similar reproduction of a writing signed by a Member, shall be regarded as signed by the

-19-

Member for purposes of this Section. Prompt notice of the taking of any action by Members without a meeting by less than unanimous written consent shall be given to those Members who did not consent in writing to the action.

(a) The record date for determining Members entitled to consent to action in writing without a meeting shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Company by delivery to its registered office, its principal place of business, or the Member having custody of the records in which proceedings of meetings of Members are recorded. Delivery shall be by hand or by certified or registered mail, return receipt requested. Delivery to the Company's principal place of business shall be addressed to the Member having custody of the records in which proceedings of the meetings of Members are recorded.

(b) If any action by Members is taken by written consent, any articles or documents filed with the Secretary of State of New Jersey as a result of the taking of the action shall state, in lieu of any statement required by the Act concerning any vote of Members, that written consent has been given in accordance with the provisions of the Act and that any written notice required by the Act has been given.

(c) Members may participate in and hold a meeting by means of conference telephone or similar communications equipment by means of which all Persons participating in the meeting can hear each other, and participation in such meeting shall constitute attendance and presence in person at such meeting, except where a Person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

## ARTICLE VIII
## INDEMNIFICATION

8.01 Indemnification. To the fullest extent permitted by law, each Member shall indemnify the Company and each other Member and hold them harmless from and against all losses, costs, liabilities, damages, and expenses (including, without limitation, costs of suit and attorney's fees) they may incur on account of any breach by that Member of this Operating Agreement.

## ARTICLE IX
## TAXES

9.01 Tax Returns. The Tax Matters Partner shall cause to be prepared and filed all necessary federal and state income tax returns for the Company, including making the elections

-20-

described in Section 9.02. Each Member shall furnish to the Tax Matters Partner all pertinent information in its possession relating to Company operations that is necessary to enable the Company's income tax returns to be prepared and filed.

9.02 Tax Elections. The Company shall make the following elections on the appropriate tax returns:

(a) to adopt the calendar year as the Company's fiscal year;

(b) to adopt the cash method of accounting and to keep the Company's books and records on the income-tax method;

(c) if a distribution of Company property as described in section 734 of the Code occurs or if a transfer of a Membership Interest as described in section 743 of the Code occurs, on written request of any Member, to elect, pursuant to section 754 of the Code, to adjust the basis of Company properties;

(d) to elect to amortize the organizational expenses of the Company and the startup expenditures of the Company under section 195 of the Code ratably over a period of 60 months as permitted by section 709(b) of the Code; and

(e) any other election the Tax Matters Partner may deem appropriate and in the best interests of the Members.

Neither the Company nor any Member may make an election for the Company to be excluded from the application of the provisions of subchapter K of chapter 1 of subtitle A of the Code or any similar provisions of applicable state law, and no provision of this Operating Agreement (including, without limitations, Section 2.08) shall be construed to sanction or approve such an election.

9.03 Tax Matters Partner. The Company's initial Tax Matters Partner shall be Seth Levine. Thereafter, a Majority In Interest of the Members shall designate a successor Tax Matters Partner. The Tax Matters Partner shall take such action as may be necessary to cause each other Member to become a "notice partner" within the meaning of section 6223 of the Code. The Tax Matters Partner shall inform each other Member of all significant matters that may come to its attention in its capacity as "tax matters partner" (as defined in section 6231 of the Code) by giving notice thereof on or before the fifth Business Day after becoming aware thereof and, within that time, shall forward to each other Member copies of all significant written communications it may receive in that capacity. The Tax Matters Partner may not take any action contemplated by sections 6222 through 6232 of the Code without the consent of a Majority In Interest, but this sentence does not authorize such Member (or

-21-

any other Member) to take any action left to the determination of an individual Member under sections 6222 through 6232 of the Code.

## ARTICLE X
## BOOKS, RECORDS, REPORTS, AND BANK ACCOUNTS

10.01  Maintenance of Books.  The Company shall keep books and records of accounts, shall keep minutes of the proceedings of its Members, and shall keep such other books and records as provided by the Act and as the Company may deem necessary or advisable.  Such books and records shall be subject to the inspection of any Member.

10.02  Reports.  On or before the 90th day following the end of each fiscal year during the term of the Company, the Tax Matters Partner shall cause each Member to be furnished with the following:

(a)  an unaudited balance sheet and statement of operations, Members' equity and changes in financial position, all of which shall be prepared in accordance with accounting principles generally employed for the cash-basis records consistently applied (except as therein noted); and

(b)  (i) U.S. federal income tax Form K-1 and any similar forms required by any state or local taxing authority and (ii) any other information concerning the Company reasonably necessary for the preparation of the Members' federal and state income tax returns.

Upon showing good cause (which shall be determined without regard to the foreseeability of such cause), the Tax Matters Partner shall be entitled to a reasonable extension of the 90-day period.  The Tax Matters Partner also may cause to be prepared or delivered such other reports as he or she may deem appropriate.  The Company shall bear the costs of all these reports.

10.03 Accounts. The Manager or such officer of the Company to which the Manager delegates shall establish and maintain one or more separate bank and investment accounts and arrangements for Company funds in the Company name with financial institutions and firms that the Manager or such officer of the Company determines, subject to the prior consent of a Majority In Interest of the Members. No Member may commingle the Company's funds with the funds of any Member; however, Company funds may be invested in a manner the same as or similar to the Members' investment of their own funds or investments by their Affiliates.

## ARTICLE XI

### DISSOLUTION, LIQUIDATION, AND TERMINATION

11.01 Dissolution. The Company shall dissolve and its affairs shall be wound up on the first to occur of the following:

(a) the written consent of a Supermajority In Interest of the Members;

(b) entry of a decree of judicial dissolution of the Company under section 702 of the Act; or

(c) the expiration of the term of the Company as stated in the Articles, if any.

11.02 Dissolution Process. Dissolution of the Company shall commence as of the day on which the event occurs giving rise thereto. Notwithstanding the dissolution of the Company and prior to the termination thereof, the business of the Company and the affairs of the Members, as such, shall continue to be governed by this Operating Agreement. Upon the commencement of the dissolution of the Company, an independent certified public accounting firm shall be designated by a Majority In Interest of the Members to audit the Company's financial statements and prepare and deliver to each Member, within sixty (60) days after its appointment, a report containing a balance sheet as of the effective date of such dissolution and statements of income, capital account and changes in financial position for the portion of the fiscal year prior to, through and including the effective date of such dissolution. Pending the preparation and delivery of such report, the assets of the Company shall be applied and distributed as contemplated by Section 11.03 hereof.

11.03 Distributions upon Dissolution. A reasonable time shall be allowed for the orderly liquidation of the assets of the Company, the settlement of its accounts and the discharge of its liabilities to creditors, so as to minimize the losses attendant upon liquidation. The then remaining assets of the Company shall be applied in the following order of priority:

(a) to the payment of creditors, other than the Members, in the order of priority

-23-

provided by law;

(b) to the payment of any indebtedness of the Company to Members for money borrowed, including without limitation any loans by Members to the Company pursuant to Section 4.04 hereof;

(c) to the setting up of any contingency reserves which the Majority In Interest of the Members (or any liquidator appointed thereby) deems reasonably necessary for the payment of any contingent or unforeseen liabilities or obligations of the Company, such reserves to be paid over to such bank or other person as shall be appointed by the Majority In Interest of the Members (or the appointed liquidator) and held for the purpose of disbursing such reserves in payment of any such contingencies until, at the expiration of such period as the Majority In Interest of the Members (or the appointed liquidator) shall deem advisable, the bank or such other person shall distribute the balance thereafter remaining in the priority and manner provided in this Section 12.03; and

(d) to the Members and Transferees in accordance with their positive Capital Account balances at that time.

The distribution of cash and/or property to a Member or Transferee in accordance with the provisions of this Section 11.03 shall constitute a complete distribution to the Member or Transferee of its interest in all the Company's property and a compromise to which all Members or Transferee have consented within the meaning of the Act.

11.04 Deficit Capital Accounts. Notwithstanding anything to the contrary contained in this Operating Agreement, and notwithstanding any custom or rule of law to the contrary, upon dissolution of the Company no Capital Account deficit shall be an asset of the Company and such Members or Transferees shall not be obligated to contribute such amount to the Company to bring the balance of such Member's or Transferee's Capital Account to zero.

11.05 Articles of Dissolution. On completion of the distribution of Company assets as provided herein, the Company is terminated, and such Person or Persons as the Act may require or permit shall file Articles of Dissolution with the Secretary of State of New Jersey, cancel any other filings made pursuant to Section 2.05, and take such other actions as may be necessary to terminate the Company.

## ARTICLE XII
## DISPUTE RESOLUTION

-24-

12.01 Arbitration.

(a) Any controversy, dispute or claim arising out of or relating to this Operating Agreement, or the breach thereof, shall be resolved by arbitration before a panel of three (3) arbitrators under the auspices of the American Arbitration Association and in accordance with its then outstanding Commercial Rules. A ruling of the arbitrators shall be final and binding and may be entered as a judgment in any court of competent jurisdiction and shall be based upon the substantive law of the State of New Jersey. The prevailing party shall be entitled to costs of the arbitration and reasonable attorney's fees. Any arbitration pursuant to this provision shall be held in the State of New Jersey, unless otherwise agreed by the parties, applying the substantive laws of the State of New Jersey, without giving effect to its conflicts of laws principles.

(b) Notwithstanding subsection 12.01(a), the Company or the Members shall retain the right to seek from a court of competent jurisdiction, upon seventy-two (72) hours notice given prior to seeking such relief, preliminary or permanent injunctive relief, specific performance or any other equitable remedy with respect to any aspect of this Operating Agreement.

## ARTICLE XIII
## GENERAL PROVISIONS

13.01 Offset. Whenever the Company is to pay any sum to any Member or Transferee, any amounts that Member or Transferee owes the Company may be deducted from that sum before payment.

13.02 Notices. Except as expressly set forth to the contrary in this Operating Agreement, all notices, requests, or consents provided for or permitted to be given under this Operating Agreement must be in writing and must be given either by depositing that writing in the United States mail, addressed to the recipient, postage paid, and registered or certified with return receipt requested or by delivering that writing to the recipient in person, by courier, or by facsimile transmission; and a notice, request, or consent given under this Operating Agreement is effective on receipt by the Person to receive it. All notices, requests, and consents to be sent to a Member and Transferees must be sent to or made at the addresses given for that Member and Transferees on Exhibit A, or such other address as that Member and Transferees may specify by notice to the other Members and Transferees. Whenever any notice is required to be given by law, the Articles or this Operating Agreement, a written waiver thereof, signed by the Person entitled to notice, whether before

-25-

or after the time stated therein, shall be deemed equivalent to the giving of such notice.

13.03  Entire Agreement; Supersession. This Operating Agreement constitutes the entire agreement of the Members and their Affiliates relating to the Company and supersedes all prior contracts or agreements with respect to the Company, whether oral or written.

13.04  Effect of Waiver or Consent. A waiver or consent, express or implied, to or of any breach or default by any Person in the performance by that Person of its obligations with respect to the Company is not a consent or waiver to or of any other breach or default in the performance by that Person of the same or any other obligations of that Person with respect to the Company. Failure on the part of a Person to complain of any act of any Person or to declare any Person in default with respect to the Company, irrespective of how long that failure continues, does not constitute a waiver by that Person of its rights with respect to that default until the applicable statute of limitations period has run.

13.05  Amendment or Modification. This Operating Agreement may be amended or modified from time to time only as provided in the Articles and Section 6.02(b)(vi).

13.06  Binding Effect. Subject to the restrictions on Dispositions set forth in this Operating Agreement, this Operating Agreement is binding on and inures to the benefit of the Members and their respective heirs, legal representatives, successors, and assigns.

13.07  Governing Law; Severability. THIS OPERATING AGREEMENT IS GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW JERSEY, EXCLUDING ANY CONFLICT-OF-LAWS RULE OR PRINCIPLE THAT MIGHT REFER THE GOVERNANCE OR THE CONSTRUCTION OF THIS OPERATING AGREEMENT TO THE LAW OF ANOTHER JURISDICTION. In the event of a direct conflict between the provisions of this Operating Agreement and (a) any provision of the Articles, or (b) any mandatory provision of the Act the applicable provision of the Articles or the Act shall control. If any provision of this Operating Agreement or the application thereof to any Person or circumstance is held invalid or unenforceable to any extent, the remainder of this Operating Agreement and the application of that provision to other Persons or circumstances is not affected thereby and that provision shall be enforced to the greatest extent permitted by law.

13.08  Further Assurances. In connection with this Operating Agreement and the transactions contemplated hereby, each Member shall execute and deliver any additional documents and instruments and perform any additional acts that may be necessary or

-26-

appropriate to effectuate and perform the provisions of this Operating Agreement and those transactions.

13.09  Waiver of Certain Rights.  Each Member irrevocably waives any right it may have to maintain any action for partition of the property of the Company.

13.10  Notice to Members of Provisions of this Agreement.  By executing this Operating Agreement, each Member acknowledges that it has actual notice of (a) all of the provisions of this Operating Agreement, including, without limitation, the restrictions on the transfer of Membership Interests set forth in Article III, and (b) all of the provisions of the Articles. Each Member hereby agrees that this Operating Agreement constitutes adequate notice of all such provisions, including, without limitation, any notice requirement under the Act and each Member hereby waives any requirement that any further notice thereunder be given.

13.11  Counterparts.  This Operating Agreement may be executed in any number of counterparts with the same effect as if all signing parties had signed the same document. All counterparts shall be construed together and constitute the same instrument.

The undersigned, being all the initial Members of the Company, hereby certify that this Operating Agreement was unanimously adopted by the Members.

-27-

IN WITNESS WHEREOF, the Members have executed this Operating Agreement as of the date first set forth above.

MEMBERS:

_____

Seth Levine

EXHIBIT A

Names and Addresses of Members

Seth Levine

EXHIBIT B

Sharing Ratios and Voting Power of Members

| Name | Sharing Ratio | Voting Power |
|------|---------------|--------------|
| Seth Levine | 100% | 100% |

# EXHIBIT C

## NEW JERSEY DEPARTMENT OF TREASURY
### DIVISION OF REVENUE

### CERTIFICATE OF FORMATION

### LENOX HUDSON LLC
#### 0400231931

The above-named DOMESTIC LIMITED LIABILITY COMPANY was duly filed in accordance with New Jersey State Law on 05/14/2008 and was assigned identification number 0400231931.  Following are the articles that constitute its original certificate.

**1. Name:**
   LENOX HUDSON LLC

**2. Registered Agent:**
   CARMEL AND FREDERICKSON

**3. Registered Office:**
   523 RIVER ROAD
   EDGEWATER, NJ 07020

**4. Business Purpose:**
   Real Estate

**5. Members/Managers:**
   LENOX REAL ESTATE PARTNERS LLC
   P.O. BOX 2018
   FORT LEE, NJ 07020

**6. Main Business Address:**
   P.O. BOX 2018
   FORT LEE, NJ 07024

**Signatures:**
   MOSHAEL J. STRAUS
   AUTHORIZED REPRESENTATIVE

LLC

```
 F I L E D
 MAY 1 4 2008
STATE TREASURER
```



*IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal at Trenton, this 15th day of May, 2008*

R. David Rousseau
State Treasurer

Certificate Number:   111990470
Verify this certificate online at
https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp

# EXHIBIT D

## SHARE CERTIFICATE
**THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933 OR UNDER THE SECURITIES OR BLUE SKY LAWS OF ANY STATE.  THE HOLDER OF THIS CERTIFICATE, BY ITS ACCEPTANCE HEREOF, REPRESENTS THAT IT IS ACQUIRING THIS SECURITY FOR INVESTMENT AND NOT WITH A VIEW TO ANY SALE OR DISTRIBUTION HEREOF.  THE TRANSFER OF THIS CERTIFICATE AND THE MEMBERSHIP INTEREST REPRESENTED HEREBY IS RESTRICTED AS DESCRIBED IN THE OPERATING AGREEMENT OF THE COMPANY, DATED DECEMBER 19, 2013, AS THE SAME MAY BE AMENDED OR AMENDED AND RESTATED FROM TIME TO TIME.**

Certificate Number 1                                     100% Membership Interest

   **LENOX HUDSON LLC,** a New Jersey limited liability company (the "Company"), hereby certifies that RIVER FUNDING LLC, a New Jersey limited liability company (together with any assignee of this Certificate, the "Holder") is the registered owner of 100% of the Membership Interests in the Company (the "Interests").  The rights, powers, preferences, restrictions and limitations of the Interests are set forth in, and this Share Certificate and the Interests represented hereby are issued and shall in all respects be subject to the terms and provisions of, Limited Liability Company Operating Agreement of the Company dated as of May __, 2008, as amended by that certain First Amendment to Limited Liability Company Operating Agreement dated as of January __, 2019 (the "Operating Agreement") (the "Operating Agreement").  By acceptance of this Share Certificate, and as a condition to being entitled to any rights and/or benefits with respect to the Interests evidenced hereby, the Holder is deemed to have agreed to comply with and be bound by all the terms and conditions of the Operating Agreement. The Company will furnish a copy of the Operating Agreement to the Holder without charge upon written request to the Company at its principal place of business.  Each Interest shall constitute a "security" within the meaning of (i) Section 8-102(a)(15) of the Uniform Commercial Code as in effect from time to time in the State of New Jersey and (ii) the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995.

   This Share Certificate shall be governed by and construed in accordance with the laws of the State of New Jersey without regard to principles of conflicts of laws.

IN WITNESS WHEREOF, the Company has caused this Certificate to be executed as of the date set forth below.

Dated as of: January __, 2019

LENOX HUDSON LLC,
a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Manager

2

**(REVERSE SIDE OF CERTIFICATE)**
**ASSIGNMENT OF INTERESTS**

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto _____, a <u>100%</u> limited liability company membership interest in LENOX HUDSON LLC, a New Jersey limited liability company effective as of the date specified in the Application for Transfer of Interests below, and irrevocably constitutes and appoints _____, and its authorized officers, as attorney-in-fact, to transfer the same on the books and records of the Company, with full power of substitution in the premises.

Dated:  January __, 2019

**RIVER FUNDING LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Managing Member

**APPLICATION FOR TRANSFER OF INTERESTS**

The undersigned applicant (the "Applicant") hereby (a) applies for a transfer of the percentage of limited liability company interests in the Company described above (the "Transfer") and applies to be admitted to the Company as a substitute member of the Company, (b) agrees to comply with and be bound by all of the terms and provisions of the Operating Agreement, (c) represents that the Transfer complies with the terms and conditions of the Operating Agreement, (d) represents that the Transfer does not violate any applicable laws and regulations, and (e) agrees to execute and acknowledge such instruments (including, without limitation, a counterpart of the Operating Agreement), in form and substance satisfactory to the Company, as the Company reasonably deems necessary or desirable to effect the Applicant's admission to the Company as a substitute member of the Company and to confirm the agreement of the Applicant to be bound by all the terms and provisions of the Limited Liability Company Agreement with respect to the limited liability company interests in the Company described above. Initially capitalized terms used herein and not otherwise defined herein are used as defined in the Operating Agreement.

The Applicant directs that the foregoing Transfer and the Applicant's admission to the Company as a Substitute Member shall be effective as of _____.

Name of Transferee: _____

Signature: _____
(Transferee)

Dated:                                        Address:

The Company has determined (a) that the Transfer described above is permitted by the Operating Agreement, (b) hereby agrees to effect such Transfer and the admission of the Applicant as a substitute member of the Company effective as of the date and time directed above, and (c) agrees to record, as promptly as possible, in the books and records of the Company the admission of the Applicant as a substitute member.

**LENOX HUDSON LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Manager

# EXHIBIT E

### NEW JERSEY DEPARTMENT OF TREASURY
### DIVISION OF REVENUE

## CERTIFICATE OF FORMATION

### LENOX TEMPLE LLC
### 0400240453

The above-named DOMESTIC LIMITED LIABILITY COMPANY was duly filed in accordance with New Jersey State Law on 07/11/2008 and was assigned identification number 0400240453.  Following are the articles that constitute its original certificate.

**1. Name:**
   LENOX TEMPLE LLC

**2. Registered Agent:**
   CARMEL AND FREDERICKSON

**3. Registered Office:**
   523 RIVER ROAD
   EDGEWATER, NJ 07020

**4. Business Purpose:**
   Real Estate

**5. Members/Managers:**
   LENOX REAL ESTATE PARTNERS LLC
   PO BOX 2018
   FORT LEE, NJ 07024

**6. Main Business Address:**
   PO BOX 2018
   FORT LEE, NJ 07024

   **Signatures:**
   MOSHAEL J. STRAUS
   AUTHORIZED REPRESENTATIVE

$LLC$

FILED
JUL 1 1 2008
STATE TREASURER

*IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal at Trenton, this 14th day of July, 2008*

R. David Rousseau
State Treasurer



Certificate Number:  112252520
Verify this certificate online at
https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp

# EXHIBIT F

## SHARE CERTIFICATE
**THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933 OR UNDER THE SECURITIES OR BLUE SKY LAWS OF ANY STATE.  THE HOLDER OF THIS CERTIFICATE, BY ITS ACCEPTANCE HEREOF, REPRESENTS THAT IT IS ACQUIRING THIS SECURITY FOR INVESTMENT AND NOT WITH A VIEW TO ANY SALE OR DISTRIBUTION HEREOF.  THE TRANSFER OF THIS CERTIFICATE AND THE MEMBERSHIP INTEREST REPRESENTED HEREBY IS RESTRICTED AS DESCRIBED IN THE OPERATING AGREEMENT OF THE COMPANY, DATED DECEMBER 19, 2013, AS THE SAME MAY BE AMENDED OR AMENDED AND RESTATED FROM TIME TO TIME.**

Certificate Number 1                                        100% Membership Interest

      **LENOX TEMPLE LLC**, a New Jersey limited liability company (the "Company"), hereby certifies that RIVER FUNDING LLC, a New Jersey limited liability company (together with any assignee of this Certificate, the "Holder") is the registered owner of 100% of the Membership Interests in the Company (the "Interests").  The rights, powers, preferences, restrictions and limitations of the Interests are set forth in, and this Share Certificate and the Interests represented hereby are issued and shall in all respects be subject to the terms and provisions of, the Limited Liability Company Operating Agreement of the Company dated as of July 6, 2013, as amended by that certain First Amendment to Limited Liability Company Operating Agreement dated as of January __, 2019 (the "Operating Agreement") (the "Operating Agreement").  By acceptance of this Share Certificate, and as a condition to being entitled to any rights and/or benefits with respect to the Interests evidenced hereby, the Holder is deemed to have agreed to comply with and be bound by all the terms and conditions of the Operating Agreement.  The Company will furnish a copy of the Operating Agreement to the Holder without charge upon written request to the Company at its principal place of business.  Each Interest shall constitute a "security" within the meaning of (i) Section 8-102(a)(15) of the Uniform Commercial Code as in effect from time to time in the State of New Jersey and (ii) the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995.

      This Share Certificate shall be governed by and construed in accordance with the laws of the State of New Jersey without regard to principles of conflicts of laws.

Share Certificate

IN WITNESS WHEREOF, the Company has caused this Certificate to be executed as of the date set forth below.

Dated as of: January ___, 2019

>**LENOX TEMPLE LLC,**
>a New Jersey limited liability company
>
>By: _____
>Name: Seth Levine
>Title:   Manager

2

# EXHIBIT G

## NEW JERSEY DEPARTMENT OF THE TREASURY
### DIVISION OF REVENUE AND ENTERPRISE SERVICES

### CERTIFICATE OF FORMATION



### TEANECK PLAZA VENTURES, LLC
#### 0400702478

The above-named DOMESTIC LIMITED LIABILITY COMPANY was duly filed in accordance with New Jersey State Law on 11/14/2014 and was assigned identification number 0400702478. Following are the articles that constitute its original certificate.

1. **Name:**
   TEANECK PLAZA VENTURES, LLC

2. **Registered Agent:**
   SETH LEVINE

3. **Registered Office:**
   210 RIVER STREET
   SUITE 24
   HACKENSACK, NJ 07601

4. **Business Purpose:**
   REAL ESTATE INVESTMENT

5. **Members/Managers:**
   SETH LEVINE
   210 RIVER STREET
   SUITE 24
   HACKENSACK, NJ 07601

6. **Main Business Address:**
   210 RIVER STREET
   SUITE 24
   HACKENSACK, NJ 07601

   **Signatures:**
   YEHUDA C. GREENFIELD
   AUTHORIZED REPRESENTATIVE



IN TESTIMONY WHEREOF, I have
hereunto set my hand and
affixed my Official Seal
at Trenton, this
17th day of November, 2014

*Andrew P Sidamon-Eristoff*
*State Treasurer*

Certificate Number:   134215430
Verify this certificate online at
https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp

# EXHIBIT H

## SHARE CERTIFICATE
**THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933 OR UNDER THE SECURITIES OR BLUE SKY LAWS OF ANY STATE.  THE HOLDER OF THIS CERTIFICATE, BY ITS ACCEPTANCE HEREOF, REPRESENTS THAT IT IS ACQUIRING THIS SECURITY FOR INVESTMENT AND NOT WITH A VIEW TO ANY SALE OR DISTRIBUTION HEREOF.  THE TRANSFER OF THIS CERTIFICATE AND THE MEMBERSHIP INTEREST REPRESENTED HEREBY IS RESTRICTED AS DESCRIBED IN THE OPERATING AGREEMENT OF THE COMPANY, DATED DECEMBER 19, 2013, AS THE SAME MAY BE AMENDED OR AMENDED AND RESTATED FROM TIME TO TIME.**

Certificate Number 1                                                      100% Membership Interest

   **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company (the "Company"), hereby certifies that RIVER FUNDING LLC, a New Jersey limited liability company (together with any assignee of this Certificate, the "Holder") is the registered owner of 100% of the Membership Interests in the Company (the "Interests").  The rights, powers, preferences, restrictions and limitations of the Interests are set forth in, and this Share Certificate and the Interests represented hereby are issued and shall in all respects be subject to the terms and provisions of, the Limited Liability Company Operating Agreement of the Company dated as of December __, 2014, as amended by that certain First Amendment to Limited Liability Company Operating Agreement dated as of January __, 2019 (the "Operating Agreement") (the "Operating Agreement").  By acceptance of this Share Certificate, and as a condition to being entitled to any rights and/or benefits with respect to the Interests evidenced hereby, the Holder is deemed to have agreed to comply with and be bound by all the terms and conditions of the Operating Agreement. The Company will furnish a copy of the Operating Agreement to the Holder without charge upon written request to the Company at its principal place of business.  Each Interest shall constitute a "security" within the meaning of (i) Section 8-102(a)(15) of the Uniform Commercial Code as in effect from time to time in the State of New Jersey and (ii) the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995.

   This Share Certificate shall be governed by and construed in accordance with the laws of the State of New Jersey without regard to principles of conflicts of laws.

Share Certificate

IN WITNESS WHEREOF, the Company has caused this Certificate to be executed as of the date set forth below.

Dated as of: January __, 2019

**TEANECK PLAZA VENTURES, LLC,**
a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Manager

2

**(REVERSE SIDE OF CERTIFICATE)**
**ASSIGNMENT OF INTERESTS**

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto _____, a <u>100%</u> limited liability company membership interest in TEANECK PLAZA VENTURES, LLC, a New Jersey limited liability company effective as of the date specified in the Application for Transfer of Interests below, and irrevocably constitutes and appoints _____, and its authorized officers, as attorney-in-fact, to transfer the same on the books and records of the Company, with full power of substitution in the premises.

Dated: January ___, 2019

RIVER FUNDING LLC, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Managing Member

**APPLICATION FOR TRANSFER OF INTERESTS**

The undersigned applicant (the "Applicant") hereby (a) applies for a transfer of the percentage of limited liability company interests in the Company described above (the "Transfer") and applies to be admitted to the Company as a substitute member of the Company, (b) agrees to comply with and be bound by all of the terms and provisions of the Operating Agreement, (c) represents that the Transfer complies with the terms and conditions of the Operating Agreement, (d) represents that the Transfer does not violate any applicable laws and regulations, and (e) agrees to execute and acknowledge such instruments (including, without limitation, a counterpart of the Operating Agreement), in form and substance satisfactory to the Company, as the Company reasonably deems necessary or desirable to effect the Applicant's admission to the Company as a substitute member of the Company and to confirm the agreement of the Applicant to be bound by all the terms and provisions of the Limited Liability Company Agreement with respect to the limited liability company interests in the Company described above. Initially capitalized terms used herein and not otherwise defined herein are used as defined in the Operating Agreement.

The Applicant directs that the foregoing Transfer and the Applicant's admission to the Company as a Substitute Member shall be effective as of _____.

Name of Transferee: _____

Signature: _____
                              (Transferee)

Dated:                                    Address:

The Company has determined (a) that the Transfer described above is permitted by the Operating Agreement, (b) hereby agrees to effect such Transfer and the admission of the Applicant as a substitute member of the Company effective as of the date and time directed above, and (c) agrees to record, as promptly as possible, in the books and records of the Company the admission of the Applicant as a substitute member.

**TEANECK PLAZA VENTURES, LLC,** a New Jersey limited liability company

By: _____
Name:  Seth Levine
Title:   Manager

# EXHIBIT I

## SECURED PROMISSORY NOTE

$1,100,000.00

Dated:  Teaneck, New Jersey
January 17, 2019

   **SECURED PROMISSORY NOTE** (hereinafter, the "**Note**") made this __ day of January __, 2019, by **NORSE HOLDINGS, LLC**, a New York limited liability company and **RIVER FUNDING LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (hereinafter, collectively, the "**Maker**") for the benefit of **JLS EQUITIES, LLC**, a New York limited liability company, its successors and/or assigns, as their interests may appear, (hereinafter, the "**Payee**"), having offices c/o Y. Schwartz P.C., 930 E. County Line Rd., Suite 202, Lakewood, New Jersey 08701.

   **FOR VALUE RECEIVED**, Maker promises to pay to the order of Payee, at such place as Payee may designate to Maker in writing from time to time, the principal sum of One Million One Hundred Thousand and 00/100 Dollars ($1,100,000.00) (the "**Principal Balance**"), together with interest thereon at the Interest Rate (or the Default Rate if applicable), calculated in the manner hereinafter set forth from and including the date of this Note to the date this Note is paid in full, as follows:

   A. On the date hereof, interest on the principal sum of this Note from the date hereof to January 31, 2019 at the Interest Rate.

   B. Interest only, at the Interest Rate, on the Principal Balance shall be due monthly and shall be paid monthly in arrears, commencing on March 1, 2019, and monthly thereafter on the first (1st) day of each month (the "**Payment Date**") until the Maturity Date (each such monthly payment, a "**Monthly Payment**").

   C. On the Maturity Date, the entire Principal Balance, together with all accrued and unpaid interest through the Maturity Date at the Interest Rate, if any, and all other sums payable to the holder of this Note (whether pursuant to this Note, the Pledge or Other Security Documents (as hereinafter defined)) shall become due and payable.

For the purposes of this Note, these terms shall be defined as follows:

   1. The term "**Interest Rate**" as used in this Note shall mean interest at the annual rate equal to forty-eight percent (48.00%), except as otherwise expressly provided herein.

   2. The term "**Maturity Date**" as used in this Note shall mean the earlier of (i) January 31, 2020, or (ii) such sooner date, by acceleration or otherwise, as may be applicable pursuant to the terms hereof, at which time the entire Debt shall become due and payable.

3. The term "**Debt**" shall mean all principal, interest and other sums of any nature whatsoever, which may or shall become due to Payee in accordance with the provisions of this Note, the Pledge or Other Security Documents.

4. The term "**Pledge**" shall mean that certain Pledge and Security Agreement dated the date hereof, made by Maker in favor of Payee.

5. The term "**Other Security Documents**" shall mean any of the documents other than this Note or the Pledge, now or hereafter executed by the Maker or others, and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note, or which otherwise pertain to the Loan.

6. The term "**Loan Documents**" shall mean this Note, the Pledge and all and any of the documents now or hereafter executed by Maker and/or others and by or in favor of Payee, which evidences, secures or guarantees all or any portion of the payments due under this Note or otherwise is executed and delivered in connection with this Note, the Pledge, guarantees and agreements.

Any capitalized terms used herein but not defined shall have the meanings ascribed to them in the Pledge or Other Security Documents.

Interest shall be computed on the basis of a year of 360 days and actual days elapsed.

The failure to make any payment required under this Note or the occurrence of any Event of Default (as such term is defined in the Pledge or the Other Security Documents) shall constitute an "Event of Default" under this Note.

Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate (as defined hereunder) prior to and subsequent to the entry of a UCC Judgment of Foreclosure and Sale, (b) Payee may, at its option, without any written notice given to the Maker (such notice being expressly waived), DECLARE AND DEMAND this Note and the Debt immediately due and payable and (c) Payee may pursue all rights and remedies available hereunder or under the Pledge and the Other Security Documents. Payee's rights, remedies and powers, as provided in this Note, the Pledge or the Other Security Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, any Guarantor of the indebtedness evidenced hereby or against any collateral granted or pledged by Maker under any of the Loan Documents or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Payee. Additionally, Payee may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Payee's sole discretion. Failure of Payee, for any period of time or on more than one occasion, to DECLARE AND DEMAND this Note and the Debt immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from and after any Event of Default.

A payment shall not be deemed to have been made on any day unless such payment has been received by Payee, at the required place of payment, in U.S. dollars by no later than 3:00

- 2 -

p.m. (New York time) on such day.  Whenever any payment to Payee hereunder would otherwise be due (except by reason of acceleration) on a day that is not a Business Day, such payment shall instead be due on the next succeeding Business Day.  If any installment of principal, interest or other sums due hereunder or under the Pledge or any Other Security Document are not paid by the date on which same are due, the Maker shall pay to the Payee a late charge of ten percent (10.00%) of such unpaid installment as a late payment charge, such late charge to be immediately due and payable without demand by the Payee.  Notwithstanding anything to the contrary, all payments due under this Note, the Pledge and the Loan Documents shall be made by means of wire transfer to the order of Payee, as directed by Payee, and Payee shall have the absolute right to reject any payment not made by wire transfer. In addition, Maker shall pay to Payee the sum of $100.00 for any payment which is returned for any reason by Maker's bank unpaid.

Subject to the following provisions, provided that, simultaneously with any prepayment of the Debt, Maker shall pay to Payee a prepayment premium in an amount equal to (i) $66,000.00, less (ii) the actual interest paid to Payee by Maker (or applied from any reserves being held by Payee) (the "**Prepayment Premium**"), but in no event less than zero dollars ($0.00), then Maker shall have the right to prepay the Principal Balance in whole only, along with additional interest, additional interest, and any other sums then due under this Note, the Pledge or the Other Security Documents upon prior irrevocable written notice sent by Maker (a "**Prepayment Notice**"), setting forth the intended prepayment date ("**Prepayment Date**"), which Prepayment Notice must be received by Payee not more than ten (10) days prior to the Prepayment Date and not less than two (2) days prior to the Prepayment Date and on the Prepayment Date, Maker shall make prepayment as herein above provided. **SUCH PREPAYMENT PREMIUM SHALL BE PAID WHETHER THE PREPAYMENT IS VOLUNTARY OR INVOLUNTARY, INCLUDING ANY PREPAYMENT AFFECTED BY THE ACCELERATION PROVISIONS CONTAINED IN THE NOTE OR THE LOAN DOCUMENTS.  UPON ACCELERATION, THE PREPAYMENT PREMIUM SHALL BE CALCULATED BASED UPON THE AMOUNT OF THE PREPAYMENT DUE ON THE DATE OF SUCH ACCELERATION. PROVIDED, HOWEVER, IF SUCH PREPAYMENT PREMIUM CONSTITUTES INTEREST UNDER APPLICABLE LAW, THE AMOUNT OF SUCH PREPAYMENT PREMIUM WILL BE REDUCED TO AN AMOUNT WHICH, WHEN ADDED TO ALL OTHER AMOUNTS WHICH CONSTITUTE INTEREST UNDER APPLICABLE LAW, WILL NOT EXCEED THE MAXIMUM AMOUNT OF INTEREST WHICH MAY BE CONTRACTED FOR, CHARGED OR RECEIVED WITH RESPECT TO THE LOAN EVIDENCED HEREBY UNDER APPLICABLE LAW FOR THE ACTUAL PERIOD TIME OF SUCH LOAN IS OUTSTANDING.** Notwithstanding the foregoing, in the event the Prepayment Date shall be prior to January 31, 2019, the Prepayment Premium shall be an amount equal to (ii) $27,500.00 less (ii) the actual interest paid to Payee by Maker (or applied from any reserves being held by Payee), but in no event less than zero dollars ($0.00).

Maker acknowledges that this Note and Maker's obligations under this Note are and shall at all times continue to be absolute and unconditional in all respects.  This Note, the Pledge and the Other Security Document set forth the entire agreement and understanding of Payee, Guarantor and Maker.

Maker agrees to pay all costs and expenses of collection incurred by Payee, in addition to principal and interest (including, without limitation, attorneys' fees and disbursements),

and including all costs and expenses incurred in connection with the pursuit by Payee of any of its rights or remedies hereunder or under the Pledge and/or the Other Security Documents or the protection of or realization of collateral or in connection with any of Payee's collection efforts, whether or not any action or proceeding on this Note, on the Pledge and/or the Other Security Documents or any foreclosure proceeding is filed, all such costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the Pledge and the Other Security Documents.

The indebtedness herein evidenced by this Note is secured by the Pledge and the Other Security Documents.

THIS NOTE, THE PLEDGE AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

Maker does hereby agree that upon the occurrence of an Event of Default (as such capitalized term is defined in the Pledge), or upon the failure of Maker to pay the Debt in full on the Maturity Date, Payee shall be entitled to receive and Maker shall pay interest on the entire Debt at the rate of forty-nine percent (49%) percent per annum or at the maximum rate of interest which Maker may by law pay, whichever is lower (the "**Default Rate**"), to be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt, including all periods prior to or subsequent to the entry of a UCC Judgment of Foreclosure and Sale.   This charge shall be added to the Debt, and shall be deemed secured by the Pledge and the Other Security Documents.  This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence of any Event of Default.

This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Principal Balance at a rate which could subject Payee to either civil or criminal liability as a result of being in excess of the maximum rate which Maker is permitted by law to contract or agree to pay.  For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Payee for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof.  If, by the terms of this Note, Maker is at any time required or obligated to pay interest on the Principal Balance at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, and interest payable hereunder shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the Principal Balance.

No delay on the part of Payee in exercising any right or remedy under this Note, the Pledge or the Other Security Documents or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy.  No notice to or demand on Maker shall be deemed

to be a waiver of the obligation of Maker or of the right of Payee to take further action without further notice or demand as provided in this Note, the Pledge and the Other Security Documents.

Each of Payee's rights and remedies under this Note shall be in addition to all of its other rights and remedies under the Pledge, Other Security Documents and applicable law.

**TIME IS OF THE ESSENCE** with regard to Maker's performance of all the terms, covenants and conditions of this Note.

Any provision of this Note, the Pledge or the Other Security Documents that is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof or affecting the validity or enforceability of such provision.

All of the provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

Maker hereby warrants, represents and covenants that no funds disbursed hereunder shall be used for personal family or household purposes.

Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note and that the Debt hereunder constitutes a valid and binding obligation of Maker.

All notices to be given under this Note shall be given in the same manner as provided in the Pledge.

This Note, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Without limiting any other provisions of the Pledge or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives valuation, appraisement, presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, lack of diligence, delays in collection or enforcement of this Note, notice of the intention to accelerate, the benefit of all applicable law affording any right or redemption or cure and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Pledge or any of the Other Security Documents, and in connection with any suit, action or proceeding brought by Payee on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Payee on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time,

renewal, waiver or modification granted or consented to by Payee.  Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Payee with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS NOTE OR ANY OTHER SECURITY DOCUMENT, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, MAKER AND PAYEE IRREVOCABLY SUBMIT TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW JERSEY AND THE UNITED STATES DISTRICT COURT LOCATED IN THE COUNTY OF OCEAN, NEW JERSEY, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. MAKER AND PAYEE IRREVOCABLY WAIVE ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  NOTHING IN THE PLEDGE OR OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE PAYEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO ANY OTHER SECURITY DOCUMENT OR THE DEBT IN ANY OTHER JURISDICTION WHERE PAYEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING.

**[Remainder of Page Intentionally Left Blank]**

**IN WITNESS WHEREOF**, Maker has duly executed this Note the day and year first above written.

**RIVER FUNDING LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Managing Member

**NORSE HOLDINGS, LLC**, a New York limited liability company

By: _____
Name: Seth Levine
Title:  Managing Member

STATE OF NEW JERSEY           )
                             )     ss.:
COUNTY OF BERGEN              )

On the 15th day of January in the year 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared **Seth Levine**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

ANDREW SELEVAN
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 1/25/2021

Acknowledgment Page to Secured Promissory Note

# EXHIBIT J

## PLEDGE AND SECURITY AGREEMENT (MEMBERSHIP INTERESTS)

This **PLEDGE AND SECURITY AGREEMENT (MEMBERSHIP INTERESTS)** (this "Agreement") is made as of the 17th day of January in the year 2019, by **NORSE HOLDINGS, LLC**, a New York limited liability company and **RIVER FUNDING LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (collectively, "Pledgor"), in favor of **JLS EQUITIES, LLC**, a New York limited liability company, its successors and/or assigns, as their interests may appear, having an address c/o Y. Schwartz P.C., 930 E. County Line Rd., Suite 202, Lakewood, New Jersey 08701 ("Pledgee" or "Lender").

### W I T N E S S E T H:

**WHEREAS**, this Agreement is given to secure a loan from Pledgee to Pledgor, in the principal sum of up to One Million One Hundred Thousand and 00/100 Dollars ($1,100,000.00) (the "**Loan**"), evidenced by that certain Secured Promissory Note dated the date hereof made by Pledgor and payable to the order of Pledgee (together with all extensions, renewals, replacements, restatements or modifications thereof, the "**Note**"; the Note and the other documents evidencing and securing the Loan, collectively, the "**Loan Documents**");

**WHEREAS**, Pledgor owns the membership interests described on **Schedule I** attached hereto; and

**WHEREAS**, it is a condition precedent to the obligation of Pledgee to make the Loan to Pledgor that Pledgor shall have executed and delivered this Agreement to Pledgee, together with all other documents required to be executed by Pledgor and delivered to Pledgee pursuant to this Agreement, the forms of which are annexed hereto as exhibits to the Agreement (collectively, the "**Pledgor Documents**").

**NOW, THEREFORE**, in consideration of the premises and to induce Pledgee to make the Loan, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Pledgor hereby agrees with Pledgee as follows:

1.    Definitions.  Unless the context otherwise requires, capitalized terms used but not otherwise defined herein shall have the respective meanings provided therefor in the Note or Loan Documents, and the following terms shall have the following meanings:

"Business Day" has the meaning given such term in the Note.

"Code" means the Uniform Commercial Code, as in effect from time to time in the State of New York or New Jersey, as applicable.

"Current Percentage Interest" shall have the meaning set forth in Section 4(b) hereof.

"Event of Default" shall have the meaning set forth in Section 9 hereof

"Indemnified Parties" shall have the meaning set forth in Section 18 hereof.

"IRC" means the Internal Revenue Code of 1986, as amended, and as it may be further amended from time to time, any successor statutes thereto, and applicable U.S. Department of Treasury regulations issued pursuant thereto in temporary or final form.

"Issuer Formation Agreements" means the Organizational Documents of the entities comprising Issuer.

"Lien" means any mortgage, deed of trust, lien (statutory or other), pledge, hypothecation, assignment, deposit arrangement, preference, priority, security interest, or any other encumbrance or charge of any kind or nature whatsoever, including, without limitation, any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing, the filing of any financing statement or similar instrument under the Code or comparable law of any jurisdiction, domestic or foreign, and mechanics', materialmen's and other similar liens and encumbrances.

"Obligations" means all liabilities and obligations of the Pledgor to the Lender under the Note and Loan Documents and all related documents, all interest accrued thereon, any fees due Lender thereunder or hereunder, any expenses incurred by Lender thereunder or hereunder and any and all other liabilities and obligations of the Pledgor to the Lender, howsoever created, arising or evidenced, and howsoever owned, held or acquired, whether now or hereafter existing, whether now due or to become due, direct or indirect, absolute or contingent, and whether several, joint or joint and several.

"Organizational Documents" means (i) with respect to a limited partnership, such Person's certificate of limited partnership, limited partnership agreement, voting trusts or similar arrangements applicable to any of its partnership interests, (ii) with respect to a limited liability company, such Person's certificate of formation, limited liability company agreement or other document affecting the rights of holders of limited liability company interests, and (iii) any and all agreements between any constituent member, partner or shareholder of the Person in question, including any contribution agreement or indemnification agreements.    In each case, "Organizational Documents" shall include any indemnity, contribution, shareholders or other agreement among any of the owners of the entity in question.

"Person" means any individual, corporation, partnership, limited liability company, joint venture, estate, trust, unincorporated association, any federal, state, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the foregoing.

"Pledged Interest" means all limited liability company membership interests, partnership interests, capital stock and other equity interests of, and all other right, title and interest now owned or hereafter acquired by Pledgor in and to, each entity described on **Schedule I** attached hereto (each such entity, individually or collectively, as the context may require, hereinafter referred to as an "**Issuer**"), together with:  (a) all additional membership interests, partnership interests, capital stock and other equity interests in each Issuer, and options, warrants, and other rights now or hereafter acquired by Pledgor in respect of such membership interests, partnership interests, capital stock and other equity interests (whether in connection with any capital increase, recapitalization, reclassification, or reorganization of each Issuer or otherwise)

2

and all other property, rights and instruments of any description at any time issued or issuable as an addition to or in substitution for such membership interests, partnership interests, capital stock or other equity interests; (b) all certificates, instruments and other writings representing or evidencing interests in each Issuer now owned or hereafter acquired by Pledgor, and all accounts and general intangibles arising out of, or in connection with, the interests in any Issuer now owned or hereafter acquired by Pledgor; (c) any and all moneys or property due and to become due to Pledgor now or in the future in respect of the interests in each Issuer, or to which Pledgor may now or in the future be entitled in its capacity as a member, partner, shareholder or other equity holder of such Issuer, whether by way of a dividend, distribution, return of capital or otherwise; (d) all other claims which Pledgor now has or may in the future acquire in its capacity as a member, partner, shareholder or other equity holder of any Issuer against any Issuer and its property; and (e) all rights of Pledgor under each Issuer Formation Agreement applicable to each Issuer (and all other agreements, if any, to which a Pledgor is a party from time to time which relate to its ownership of the interests in each Issuer) including, without limitation, all voting and consent rights of Pledgor arising thereunder or otherwise in connection with Pledgor's ownership of the interests in each Issuer.

"Pledgor's Collateral" shall have the meaning set forth in Section 2 hereof.

"Proceeds" means (i) Pledgor's share, right, title and interest in and to all distributions, monies, fees, payments, compensations and proceeds now or hereafter becoming due and payable to Pledgor by each applicable Issuer with respect to the Pledged Interest whether payable as profits, distributions, asset distributions, repayment of loans or capital or otherwise and including all "proceeds" as such term is defined in Section 9-102(a)(64) of the Code; (ii) all contract rights, general intangibles, claims, powers, privileges, benefits and remedies of Pledgor relating to the foregoing; and (iii) all cash and non-cash proceeds of any of the foregoing.

"Transfer" shall have the meaning set forth in Section 4(f) hereof.

2.     Grant of Security in Pledgor's Membership and Corporate Interest.

(a)     As security for the full and punctual payment of the Obligations when due and payable (whether upon stated maturity, by acceleration or otherwise), Pledgor hereby grants and pledges a continuing lien on and security interest in, and, as a part of such grant and pledge, hereby transfers and assigns to Pledgee as collateral security, all of the following (collectively, the "Pledgor's Collateral") whether now owned or hereafter acquired, now existing or hereafter arising and wherever located:  Pledgor's Pledged Interest and all of Pledgor's right, title and interest in and to Issuer, including, without limitation: (i) all of Pledgor's interest in the capital of Issuer and Pledgor's interest in all profits and distributions to which Pledgor shall at any time be entitled in respect of the Pledged Interest; (ii) all of Pledgor's right, title and interest to the assets of Issuer including, without limitation, real property, profits, revenues, operating accounts, account receivables, fixtures, chattels and articles of personal property, (iii) all other payments, if any, due or to become due to Pledgor in respect of the Pledged Interest under or arising out of the Organizational Documents, whether as contractual obligations, damages, insurance proceeds, condemnation awards or otherwise; (iv) all of Pledgor's claims, rights, powers, privileges, authority, options, security interests, liens and remedies, if any, under or arising out of the Organizational Documents or the ownership of the Pledged Interest pursuant thereto; (v) all present

3

and future claims, if any, of Pledgor against Issuer under or arising out of the Organizational Documents for monies loaned or advanced, for services rendered or otherwise; (vi) all of Pledgor's rights, if any, in Issuer pursuant to the Organizational Documents or at law, to exercise and enforce every right, power, remedy, authority, option and privilege of the Pledgor relating to the Pledged Interest, including any power to terminate, cancel or modify the Organizational Documents, to execute any instruments and to take any and all other action on behalf of and in the name of Pledgor in respect of the Pledged Interest and Issuer, to make determinations, to exercise any election (including, but not limited to, election of remedies) or option or to give or receive any notice, consent, amendment, waiver or approval, together with full power and authority to demand, receive, enforce or collect any of the foregoing or any property of Issuer, to enforce or execute any checks, or other instruments or orders, to file any claims and to take any action in connection with any of the foregoing; and (vii) to the extent not otherwise included, all Proceeds of any or all of the foregoing.

(b)      Nothing contained in the foregoing provisions of Section 2(a) shall be deemed or construed to be a limitation on, or waiver by Pledgee of, any of Pledgee's other rights or remedies hereunder or under the Note or Loan Documents.

3.      Powers of Pledgor.  All distributions with respect to the Pledgor's Collateral shall be remitted to Pledgee. Notwithstanding anything contained herein to the contrary, unless an Event of Default shall have occurred and then be continuing, Pledgor shall be entitled to exercise (but only in a manner not inconsistent with the terms hereof or Note or Loan Documents) the voting, consent, administration, management and other powers, rights and remedies of Pledgor under the Organizational Documents or otherwise with respect to Pledgor's Collateral only with the prior consent of Pledgee. Notwithstanding the foregoing and regardless of whether or not an Event of Default has occurred and is continuing, so long as the Loan is outstanding, the irrevocable proxy granted by Pledgor in Exhibit D hereto shall be absolute, and Pledgor shall have no right to vote, consent, administer, manage and other utilize any other powers under the Organization Documents or otherwise with respect to Pledgor's Collateral, with respect to Article 8 Matter (as hereinafter defined).  Pledgor's Collateral shall include any additional ownership interests of, and any membership, partnership, or other ownership interests exchangeable for or convertible into and warrants, options, and other rights to purchase or otherwise acquire shares of ownership interests of, the Issuer, or entity which is the successor of the Issuer, from time to time acquired by Pledgor in any manner (all of which interests shall be deemed to be part of the Pledged Interest), and any certificates or other instruments representing such additional interests, warrants, options, and other rights, and all Distributions and other property or proceeds from time to time received, receivable, or otherwise distributed or distributable in respect of or in exchange for any or all of such additional shares, warrants, options, or other rights.  Pledgor agrees that Lender may from time to time attach as Schedule A hereto an updated list of the Collateral at the time pledged to Lender hereunder (although the failure to so update Schedule A shall not limit the pledge of such additional interests to Lender). As used herein, "Article 8 Matter" means any action, decision, determination or election by the Issuer or its member(s) that its membership interests or other equity interests, or any of them, be, or cease to be, a "security" as defined in and governed by Article 8 of the Uniform Commercial Code, and all other matters related to any such action, decision, determination or election.

4.     <u>Representations, Warranties and Covenants of Pledgor</u>.  Pledgor hereby covenants with and represents and warrants to Pledgee as follows:

(a)     The execution and delivery by Pledgor of this Agreement, Pledgor's performance of its obligations hereunder and the creation of the security interests and liens provided for in this Agreement have been duly authorized by all requisite action on the part of Pledgor, including the consent of any Person where required, and will not violate any provision of law, any order of any court or other governmental authority, the Organizational Documents, or any indenture, agreement or other instrument to which Pledgor or Issuer is a party, or by which Pledgor or Issuer is bound, or be in conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default thereunder, or except as may be provided by this Agreement or Note or Loan Documents, result in the creation or imposition of any Lien of any nature whatsoever upon any of the property or assets of Pledgor pursuant to, any such indenture, agreement or instrument. Pledgor is not required to obtain any consent, approval or authorization from, or to file any declaration or statement with, any governmental authority or other agency in connection with or as a condition to the execution, delivery or performance of this Agreement.

(b)     Pledgor, as the a member of the Issuer, owns the percentage of membership and management interests (each such percentage Interest referred to herein as a "<u>Current Percentage Interest</u>") set forth on <u>Exhibit A</u> hereto in and to Issuer pursuant to the terms of the Organizational Documents, and will at all times hereinafter during the term of this Agreement continue to hold its Current Percentage Interest in Issuer, except as otherwise permitted under the Note or Loan Documents. Pledgor does not have outstanding any options or rights or other agreements to sell or otherwise transfer all or any portion of the Pledgor's Current Percentage Interest in Issuer.

(c)     Pledgor will defend Pledgee's right, title and interest in and to the Pledgor's Collateral pledged by it pursuant hereto and in which it has granted a security interest pursuant hereto against the claims and demands of all other Persons.

(d)     Pledgor is the legal and beneficial owner of and has good title to the Pledgor's Collateral in which it has granted a security interest pursuant hereto, free and clear of all Liens, claims or security interest of every nature whatsoever, except the security interests created pursuant to this Agreement or expressly agreed to in the Note or Loan Documents, and has the unqualified right to pledge and grant a security interest in the same as herein provided without the consent of any other Person other than any such consent that has been obtained in writing.

(e)     The Pledged Interest was validly acquired by Pledgor, is fully paid, no sums are currently due in respect thereof and is duly and validly pledged hereunder.

(f)     Except as permitted under the Note or Loan Documents, Pledgor agrees that Pledgor will not sell, assign, transfer or otherwise dispose of, or mortgage, encumber, assign, pledge or grant a security interest in, the Pledged Interest or any of the Pledgor's Collateral or any interest therein, or suffer or permit any of the foregoing to occur (any of the foregoing is hereinafter sometimes hereinafter referred to as a "<u>Transfer</u>").  Any Transfer made in violation of the foregoing provisions shall be an immediate Event of Default hereunder without notice or

opportunity to cure and such Transfer shall be void and of no force and effect, and upon demand of Pledgee shall forthwith be canceled or satisfied by an appropriate instrument in writing.

(g)     The principal place of business and chief executive office of Pledgor, and the place where Pledgor's records concerning the Pledgor's Collateral are kept, is set forth the preamble of this Agreement. Pledgor will not change such principal place of business or chief executive office or domicile or residence, as the case may be, or remove such records unless Pledgor shall provide Pledgee with written notice thereof within thirty (30) days after such change (but in any event, within the period required pursuant to the Code) and there shall have been taken such action, satisfactory to Pledgee, as may be necessary to maintain the security interest of Pledgee hereunder at all times fully perfected and in full force and effect. Pledgor shall not change its name unless Pledgor shall have given Pledgee written notice thereof within thirty (30) days after the name change (but in any event, within the period required pursuant to the Code) and shall have taken such action, satisfactory to Pledgee, as may be necessary to maintain the security interest of Pledgee in the Pledgor's Collateral granted hereunder at all times fully perfected and in full force and effect.

(h)     Giving effect to the aforesaid grant and assignment to Pledgee, Pledgee has, as of the date of this Agreement, and as to Pledgor's Collateral acquired from time to time after the date hereof, shall have a valid, perfected and continuing first (1st) lien upon and security interest in the Pledgor's Collateral.

(i)     There are no financing statements under the Code covering any or all of the Pledgor's Collateral. Pledgor will not, without the prior written consent of Pledgee, execute and, until payment in full of all of the Obligations there will not ever be on file in any public office, any financing statement or statements covering any or all of the Pledgor Collateral, except financing statements filed or to be filed in favor of Pledgee.

(j)     The Organizational Documents and this Agreement have been duly executed and delivered by Pledgor and constitute the legal, valid and binding obligations of Pledgor, enforceable in accordance with their respective terms, subject to equitable principles and the laws generally affecting creditors' rights. Pledgor is not in default under or with respect to, nor has any Pledgor received any notice alleging any default that remains uncured under or with respect to, any of Pledgor's obligations under the Organizational Documents.

(k)     The Organizational Documents delivered to Pledgee are true, correct and complete copies of the Organizational Documents in effect on the date hereof and has not as of the date hereof been modified or amended.

(l)     Pledgor shall not pursue or take any action which may, directly, or indirectly, cause a dissolution or liquidation of any property Issuer now owns or has an interest in or owns or has an interest hereafter.

(m)     Pledgor shall not withdraw as a member or director of Issuer or file or pursue or take any action which may, directly or indirectly, cause a dissolution or liquidation of Issuer or seek a partition of any property of Issuer.

6

(n)     Pledgor will not (i) terminate or agree to terminate the Organizational Documents, or (ii) amend or modify or agree to amend or modify the Organizational Documents in contravention of the terms and conditions of this Agreement without Lender's prior written consent, which shall not be unreasonably withheld, conditioned or delayed.

(o)     None of the Pledgor's Collateral is, as of the date of this Agreement, nor shall any of Pledgor's Collateral which arises from time to time after the date hereof be, evidenced by any instrument, note or chattel paper, except such as have been or will be endorsed, assigned or pledged and delivered to Pledgee by Pledgor simultaneously with the creation thereof.

(p)     Pledgor shall, at its sole cost and expense, keep and observe, perform and discharge, duly and punctually, all and singular the obligations, terms, conditions, representations and warranties of the Organizational Documents on the part of Pledgor to be kept, observed, performed and discharged. Pledgor shall hold Pledgee harmless and indemnify Pledgee from and against any liability, loss, claim, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) that Pledgee may incur or sustain by reason of the failure on Pledgor's part to so perform and observe the Organizational Documents or to satisfy, perform and observe such conditions thereunder.

(q)     Pledgor shall deliver to Lender a true, correct and complete copy of the Note Sale and Assignment Agreement by and between Provident Bank, a New Jersey banking corporation and Orange Norse Limited Liability Company (the "Note Sale Agreement"), pursuant to which Orange Norse Limited Liability Company ("Orange Norse") will purchase the indebtedness of Sterling Enterprises of Hunterdon, L.L.C. owed to Provident Bank, within two (2) days following the date hereof. Pledgor cause the Note Sale Agreement in full force and effect and shall cause the compliance of all of Issuer's obligations thereunder. Failure by Orange Norse to enter into the Note Sale Agreement on or prior to February 1, 2019 shall be an Event of Default under this Agreement.

5.      Negative Covenants Concerning Issuer. Pledgor covenants and agrees that as a member of Issuer, to the extent the Pledgor has any control rights in the Issuer, it will not exercise any of the rights under the Organizational Documents, including, without limitation, any consent rights thereunder, or otherwise so as to cause or allow the Issuer to violate any of the covenants contained in the Note or Loan Documents or other related documents and shall affirmatively exercise all of the rights of Pledgor to cause compliance with the Note and Loan Documents.

6.      Certain Understandings of Parties; Registration of Pledge; Control of Collateral, Etc. Pledgor represents and warrants that the terms of the Issuer Formation Documents do and will provide that the Pledged Interests shall constitute a "security" within the meaning of Article 8 of the Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of New York, or the State of New Jersey, as applicable, and Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995. The parties acknowledge and agree that the Pledged Interests, and the Certificates of Pledgor in each Issuer which have been delivered to Pledgee on the date hereof, constitute and will constitute "certificated securities" (as defined in the Code). Pledgor

therefor covenants and agrees that Pledgor shall not, directly or indirectly, without the prior written consent of Pledgee, alter, amend modify, supplement or change in any way, the operating agreement of an Issuer or Pledgor as in effect on the date hereof.

7. <u>Distributions.</u>

(a) Except as otherwise provided in the terms of the Note and Loan Documents, if notwithstanding any prohibition herein or in Note or Loan Documents, Pledgor shall at any time receive any cash distributions with respect to the Pledged Interest or otherwise pursuant to the Organizational Documents, all such amounts received by Pledgor shall, immediately upon receipt, be remitted to Pledgee for application to the Obligations in accordance with the Note and Loan Documents. In the event a non-cash distribution shall be paid or made to Pledgor following the occurrence and during the continuation of any Event of Default, Pledgor shall receive the same in trust for the sole purpose of forthwith delivering the same in kind (appropriately endorsed) to Pledgee, to be added to the Pledgor's Collateral hereunder.

(b) If Pledgor shall become entitled to receive or shall receive from Issuer, any instrument or certificate evidencing the Pledged Interest, as an addition to, in substitution of, or in exchange for, such Pledged Interest or any part thereof, after and during the continuance of an Event of Default, Pledgor shall hold the same as the agent and in trust for Pledgee, and shall deliver it forthwith to Pledgee in the exact form received, with Pledgor's endorsement or assignment or other instrument as Pledgee may deem appropriate, to be held by Pledgee, subject to the terms hereof, as further Pledgor's Collateral for the Obligations.

(c) To the extent Pledgor receives any cash distributions in contravention hereof or of the other Credit Documents, Pledgor shall take all necessary actions to cause such distributions to be remitted directly to Pledgee for application to the Obligations.

8. <u>Application of Pledgor's Collateral.</u> All proceeds of any of Pledgor's Collateral (including, without limitation, any proceeds from the sale of all or any portion of the Pledged Interest, and all distributions, liquidating and otherwise, received by Pledgee in respect of the Pledged Interest) now or at any time hereafter received or retained by Pledgee pursuant to the provisions of this Agreement (including, without limitation, the provisions of Section 10 hereof) shall, after the occurrence and during the continuation of an Event of Default be applied by Pledgee to the Obligations.

9. <u>Events of Default.</u> The occurrence of any one or more of the following events shall constitute an "<u>Event of Default</u>" under this Agreement:

(a) The occurrence of an "Event of Default," as such term is defined in the Note and Loan Documents;

(b) Any representation or warranty made or given by Pledgor under this Agreement was false or misleading in any material respect when made or deemed made;

(c) Pledgor's failure to pay any fees, costs or other amounts as and when required to be paid under this Agreement within five (5) days after demand by Pledgee.

(d)      Except with respect to (i) the payment of money and (ii) the matters herein before and hereafter specified in this Section 9, if Pledgor shall default in the observance or performance of any covenant or agreement contained in this Agreement for ten (10) days after the giving by the Pledgee to Pledgor of notice thereof (provided, however, if such default cannot reasonably be cured within such ten (10) day period, then Pledgor shall have such additional time as is reasonable under the circumstances, so long as Pledgor commences such cure within the initial ten (10) day period and diligently and in good faith pursues such cure to completion, provided that in no event shall such additional time period exceed 60 days).

(e)      Any Transfer made by Pledgor in violation of the provisions of Section 4(f) hereof or any breach or violation by any Pledgor of the provisions of Sections 4(n), 4(o), 4(q) or 5, any of which shall be an immediate Event of Default hereunder without notice or opportunity to cure.

(f)      Any default under the Note and loan documents entered into simultaneously with such note.

(g)      Any default under the Note Sale Agreement.

10.    <u>Remedies</u>.  If an Event of Default shall occur and be continuing:

(a)      Pledgee, without obligation to resort to any other security, right or remedy granted under any other agreement or instrument, shall have the right to, in addition to all rights, powers and remedies of a secured party pursuant to the Code, at any time and from time to time, (i) cause any portion or all of the Pledged Interest to be registered in or transferred into the name of Pledgee or into the name of a nominee or nominees, or designee or designees, of Pledgee; and/or (ii) sell, resell, assign and deliver, in its sole discretion, any or all of the Pledgor's Collateral or any other collateral security for the Obligations (whether in whole or in part and at the same or different times) and all right, title and interest, claim and demand therein and right of redemption thereof, at public or private sale, for cash, upon credit or for future delivery, and in connection therewith Pledgee may grant options and may impose reasonable conditions such as requiring any purchaser to represent that any "securities" constituting any part of the Pledgor's Collateral are being purchased for investment only, Pledgor hereby waiving and releasing any and all equity or right of redemption with respect to the Pledgor's Collateral. If all or any of the Pledgor's Collateral is sold by Pledgee upon credit or for future delivery, Pledgee shall not be liable for the failure of the purchaser to purchase or pay for the same, and, in the event of any such failure, Pledgee may resell such Pledgor's Collateral. It is expressly agreed that Pledgee may exercise its rights with respect to less than all of the Pledgor's Collateral, leaving unexercised its rights with respect to the remainder of the Pledgor's Collateral; provided, however, that such partial exercise shall in no way restrict or jeopardize Pledgee's right to exercise its rights with respect to all or any other portion of the Pledgor's Collateral at a later time or times.

(b)      Pledgee may exercise, either by itself or by its nominee or designee, in the name of any Pledgor, the rights, powers and remedies granted to Pledgee in Section 2 hereof in respect of the Organizational Documents, the Pledged Interest, Issuer and the other Pledgor's Collateral. Such rights and remedies shall include, without limitation, the right to exercise all voting, consent, managerial and other rights relating to the Pledged Interest, whether in Pledgor's

name or otherwise, and the right to exercise any or all of the Pledgor' rights, if any, to dissolve Issuer and either continue the business of Issuer or sell or dispose of all or any part of its assets.

(c)      Pledgor hereby irrevocably, in the name of Pledgor, authorizes and empowers Pledgee and assigns and transfers unto Pledgee, and constitutes and appoints Pledgee its true and lawful attorney-in-fact, and as its agent, irrevocably, with full power of substitution for it and in its name during the continuation of an Event of Default, (i) to exercise and enforce every right, power, remedy, authority, option and privilege of Pledgor under the Organizational Documents, including any power to subordinate, terminate, cancel or modify the Organizational Documents, or to give any notices, or to take any action resulting in such subordination, termination, cancellation or modification, and (ii) in order to more fully vest in Pledgee the rights and remedies provided for herein, to exercise all of the rights, remedies and powers granted to Pledgee in this Agreement, and Pledgor further authorizes and empowers Pledgee, as its attorney-in-fact, and as its agent, irrevocably, with full power of substitution for it and in its name, to (A) give any authorization, to furnish any information, to make any demands, to execute any instruments and to take any and all other action on behalf of and in the name of Pledgor which in the opinion of Pledgee may be necessary or appropriate to be given, furnished, made, exercised or taken under the Organizational Documents in order to comply therewith, to perform the conditions thereof or to prevent or remedy any default by Pledgor thereunder or to enforce any of Pledgor's rights thereunder, and (B) proceed from time to time in Pledgor's name in any statutory or non-statutory proceeding affecting any Pledgor's Collateral, and Pledgee or its nominee may (I) execute and file proof of claims for the full amount of any Pledgor's Collateral and vote such claims for the full amount thereof (II) vote for or against proposal or resolution, (III) vote for a trustee or trustees or for a receiver or receivers or for a committee of creditors and/or (IV) vote for the acceptance or rejection of any proposed arrangement, plan or reorganization, composition or extension, and Pledgee or its nominee may receive any payment of distribution and give acquittance therefor and may exchange or release Pledgor's Collateral; and (V) endorse any draft or other instrument for the payment of money, execute releases and negotiate settlements with respect to the Pledgor's Collateral or in any way related thereto. Nothing contained in the foregoing provisions of this Section 9 shall be deemed or construed to be a limitation on, or waiver by Pledgee of, any of the Pledgee's other rights or remedies hereunder or under Note or Loan Documents. Pledgee shall have no duty to exercise any of the aforesaid rights, privileges or options and shall not be responsible for any failure to do so or delay in so doing. The foregoing powers-of-attorney are irrevocable and coupled with an interest, and any similar or dissimilar powers heretofore given by Pledgor in respect of the Pledged Interest to any other person is hereby revoked. The powers-of-attorney granted herein shall terminate automatically upon the termination of this Agreement in accordance with the terms thereof.

(d)      Pledgee may at such time and from time to time thereafter during the continuation of an Event of Default, without notice to, or assent by, any Pledgor or any other Person (to the extent permitted by law), but without affecting any of the Obligations, in the name of Pledgor or in the name of Pledgee, notify any other party to the Organizational Documents, if applicable, to make payment and performance directly to Pledgee; extend the time of payment and performance of, compromise or settle for cash, credit or otherwise, and upon any terms and conditions, any obligations owing to Pledgor, or claims of Pledgor, under the Organizational Documents; file any claims, commence, maintain or discontinue any actions, suits or other proceeding deemed by Pledgee necessary or advisable for the purpose of collecting upon or

enforcing the Organizational Documents; and execute any instrument and do all other things deemed necessary and proper by Pledgee to protect and preserve and realize upon the Pledgor's Collateral and the other rights contemplated hereby.

(e)  Pledgee may at such time and during the continuation of an Event of Default without notice to or assent by Pledgor require that any and distributions, dividends, interest and other payments payable to Pledgor with respect to the Pledged Interest be paid to Pledgee.

(f)  Pursuant to the powers-of-attorney provided for in clause (c) above, Pledgee may take any action and exercise and execute any instrument which it may deem necessary or advisable to accomplish the purposes hereof. Without limiting the generality of the foregoing, after the occurrence and during the continuation of an Event of Default, Pledgee shall have the right and power to receive, endorse and collect all checks and other orders for the payment of money made payable to Pledgor representing any interest, payment of principal or other distribution payable in respect of the Pledgor's Collateral or any part thereof, and for and in the name, place and stead of Pledgor, to execute endorsements, assignments or other instruments of conveyance or transfer in respect of any or all of the Pledged Interest or any other property which is or may become a part of the Pledgor's Collateral hereunder.

(g)  Pledgee may exercise any or all of the rights and remedies of a secured party under the Code.

(h)  Without limiting any other provision of this Agreement, and without waiving or releasing any Pledgor from any obligation or Event of Default, Pledgee shall have the right, but not the obligation, to perform any act or take any appropriate action, as it, in its judgment, may deem necessary to cure such Event of Default or cause any term, covenant, condition or obligation under this Agreement or the Organizational Documents to be performed or observed by or on behalf of Pledgor to protect the security of the Pledgor's Collateral or this Agreement. All reasonable amounts advanced by or on behalf of Pledgee in exercising its rights under this section (including, but not limited to, reasonable legal expenses and disbursements incurred in connection therewith), together with interest thereon at the Default Rate under the Note from the date of each such advance, shall be payable by Pledgor to Pledgee upon demand and shall be secured by this Agreement.

11.  <u>Sale of Pledgor's Collateral</u>.  To the extent permitted by applicable law, no demand, advertisement or notice, all of which are hereby expressly waived by Pledgor, shall be required in connection with any sale or other disposition of all or any part of the Pledgor's Collateral, except that Pledgee shall give Pledgor at least ten (10) Business Days prior written notice of the time and place of any public sale or of the time and the place where any private sale or other disposition is to be made, which notice Pledgor hereby agrees is reasonable, all other demands, advertisements and notices being hereby waived. To the extent permitted by law, Pledgee shall not be obligated to make any sale of the Pledgor's Collateral if it shall determine not to do so, regardless of the fact that notice of sale may have been given, and Pledgee may with notice or publication adjourn any public or private sale, and such sale may, with further notice, be made at the time and place to which the same was so adjourned. Upon each private sale of the Pledgor's Collateral of a type customarily sold in a recognized market and upon each public sale, Pledgee (or its nominee or designee) may purchase any or all of the Pledgor's Collateral being

sold, free and clear of and discharged from any trusts, claims, equity or right of redemption of Pledgor, all of which are hereby waived and released by Pledgor to the extent permitted by law, and may make payment therefor by credit against any of the obligations in lieu of cash or any other obligations. In the case of all sales of the Pledgor's Collateral, public or private, Pledgor will pay all reasonable costs and expenses of every kind for sale or delivery, including, without limitation, brokers and reasonable attorneys' fees and disbursements and any tax imposed thereon. However, the proceeds of sale of Pledgor's Collateral shall be available to cover such costs and expenses, and, after deducting such costs and expenses from the proceeds of sale, Pledgee shall apply any remainder to the payment of the Obligations in such order and priority as Pledgee may determine.

12.    Securities Act of 1933, Etc.  Pledgor recognizes that the Pledged Interest will not be effectively registered under the Securities Act of 1933. Pledgee, in its sole and absolute discretion, is hereby authorized to sell the Pledged Interest or any part thereof by private sale in such manner and under such circumstances as Pledgee may reasonably deem necessary or advisable in order that such sale may legally be effected without registration. Pledgor acknowledges that private sales so made may be at prices and on other terms less favorable to the seller than if such Pledged Interest was sold at public sales, and agrees that Pledgee has no obligation to delay the sale of any such Pledged Interest for such period of time necessary to permit the issuer of such Pledged Interest, even if such issuer would agree, to register such Pledged Interest for public sale under such applicable securities laws. Pledgor agrees that private sales made under the foregoing circumstances shall not, because so made, be deemed to have been made in a commercially unreasonable manner.

13.    Receipt of Sale Proceeds.  Upon any sale of the Pledgor's Collateral, or any portion thereof, by Pledgee hereunder (whether by virtue of the power of sale herein granted, pursuant to judicial process or otherwise), the receipt of Pledgee or the officer making the sale shall be a sufficient discharge to the purchaser or purchasers of the Pledgor's Collateral so sold, and such purchaser or purchasers shall not be obligated to see to the application of any part of the purchase money paid over to Pledgee or such officer or be answerable in any way for the misapplication or non-application thereof.

14.    Waivers; Modifications.    No modification, amendment, extension, discharge, termination or waiver of any provision of this Agreement or Note or Loan Documents, nor consent to any departure by Pledgor therefrom, shall in any event be effective unless the same shall be in writing signed by the party against whose enforcement is sought, and then such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given.

15.    Remedies Cumulative.  The rights, powers and remedies of Pledgee under this Agreement shall be cumulative and not exclusive of any other right, power or remedy which Pledgee may have against Pledgor pursuant to this Agreement or Note or Loan Documents, or existing at law or in equity or otherwise. No delay or omission to exercise any remedy, right or power accruing upon an Event of Default shall impair any such remedy, right or power or shall be construed as a waiver thereof, but any such remedy, right or power may be exercised from time to time and as often as may be deemed expedient. A waiver by Pledgee of one Event of Default shall not be construed to be a waiver of any subsequent Event of Default or to impair any remedy, right or power consequent thereon.

16.     Notices.  Any and all notices given in connection with this Agreement shall be in writing and shall be hand delivered or sent by Federal Express or other reputable courier service, or by registered or certified mail, return receipt requested, and shall be deemed given when received or receipt is refused at the following addresses:

> If to Lender/Pledgee:
>
> > JLS EQUITES, LLC
> > c/o Y. Schwartz PC
> > 930 E. County Line Rd, Suite 202
> > Lakewood, New Jersey 08701
> > Attention:  Yisroel S. Schwartz, Esq.
>
> If to Pledgor at the address stated at the beginning on this Agreement

Each party may designate a change of address by notice to the other parties, given at least fifteen (15) days before such change of address is to become effective.

17.     Successors and Assigns.  This Agreement and all representations, warranties and covenants of Pledgor made herein shall be binding upon and inure to the benefit of Pledgor and its successors and assigns. This Agreement shall be binding upon and shall inure to the benefit of Pledgee and its successors and assigns.

18.     Pledgee Not Bound.

(a)     Nothing herein shall be construed to make Pledgee liable as a shareholder, officer or director of Issuer, and Pledgee, by virtue of this Agreement or otherwise, shall not have any of the duties, obligations or liabilities as a shareholder, officer or director of Issuer. The parties hereto expressly agree that this Agreement shall not be construed as creating a membership or joint venture between Pledgee and Pledgor.

(b)     The mere execution and delivery of this Agreement shall not be deemed to be evidence of any intention of Pledgee to become a constituent shareholder, officer or director of Issuer or a shareholder, officer or director of any Pledgor or otherwise be deemed to be a co-venturer with respect to any Pledgor or Issuer; provided, however, that Pledgee may, in Pledgee's sole discretion, during the occurrence and continuance of an Event of Default elect to become a constituent shareholder, officer or director in Issuer. Pledgee shall assume none of the duties, obligations or liabilities of a shareholder, officer or director of Issuer or any Pledgor unless and until Pledgee actually becomes a constituent shareholder, officer or director of Issuer.

(c)     Pledgee shall not be obligated to perform or discharge any obligation of Pledgor as a result of the collateral assignment hereby effected.

(d)     The acceptance of Pledgee of this Agreement, with all the rights, powers, privileges and authority so created, shall not at any time or in any event obligate Pledgee to appear in or defend any action or proceeding relating to the Pledgor's Collateral, or to take any action hereunder or thereunder, or to expend any money or incur any expense or perform or discharge any obligation, duty or liability under or with respect to the Pledgor's Collateral.

19.     Acts of Pledgee.  All Pledgor's Collateral at any time delivered to Pledgee pursuant hereto shall be held by Pledgee subject to the terms, covenants and conditions herein set forth. Neither Pledgee nor any of Pledgee's directors, officers, agents, employees or counsel shall be liable for any action taken or omitted to be taken by such party or parties relative to any of the Pledgor's Collateral, except for such party's or parties' own gross negligence or willful misconduct. Pledgee shall be entitled to rely in good faith upon any writing or other document, telegram or telephone conversation reasonably believed by it to be genuine and correct and to have been signed, sent or made by the proper person or persons, and, with respect to any legal matter, Pledgee may (but shall not be obligated to) rely in acting or in refraining from acting upon the advice of counsel selected by it concerning all matters hereunder. Pledgor hereby agrees to and does hereby indemnify, defend and hold harmless Pledgee and any of Pledgee's directors, officers, agents, employees (collectively, the "Indemnified Parties") from and against any and all claims, demands, losses, judgments and liabilities (including, without limitation, liabilities for penalties and all damages, liabilities, losses, costs and expenses which Pledgee may incur or suffer if it becomes, or is alleged to have become, a shareholder, officer or director of Issuer by reason of the operation of this Agreement or Pledgee's exercise of the rights, remedies or powers under or in accordance with the terms hereof or otherwise) and to reimburse, within five (5) business days after written demand therefor, Pledgee for all costs and expenses, including, without limitation, attorneys' fees arising out of or resulting from this Agreement or the exercise by Pledgee of any lawful right or remedy granted to it hereunder, such as operating, selling or disposing of any Pledgor's property, including, without limitation, the Pledged Interest (or any portion thereof), together with interest on such sums at the Default Rate, from the date such expenses were paid by Pledgee to the date of payment to Pledgee of such sums. In any action to enforce this Agreement, the provisions of this Section 18 shall, to the extent permitted by law, prevail notwithstanding any provision of applicable law respecting the recovery of costs, disbursements and allowances to the contrary.

20.     Custody of Pledgor's Collateral: Notice of Exercise of Remedies.  Pledgee shall not have any duty as to the collection or protection of the Pledgor's Collateral or any income thereon or payments with respect thereto, or as to the preservation of any rights pertaining thereto except with respect to any Pledgor's Collateral actually in its possession. Pledgor hereby waives notice of acceptance hereof, and except as otherwise specifically provided herein or required by provision of law which may not be waived, hereby waives any and all notices or demands with respect to any exercise by Pledgee of any rights or powers which it may have or to which it may be entitled with respect to the Pledgor's Collateral.

21.     Severability.  Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

22.    <u>Further Assurances</u>.  Pledgor agrees to do such further acts and things and to execute and deliver to Pledgee such additional conveyances, assignments, agreements and instruments as Pledgee from time to time may require or deem advisable to carry into effect this Agreement or to further assure and confirm unto Pledgee the rights, powers and remedies intended to be granted hereunder or under Note or Loan Documents; <u>provided</u>, <u>however</u>, that no such further acts and things and conveyances, assignments, agreements and instruments shall increase Pledgor's obligations or shall decrease Pledgor's rights under this Agreement or under the Note or Loan Documents or increase Pledgee's rights beyond those intended to be granted hereunder or under the Note or Loan Documents. Pledgor hereby agrees to sign and deliver to Pledgee financing statements, in form acceptable to Pledgee, as Pledgee may from time to time request or as are necessary in the opinion of Pledgee to establish and maintain a valid and perfected security interest in the Pledgor's Collateral and to promptly pay any filing fees relative thereto. Pledgor also authorizes Pledgee, to the extent permitted by law, to file such financing statements (and continuation statements with respect thereto) without the signature of Pledgor and further authorizes Pledgee, to the extent permitted by law, to file a photographic or other reproduction of this Agreement or of a financing statement in lieu of a financing statement.

23.    <u>Headings/Recitals</u>.  The article and/or section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose. The recitals are hereby incorporated in this Agreement as if fully set forth herein.

24.    <u>Governing Law</u>.  THIS AGREEMENT IS, AND SHALL BE DEEMED TO BE, A CONTRACT ENTERED INTO UNDER AND PURSUANT TO THE LAWS OF THE STATE OF NEW JERSEY AND SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAW OF SUCH STATE. NO DEFENSE GIVEN OR ALLOWED BY THE LAWS OF ANY OTHER STATE OR COUNTRY SHALL BE INTERPOSED IN ANY ACTION OR PROCEEDING HEREON UNLESS SUCH DEFENSE IS ALSO GIVEN OR ALLOWED BY THE LAWS OF THE STATE OF NEW JERSEY.

25.    <u>Consent to Jurisdiction</u>.  FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS AGREEMENT, OR TO RESOLVE ANY DISPUTE ARISING UNDER THIS AGREEMENT OR THE RELATIONSHIP BETWEEN THE PARTIES, PLEDGOR IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW JERSEY AND THE UNITED STATES DISTRICT COURT LOCATED IN BERGEN COUNTY, NEW JERSEY, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. PLEDGOR IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THIS AGREEMENT SHALL BE DEEMED TO PRECLUDE LENDER FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO THIS AGREEMENT OR THE DEBT (AS SUCH TERM IS DEFINED IN THE NOTE) IN ANY OTHER JURISDICTION WHERE LENDER COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING.  PLEDGOR

FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO PLEDGOR AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

      26.    Miscellaneous.

      (a)    In enforcing any rights hereunder or under the Note or Loan Documents, Pledgee shall not be required to resort to any particular security, right or remedy through foreclosure or otherwise or to proceed in any particular order or priority, or otherwise act or refrain from acting, and, to the extent permitted by law, Pledgor hereby waiving and releasing any right to a marshaling of assets or a sale in inverse order of alienation.

      (b)    Whenever any payment or performance of any Obligation shall be due on a day which is not a Business Day, such payment or performance shall be made on the next succeeding Business Day and such extension of time shall be included in the computation of interest and of the time period within which such payment may be made or performance rendered without an Event of Default occurring hereunder.

**[SIGNATURES COMMENCE ON THE FOLLOWING PAGE]**

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be duly executed as of the date set forth above.

PLEDGOR:

**RIVER FUNDING LLC,** a New Jersey limited liability company

By: _____

Name: Seth Levine

Title:   Managing Member

**NORSE HOLDINGS, LLC,** a New York limited liability company

By: _____

Name: Seth Levine

Title:   Managing Member

[ADDITIONAL SIGNATURE PAGE FOLLOWS]

**PLEDGEE:**
**JLS EQUITIES, LLC,** a New York limited liability
company


By: _Jacob Sod_____
Name/Title: Jacob Sod, Manager

## EXHIBIT A

**FORM OF ACKNOWLEDGMENT AND CONSENT**

**[SEE ATTACHED]**

## ACKNOWLEDGMENT AND CONSENT

**ORANGE NORSE LIMITED LIABILITY COMPANY**, a New Jersey limited liability company, **LENOX HUDSON LLC**, a New Jersey limited liability company, **LENOX TEMPLE LLC**, a New Jersey limited liability company and **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (collectively, "**Issuer**"), hereby acknowledges receipt of a copy of that certain Pledge and Security Agreement (the "**Pledge Agreement**") granted by **RIVER FUNDING LLC**, a New Jersey limited liability company and **NORSE HOLDINGS, LLC**, a New York limited liability company (collectively, the "**Pledgor**"), to and for the benefit of **JLS EQUITIES, LLC** (collectively with its successors and assigns, "**Pledgee**"), and acknowledges that Pledgor is bound thereby.

Dated:  As of January __, 2019

ISSUER:

**LENOX HUDSON LLC**, a New Jersey limited
liability company

By: _____
Name: Seth Levine
Title:  Manager


**LENOX TEMPLE LLC**, a New Jersey limited
liability company

By: _____
Name: Seth Levine
Title:  Manager


**TEANECK PLAZA VENTURES, LLC**, a New
Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Manager


**ORANGE NORSE ~~LLC~~**, a New Jersey limited
liability company                    *Limited Liability Company*

By: _____
Name: Seth Levine
Title:  Manager

## <u>EXHIBIT B</u>

**FORM OF INSTRUCTION TO REGISTER PLEDGE**

**[SEE ATTACHED]**

## INSTRUCTION TO REGISTER PLEDGE

As of January __, 2019

To:    **ORANGE NORSE LIMITED LIABILITY COMPANY**, a New Jersey limited liability company, **LENOX HUDSON LLC**, a New Jersey limited liability company, **LENOX TEMPLE LLC**, a New Jersey limited liability company and **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (collectively, "**Issuer**")

In accordance with the requirements of that certain Pledge and Security Agreement dated as the date hereof (as it may be amended, supplemented or otherwise modified from time to time, the "**Pledge Agreement**"; capitalized used but not defined herein shall have the meanings given to them in the Pledge Agreement), granted by **RIVER FUNDING LLC**, a New Jersey limited liability company and **NORSE HOLDINGS, LLC**, a New York limited liability company (collectively, the "**Pledgor**") to and for the benefit of **JLS EQUITIES, LLC** (collectively with its successors and assigns, "**Pledgee**") you are hereby instructed, notwithstanding your and our understanding that the ownership interest described below is not a security under the Uniform Commercial Code, as a precaution in the event that such interest was nevertheless held to be a security, to register the pledge of the following interests as follows:

All right, title and interest now owned or hereafter acquired by Pledgor in the following:

(i)    all limited liability company membership interests, partnership interests, capital stock or other equity interests of, and all other right, title and interest now owned or hereafter acquired by Pledgor in and to Issuer, together with (a) all additional membership interests, partnership interests, capital stock or other equity interests in, each Issuer and options, warrants, and other rights now or hereafter acquired by Pledgor in respect of such membership interests, partnership interests, capital stock or other equity interests (whether in connection with any capital increase, recapitalization, reclassification, or reorganization of each Issuer or otherwise) and all other property, rights or instruments of any description at any time issued or issuable as an addition to or in substitution for such membership interests, partnership interests, capital stock or other equity interests; (b) all certificates, instruments, or other writings representing or evidencing interests in Issuer now owned or hereafter acquired by Pledgor, and all accounts and general intangibles arising out of, or in connection with, the interests in Issuer now owned or hereafter acquired by Pledgor; (c) any and all moneys or property due and to become due to Pledgor now or in the future in respect of the interests in Issuer, or to which Pledgor may now or in the future be entitled in its capacity as a member, partner, shareholder or other equity holder of Issuer, whether by way of a dividend, distribution, return of capital or otherwise; (d) all other claims which Pledgor now has or may in the future acquire in its capacity as a member, partner, shareholder or other equity holder of Issuer against Issuer and its property; and (e) all rights of the Pledgor under the Issuer Formation Agreement applicable to Issuer (and all other agreements, if any, to which Pledgor is a party from time to time which relate to its ownership of the interests in Issuer), including, without limitation, all

voting and consent rights of Pledgor arising thereunder or otherwise in connection with Pledgor's ownership of the interests in Issuer (collectively, the "**Pledged Interest**");

(ii)      all right, title and interest of the Pledgor in, to and under any policy of insurance payable by reason of loss or damage to the Pledged Interest and any other Collateral;

(iii)      all "accounts", "general intangibles", "instruments" and "investment property" (in each case as defined in the Code) constituting or relating to the foregoing; and

(iv)      to the extent not otherwise part of the Pledged Interest, all Proceeds, income and profits thereof and all property received in exchange or substitution thereof, of any of the foregoing property of Pledgor.

You are hereby further authorized and instructed to execute and deliver to Pledgee a Confirmation Statement and Instruction Agreement, substantially in the form of Exhibit C to the Pledge Agreement and, to the extent provided more fully therein, to comply with the instructions of Pledgee in respect of the Collateral without further consent of, or notice to, Pledgor. Notwithstanding anything in this paragraph to the contrary, this instruction shall not be construed as expanding the rights of Pledgee to give instructions with respect to the Collateral beyond such rights set forth in the Pledge Agreement.

**[NO FURTHER TEXT ON THIS PAGE]**

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be duly executed as of the date set forth above.

PLEDGOR:

**RIVER FUNDING LLC**, a New Jersey limited liability company

By: _____

Name: Seth Levine

Title:   Managing Member

**NORSE HOLDINGS, LLC**, a New York limited liability company

By: _____

Name: Seth Levine

Title:   Managing Member

[ADDITIONAL SIGNATURE PAGE FOLLOWS]

ISSUER:

**LENOX HUDSON LLC**, a New Jersey limited
liability company

By: _____
Name: Seth Levine
Title:  Manager

**LENOX TEMPLE LLC**, a New Jersey limited
liability company

By: _____
Name: Seth Levine
Title:  Manager

**TEANECK PLAZA VENTURES, LLC**, a New
Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Manager

LIMITED LIABILITY COMPANY
**ORANGE NORSE** ~~LLC~~, a New Jersey limited
liability company

By: _____
Name: Seth Levine
Title:  Manager

**PLEDGEE:**

**JLS EQUITIES, LLC,** a New York limited liability
company

By: _Jacob Sod_____
      Name/Title: Jacob Sod, Manager

## EXHIBIT C

**FORM OF CONFIRMATION STATEMENT AND INSTRUCTION AGREEMENT**

**[SEE ATTACHED]**

**CONFIRMATION STATEMENT AND INSTRUCTION AGREEMENT**

As of January __, 2019

To:      **JLS EQUITIES, LLC**, a New York limited liability company

Pursuant to the requirements of that certain Pledge and Security Agreement dated as the date hereof (as it may be amended, supplemented or otherwise modified from time to time, the "**Pledge Agreement**"; capitalized used but not defined herein shall have the meanings given to them in the Pledge Agreement), granted by **NORSE HOLDINGS, LLC**, a New York limited liability company and **RIVER FUNDING LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (collectively, the "**Pledgor**") to and for the benefit of **JLS EQUITIES, LLC**, a New York limited liability company (collectively with its successors and assigns, "**Pledgee**"), this Confirmation Statement and Instruction Agreement relates to those ownership interests owned by Pledgor (the "**Pledged Interest**"), as further described on **Schedule I** to the Pledge Agreement, issued by **ORANGE NORSE LIMITED LIABILITY COMPANY**, a New Jersey limited liability company, **LENOX HUDSON LLC**, a New Jersey limited liability company, **LENOX TEMPLE LLC**, a New Jersey limited liability company and **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (collectively, "**Issuer**").

The Pledged Interest are "securities" (within the meaning of Sections 8-102(a)(15) and 8-103 of the Code), and therefore, for purposes of perfecting the security interest of Pledgee therein, Issuer agrees as follows:

On the date hereof, the registered owner of the Pledged Interest is Pledgor.

The registered pledgee of the Pledged Interest is:

**JLS EQUITIES, LLC**, a New York limited liability company

There are no liens of Issuer on the Pledged Interest or any adverse claims thereto for which Issuer has a duty under Section 8-403 of the Code. Issuer has by book-entry registered the Pledged Interest in the name of the registered pledgee on or before the date hereof. No other pledge is currently registered on the books and records of Issuer with respect to the Pledged Interest.

Until the Loan is paid in full (exclusive of provisions which shall survive full payment), Issuer agrees to:  (i) comply with the instructions of Pledgee sent in accordance with Section 20(i) of the Pledge Agreement, without any further consent from Pledgor or any other Person, in respect of the Collateral; and (ii) disregard any request made by Pledgor or any other Person which contravenes the instructions of Pledgee with respect to the Collateral. Notwithstanding anything in this paragraph, this Confirmation Statement and Instruction Agreement shall not be construed as expanding the rights of Pledgee to give instructions with respect to the Collateral beyond such rights set forth in the Pledge Agreement.

**SIGNATURES TO**
**CONFIRMATION STATEMENT AND INSTRUCTION AGREEMENT**

PLEDGOR:

**RIVER FUNDING LLC**, a New Jersey limited
liability company

By: _____
Name: Seth Levine
Title:   Managing Member

**NORSE HOLDINGS, LLC**, a New York limited
liability company

By: _____
Name: Seth Levine
Title:   Managing Member

**[ADDITIONAL SIGNATURE PAGE FOLLOWS]**

**ISSUER**:

**LENOX HUDSON LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Manager

**LENOX TEMPLE LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Manager

**TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Manager

**ORANGE NORSE ~~LLC~~** Limited Liability Company, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:  Manager

## EXHIBIT D

**FORM OF IRREVOCABLE PROXY COUPLED WITH INTEREST**

**[SEE ATTACHED]**

## IRREVOCABLE PROXY COUPLED WITH INTEREST

The undersigned **NORSE HOLDINGS, LLC**, a New York limited liability company and **RIVER FUNDING LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (collectively, the "**Member**") hereby irrevocably designates and appoints **JLS EQUITIES, LLC**, a New York limited liability company (collectively with its successors and assigns, "**Pledgee**"), to represent it at all annual and special meetings of the members of each of **ORANGE NORSE LIMITED LIABILITY COMPANY**, a New Jersey limited liability company, **LENOX HUDSON LLC**, a New Jersey limited liability company, **LENOX TEMPLE LLC**, a New Jersey limited liability company and **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 (collectively, "**Issuer**"), and the Member hereby authorizes and empowers Pledgee to vote any and all membership interests of Issuer pledged by Member to Pledgee pursuant to that certain Pledge and Security Agreement dated as the date hereof (as it may be amended, restated, supplemented or otherwise modified from time to time, the "**Pledge Agreement**") granted by Member, as Pledgor, to and for the benefit of Pledgee, and to do all things which Member might do if present and acting itself.

With respect to Article 8 Matters, Pledgor hereby irrevocably grants and appoints Pledgee, from the date of this Agreement until the termination of this Agreement in accordance with its terms, as Pledgor's true and lawful proxy, for and in Pledgor's name, place and stead to vote the Pledged Interest in Issuer by Pledgor, whether directly or indirectly, beneficially or of record, now owned or hereafter acquired, with respect to such Article 8 Matters. The proxy granted and appointed in this paragraph shall include the right to sign Pledgor's name (as a member of Issuer) to any consent, certificate or other document relating to an Article 8 Matter and the Pledged Interests that applicable law may permit or require, to cause the Pledged Interest to be voted in accordance with the preceding sentence. Pledgor hereby represents and warrants that there are no other proxies and powers of attorney with respect to an Article 8 Matter and the Pledged Interest that Pledgor may have granted or appointed. Pledgor will not give a subsequent proxy or power of attorney or enter into any other voting agreement with respect to the Pledged Interest with respect to any Article 8 Matter and any attempt to do so with respect to an Article 8 Matter shall be void and of no effect.

This proxy is an irrevocable proxy coupled with an interest. Member recognizes that Pledgee has an interest in said Pledged Interest to secure the obligations of Issuer to Pledgee and, to the extent permitted by law, this proxy shall continue in full force and effect until all such obligations are paid in full.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

This proxy is issued pursuant to the Pledge Agreement and shall remain subject to the terms thereof and Pledgee shall not exercise any right or privileges granted therein unless and until the occurrence of events set forth in the Pledge Agreement which authorizes the voting of the Pledged Interest pursuant to this proxy.

Dated:  As of January ___, 2019

MEMBER:

**RIVER FUNDING LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Managing Member

**NORSE HOLDINGS, LLC**, a New York limited liability company

By: _____
Name: Seth Levine
Title:   Managing Member

## SCHEDULE I

| PLEDGOR | ISSUER | INTERESTS PLEDGED |
|---|---|---|
| River Funding LLC, a New Jersey limited liability company | Lenox Temple LLC, a New Jersey limited liability company | 100% membership interest |
| River Funding LLC, a New Jersey limited liability company | Lenox Hudson LLC, a New Jersey limited liability company | 100% membership interest |
| River Funding LLC, a New Jersey limited liability company | Teaneck Plaza Ventures, LLC, a New Jersey limited liability company | 100% membership interest |
| Norse Holdings, LLC, a New York limited liability company | Orange Norse Limited Liability Company, a New Jersey limited liability company | 100% membership interest |

## SCHEDULE II

| Pledgor | Chief Executive Office/ Principal Place of Business | Type of Entity | Jurisdiction of Incorporation or Formation | Name under which Pledgor does business, if other than its legal name | Date located at present address if less than six years |
|---|---|---|---|---|---|
| **Norse Holdings, LLC** | | Limited liability company | New York | N/A | N/A |
| **River Funding LLC** | | Limited liability company | New Jersey | N/A | N/A |

## SCHEDULE III

## FORM OF ASSIGNMENT OF MEMBERSHIP INTERESTS

**[SEE ATTACHED]**

## ASSIGNMENT OF MEMBERSHIP INTERESTS

**NORSE HOLDINGS, LLC**, a New York limited liability company and **RIVER FUNDING LLC**, a New Jersey limited liability company, each having an address at 210 River St, Suite 24, Hackensack, New Jersey 07601 ("**Assignor**"), for Ten Dollars and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, hereby sells, transfers, assigns, delivers, sets over and conveys to **JLS EQUITIES, LLC**, a New York limited liability company, its successors and assigns ("**Assignee**"), all of its right, title and interest in and to the interests identified on Exhibit A attached hereto (the "**Interests**") including, without limitation, all of Assignor's rights to, and interests in, any and all profits, distributions and other entitlements allocable to such Interests.

Assignor represents and warrants to Assignee that none of the Interests has been sold, assigned, transferred, pledged, hypothecated or otherwise encumbered, in whole or in part, other than pursuant to this Assignment, and each of the Interests is being transferred free and clear of all liens, encumbrances, claims, security interest, rights of first refusal, options and liabilities of any kind or nature.  No person or entity has asserted any claims in respect of, or claimed any interest in, any of the Interests.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF,** Assignor has caused this Assignment to be executed as of January __, 2019.

ASSIGNOR:

**RIVER FUNDING LLC**, a New Jersey limited liability company

By: _____

Name: Seth Levine

Title:   Managing Member

**NORSE HOLDINGS, LLC**, a New York limited liability company

By: _____

Name: Seth Levine

Title:   Managing Member

## EXHIBIT A

### Description of the Interests

All of Assignor's right, title and interest in and to Assignor's membership and management interest as follows:

| PLEDGOR | ISSUER | INTERESTS PLEDGED |
|---|---|---|
| River Funding LLC, a New Jersey limited liability company | Lenox Temple LLC, a New Jersey limited liability company | 100% membership interest |
| River Funding LLC, a New Jersey limited liability company | Lenox Hudson LLC, a New Jersey limited liability company | 100% membership interest |
| River Funding LLC, a New Jersey limited liability company | Teaneck Plaza Ventures, LLC, a New Jersey limited liability company | 100% membership interest |
| Norse Holdings, LLC, a New York limited liability company | Orange Norse Limited Liability Company, a New Jersey limited liability company | 100% membership interest |

## JOINDER BY ISSUER

The undersigned, being the limited liability companies whose membership interests are the subject of the Pledge and Security Agreement (Membership Interests) of even date herewith hereby acknowledges, agrees and consents to the terms of said Pledge and Security Agreement as of the ___ day of January, 2019.

**LENOX HUDSON LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Manager

**LENOX TEMPLE LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Manager

**TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Manager

*LIMITED LIABILITY COMPANY*
**ORANGE NORSE** ~~LLC~~**,** a New Jersey limited liability company

By: _____
Name: Seth Levine
Title:   Manager

STATE OF NEW JERSEY            )
                              )   ss.:
COUNTY OF BERGEN              )

On the 5th day of _____ in the year 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared Seth Levine, manager of each of **ORANGE NORSE LLC**, a New Jersey limited liability company, **LENOX HUDSON LLC**, a New Jersey limited liability company, **LENOX TEMPLE LLC**, a New Jersey limited liability company and **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

**ANDREW SELEVAN**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires 1/25/2021**

**(REVERSE SIDE OF CERTIFICATE)**
**ASSIGNMENT OF INTERESTS**

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto _____, a 100% limited liability company membership interest in LENOX TEMPLE LLC, a New Jersey limited liability company effective as of the date specified in the Application for Transfer of Interests below, and irrevocably constitutes and appoints _____, and its authorized officers, as attorney-in-fact, to transfer the same on the books and records of the Company, with full power of substitution in the premises.

Dated: January __, 2019

RIVER FUNDING LLC, a New Jersey limited liability
company

By: _____
Name: Seth Levine
Title:  Managing Member

**APPLICATION FOR TRANSFER OF INTERESTS**

The undersigned applicant (the "Applicant") hereby (a) applies for a transfer of the percentage of limited liability company interests in the Company described above (the "Transfer") and applies to be admitted to the Company as a substitute member of the Company, (b) agrees to comply with and be bound by all of the terms and provisions of the Operating Agreement, (c) represents that the Transfer complies with the terms and conditions of the Operating Agreement, (d) represents that the Transfer does not violate any applicable laws and regulations, and (e) agrees to execute and acknowledge such instruments (including, without limitation, a counterpart of the Operating Agreement), in form and substance satisfactory to the Company, as the Company reasonably deems necessary or desirable to effect the Applicant's admission to the Company as a substitute member of the Company and to confirm the agreement of the Applicant to be bound by all the terms and provisions of the Limited Liability Company Agreement with respect to the limited liability company interests in the Company described above. Initially capitalized terms used herein and not otherwise defined herein are used as defined in the Operating Agreement.

The Applicant directs that the foregoing Transfer and the Applicant's admission to the Company as a Substitute Member shall be effective as of _____.

Name of Transferee: _____

Signature: _____
                    (Transferee)

Dated:                        Address:

The Company has determined (a) that the Transfer described above is permitted by the Operating Agreement, (b) hereby agrees to effect such Transfer and the admission of the Applicant as a substitute member of the Company effective as of the date and time directed above, and (c) agrees to record, as promptly as possible, in the books and records of the Company the admission of the Applicant as a substitute member.

**LENOX TEMPLE LLC**, a New Jersey limited liability company

By: _____
Name:  Seth Levine
Title:   Manager

# EXHIBIT K

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
THAO BUI                                    7142508626

B. E-MAIL CONTACT AT FILER (optional)
thabui@firstam.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

THAO BUI
901 S. 2nd St, Suite 201
springfield, IL 62704
US

State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
UCC Section
Filed

Filing Number:53193223

01/18/19 12:20:03

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| RIVER FUNDING LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 210 River St., Suite 24 | Hackensack | NJ | 07601 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Levine | Seth | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 636 South Forest Drive | Teaneck | NJ | 07666 | US |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| JLS EQUITIES, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 930 E. County Line Rd., Suite 202 | Lakewood | NJ | 08701 | US |

4. COLLATERAL: This financing statement covers the following collateral:

See attachment.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility     6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
| B. E-MAIL CONTACT AT FILER (optional) | |
| C. SEND ACKNOWLEDGMENT TO:  (Name and Address) | |

Y. SCHWARTZ PC
930 E. COUNTY LINE RD., SUITE 202
LAKEWOOD, NEW JERSEY 08701

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME:  Provide only **one** Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| RIVER FUNDING LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 210 River St., Suite 24 | Hackensack | NJ | 07601 | USA |

2. DEBTOR'S NAME.  Provide only **one** Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| Levine | Seth | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 636 South Forest Drive | Teaneck | NJ | 07666 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):  Provide only **one** Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| JLS EQUITIES, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 930 E. County Line Rd., Suite 202 | Lakewood | NJ | 08701 | USA |

4. COLLATERAL:  This financing statement covers the following collateral:

See attached Schedule A for a description of the collateral covered hereby.

The filer attests that the Collateral set forth in this Financing Statement is within the scope of the New Jersey Uniform Code - Secured Transactions pursuant to N.J.S.A. 12A:9-102 and N.J.S.A. 12A:9-109, as required by N.J.S.A. 12A:9-502.

5. Check **only** if applicable and check **only** one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative
6a. Check **only** if applicable and check **only** one box:  6b. Check **only** if applicable and check **only** one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility ☐ Agricultural Lien ☐ Non-UCC Filing
7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor
8. OPTIONAL FILER REFERENCE DATA:
File in the State of New Jersey

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)
Ucc New Filing: 2/5

SCHEDULE A

Description of Collateral

All of Debtor's right, title and interest to the following (the "**Collateral**"):

(i)     all of Debtor's interest in the capital of Issuer and Debtor's interest in all profits and distributions to which Debtor shall at any time be entitled in respect of the Pledged Interest;

(ii)    all of Debtor's right, title and interest to the assets of Issuer including, without limitation, real property, profits, revenues, operating accounts, account receivables, fixtures, chattels and articles of personal property;

(iii)   all other payments, if any, due or to become due to Debtor in respect of the Pledged Interest under or arising out of the Organizational Documents, whether as contractual obligations, damages, insurance proceeds, condemnation awards or otherwise;

(iv)    all of Debtor's claims, rights, powers, privileges, authority, options, security interests, liens and remedies, if any, under or arising out of the Organizational Documents or the ownership of the Pledged Interest pursuant thereto;

(v)     all present and future claims, if any, of Debtor against Issuer under or arising out of the Organizational Documents for monies loaned or advanced, for services rendered or otherwise;

(vi)    all of Debtor's rights, if any, in Issuer pursuant to the Organizational Documents or at law, to exercise and enforce every right, power, remedy, authority, option and privilege of the Debtor relating to the Pledged Interest, including any power to terminate, cancel or modify the Organizational Documents, to execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of the Pledged Interest and Issuer, to make determinations, to exercise any election (including, but not limited to, election of remedies) or option or to give or receive any notice, consent, amendment, waiver or approval, together with full power and authority to demand, receive, enforce or collect any of the foregoing or any property of Issuer, to enforce or execute any checks, or other instruments or orders, to file any claims and to take any action in connection with any of the foregoing; and

(vii)   to the extent not otherwise included, all Proceeds of any or all of the foregoing.

DEFINITIONS

"**Code**" means the Uniform Commercial Code from time to time in effect in the State of New Jersey; provided, however, that with respect to the perfection, the effect of perfection or non-perfection and the priority of the security interests granted hereunder, and with respect to the exercise of remedies with regard to such security interests, "**Code**" shall mean the Uniform Commercial Code as in effect in an applicable jurisdiction in accordance with applicable law.

"**Issuer Formation Agreements**" means the Organizational Documents of the entities comprising Issuer.

"**Organizational Documents**" means (i) with respect to a limited partnership, such Person's certificate of limited partnership, limited partnership agreement, voting trusts or similar arrangements applicable to any of its partnership interests, (ii) with respect to a limited liability company, such Person's certificate of formation, limited liability company agreement or other document affecting the rights of holders of limited liability company interests, and (iii) any and all agreements between any constituent member, partner or shareholder of the Person in question, including any contribution agreement or indemnification agreements. In each case, "**Organizational Documents**" shall include any indemnity, contribution, shareholders or other agreement among any of the owners of the entity in question.

"**Person**" means any individual, corporation, partnership, joint venture, limited liability company, estate, trust, unincorporated association, any federal, State, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the foregoing.

"**Pledged Interests**" means all limited liability company membership interests, partnership interests, capital stock and other equity interests of, and all other right, title and interest now owned or hereafter acquired by Debtor in and to, each entity described on **Schedule I** attached hereto (each such entity, individually or collectively, as the context may require, hereinafter referred to as an "**Issuer**"), together with: (a) all

additional membership interests, partnership interests, capital stock and other equity interests in each Issuer, and options, warrants, and other rights now or hereafter acquired by Debtor in respect of such membership interests, partnership interests, capital stock and other equity interests (whether in connection with any capital increase, recapitalization, reclassification, or reorganization of each Issuer or otherwise) and all other property, rights and instruments of any description at any time issued or issuable as an addition to or in substitution for such membership interests, partnership interests, capital stock or other equity interests; (b) all certificates, instruments and other writings representing or evidencing interests in each Issuer now owned or hereafter acquired by Debtor, and all accounts and general intangibles arising out of, or in connection with, the interests in any Issuer now owned or hereafter acquired by Debtor; (c) any and all moneys or property due and to become due to Debtor now or in the future in respect of the interests in each Issuer, or to which Debtor may now or in the future be entitled in its capacity as a member, partner, shareholder or other equity holder of such Issuer, whether by way of a dividend, distribution, return of capital or otherwise; (d) all other claims which Debtor now has or may in the future acquire in its capacity as a member, partner, shareholder or other equity holder of any Issuer against any Issuer and its property; and (e) all rights of Debtor under each Issuer Formation Agreement applicable to each Issuer (and all other agreements, if any, to which a Debtor is a party from time to time which relate to its ownership of the interests in each Issuer) including, without limitation, all voting and consent rights of Debtor arising thereunder or otherwise in connection with Debtor's ownership of the interests in each Issuer.

"**Proceeds**" means (i) Debtor's share, right, title and interest in and to all distributions, monies, fees, payments, compensations and proceeds now or hereafter becoming due and payable to Debtor by each applicable Issuer with respect to the Pledged Interests whether payable as profits, distributions, asset distributions, repayment of loans or capital or otherwise and including all "proceeds" as such term is defined in Section 9-102(a)(64) of the Code; (ii) all contract rights, general intangibles, claims, powers, privileges, benefits and remedies of Debtor relating to the foregoing; and (iii) all cash and non-cash proceeds of any of the foregoing.

SCHEDULE I

| DEBTOR | ISSUER | INTERESTS PLEDGED |
|---|---|---|
| River Funding LLC, a New Jersey limited liability company | Lenox Temple LLC, a New Jersey limited liability company | 100% membership interest |
| River Funding LLC, a New Jersey limited liability company | Lenox Hudson LLC, a New Jersey limited liability company | 100% membership interest |
| River Funding LLC, a New Jersey limited liability company | Teaneck Plaza Ventures, LLC, a New Jersey limited liability company | 100% membership interest |

# EXHIBIT L

# GUARANTEE

**THIS GUARANTEE** (this "**Guarantee**"), dated as of January 17, 2019, by **SETH LEVINE** and **SHIRA LEVINE,** each residing at 636 South Forest Drive, Teaneck, New Jersey 07666 (the "**Guarantor**") in favor of **JLS EQUITIES, LLC**, a New York limited liability company, its successor and/or assigns, as their interests may appear, having an address c/o Y. Schwartz P.C., 930 E. County Line Rd., Suite 202, Lakewood, New Jersey 08701 ("**Lender**").

Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed thereto in the Pledge and Security Agreement dated as of the date hereof, between **NORSE HOLDINGS, LLC**, a New York limited liability company and **RIVER FUNDING LLC**, a New Jersey limited liability company (collectively, the "**Borrower**"), as pledgor, and Lender, as pledge (as the same may hereafter be amended, modified or supplemented from time to time, collectively, "**Security Agreement**").

W I T N E S S E T H:

**WHEREAS**, Borrower has requested a loan (the "**Loan**") from Lender in the original principal amount of $1,100,000.00, and Lender has agreed to make such Loan upon the terms and conditions as set forth in that certain secured promissory note dated the date hereof (as the same may hereafter from time to time be amended, modified or supplemented, collectively, the "**Note**"), the Security Agreement and certain other loan documents dated the date hereof and this Guarantee (the Note, the Security Agreement and any other documents executed in connection herewith are sometimes collectively referred to herein as the "**Loan Documents**");

**WHEREAS**, simultaneously herewith, the Loan Documents have been executed and delivered to Lender;

**WHEREAS**, Guarantor acknowledges that (i) Lender has declined to make the Loan to Borrower unless this Guarantee is executed by Guarantor and duly delivered to Lender, (ii) Guarantor desires that Lender make the Loan to Borrower, (iii) Guarantor is being directly or indirectly benefitted by the making of the Loan by Lender to Borrower, and (iv) such benefit constitutes good, valuable and sufficient consideration for the execution and delivery to Lender of this Guarantee.

**NOW, THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the Guarantor hereby agrees with Lender as follows:

1.    1.    <u>Guarantee</u>.    The Guarantor hereby unconditionally and irrevocably guarantees to Lender the full and punctual payment and performance when due of all of Borrower's obligations under the Loan Documents, whether at maturity or earlier by reason of acceleration or otherwise and whether denominated as damages, principal, interest, fees or otherwise, together with all pre- and post-maturity interest thereon (including, without limitation, amounts that, but for the initiation of any proceeding under any insolvency or bankruptcy law, would become due) (the "**Guaranteed Obligations**").

1

The Guarantor also agrees to pay any and all costs and expenses (including, without limitation, all reasonable fees and disbursements of counsel) which may be paid or incurred by Lender in connection with the enforcement of this Guarantee. The foregoing shall not in any manner impair or release the debt evidenced by the Note or the other Loan Documents or otherwise impair or derogate from the Lender's ability to enforce its rights under the Loan Documents.

2.    <u>Guarantee Absolute.</u>  The Guarantor guarantees that the Debt (as defined in the Security Agreement) will be paid strictly in accordance with the terms of the Security Agreement or any requirement of law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto. The liability of the Guarantor hereunder shall be absolute and unconditional irrespective of:

(a)    any lack of validity or enforceability of the Note, the Security Agreement the other Loan Documents or any other agreement between Lender and the Borrower relating thereto;

(b)    any change in the time, manner, place of payment of the indebtedness under, or in any other term of, or any other amendment or waiver of, or any consent to, departure from, or any agreement between the Borrower and Lender, including, without limitation, the Note, the Security Agreement or the other Loan Documents;

(c)    the insolvency of, or voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization or other similar proceedings affecting, the Borrower or any of its assets; or

(d)    any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Borrower in respect of the Debt or of the Guarantor in respect of this Guarantee.

No payment made by the Guarantor, any other guarantor or any other Person or entity, or received or collected by the Lender from the Guarantor, any other guarantor or any other Person or entity by virtue of any action or proceeding or set off or application at any time in reduction of or in payment of the Debt shall be deemed to modify, release or otherwise affect the liability of Guarantor under this Guarantee. Notwithstanding any such payments received or collected by the Lender in connection with the Debt, Guarantor shall remain liable for the balance of the Guaranteed Obligations until the Debt is paid in full. This Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time any payment of the Debt or any portion thereof is rescinded or must otherwise be returned by the Lender upon the insolvency, bankruptcy or reorganization of the Borrower or otherwise, all as though such payment had not been made.

Lender shall not be required to inquire into the powers of the Borrower or any of its partners, managers or other agents acting or purporting to act on its behalf, and monies, advances, renewals or credits described in Section 1 hereof in fact borrowed or obtained from Lender in professed exercise of such powers shall be deemed to form part of the debts and liabilities hereby guaranteed, notwithstanding that such borrowing or obtaining of monies, advances, renewals, or

credits shall be in excess of the powers of the Borrower, or of its shareholders, directors or officers or other agents aforesaid, or be in any way irregular, defective or informal.

3.      Dealing with the Borrower and Others.

(a)      The Guaranteed Obligations shall not be released, discharged, limited or in any way affected by anything done, suffered or permitted by Lender in connection with any monies or credit advanced by Lender to the Borrower or any security therefor, including any loss of or in respect of any security received by Lender from the Borrower or others.  It is agreed that Lender, without releasing, discharging, limiting or otherwise affecting in whole or in part the obligations and liabilities hereunder, may, without limiting the generality of the foregoing:

(i)      grant time, renewals, extensions, indulgences, releases and discharges to the Borrower and any other Person guaranteeing payment of or otherwise liable with respect to the Debt (each such Person, an "**Obligor**");

(ii)      take or abstain from taking security or collateral from the Borrower or any obligor or from perfecting security or collateral of the Borrower or any Obligor;

(iii)      accept compromises from the Borrower or any Obligor;

(iv)      apply all monies at any time received from the Borrower or any Obligor upon such part of the Guaranteed Obligations as Lender may see fit; or

(v)      otherwise deal with the Borrower or any obligor as Lender may see fit.

(b)      Lender shall not be bound or obliged to exhaust recourse against the Borrower or any other Obligor or any security, guarantee, indemnity, Security Agreement or collateral it may hold or take any other action (other than make demand pursuant to this Guarantee) before being entitled to payment from the Guarantor hereunder; and

(c)      Any account settled by or between Lender and the Borrower shall be accepted by the Guarantor as conclusive evidence that the balance or amount thereby appearing due to Lender is so due.

4.      Subrogation.  The Guarantor shall not exercise any right of subrogation with respect to payments made to Lender hereunder until such time as all indebtedness of the Borrower to Lender shall have been irrevocably paid in full in cash.  In the case of the liquidation, winding-up or bankruptcy of the Borrower (whether voluntary or involuntary) or in the event that the Borrower shall make an arrangement or composition with his creditors, Lender shall have the right to rank first for its full claim and to receive all payments in respect thereof until its claim has been paid in

full and the Guarantor shall continue to be liable to Lender for any balance of the Guaranteed Obligations.  The Guarantor, to the extent permitted by law, irrevocably releases and waives any subrogation rights or right of contribution or indemnity (whether arising by operation of law, contract or otherwise) Guarantor may have against the Borrower or any Person constituting the Borrower if and to the extent any such right or rights would give rise to a claim under the U.S. Bankruptcy Code that payments to Lender with respect to the Guaranteed Obligations constitute a preference in favor of Guarantor or a claim under the Bankruptcy Code that any such preference is recoverable from Lender.

     5.    <u>Representations and Warranties.</u>    The Guarantor hereby represents and warrants to Lender that:

     (a)    the Guarantor is not insolvent (as such term is defined in the debtor/creditor laws of the State of New Jersey);

     (b)    the execution, delivery and performance of this Guarantee will not (i) make Guarantor insolvent (as such term is defined in the debtor/creditor laws of the State of New York), or (ii) violate any provision of any requirement of law or contractual obligation of Guarantor and will not result in or require the creation or imposition of any lien on any of the properties or revenues of Guarantor pursuant to any requirement of law or contractual obligation of Guarantor;

     (c)    the Guarantor has all requisite power and authority to execute, deliver and perform his Guaranteed Obligations under this Guarantee.

     (d)    the execution, delivery of this Guarantee and the performance by the Guarantor of his obligations hereunder does not and will not contravene, violate or conflict with any requirement of law, and does not and will not contravene, violate or conflict with, or result in a breach of or default under, the partnership agreement of Borrower, or any contractual obligation to which Guarantor or his assets is or are subject, and does not require or result in the creation or imposition of any lien in favor of any Person other than Lender.

     (e)    the execution and delivery hereof and the performance by the Guarantor of his obligations hereunder does not and will not contravene, violate or conflict with, or result in a breach of or default under, any indenture, security instrument, deed of trust, ground lease, contract, assignment, agreement or other instrument to which the Borrower or the assets of the Borrower are subject.

     (f)    no consent of any other party (including, without limitation, any partner, or any creditor of the Guarantor or Borrower) is required that has not been obtained by the Guarantor.

     (g)    this Guarantee has been duly executed and delivered by Guarantor and is the legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, moratorium, insolvency, reorganization or similar laws affecting creditors' rights generally.

6.    Demand for Payment.   The Guarantor shall make payment of the Guaranteed Obligations and other amounts payable by the Guarantor hereunder forthwith.   Lender shall not be required to seek payment of the Debt from Borrower or any other person, prior to demanding payment of the Guaranteed Obligations from the Guarantor.

7.    Waiver of Notice of Acceptance.   The Guarantor hereby waives notice of acceptance of this Guarantee.

8.    Additional Guaranties.  This Guarantee is in addition and without prejudice to any guaranties of any kind (including, without limitation, guaranties whether or not in the same form as this instrument) now or hereafter held by Lender.  Lender shall not be obligated to proceed under any other guaranty or security with respect to all or any portion of the Debt before being entitled to payment from Guarantor under this Guarantee.

9.    Financial Statements.  Guarantor covenants and agrees to provide Lender annually, within forty-five (45) days after the end of each calendar year, with a balance sheet prepared in accordance with generally accepted accounting practices consistently applied (or sound cash based accounting practices consistently applied), a certification as to whether any material adverse changes have occurred in such Guarantor's financial position and such other statements as may be reasonably required by Lender.  Guarantor further covenants and agrees to provide Lender each year with Guarantor's Federal Income Tax Return within fifteen (15) days of filing same and to immediately notify Lender of any material adverse change in such Guarantor's financial condition.  Guarantor shall also provide any additional financial information, upon written request by Lender, including, without limitation, certification as to liquidity.

10.    GOVERNING LAW.   THIS INSTRUMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW JERSEY.

11.    Addresses of Notices.  All notices, demands, and other communications provided for hereunder shall be in writing and shall be personally delivered, sent by overnight delivery, or mailed,  (certified mail, return receipt requested and postage prepaid), to and addressed as follows: if to the Guarantor, delivered to him at his address set forth above, and if to Lender, delivered to it at the address set forth above, with a copy to Y. Schwartz PC, 930 E. County Line Rd., Suite 202, Lakewood, New Jersey 08701 Attention: Yisroel S. Schwartz, Esq. or as to each party at such other address or addresses within the continental United States of America as shall be designated by such party in written notice to each other party complying as to delivery with the terms of this Section 11.

12.    No Waiver. Remedies.  No failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.  Any amendments to, revisions of, or waivers of any provisions of this Guarantee must be in writing to be effective.

13.     <u>Benefit and Binding Nature.</u>  This Guarantee is a continuing guaranty of payment and shall (a) remain in full force and effect until irrevocable payment in full of the Guaranteed Obligations and all other amounts payable hereunder in cash, (b) be binding upon the Guarantor, his personal representatives, executors, administrators, heirs, distributees and successors and assigns, and (c) inure to the benefit of and be enforceable by Lender and its respective successors and assigns.

14.     <u>WAIVER OF TRIAL BY JURY.</u>  THE GUARANTOR AND LENDER WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM, OR COUNTERCLAIM, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, WITH RESPECT TO,  IN CONNECTION WITH OR ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTEE OR THE SECURITY AGREEMENT OR THE NOTE OR ANY OTHER DOCUMENT DELIVERED IN CONNECTION HEREWITH OR THEREWITH.

15.     <u>Jurisdiction.</u>  The Guarantor hereby irrevocably submits to the jurisdiction of any New Jersey State or Federal Court or in any action or proceeding arising out of or relating to this Guarantee, the Note, the Security Agreement or any other document delivered in connection herewith or therewith and the Guarantor hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such New Jersey state court, or to the extent permitted by law, in such Federal court.  The Guarantor hereby irrevocably waives, to the fullest extent he may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding.  To the extent permitted by law, the Guarantor also irrevocably consents to the service of any and all process in any such action or proceeding by the mailing of copies (certified mail, return receipt requested and postage prepaid) of such process to him at his address specified in Section 11 hereof.  The Guarantor agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

**INTENTIONALLY LEFT BLANK**
**SIGNATURE PAGE TO FOLLOW**

IN WITNESS WHEREOF, the Guarantor has executed this Guarantee as of the date and year set forth above.

**GUARANTOR**:

_____

SETH LEVINE

SS#: _051_ - _66_ - _593·_

_____

SHIRA LEVINE

SS#: __O4O__ _68_- _4744_

[SIGNATURE PAGE TO GUARANTEE]

STATE OF NEW JERSEY      )

                                     )   ss.:

COUNTY OF BERGEN      )

On the 5th day of January in the year 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared SETH LEVINE, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

**ANDREW SELEVAN**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires 1/25/2021**

_____
Notary Public

STATE OF NEW JERSEY      )

                                       )   ss.:

COUNTY OF BERGEN      )

On the 15th day of January in the year 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared SHIRA LEVINE, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

**ANDREW SELEVAN**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires 1/25/2021**

[ACKNOWLEDGMENT PAGE TO GUARANTEE]

# EXHIBIT M

| lock: | | Prev | 107 COL HUDSON ST | Owner: | LENOX HUDSON LLC | | Square Ft 0 |
|---|---|---|---|---|---|---|---|
| ot: | 24 | District: | 0223 HACKENSACK | Street: | PO BOX 1136 | | Year Built: 1972 |
| ual: | | Class: | 4C | City State: | ENGLEWOOD CLIFFS NJ 07632 | | Style: |

**Additional Information**

| rior Block: | | Acct Num: | 1073 | Addl Lots: | | EPL Code: | 0 0 0 |
|---|---|---|---|---|---|---|---|
| rior Lot: | | Mtg Acct: | | Land Desc: | 15233SF | Statute: | |
| rior Qual: | | Bank Code: | 0 | Bldg Desc: | 2SB | Initial: | 000000 Further: 000000 |
| pdated: | 02/26/19 | Tax Codes: | | Class4Cd: | 29 | Desc: | |
| one: | R-3B | Map Page: | 5 | Acreage: | 0.3512 | Taxes: | 58618.28 / 70614.50 |

**Sale Information**

| ale Date: | 08/20/08 | Book: | 9608 Page: 61 | | Price: | 1875000  NU#: 0 | |
|---|---|---|---|---|---|---|---|

| Srla | Date | Book | Page | Price | NU# | Ratio | Grantee |
|---|---|---|---|---|---|---|---|
| lore Info | 06/15/99 | 8179 | 619 | 615900 | | 132.45 | LEE, STANLEY |
| lore Info | 05/14/07 | 9329 | 398 | 1525000 | | 112.59 | LIGHTHOUSE HUDSON ST % ORBACH GRP |
| lore Info | 08/20/08 | 9608 | 61 | 1875000 | | 91.57 | LENOX HUDSON LLC |

**TAX-LIST-HISTORY**

| ear | Owner Information | Land/Imp/Tot | Exemption | Assessed | Property Class |
|---|---|---|---|---|---|
| 019 | LENOX HUDSON LLC | 295900 | 0 | 2103500 | 4C |
| | PO BOX 1136 | 1807600 | | | |
| | ENGLEWOOD CLIFFS NJ 07632 | 2103500 | | | |
| 018 | LENOX HUDSON LLC | 295900 | 0 | 1717500 | 4C |
| | PO BOX 1136 | 1421600 | | | |
| | ENGLEWOOD CLIFFS NJ 07632 | 1717500 | | | |
| 017 | LENOX HUDSON LLC | 295900 | 0 | 1674400 | 4C |
| | PO BOX 1136 | 1378500 | | | |
| | ENGLEWOOD CLIFFS NJ 07632 | 1674400 | | | |
| 016 | LENOX HUDSON LLC | 295900 | 0 | 1577500 | 4C |
| | PO BOX 1136 | 1281600 | | | |
| | ENGLEWOOD CLIFFS NJ 07632 | 1577500 | | | |

Click on Underlined Year for Tax List Page

Click Here for More History

| lock: | | District: | 0223 HACKENSACK | Street: | 54-78 TEMPLE AVE | Year Built: | 1967 |
|---|---|---|---|---|---|---|---|
| ot: | 11 | Class: | 4C | City State: | HACKENSACK, NJ 07601 | Style: | |
| ual: | | | | | | | |

| rior Block: | | Acct Num: | 5650 | Addl Lots: | | EPL Code: | 0 0 0 |
|---|---|---|---|---|---|---|---|
| rior Lot: | | Mtg Acct: | | Land Desc: | 300X213 | Statute: | |
| rior Qual: | | Bank Code: | 0 | Bldg Desc: | 2SB | Initial: | 000000 Further: 000000 |
| pdated: | 06/28/19 | Tax Codes: | | Class4Cd: | 29 | Desc: | |
| one: | M-2 | Map Page: | 24 | Acreage: | 1.469 | Taxes: | 189564.84 / 203696.05 |

Sale Information

| ale Date: | 05/21/19 | Book: | 3270 Page: 572 | Price: | 1 NU#: 1 | | |
|---|---|---|---|---|---|---|---|

| | Date | Book | Page | Price | NU# | Ratio | Grantee |
|---|---|---|---|---|---|---|---|
| lore Info | 06/12/09 | 176 | 1599 | 7000000 | | 87.30 | LENOX TEMPLE LLC |
| lore Info | 05/14/07 | 9330 | 173 | 5700000 | | 107.21 | LIGHTHOUSE TEMPLE AVE % ORBACH GRP |
| lore Info | 05/21/19 | 3270 | 572 | 1 | 1 | 0 | ZELMANOVITZ, JUDAH A |

TAX-LIST-HISTORY

| Year | Owner Information | Land/Imp/Tot | Exemption | Assessed | Property Class |
|---|---|---|---|---|---|
| 019 | LENOX TEMPLE LLC | 2280000 | 0 | 6067800 | 4C |
| | PO BOX 308 | 3787800 | | | |
| | NEW MILFORD, NJ 07646 | 6067800 | | | |
| 018 | LENOX TEMPLE LLC | 2280000 | 0 | 5554200 | 4C |
| | PO BOX 308 | 3274200 | | | |
| | NEW MILFORD, NJ 07646 | 5554200 | | | |
| 017 | LENOX TEMPLE LLC | 2280000 | 0 | 5396900 | 4C |
| | PO BOX 308 | 3116900 | | | |
| | NEW MILFORD, NJ 07646 | 5396900 | | | |
| 016 | LENOX TEMPLE LLC | 2280000 | 0 | 4773600 | 4C |
| | PO BOX 308 | 2493600 | | | |
| | NEW MILFORD, NJ 07646 | 4773600 | | | |

Click on Underlined Year for Tax List Page

Click Here for More History

New Search | Assessment Postcard | Property Card

Block: | Group: 04TEANECK AV | Owner 1: TEANECK PLAZA VENTURES LLC | Square Ft: 0
Lot: 1 | District: 0260 TEANECK | Street: 210 RIVER STREET #24 | Year Built: 0000
Qual: | Class: 4A | City State: HACKENSACK, NJ 07601 | Style:

**Additional Information**

Prior Block: | Acct Num: 046841 | Addl Lots: | EPL Code: 0 0 0
Prior Lot: | Mtg Acct: | Land Desc: 185X106 | Statute:
Prior Qual: | Bank Code: 0 | Bldg Desc: 7LT 3SBG8 | Initial: 000000 Further: 000000
Updated: 04/16/15 | Tax Codes: | Class4Cd: 738 | Desc:
Zone: B1 | Map Page: | Acreage: 0.3863 | Taxes: 70091.57 / 70621.73

**Sale Information**

Sale Date: 03/19/15 Book: 1896 Page: 2199 Price: 3050000 NU#: 0

| Srla | Date | Book | Page | Price | NU# | Ratio | Grantee |
|------|------|------|------|-------|-----|-------|---------|
| More Info | 03/19/15 | 1896 | 2199 | 3050000 | | 72.42 | TEANECK PLAZA VENTURES LLC |
| More Info | 09/29/99 | 8212 | 710 | 1450000 | | 68.96 | BROADWY HOUSING CORP |
| More Info | 07/15/03 | 8597 | 474 | 2462500 | | 40.60 | HELLAS COMPANY, LTD |
| More Info | 05/03/06 | 9082 | 253 | 1 | 4 | 999.99 | HELLAS HOLDINGS LLC |

**TAX-LIST-HISTORY**

| Year | Owner Information | Land/Imp/Tot | Exemption | Assessed | Property Class |
|------|-------------------|--------------|-----------|----------|----------------|
| 019 | TEANECK PLAZA VENTURES LLC | 410600 | 0 | 2209000 | 4A |
| | 210 RIVER STREET #24 | 1798400 | | | |
| | HACKENSACK, NJ 07601 | 2209000 | | | |
| 018 | TEANECK PLAZA VENTURES LLC | 410600 | 0 | 2209000 | 4A |
| | 210 RIVER STREET #24 | 1798400 | | | |
| | HACKENSACK, NJ 07601 | 2209000 | | | |
| 017 | TEANECK PLAZA VENTURES LLC | 410600 | 0 | 2209000 | 4A |
| | 210 RIVER STREET #24 | 1798400 | | | |
| | HACKENSACK, NJ 07601 | 2209000 | | | |
| 016 | TEANECK PLAZA VENTURES LLC | 410600 | 0 | 2209000 | 4A |
| | 210 RIVER STREET #24 | 1798400 | | | |
| | HACKENSACK, NJ 07601 | 2209000 | | | |

Click on Underlined Year for Tax List Page

Click Here for More History

# EXHIBIT N

American Land Title Association

Commitment for Title Insurance<br>Adopted 08-01-2016<br>Technical Corrections 04-02-2018

*Transaction Identification Data for reference only:*
Issuing Agent:   **BRENNAN TITLE ABSTRACT, LLC**
Issuing Office:   **457 Haddonfield Rd, Suite 305, Cherry Hill, NJ 08002**
Issuing Office's ALTA® Registry ID:
Loan ID Number:
Commitment Number:
Issuing Office File Number:   **BT18420**
Property Address:   **107-109 Hudson Street, Hackensack, NJ 07632**
Revision Number:

## SCHEDULE A

File No. **BT18420**

1. Commitment Date: **August 12, 2019**                    Termination Date: <u>180</u> days
                                                             after effective date

2. Policy to be issued:

   (a) _____

      Proposed Insured:

      Proposed Policy Amount: $

   (b) _____

      Proposed Insured:

      Proposed Policy Amount: $

**THIS REPORT IS ISSUED FOR INFORMATION ONLY AND IS NOT TO BE USED FOR INSURANCE WITHOUT PRIOR CONSENT OF THIS COMPANY. LIABILITY ASSUMED HEREBY DOES NOT EXCEED $1,000.00.**

3. The estate or interest in the Land described or referred to in this Commitment is Fee Simple.

4. The Title is, at the Commitment Date, vested in:

   **Lenox Hudson LLC, a New Jersey limited liability company by deed from Lighthouse Hudson Street, LLC, a New Jersey limited liability company, dated August 20, 2008, recorded September 12, 2008, in the Clerk's Office of the County of Bergen, New Jersey, in Deed Book 9608, page 61.**

Countersigned:
BRENNAN TITLE ABSTRACT, LLC

By: _____
     *Authorized Signatory*

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**American Land Title Association**

**Commitment for Title Insurance**
**Adopted 08-01-2016**
**Technical Corrections 04-02-2018**

## SCHEDULE A

### (continued)

File No. **BT18420**

5.  The Land is described as follows:

    For information purposes only:   **107-109 Hudson Street, City of Hackensack**
                                                    **Bergen County, New Jersey**
                                                    **Block 67 Lot 24 Tax Map**

    **SEE CONTINUATION OF SCHEDULE A FOR LEGAL DESCRIPTION**

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

NEW JERSEY LAND TITLE
INSURANCE RATING BUREAU

NJRB 3-09
Last Revised: 07/01/18

**American Land Title Association**

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE A

### (continued)

File No. **BT18420**

LEGAL DESCRIPTION

ALL that certain lot, parcel or tract of land, situate and lying in the City of Hackensack, County of Bergen, State of New Jersey, and being more particularly described as follows:

BEGINNING on the Westerly line of Hudson Street, 63.00 feet wide, at a point therein distant 137.45 feet Southerly from the produced intersection of same and the Southwesterly line of Kansas Street, 50.00 feet wide and running thence

(1)     Along the Westerly line of Hudson Street, South 10 degrees 00 minutes 00 seconds East, 84.60 feet; thence

(2)     South 80 degrees 00 minutes 00 seconds West 188.60 feet to a point; thence

(3)     North 03 degrees 49 minutes 06 seconds East 87.12 feet to a point; thence

(4)     North 80 degrees 00 minutes 00 seconds East 167.79 feet to the Westerly line of Hudson Street, the point and place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 24 in Block 67 on the City of Hackensack Tax Map.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

NEW JERSEY LAND TITLE
INSURANCE RATING BUREAU

NJRB 3-09
Last Revised: 07/01/18

American Land Title Association

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE B, PART I

### Requirements

File No. **BT18420**

All of the following Requirements must be met:

1.     The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2.     Pay the agreed amount for the estate or interest to be insured.

3.     Pay the premiums, fees, and charges for the Policy to the Company.

4.     Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5.     You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

6.     In the event that the proceeds of the loan to be secured by the mortgage to be insured are not to be fully disbursed at Closing, the Company must be notified and this Commitment will then be modified accordingly.

7.     Payment of all taxes, water, sewer rents and assessments, if any.

8.     Proof of the record owner's marital or civil union status is required and, if married or if there is a civil union partner, and the premises to be insured is or has ever been occupied as the principal marital or principal civil union residence of the record owner, then his or her spouse or civil union partner must join in the deed or mortgage and affidavit of title.

9.     This Company requires a Notice of Settlement to be filed pursuant to N.J.S.A. 46:26A-11 et seq. prior to Closing. The notice should be filed as nearly as possible to, but not more than 60 days prior to the anticipated closing date. Should the anticipated closing not take place within 60 days of the filing of the Notice of Settlement, another notice must be filed. If both a Deed and Mortgage are involved, two Notices of Settlement must be filed, one for the Deed and one for the Mortgage. If the closing is postponed, another Notice of Settlement may be recorded prior to the expiration of the first recorded Notice of Settlement. A filed copy of the Notice(s) of Settlement must be provided to the Company as part of the post closing package. NOTE: Subject to any recording delay in Bergen County.

10.    This Company must be contacted by the Closing Attorney to request a rundown at least twenty-four (24) hours prior to the scheduled closing. In the event such rundown is not requested, any mortgages, liens or judgments shall remain as an exception to the policy unless same have been satisfied.

11.    Form 1099-S must be completed at closing and filed by the Closing Attorney in accordance with the Tax Reform Act of 1986 in Code Section 6045 (e). NOTE: Pertains to purchase transactions only.

12.    If the proposed transaction is based upon a power of attorney, the power of attorney, deed (if applicable), and affidavit of the attorney in fact must be furnished for review and must be recorded. The Company must be furnished acceptable proof that the power is in effect and is exercised while the principal is alive, that the power remains in effect and that the power of attorney has not been revoked at the time of

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**American Land Title Association**

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE B, PART I

### (continued)

File No. **BT18420**

execution, delivery and recording of the mortgage and/or deed. At that time, the Company may make additional requirements or exceptions.

13. If Grantor is a corporation, this company requires completion of a Corporate Affidavit of Title and a Corporate Resolution with respect to the proposed conveyance.

14. If Grantor is a partnership, this company requires proof that the Partnership Agreement is in full force and effect, and the terms of such have not been modified or altered in any way. All general partner(s) must execute the Deed of conveyance.

15. Taxes, Assessments, Sewer and Water charges are as follows:

    | | |
    |---|---|
    | Tax Search: | See Copies Attached |
    | Assessment Search: | See Copies Attached |
    | Sewer Search: | See Copies Attached |
    | Water Search: | See Copies Attached |

16. Superior Court of New Jersey and United States District Court Search: See Copies Attached.

17. Furnish satisfactory proof of the marital status: N/A.

18. Cancellation or other disposition of the MultiFamily Mortgage, Assignment of Rents and Security Agreement from Lenox Hudson LLC, a New Jersey limited liability company to Hunt Mortgage Partners, LLC, dated March 27, 2018, and recorded April 5, 2018, in Mortgage Book V2898, Page 2086, to secure $2,165,000.00.

    Assignment of Security Instrument to Federal Home Mortgage Corporation recorded April 4, 2018 in Book V2898, Page 2111.

    Assignment of MultiFamily Mortgage, Assignment of Rents and Security Agreement to U.S. Bank National Association, as Trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc., MultiFamily Mortgage Pass-Through Certificates, Series 2018-SB-51 recorded August 1, 2018 in Book V3015, Page 2035.

19. Termination or other disposition of UCC-1 Financing Statement, recorded April 5, 2018 in the Office of the Bergen County Clerk, showing Lenox Hudson LLC (as Debtor) and Federal Home Loan Mortgage Corporation (as Secured Party) as in Book V2898, Page 2115.

    Assignment of UCC to U.S. Bank National Association, as Trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc., MultiFamily Mortgage Pass-Through Certificates, Series 2018-SB-51 recorded August 1, 2018 in Book V3015, page 2040.

20. New Jersey Superior Court, US District Court & US Bankruptcy Court Judgments vs. Lenox Hudson LLC show(s) clear.  (See attached).

21. US Patriot Search vs. Lenox Hudson LLC shows clear.

    NOTE: Judgments, if any, to be satisfied of record or affidavit submitted that same are not against persons in chain of title and/or purchasers, but against other with the same or similar names.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

American Land Title Association

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

SCHEDULE B, PART I

(continued)

File No. **BT18420**

22.    Subject to facts as would be disclosed by sellers, purchasers, and/or borrowers affidavit of title, to be submitted.

NOTE:  Although compliance or non-compliance with environmental matters is beyond the scope of coverage afforded by the title policy, we wish to call your attention (for informational purposes only) to the fact that the proposed transaction may involve lands subject to the Industrial Site Recovery Act (I.S.R.A.), N.J.S.A. 13:K-6, et seq. Please note that this Company is not legally authorized to insure that the proposed transaction comports with the provisions of any environmental laws, including I.S.R.A., N.J.S.A. 13:1K-6 et seq.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

NEW JERSEY LAND TITLE
INSURANCE RATING BUREAU

NJRB 3-09
Last Revised: 07/01/18

American Land Title Association

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE B, PART II

### Exceptions

File No. **BT18420**

THIS COMMITMENT DOES NOT REPUBLISH ANY COVENANT, CONDITION, RESTRICTION, OR LIMITATION CONTAINED IN ANY DOCUMENT REFERRED TO IN THIS COMMITMENT TO THE EXTENT THAT THE SPECIFIC COVENANT, CONDITION, RESTRICTION, OR LIMITATION VIOLATES STATE OR FEDERAL LAW BASED ON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, GENDER IDENTITY, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. Notwithstanding any provision of the policy to the contrary, the following matters are expressly excluded from the coverage of the policy, and the Company will not pay loss or damage, costs, attorney's fees or expenses that arise by reason of any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the land.

2. Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I—Requirements are met.

3. Right or claims of parties in possession of the land not shown by the public records.

4. Any liens on your title, arising now or later, for labor and material, not shown by the public records.

5. Subject to possible additional taxes assessed or levied under N.J.S.A. 54:4-63.1 et seq.

6. Subsurface conditions and/or encroachments not disclosed by an instrument of record. (Fee Policy only.)

7. <u>TAXES, CHARGES AND ASSESSMENTS:</u> The payment of all taxes, assessments, water and sewer charges, up through and including the current installments.

8. Rights of way as contained in Deed Book 5619 Page 141.

9. Restrictions as set forth in Deed Book V3278 Page 1843.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

NEW JERSEY LAND TITLE
INSURANCE RATING BUREAU

NJRB 3-09
Last Revised: 07/01/18





(2o)

PREPARED BY: _____
RICHARD S. KELIN, ESQ.

8425J.01   Deed : 550-000
Kathleen A. Donovan   Recording Fee 90.00
Bergen County Clerk  07*Pm 903
Recorded 09/12/2008 1:47 BRIDGEVIEW 4RSTR
R

## DEED

THIS DEED is made on   AUG. 2o   , 2008

Consideration   : 1875000.00
Realty Transfer Fee : 20461.50
State Portion   : 14763.50
County Portion  : 2811.50
Municiality Portion : 3887.50

BETWEEN

LIGHTHOUSE HUDSON STREET, LLC,
a New Jersey limited liability company

Whose post office address is c/o The Orbach Group, 2 Executive Drive, Suite 470, Fort Lee, New Jersey 07024, referred to as the Grantor

AND

LENOX HUDSON LLC,
a New Jersey limited liability company

Whose post office address is 2200 Fletcher Avenue, Fort Lee, New Jersey 07024, referred to as the Grantee

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

1. TRANSFER OF OWNERSHIP. The Grantor grants and conveys (transfers ownership of) the property (called the "Property") described below to the Grantee. This transfer is made for the sum of ONE MILLION EIGHT HUNDRED SEVENTY FIVE THOUSAND AND 00/100 ($1,875,000.00) DOLLARS.

The Grantor acknowledges receipt of this money.

2. TAX MAP REFERENCE. (N.J.S.A. 46:15-1.1) Municipality of Hackensack
Block No.  67    Lot No.  24         Account No.

3. PROPERTY. The Property consists of the land and all the buildings and structures on the land in the City of Hackensack, County of Bergen and State of New Jersey. The legal description is:

Please see attached Legal description annexed hereto, made a part hereof and recorded herein.

The street address of the Property is:  107-109 Hudson Street, Hackensack, New Jersey.

BK 0 9 b 0 8 PG 0 b l

LEGAL DESCRIPTION

All that certain tract, lot and parcel of land lying in the City of Hackensack, County of Bergen and State of New Jersey, being more particularly described as follows:

Beginning on the westerly line of Hudson Street, 63.00 feet wide, at a point therein distant 137.45 feet southerly from the produced intersection of same and the southwesterly line of Kansas Street, 50.00 feet wide and running thence
(1) Along the westerly line of Hudson Street, South 10°00'00" East 84.60 feet; thence
(2) South 80°00'00" West 188.60 feet to a point; thence
(3) North 03°49'06" East 87.12 feet to a point; thence
(4) North 80°00'00" East 167.79 feet to the westerly line of Hudson Street, the point and place of beginning.

BK 0 9 6 0 8 PG 0 6 2

BEING the same premises conveyed to Grantor herein by deed from Stanley Lee, dated May 14, 2007 and recorded June 7, 2007 in the office of the Bergen County Clerk's Office in Deed Book 9329, page 398.

By accepting this Deed, the Grantee confirms that it is assuming the existing mortgage made to Sovereign Bank dated February 14, 2008 and recorded March 11, 2008 in the Bergen County Clerk's Office in Mortgage Book 17214, Page 453, in the original amount of $1,200,000.00, which Mortgage was assigned to Fannie Mae by Assignment recorded March 11, 2008 in the Bergen County Clerk's Office in Assignment Book 1423, Page 107.

4. PROMISES BY GRANTOR. The Grantor promises that the Grantor has done no act to encumber the Property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the Property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

5. SIGNATURES. The Grantor signs this Deed as of the date at the top of the first page.


WITNESSED BY:                                    LIGHTHOUSE HUDSON STREET, LLC

_____            By: _____ (Seal)
                                                          Meyer Orbach, Manager


STATE OF NEW JERSEY:
                                    SS
COUNTY OF BERGEN     :

I certify that on August 20 , 2008, Meyer Orbach, personally came before me and stated to my satisfaction that: (a) he signed, sealed and delivered this Deed as the Manager of Lighthouse Hudson Street, LLC, the limited liability company named in this Deed; and (b) this Deed was signed and made by the limited liability company as its voluntary act and deed by virtue of authority from all of its member; and (c) made this Deed for $1,875,000.00 as full and actual consideration paid or to be paid for the transfer of title (Such consideration is defined in N.J.S.A. 46:15-5.).

_____
AMANDA M. SALOTTI
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 12/10/2012

BK 09608 PG063



STATE OF NEW JERSEY
AFFIDAVIT OF CONSIDERATION FOR USE BY SELLER

(Chapter 49, P.L. 1968, as amended through Chapter 33, P.L. 2006) (N.J.S.A. 46:15-5 et seq.)
BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE OF THIS FORM.

STATE OF NEW JERSEY
}SS. County Municipal Code

COUNTY OF BERGEN

MUNICIPALITY OF PROPERTY LOCATION   Hackensack

(1) PARTY OR LEGAL REPRESENTATIVE

Deponent, Meyer Orbach ... Lighthouse Hudson Street, LLC (the "Company")

(2) CONSIDERATION $ 1,875,000.00

(3) Property transferred is Class 4A   4B   4C

RTF-1EE (Rev. 7/08)
MUST SUBMIT IN DUPLICATE

STATE OF NEW JERSEY
AFFIDAVIT OF CONSIDERATION FOR USE BY BUYER
(Chapter 49, P.L.1968, as amended through Chapter 33, P.L. 2006) (N.J.S.A. 46:15-5 et seq.)
BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE OF THIS FORM.

STATE OF NEW JERSEY

| | FOR RECORDER'S USE ONLY |
| --- | --- |
| } SS. County Municipal Code | Consideration $ 1,815,000.00 |
| COUNTY  Bergen    0223 | RTF paid by seller $ ___ Date ___ |
| | RTF paid by buyer $ ___ Date 9/12/08 By ___ |

MUNICIPALITY OF PROPERTY LOCATION  Hackensack

(1) PARTY OR LEGAL REPRESENTATIVE (See Instructions #3 and #4 on reverse side)        XXXXXXX        159

Deponent,  Moshael  Straus  being  duly  sworn  according  to  law  upon  his/her  oath,
(Name)  Managing Member
deponent  and  says  that  he/she  is  the  Co-Grantor  in  a  deed  dated  8-20-08  transferring
(Grantor, Legal Representative, Corporate Officer, Officer of Title Company, Lending Institution, etc.)

real property identified as Block number  67  Lot number  24  located at

107-109 Hudson Street, Hackensack  and annexed thereto.
(Street Address, Town)

(2) CONSIDERATION $ 1,815,000.00  (See Instructions #1, #5, and #11 on reverse side)

Entire consideration is in excess of $1,000,000:

PROPERTY CLASSIFICATION CHECKED BELOW SHOULD BE TAKEN FROM THE OFFICIAL TAX LIST (A PUBLIC RECORD) OF THE MUNICIPALITY WHERE THE REAL PROPERTY IS LOCATED IN THE YEAR THAT THE TRANSFER IS MADE.

(A) When Grantee is required to remit the 1% fee, complete below:

☐ Class 2 - Residential
☐ Class 3A - Farm property (Regular) and any other real property transferred to same grantee in conjunction with transfer of Class 3A property

☐ Class 4A - Commercial Properties (if checked, calculation on (C) required below)
☐ Class 4C - Residential Cooperative Unit (4 Families or less)

(B) When Grantee is not required to remit the 1% fee, complete below:

☒ Property class. Circle applicable class(es): 1  4B  4C  15
   Property classes: 1 Vacant Land, 4B Industrial properties, 4C Commercial (other than cooperative units) and all other Property

☐ Exempt Organization pursuant to federal Internal Revenue Code of 1986
☐ Incidental to corporate merger or acquisition and equalized assessed valuation less than 20% of total value of all assets exchanged in merger or acquisition (if checked, calculation in (C) below required and MUST ATTACH COMPLETED RTF-4)

(C) REQUIRED CALCULATION OF EQUALIZED ASSESSED VALUATION FOR ALL CLASS 4A COMMERCIAL PROPERTY TRANSACTIONS: (See Instructions #5 and #7 on reverse side)
Total Assessed Valuation ÷ Director's Ratio = Equalized Valuation

_____ ÷ _____ % = _____

If Director's Ratio is less than 100%, the equalized valuation will be an amount greater than the assessed valuation. If Director's Ratio is equal to or in excess of 100%, the assessed valuation will be equal to the equalized value.

(3) TOTAL EXEMPTION FROM FEE (See Instruction #8 on reverse side)
Deponent states that this deed transaction is fully exempt from the Realty Transfer Fee imposed by C. 49, P.L. 1968, as amended through C. 66, P.L. 2004, for the following reason(s). Mere reference to exemption symbol is insufficient. Explain in detail.

(4) Deponent makes Affidavit of Consideration for Use by Buyer to induce county clerk or register of deeds to record the deed and accept the fee submitted herewith pursuant to the provisions of Chapter 49, P.L. 1968, as amended through Chapter 33, P.L. 2006.

Lenox Park Brook, LLC

Subscribed and sworn to before me
the 9th day of September, 2008

_____
DAVID CARMEL
Attorney at Law of New Jersey

Signature of Deponent

107 Hudson St. Hackensack, NJ
Deponent's Address

Signature of Settlor or Grantor's Attorney

107 Hudson St., Hackensack, NJ
Grantee's Address or Date of Sale

David Carmel, Esq.

| FOR OFFICIAL USE ONLY | |
| --- | --- |
| Instrument Number ___ | County ___ |
| Deed Number ___ | Book ___ Page ___ |
| Deed Dated ___ | Date Recorded ___ |

County Recording Officers shall forward one copy of each Affidavit of Consideration for Use by Buyer recorded with deed to
STATE OF NEW JERSEY - DIVISION OF TAXATION
PO BOX 251
TRENTON, NJ 08695-0251
ATTENTION: REALTY TRANSFER FEE UNIT

The Director of the Division of Taxation in the Department of the Treasury has prescribed this form as required by law, and it may not be altered or amended without prior approval of the Director. For further information on the Realty Transfer Fee or to print a copy of this Affidavit, visit the Division of Taxation website at www.state.nj.us/treasury/taxation/lpt/localtax.htm

BK 0 9 6 0 8 PG 0 6 5



GIT/REP-3
(5-05)

State of New Jersey
SELLER'S RESIDENCY CERTIFICATION/EXEMPTION
(C.55, P.L. 2004)

(Please Print or Type)

**SELLER(S) INFORMATION (See Instructions, Page 2)**

Name(s)
Lighthouse Hudson Street, LLC

Current Resident Address:

Street     c/o The Orbach Group, 2 Executive Drive, Suite 470

| City, Town, Post Office | State | Zip Code |
|---|---|---|
| Fort Lee | New Jersey | 07024 |

**PROPERTY INFORMATION (Brief Property Description)**

| Block(s) | Lot(s) | Qualifier |
|---|---|---|
| 67 | 24 | |

Street Address:
107-109 Hudson Street

| City, Town, Post Office | State | Zip Code |
|---|---|---|
| Hackensack | New Jersey | |

| Seller's Percentage of Ownership | Consideration | Closing Date |
|---|---|---|
| 100% | $1,875,000.00 | August   , 2008 |

**SELLER ASSURANCES (Check the Appropriate Box)**

1. ☐ I am a resident taxpayer (individual, estate, or trust) of the State of New Jersey pursuant to N.J.S.A. 54A:1-1 et seq. and will file a resident gross income tax return and pay any applicable taxes on any gain or income from the disposition of this property.

2. ☐ The real property being sold or transferred is used exclusively as my principal residence within the meaning of section 121 of the federal Internal Revenue Code of 1986, 26 U.S.C. s. 121

3. ☐ I am a mortgagor conveying the mortgaged property to a mortgagee in foreclosure or in a transfer in lieu of foreclosure with no additional consideration.

4. ☐ Seller, transferor or transferee is an agency or authority of the United States of America, an agency or authority of the State of New Jersey, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, or a private mortgage insurance company.

5. ☒ Seller is not individual, estate or trust and as such not required to make an estimated payment pursuant to N.J.S.A 54A:1-1 et seq.

6. ☐ The total consideration for the property is $1,000 or less and as such, the seller is not required to make an estimated payment pursuant to N.J.S.A. 54A:5-1-1 et seq.

7. ☐ The gain from the sale will not be recognized for Federal income tax purposes under I.R.C. Section 721, 1031, 1033 or is a cemetery plot. (CIRCLE THE APPLICABLE SECTION). If such section does not ultimately apply to this transaction, the seller acknowledges the obligation to file a New Jersey income tax return for the year of the sale.

8. ☐ Transfer by an executor or administrator of a decedent to a devisee or heir to effect distribution of the decedent's estate in accordance with the provisions of the decedent's will or the intestate laws of this state.

**SELLER(S) DECLARATION**

The undersigned understands that this declaration and its contents may be disclosed or provided to the New Jersey Division of Taxation and that any false statement contained herein could be punished by fine, imprisonment, or both. I furthermore declare that I have examined this declaration and, to the best of my knowledge and belief, it is true, correct and complete.

| August   20 , 2008 | By: Lighthouse Hudson Street, LLC |
|---|---|
| Date | Meyer Orbach Manager    Signature |
| | (Seller) Please indicate if Power of Attorney or Attorney in Fact |

| | |
|---|---|
| Date | Signature |
| | (Seller) Please indicate if Power of Attorney or Attorney in Fact |

BK 0 9 b 0 8 PG 0 b b     END OF DOCUMENT

ABSTRACTED

John S. Hogan
Bergen County Clerk

**Bergen County Clerk**
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 18-022345.01

V 02898 2086

RECORDED DATE: 04/05/2018 10:01:55 AM

| | |
|---|---|
| | Transaction #: 9090353 |
| **Document Type:** Mortgage | Document Page Count: 24 |
| | Operator Id: CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MADISON TITLE AGENCY, LLC<br>1125 OCEAN AVENUE<br>LAKEWOOD NJ 08701<br>ERECORDED | Madison Title Agency, LLC<br><br>(732) 333-2667 |
| **PRIMARY NAME** | **SECONDARY NAME** |
| LENOX HUDSON LLC | HUNT MORTGAGE PARTNERS LLC |
| **ADDITIONAL PRIMARY NAMES** | **ADDITIONAL SECONDARY NAMES** |

**MARGINAL REFERENCES:**

DOCUMENT DATE: 03/27/2018
MUNICIPALITY: HACKENSACK

FEES / TAXES:
Recording Fee: Mortgage          $30.00
Additional Pages Fee             $230.00
Homeless Trust Fund - Bergen County  $3.00
Total:                           $263.00

INSTRUMENT #: 18-022345.01
Recorded Date: 04/05/2018 10:01:55 AM

I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.

John S. Hogan
Bergen County Clerk

Recording Fees: $263.00
Realty Transfer Tax Fees: $0.00

**OFFICIAL RECORDING COVER PAGE**                Page 1 of 25

# PLEASE DO NOT DETACH
THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Prepared by, and after recording
return to:

                                **FHLMC#501232168**

Cassin & Cassin LLP                Block:     67
2900 Westchester Avenue, Suite 402   Lot:       24
Purchase, New York 10577         City:     **HACKENSACK**
Attn:  Recording Department      County:  **BERGEN**

Record and Return to:
MADISON TITLE AGENCY, LLC
COMMERCIAL DEPARTMENT
1125 OCEAN AVENUE
LAKEWOOD, NJ 08701

Mlay 122362

### MULTIFAMILY MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

### NEW JERSEY

#### (Revised 3-1-2014)

THIS INSTRUMENT IS FOR USE
ONLY FOR MULTIFAMILY PROPERTIES
CONTAINING MORE THAN 6 RESIDENTIAL UNITS

**Lenox Hudson
107 – 109 Hudson St, Hackensack, New Jersey 07601**

**MULTIFAMILY MORTGAGE,
ASSIGNMENT OF RENTS
AND SECURITY AGREEMENT**

**NEW JERSEY**

**(Revised 3-1-2014)**

THIS MULTIFAMILY MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT ("**Instrument**") is made to be effective as of the ___27___ day of March, 2018 between **LENOX HUDSON LLC**, a limited liability company organized and existing under the laws of New Jersey, whose address is 210 River Street, Suite 12, Hackensack, New Jersey 07601, as mortgagor ("**Borrower**"), and **HUNT MORTGAGE PARTNERS, LLC**, a limited liability company organized and existing under the laws of Delaware, whose address is c/o Hunt Mortgage Group, 11501 Outlook Street, Suite 300, Overland Park, Kansas 66211, as mortgagee ("**Lender**"). Borrower's organizational identification number, if applicable, is <u>0400231931</u>.

**RECITAL**

Borrower is indebted to Lender in the principal amount of **$2,165,000.00**, as evidenced by Borrower's Multifamily Note Hybrid ARM – SBL payable to Lender, dated as of the date of this Instrument, and maturing on **April 1, 2038** ("**Maturity Date**").

**AGREEMENT**

TO SECURE TO LENDER the repayment of the Indebtedness, and all renewals, extensions and modifications of the Indebtedness, and the performance of the covenants and agreements of Borrower contained in the Loan Documents, Borrower mortgages, warrants, grants, conveys and assigns to Lender the Mortgaged Property, including the Land located in the **City of Hackensack, County of Bergen, State of New Jersey** and described in <u>Exhibit A</u> attached to this Instrument.

Borrower warrants and represents that Borrower is lawfully seized of the Mortgaged Property and has the right, power and authority to mortgage, grant, convey and assign the Mortgaged Property, and that the Mortgaged Property is unencumbered, except as shown on the schedule of exceptions to coverage in the title policy issued to and accepted by Lender contemporaneously with the execution and recordation of this Instrument and insuring Lender's interest in the Mortgaged Property ("**Schedule of Title Exceptions**"). Borrower covenants that Borrower will warrant and defend generally the title to the Mortgaged Property against all claims and demands, subject to any easements and restrictions listed in the Schedule of Title Exceptions.

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement



Uniform Covenants to Security Instrument – SBL
(Revised 11-02-15)

**Covenants.** In consideration of the mutual promises set forth in this Instrument, Borrower and Lender covenant and agree as follows:

1. **Definitions.** The following terms, when used in this Instrument (including when used in the above recitals), will have the following meanings and any capitalized term not specifically defined in this Instrument will have the meaning ascribed to that term in the Loan Agreement:

   "**Attorneys' Fees and Costs**" means (a) fees and out-of-pocket costs of Lender's and Loan Servicer's attorneys, as applicable, including costs of Lender's and Loan Servicer's in-house counsel, support staff costs, costs of preparing for litigation, computerized research, telephone and facsimile transmission expenses, mileage, deposition costs, postage, duplicating, process service, videotaping and similar costs and expenses; (b) costs and fees of expert witnesses, including appraisers; (c) investigatory fees; and (d) the costs for any opinion required by Lender pursuant to the terms of the Loan Documents.

   "**Borrower**" means all Persons identified as "Borrower" in the first paragraph of this Instrument, together with their successors and assigns.

   "**Business Day**" means any day other than a Saturday, a Sunday or any other day on which Lender or the national banking associations are not open for business.

   "**Event of Default**" means the occurrence of any event described in Section 8.

   "**Fixtures**" means all property owned by Borrower which is attached to the Land or the Improvements so as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators and installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment.

   "**Governmental Authority**" means any board, commission, department, agency or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Mortgaged Property, or the use, operation or improvement of the Mortgaged Property, or over Borrower.

Page 2

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

"**Improvements**" means the buildings, structures and improvements now constructed or at any time in the future constructed or placed upon the Land, including any future alterations, replacements and additions.

"**Indebtedness**" means (i) the principal of, (ii) interest at the fixed or variable rate set forth in the Note on, and (iii) all other amounts due at any time under, the Note, the Loan Agreement, this Instrument or any other Loan Document, including prepayment charges, late charges, default interest and advances as provided in Section 7 to protect the security of this Instrument.

"**Land**" means the land described in Exhibit A.

"**Leases**" means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property (including proprietary leases or occupancy agreements if Borrower is a cooperative housing corporation), and all modifications, extensions or renewals.

"**Lender**" means the entity identified as "Lender" in the first paragraph of this Instrument, or any subsequent holder of the Note.

"**Loan Agreement**" means the Loan Agreement executed by Borrower and Lender and dated as of the date of this Instrument, as such agreement may be amended from time to time.

"**Loan Documents**" means the Note, this Instrument, the Loan Agreement, all guaranties, all indemnity agreements, all collateral agreements, UCC filings, O&M Programs, the MMP and any other documents now or in the future executed by Borrower, any Guarantor or any other Person in connection with the Loan evidenced by the Note, as such documents may be amended from time to time.

"**Loan Servicer**" means the entity that from time to time is designated by Lender or its designee to collect payments and deposits and receive Notices under the Note, this Instrument, the Loan Agreement and any other Loan Document, and otherwise to service the Loan evidenced by the Note for the benefit of Lender.  Unless Borrower receives Notice to the contrary, the Loan Servicer is the entity identified as "Lender" in the first paragraph of this Instrument.

"**Mortgaged Property**" means all of Borrower's present and future right, title and interest in and to all of the following:

(a)     The Land.

(b)     The Improvements.

(c)   The Fixtures.

(d)   The Personalty.

(e)   All current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights of way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated.

(f)   All proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not Borrower obtained the Insurance pursuant to Lender's requirement.

(g)   All awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from Condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof.

(h)   All contracts, options and other agreements for the sale of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations.

(i)   All proceeds from the conversion, voluntary or involuntary, of any of the items described in subsections (a) through (h) inclusive into cash or liquidated claims, and the right to collect such proceeds.

(j)   All Rents and Leases.

(k)   All earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of the loan secured by this Instrument.

(l)   All deposits to a Reserve Fund, whether in cash or as a letter of credit.

(m)   All refunds or rebates of Taxes by a Governmental Authority (other than refunds applicable to periods before the real property tax year in which this Instrument is dated) or Insurance premiums by an insurance company.

(n)    All tenant security deposits which have not been forfeited by any tenant under any Lease and any bond or other security in lieu of such deposits.

(o)    All names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property.

"**Note**" means the Note (including any Amended and Restated Note, Consolidated, Amended and Restated Note, or Extended and Restated Note) executed by Borrower in favor of Lender and dated as of the date of this Instrument, including all schedules, riders, alonges and addenda, as such Note may be amended, modified and/or restated from time to time.

"**Notice**" or "**Notices**" means all notices, demands, Lender approvals and other communication required under the Loan Documents, provided in accordance with the requirements of Section 10.03 of the Loan Agreement.

"**Person**" means any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

"**Personalty**" means all of the following:

(a)    Accounts (including deposit accounts) of Borrower related to the Mortgaged Property.

(b)    Equipment and inventory owned by Borrower, which are used now or in the future in connection with the ownership, management or operation of the Land or Improvements or are located on the Land or Improvements, including furniture, furnishings, machinery, building materials, goods, supplies, tools, books, records (whether in written or electronic form) and computer equipment (hardware and software).

(c)    Other tangible personal property owned by Borrower which is used now or in the future in connection with the ownership, management or operation of the Land or Improvements or is located on the Land or in the Improvements, including ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances (other than Fixtures).

(d)    Any operating agreements relating to the Land or the Improvements.

New Jersey                               Page 5
Multifamily Mortgage, Assignment of Rents
and Security Agreement

(e)    Any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements.

(f)    All other intangible property, general intangibles and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land and including subsidy or similar payments received from any sources, including a Governmental Authority.

(g)    Any rights of Borrower in or under letters of credit.

"**Property Jurisdiction**" means the jurisdiction in which the Land is located.

"**Rents**" means all rents (whether from residential or non-residential space), revenues and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Mortgaged Property, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Borrower is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due, or to become due.

"**Reserve Fund**" means all amounts deposited by the Borrower with Lender in connection with the Loan for the payment of Taxes or insurance premiums or as otherwise required pursuant to the Loan Agreement.

"**Taxes**" means all taxes, assessments, vault rentals and other charges, if any, whether general, special or otherwise, including all assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, will become a Lien on the Land or the Improvements, including any payments made in lieu of Taxes.

"**UCC**" means the Uniform Commercial Code as promulgated in the applicable jurisdiction.

2.    **Uniform Commercial Code Security Agreement.**

(a)    This Instrument is also a security agreement under the UCC for any of the Mortgaged Property which, under applicable law, may be subjected to a security interest under the UCC, for the purpose of securing Borrower's obligations under this Instrument and to further secure Borrower's obligations under the Note, this Instrument and other Loan Documents, whether such Mortgaged Property is owned now or acquired in the future, and all products and cash and non-cash proceeds thereof (collectively, "**UCC Collateral**"), and by this Instrument, Borrower grants to Lender a security interest under the UCC in the UCC

Collateral. To the extent necessary under applicable law, Borrower hereby authorizes Lender to prepare and file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest.

(b)   Unless Borrower gives Notice to Lender within 30 days after the occurrence of any of the following, and executes and delivers to Lender modifications or supplements of this Instrument (and any financing statement which may be filed in connection with this Instrument) as Lender may require, Borrower will not (i) change its name, identity, structure or jurisdiction of organization; (ii) change the location of its place of business (or chief executive office if more than one place of business); or (iii) add to or change any location at which any of the Mortgaged Property is stored, held or located.

(c)   If an Event of Default has occurred and is continuing, Lender will have the remedies of a secured party under the UCC, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Lender may exercise its remedies against the UCC Collateral separately or together, and in any order, without in any way affecting the availability of Lender's other remedies.

(d)   This Instrument also constitutes a financing statement with respect to any part of the Mortgaged Property that is or may become a Fixture, if permitted by applicable law.

3.   **Assignment of Rents; Appointment of Receiver; Lender in Possession.**

(a)   As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Rents.

(i)   It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower.

(ii)   Promptly upon request by Lender, Borrower agrees to execute and deliver such further assignments as Lender may from time to time require. Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only.

(iii)   For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, Rents will not be deemed to be a part of the Mortgaged Property. However, if this present, absolute and unconditional assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents will be included as a part of the Mortgaged

New Jersey                                                                                              Page 7
Multifamily Mortgage, Assignment of Rents
and Security Agreement

Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a Lien on Rents in favor of Lender, which Lien will be effective as of the date of this Instrument.

(b)    (i)    Until the occurrence of an Event of Default, Lender hereby grants to Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender and to apply all Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including Imposition Reserve Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities, Taxes and insurance premiums (to the extent not included in deposits to Reserve Funds), tenant improvements and other capital expenditures.

       (ii)   So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Instrument.

       (iii)  After the occurrence of an Event of Default, and during the continuance of such Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender. From and after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents will automatically terminate and Lender will without Notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid. Borrower will pay to Lender upon demand all Rents to which Lender is entitled.

       (iv)   At any time on or after the date of Lender's demand for Rents, Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender. No tenant will be obligated to inquire further as to the occurrence or continuance of an Event of Default. No tenant will be obligated to pay to Borrower any amounts which are actually paid to Lender in response to such a notice. Any such notice by Lender will be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Borrower will not interfere with and will cooperate with Lender's collection of such Rents.

(c)    If an Event of Default has occurred and is continuing, then Lender will have each of the following rights and may take any of the following actions:

New Jersey                                                                Page 8
Multifamily Mortgage, Assignment of Rents
and Security Agreement

(i)     Lender may, regardless of the adequacy of Lender's security or the solvency of Borrower and even in the absence of waste, enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the making of Repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing the assignment of Rents pursuant to Section 3(a), protecting the Mortgaged Property or the security of this Instrument, or for such other purposes as Lender in its discretion may deem necessary or desirable.

(ii)     Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law.

(iii)     If Borrower is a housing cooperative corporation or association, Borrower hereby agrees that if a receiver is appointed, the order appointing the receiver may contain a provision requiring the receiver to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including deposits to Reserve Funds, it being acknowledged and agreed that the Indebtedness is an obligation of Borrower and must be paid out of maintenance charges payable by Borrower's tenant shareholders under their proprietary leases or occupancy agreements.

(iv)     Lender or the receiver, as the case may be, will be entitled to receive a reasonable fee for managing the Mortgaged Property.

(v)     Immediately upon appointment of a receiver or immediately upon Lender's entering upon and taking possession and control of the Mortgaged Property, Borrower will surrender possession of the Mortgaged Property to Lender or the receiver, as the case may be, and will deliver to Lender or the receiver, as the case may be, all documents, records (including records on electronic or magnetic media), accounts, surveys,

New Jersey                             Page 9
Multifamily Mortgage, Assignment of Rents
and Security Agreement

plans, and specifications relating to the Mortgaged Property and all security deposits and prepaid Rents.

(vi)  If Lender takes possession and control of the Mortgaged Property, then Lender may exclude Borrower and its representatives from the Mortgaged Property.

Borrower acknowledges and agrees that the exercise by Lender of any of the rights conferred under this Section 3 will not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and Improvements.

(d)  If Lender enters the Mortgaged Property, Lender will be liable to account only to Borrower and only for those Rents actually received. Except to the extent of Lender's gross negligence or willful misconduct, Lender will not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Mortgaged Property, by reason of any act or omission of Lender under Section 3(c), and Borrower hereby releases and discharges Lender from any such liability to the fullest extent permitted by law.

(e)  If the Rents are not sufficient to meet the costs of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes will become an additional part of the Indebtedness as provided in Section 7.

(f)  Any entering upon and taking of control of the Mortgaged Property by Lender or the receiver, as the case may be, and any application of Rents as provided in this Instrument will not cure or waive any Event of Default or invalidate any other right or remedy of Lender under applicable law or provided for in this Instrument.

4.  **Assignment of Leases; Leases Affecting the Mortgaged Property.**

(a)  As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all of Borrower's right, title and interest in, to and under the Leases, including Borrower's right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.

(i)  It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all of Borrower's right, title and interest in, to and under the Leases. Borrower and Lender intend this assignment of the Leases to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only.

(ii) For purposes of giving effect to this absolute assignment of the Leases, and for no other purpose, the Leases will not be deemed to be a part of the Mortgaged Property.

(iii) However, if this present, absolute and unconditional assignment of the Leases is not enforceable by its terms under the laws of the Property Jurisdiction, then the Leases will be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a Lien on the Leases in favor of Lender, which Lien will be effective as of the date of this Instrument.

(b) Until Lender gives Notice to Borrower of Lender's exercise of its rights under this Section 4, Borrower will have all rights, power and authority granted to Borrower under any Lease (except as otherwise limited by this Section or any other provision of this Instrument), including the right, power and authority to modify the terms of any Lease or extend or terminate any Lease. Upon the occurrence of an Event of Default, and during the continuance of such Event of Default, the permission given to Borrower pursuant to the preceding sentence to exercise all rights, power and authority under Leases will automatically terminate. Borrower will comply with and observe Borrower's obligations under all Leases, including Borrower's obligations pertaining to the maintenance and disposition of tenant security deposits.

(c) (i) Borrower acknowledges and agrees that the exercise by Lender, either directly or by a receiver, of any of the rights conferred under this Section 4 will not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and the Improvements.

(ii) The acceptance by Lender of the assignment of the Leases pursuant to Section 4(a) will not at any time or in any event obligate Lender to take any action under this Instrument or to expend any money or to incur any expenses.

(iii) Except to the extent of Lender's gross negligence or willful misconduct, Lender will not be liable in any way for any injury or damage to person or property sustained by any Person in or about the Mortgaged Property.

(iv) Prior to Lender's actual entry into and taking possession of the Mortgaged Property, Lender will not be obligated for any of the following:

(A) Lender will not be obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease).

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

Page 11

(B) Lender will not be obligated to appear in or defend any action or proceeding relating to the Lease or the Mortgaged Property.

(C) Lender will not be responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property. The execution of this Instrument by Borrower will constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and will be that of Borrower, prior to such actual entry and taking of possession.

(d) Upon delivery of Notice by Lender to Borrower of Lender's exercise of Lender's rights under this Section 4 at any time after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, Lender immediately will have all rights, powers and authority granted to Borrower under any Lease, including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.

(e) Borrower will, promptly upon Lender's request, deliver to Lender an executed copy of each residential Lease then in effect.

(f) If Borrower is a cooperative housing corporation or association, notwithstanding anything to the contrary contained in this Instrument, so long as Borrower remains a cooperative housing corporation or association and is not in breach of any covenant of this Instrument, Lender consents to the following:

(i) Borrower may execute leases of apartments for a term in excess of 2 years to a tenant shareholder of Borrower, so long as such leases, including proprietary leases, are and will remain subordinate to the Lien of this Instrument.

(ii) Borrower may surrender or terminate such leases of apartments where the surrendered or terminated lease is immediately replaced or where Borrower makes its best efforts to secure such immediate replacement by a newly-executed lease of the same apartment to a tenant shareholder of Borrower. However, no consent is given by Lender to any execution, surrender, termination or assignment of a lease under terms that would waive or reduce the obligation of the resulting tenant shareholder under such lease to pay cooperative assessments in full when due or the obligation of the former tenant shareholder to pay any unpaid portion of such assessments.

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

5.   **Prepayment Charge.**  Borrower will be required to pay a Prepayment charge in connection with certain prepayments of the Indebtedness, including a payment made after Lender's exercise of any right of acceleration of the Indebtedness, as provided in the Note.

6.   **Application of Payments.**  If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Lender may apply that payment to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Neither Lender's acceptance of an amount that is less than all amounts then due and payable nor Lender's application of such payment in the manner authorized will constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Borrower's obligations under this Instrument, the Note and all other Loan Documents will remain unchanged.

7.   **Protection of Lender's Security; Instrument Secures Future Advances.**

(a)   If Borrower fails to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Mortgaged Property, Lender's security or Lender's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws, fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, file such documents, disburse such sums and take such actions as Lender reasonably deems necessary to perform such obligations of Borrower and to protect Lender's interest, including all of the following:

(i)   Lender may pay Attorneys' Fees and Costs.

(ii)   Lender may pay fees and out-of-pocket expenses of accountants, inspectors and consultants.

(iii)   Lender may enter upon the Mortgaged Property to make Repairs or secure the Mortgaged Property.

(iv)   Lender may procure the Insurance required by the Loan Agreement.

(v)   Lender may pay any amounts which Borrower has failed to pay under the Loan Agreement.

(vi)   Lender may perform any of Borrower's obligations under the Loan Agreement.

Page 13

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

(vii)   Lender may make advances to pay, satisfy or discharge any obligation of Borrower for the payment of money that is secured by a Prior Lien.

(b)   Any amounts disbursed by Lender under this Section 7, or under any other provision of this Instrument that treats such disbursement as being made under this Section 7, will be secured by this Instrument, will be added to, and become part of, the principal component of the Indebtedness, will be immediately due and payable and will bear interest from the date of disbursement until paid at the Default Annual Interest Rate.

(c)   Nothing in this Section 7 will require Lender to incur any expense or take any action.

8.   **Events of Default.** An Event of Default under the Loan Agreement will constitute an Event of Default under this Instrument.

9.   **Remedies Cumulative.** Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument, the Loan Agreement or any other Loan Document or afforded by applicable law or equity, and each will be cumulative and may be exercised concurrently, independently or successively, in any order. Lender's exercise of any particular right or remedy will not in any way prevent Lender from exercising any other right or remedy available to Lender. Lender may exercise any such remedies from time to time and as often as Lender chooses.

10.   **Waiver of Statute of Limitations, Offsets and Counterclaims.** Borrower waives the right to assert any statute of limitations as a bar to the enforcement of the Lien of this Instrument or to any action brought to enforce any Loan Document. Borrower hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Lender or otherwise to offset any obligations to make the payments required by the Loan Documents. No failure by Lender to perform any of its obligations under this Instrument will be a valid defense to, or result in any offset against, any payments that Borrower is obligated to make under any of the Loan Documents.

11.   **Waiver of Marshalling.**

(a)   Notwithstanding the existence of any other security interests in the Mortgaged Property held by Lender or by any other party, Lender will have the right to determine the order in which any or all of the Mortgaged Property will be subjected to the remedies provided in this Instrument, the Note, the Loan Agreement or any other Loan Document or under applicable law. Lender will have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies.

New Jersey                                                                                      Page 14
Multifamily Mortgage, Assignment of Rents
and Security Agreement

(b)    Borrower and any party who now or in the future acquires a security interest in the Mortgaged Property and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Mortgaged Property be sold in the inverse order of alienation or that any of the Mortgaged Property be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

12.    **Reserved.**

13.    **Governing Law; Consent to Jurisdiction and Venue.** This Instrument, and any Loan Document which does not itself expressly identify the law that is to apply to it, will be governed by the laws of the Property Jurisdiction. Borrower agrees that any controversy arising under or in relation to the Note, this Instrument or any other Loan Document may be litigated in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction will have jurisdiction over all controversies that may arise under or in relation to the Note, any security for the Indebtedness or any other Loan Document. Borrower irrevocably consents to service, jurisdiction and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise. However, nothing in this Section 13 is intended to limit Lender's right to bring any suit, action or proceeding relating to matters under this Instrument in any court of any other jurisdiction.

14.    **Notice.** All Notices, demands and other communications under or concerning this Instrument will be governed by the terms set forth in the Loan Agreement.

15.    **Successors and Assigns Bound.** This Instrument will bind the respective successors and assigns of Borrower and Lender, and the rights granted by this Instrument will inure to Lender's successors and assigns.

16.    **Joint and Several Liability.** If more than one Person signs this Instrument as Borrower, the obligations of such Persons will be joint and several.

17.    **Relationship of Parties; No Third Party Beneficiary.**

(a)    The relationship between Lender and Borrower will be solely that of creditor and debtor, respectively, and nothing contained in this Instrument will create any other relationship between Lender and Borrower. Nothing contained in this Instrument will constitute Lender as a joint venturer, partner or agent of Borrower, or render Lender liable for any debts, obligations, acts, omissions, representations or contracts of Borrower.

(b)    No creditor of any party to this Instrument and no other Person will be a third party beneficiary of this Instrument or any other Loan Document. Without limiting the generality of the preceding sentence, (i) any arrangement ("**Servicing Arrangement**") between Lender and any Loan Servicer for loss sharing or

interim advancement of funds will constitute a contractual obligation of such Loan Servicer that is independent of the obligation of Borrower for the payment of the Indebtedness, (ii) Borrower will not be a third party beneficiary of any Servicing Arrangement, and (iii) no payment by the Loan Servicer under any Servicing Arrangement will reduce the amount of the Indebtedness.

18.  **Severability; Amendments.**

   (a)   The invalidity or unenforceability of any provision of this Instrument will not affect the validity or enforceability of any other provision, and all other provisions will remain in full force and effect. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument.

   (b)   This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

19.  **Construction.**

   (a)   The captions and headings of the Sections of this Instrument are for convenience only and will be disregarded in construing this Instrument. Any reference in this Instrument to a "Section" will, unless otherwise explicitly provided, be construed as referring to a Section of this Instrument.

   (b)   Any reference in this Instrument to a statute or regulation will be construed as referring to that statute or regulation as amended from time to time.

   (c)   Use of the singular in this Instrument includes the plural and use of the plural includes the singular. The use of one gender includes the other gender, as the context may require.

   (d)   As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation."

   (e)   Unless the context requires otherwise, (i) any definition of or reference to any agreement, instrument or other document in this Instrument will be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Instrument), and (ii) any reference in this Instrument to any Person will be construed to include such Person's successors and assigns.

   (f)   Any reference in this Instrument to "Lender's requirements," "as required by Lender," or similar references will be construed, after Securitization, to mean Lender's requirements or standards as determined in accordance with Lender's and Loan Servicer's obligations under the terms of the Securitization documents.

20. **Subrogation.** If, and to the extent that, the proceeds of the Loan evidenced by the Note, or subsequent advances under Section 7, are used to pay, satisfy or discharge a Prior Lien, such loan proceeds or advances will be deemed to have been advanced by Lender at Borrower's request, and Lender will automatically, and without further action on its part, be subrogated to the rights, including Lien priority, of the owner or holder of the obligation secured by the Prior Lien, whether or not the Prior Lien is released.

**END OF UNIFORM COVENANTS; STATE-SPECIFIC PROVISIONS FOLLOW**

21-30. **Reserved.**

31. **Acceleration; Remedies.** At any time during the existence of an Event of Default, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, and may foreclose this Instrument by judicial proceeding and may invoke any other remedies permitted by New Jersey law, provided in equity or provided in this Instrument or in any other Loan Document. Lender will be entitled to collect all costs and expenses incurred in pursuing such remedies, including Attorneys' Fees and Costs permitted by Rules of Court, costs of documentary evidence, abstracts and title reports.

32. **Release.** Upon payment of the Indebtedness, Lender will cancel this Instrument. Borrower will pay Lender's reasonable costs incurred in canceling this Instrument.

33. **No Claim of Credit for Taxes.** Borrower will not make or claim credit on or deduction from the principal or interest on the sums secured by this Instrument by reason of any municipal or governmental taxes, assessments or charges assessed upon the Mortgaged Property, or claim any deduction from the taxable value of the Mortgaged Property by reason of this Instrument.

34. **Loan Subject to Modification.** This Instrument is subject to "modification" as such term is defined in N.J.S.A. 46:9-8.1 *et seq.* and will be subject to the priority provisions thereof.

35. **Additional Environmental Provisions.** Any reference in this Instrument or in any other Loan Document to Section 5.05 or Section 6.12 of the Loan Agreement will be construed as referring together to Section 5.05 or Section 6.12 of the Loan Agreement and this Section. In addition to the representations, warranties and covenants of Borrower in Section 5.05 and 6.12 of the Loan Agreement, Borrower represents, warrants, and covenants as follows:

    (a)    None of the real property owned and/or occupied by Borrower and located in New Jersey, including the Mortgaged Property, has been used, is now being used, or, without the prior express written consent of Lender, will in the future be used as a "Major Facility," as that term is defined in N.J.S.A. 58:10-23.11b.

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

(b)    If any real property owned by Borrower and located in New Jersey, including the Mortgaged Property, is used in the future, with the prior express written consent of Lender, as a Major Facility, then Borrower will furnish the New Jersey Department of Environmental Protection with all the information required by N.J.S.A. 58:10-23.11d1 through 11d17 inclusive with respect to that property. Borrower further covenants and agrees that, so long as Borrower owns or operates any real property located in New Jersey which is used as a Major Facility, Borrower will duly file or cause to be filed with the Director or the Division of Taxation in the New Jersey Department of the Treasury, a tax report or return and will pay or make provision in accordance with and pursuant to N.J.S.A. 58:10-23.11h.

(c)    No Lien has been attached to any revenues or any real or any personal property owned by Borrower and located in New Jersey, including the Mortgaged Property, as a result of the administrator of the New Jersey Spill Compensation Fund expending monies from such fund to pay for "Damages," as that term is defined in N.J.S.A. 58:10-23.11g, and/or "Clean up and Removal Costs," as that term is defined in N.J.S.A. 58:10-23.11b, arising from an intentional or unintentional action or omission by Borrower or any previous owner and/or operator of such real property resulting in the releasing, spilling, pumping, pouring, emitting, emptying or dumping of any Hazardous Materials into the waters of New Jersey or onto land from which it might flow or drain into such waters or into waters outside the jurisdiction of New Jersey where damage may have resulted to the lands, waters, fish, shellfish, wildlife, biota, air and other resources owned, managed, held in trust or otherwise controlled by New Jersey.

(d)    In connection with any purchase of the Mortgaged Property or any other real property acquired by Borrower on or after January 1, 1984, Borrower required that the seller of such real property, including the Mortgaged Property, comply with the applicable provisions of the New Jersey Industrial Site Recovery Act, formerly known as the Environmental Cleanup Responsibility Act (N.J.S.A. 13:1K-6 *et seq.*), as amended, and the seller did comply with such provisions.

(e)    If there is a Lien filed against the Mortgaged Property by the New Jersey Department of Environmental Protection pursuant to and in accordance with the provisions of N.J.S.A. 58:10-23.11f, as a result of the administrator of the New Jersey Spill Compensation Fund having expended monies from such fund to pay for "Damages," as that term is defined in N.J.S.A. 58:10-23.11g, and/or "Cleanup and Removal Costs," as that term is defined in N.J.S.A. 58:10-23.11b, arising from an intentional or unintentional action or omission of Borrower, resulting in the releasing, spilling, pumping, pouring, emitting, emptying or dumping of any Hazardous Materials into the waters of New Jersey or onto lands from which it might flow or drain into such waters, within 30 days from the date that Borrower is given notice that the Lien has been placed against the Mortgaged Property or

within such shorter period of time if New Jersey has commenced steps to cause the Mortgaged Property to be sold pursuant to the Lien, Borrower will take one of the following actions:

(i)    Pay the claim and remove the Lien from the Mortgaged Property.

(ii)    Furnish one of the following to Lender:

(A)    A bond reasonably satisfactory to Lender and the title company which issued the title policy accepted by Lender contemporaneously with the execution and recordation of this Instrument, in the amount of the claim out of which the Lien arises.

(B)    A cash deposit in the amount of the claim out of which the Lien arises.

(C)    Other security reasonably satisfactory to Lender in an amount sufficient to discharge the claim out of which the Lien arises.

(f)    Borrower hereby agrees that if the provisions of the New Jersey Industrial Site Recovery Act (N.J.S.A. 13:1K-6 *et seq.*) become applicable to all or any portion of the Mortgaged Property subsequent to the date of this Instrument, Borrower will give prompt Notice to Lender of such applicability, and Borrower will take immediate requisite action to ensure full compliance with such Act.

36.    <u>TRUE AND CORRECT COPY</u>. BORROWER HEREBY DECLARES THAT BORROWER HAS READ THIS INTRUMENT, HAS RECEIVED A COMPLETELY FILLED-IN COPY OF IT WITHOUT CHARGE THEREFOR, AND HAS SIGNED THIS INSTRUMENT AS OF THE DATE AT THE TOP OF THE FIRST PAGE.

37.    WAIVER OF TRIAL BY JURY.

(a)    BORROWER AND LENDER EACH COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY.

(b)    BORROWER AND LENDER EACH WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

Page 19

38. **Obligation to Pay at Default Rate.** Borrower agrees that it is the intention of Borrower and Lender that in the event of a foreclosure or other action to enforce the terms of any or all of the Loan Documents, and the entry of a judgment in such foreclosure or other enforcement action ("**Judgment**"), Borrower's obligation to pay Lender interest at the Default Rate (as defined in the Note), any taxes, insurance, premiums or other charges advanced by Lender, or attorney's fees or other costs and expenses incurred by Lender with respect to any or all of the Loan Documents, whether paid or incurred before or after the entry of such Judgment, will not be deemed to have merged into the Judgment and will survive the entry of such Judgment and continue in full force and effect until all such sums have been paid in full to Lender.

39. **Attached Riders.** The following Riders are attached to this Instrument:

    NONE

40. **Attached Exhibits.** The following Exhibits, if marked with an "X" in the space provided, are attached to this Instrument:

    | |X| | Exhibit A | Description of the Land (required) |
    | |_| | Exhibit B | Modifications to Instrument |
    | |_| | Exhibit C | Ground Lease Description (if applicable) |

    REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

Page 20

IN WITNESS WHEREOF, Borrower has signed and delivered this Instrument or has caused this Instrument to be signed and delivered by its duly authorized representative.

BORROWER:

LENOX HUDSON LLC, a
New Jersey limited liability company

By: _____
Name:    Seth Levine
Title:    Manager

STATE OF  New Jersey         )
                             ): ss.:
COUNTY OF  Bergen            )

I CERTIFY that on __March 23__, 2018, SETH LEVINE, personally came before me and this person acknowledged under oath, to my satisfaction, that:

a) this person is the MANAGER of LENOX HUDSON LLC, a New Jersey limited liability company named in this document;

b) this person is the attesting witness to the signing of this document by the proper corporate officer who is MANAGER of the limited liability company;

c) this document was signed and delivered by the limited liability company as its voluntary act duly authorized by a proper resolution of its Board of Directors;

(d) this person knows the proper seal of the limited liability company which was affixed to this document; and

(e) this person signed this proof to attest to the truth of these facts.

Signed and sworn to before me on __March 23__, 2018.

_____
Notary Public

                              ANDREW SELEVAN
                         NOTARY PUBLIC OF NEW JERSEY
                        My Commission Expires 1/25/2021

Print Name: __Andrew Selevan__

My commission expires:

_____

New Jersey                                              Page 21
Multifamily Mortgage, Assignment of Rents
and Security Agreement

## EXHIBIT A

## DESCRIPTION OF THE LAND

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEGINNING at a point located in the southwesterly sideline of Hudson Street, said point being distant 137.45 feet measured southeasterly along the aforementioned sideline of Hudson Street from its intersection with the southwesterly sideline of Kansas Street, as produced, and from said beginning point running; thence

1. Along the aforementioned sideline of Hudson Street, South 10 degrees 00 minutes 00 seconds East, 84.60 feet to a point; thence

2. South 80 degrees 00 minutes 00 seconds West, 188.60 feet to a point; thence

3. North 03 degrees 49 minutes 06 seconds East, 87.12 feet to a point; thence

4. North 80 degrees 00 minutes 00 seconds East, 167.79 feet to the point and place of BEGINNING.

Being in accordance with a survey prepared by Hallard & Associates, Watchung, New Jersey dated April 20, 2007.

NOTE FOR INFORMATION:  Being Lot(s) 24, Block 67, Tax Map of the City of Hackensack, County of Bergen.

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

Page A-1

**EXHIBIT B**

MODIFICATIONS TO INSTRUMENT

The following modifications are made to the text of the Instrument that precedes this Exhibit:

NONE

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/

*SEAL OF BERGEN COUNTY — NEW JERSEY*

INSTRUMENT # 18-022345.02

V 02898 2111

RECORDED DATE: 04/05/2018 10:01:56 AM

| | |
|---|---|
| Transaction #: | 9090353 |
| Document Page Count: | 3 |
| Operator Id: | CLERK |

**Document Type:** Assignment of Mortgage

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MADISON TITLE AGENCY, LLC<br>1125 OCEAN AVENUE<br>LAKEWOOD NJ 08701<br>ERECORDED | Madison Title Agency, LLC<br><br><br>(732) 333-2667 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| HUNT MORTGAGE PARTNERS LLC | FEDERAL HOME LOAN MORTGAGE CORPORATION |
| **ADDITIONAL PRIMARY NAMES** | **ADDITIONAL SECONDARY NAMES** |
| | |

**MARGINAL REFERENCES:**   V BK 02898 PG 2086

DOCUMENT DATE:  03/19/2018
MUNICIPALITY: HACKENSACK

FEES / TAXES:
| | |
|---|---|
| Recording Fee: Assignment of Mortgage | $40.00 |
| Additional Pages Fee | $20.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| Total: | $63.00 |

INSTRUMENT #: 18-022345.02
Recorded Date: 04/05/2018 10:01:56 AM

I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.

*John S. Hogan*
John S. Hogan
Bergen County Clerk

Recording Fees: $63.00
Realty Transfer Tax Fees: $0.00

## OFFICIAL RECORDING COVER PAGE

Page 1 of 4

# PLEASE DO NOT DETACH

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Record and Return to:
MADISON TITLE AGENCY, LLC
COMMERCIAL DEPARTMENT
1125 OCEAN AVENUE
LAKEWOOD, NJ 08701
Mtan]L 122362

Prepared by, and after recording
return to:

Cassin & Cassin LLP
2900 Westchester Avenue, Suite 402
Purchase, New York 10577
Attention: Recording Department

Freddie Mac Loan Number: 501232168
Property Name: Lenox Hudson

| | |
|---|---|
| Block: | 67 |
| Lot: | 24 |
| City: | HACKENSACK |
| County: | BERGEN |

## ASSIGNMENT OF SECURITY INSTRUMENT

### (Revised 12-19-2014)

FOR VALUABLE CONSIDERATION, **HUNT MORTGAGE PARTNERS, LLC**, a limited liability company organized and existing under the laws of Delaware ("Assignor"), having its principal place of business at c/o Hunt Mortgage Group, 11501 Outlook Street, Suite 300, Overland Park, Kansas 66211, hereby assigns, grants, sells and transfers to the **FEDERAL HOME LOAN MORTGAGE CORPORATION**, a corporation organized and existing under the laws of the United States ("Assignee"), having its principal place of business at 8200 Jones Branch Drive, McLean, Virginia 22102, and Assignee's successors, transferees and assigns forever, all of the right, title and interest of Assignor in and to the Multifamily Mortgage, Assignment of Rents and Security Agreement dated March 2-7 , 2018, entered into by LENOX HUDSON LLC, a New Jersey limited liability company ("Borrower") for the benefit of Assignor, securing an indebtedness of Borrower to Assignor in the principal amount of **$2,165,000.00** recorded immediately prior hereto in the land records of the **City of Hackensack, County of Bergen, State of New Jersey** ("**Instrument**"), which indebtedness is secured by the property d escribed in <u>Exhibit A</u> attached to this Assignment and incorporated into it by this reference.

Together with the Note Hybrid ARM – SBL or other obligation described in the Instrument and all obligations secured by the Instrument now or in the future.

Assignment of Security Instrument

IN WITNESS WHEREOF, Assignor has executed this Assignment as of March 27, 2018 to be effective as of the effective date of the Instrument.

ASSIGNOR:

HUNT MORTGAGE PARTNERS, LLC, a
Delaware limited liability company

By: _____

Name:    Vanessa L. Howes
Title:    Vice President

STATE OF       New York }
                         }: ss.:
COUNTY OF      New York }

I CERTIFY that on March 19, 2018, VANESSA L. HOWES, VICE PRESIDENT personally came before me and this person acknowledged under oath, to my satisfaction, that:

a) this person is the **VICE PRESIDENT** of **HUNT MORTGAGE PARTNERS, LLC,** a Delaware limited liability company named in this document;

b) this person is the attesting witness to the signing of this document by the proper corporate officer who is VICE PRESIDENT of the limited liability company;

c) this document was signed and delivered by the limited liability company as its voluntary act duly authorized by a proper resolution of its Board of Directors;

(d) this person knows the proper seal of the limited liability company which was affixed to this document; and

(e) this person signed this proof to attest to the truth of these facts.

Signed and sworn to before me on March 19, 2018.

_____
Notary Public                    Regina E. Girardi

Print Name: _____

My commission expires:              REGINA E GIRARDI
                                    Notary Public, State of New York
_____                 No. 01GI6134076
                                    Qualified in Nassau County
                                    Commission Expires September 26, 2021

Assignment of Security Instrument

**EXHIBIT A**

DESCRIPTION OF THE PROPERTY

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEGINNING at a point located in the southwesterly sideline of Hudson Street, said point being distant 137.45 feet measured southeasterly along the aforementioned sideline of Hudson Street from its intersection with the southwesterly sideline of Kansas Street, as produced, and from said beginning point running; thence

1. Along the aforementioned sideline of Hudson Street, South 10 degrees 00 minutes 00 seconds East, 84.60 feet to a point; thence

2. South 80 degrees 00 minutes 00 seconds West, 188.60 feet to a point; thence

3. North 03 degrees 49 minutes 06 seconds East, 87.12 feet to a point; thence

4. North 80 degrees 00 minutes 00 seconds East, 167.79 feet to the point and place of BEGINNING.

Being in accordance with a survey prepared by Hallard & Associates, Watchung, New Jersey dated April 20, 2007.

NOTE FOR INFORMATION:  Being Lot(s) 24, Block 67, Tax Map of the City of Hackensack, County of Bergen.

Page A-1

Assignment of Security Instrument

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 18-055261

V 03015 2035

RECORDED DATE: 08/01/2018 02:40:33 PM

| | |
|---|---|
| Transaction #: | 9139296 |
| Document Page Count: | 4 |
| Operator Id: | CLERK |

**Document Type:** Assignment of Mortgage

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MCCOY & ORTA, P.C.<br>100 N. BROADWAY, SUITE 2600<br>OKLAHOMA CITY OK 73102<br>ERECORDED | McCoy & Orta, P.C.<br><br><br>(405) 236-0003 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION | US BANK NA |
| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |
| | WELLS FARGO COMMERCIAL MORTGAGE<br>SECURITIES INCORPORATED<br>MULTIFAMILY MORTGAGE PASS THROUGH<br>CERTIFICATES SERIES 2018 SB51 |

**MARGINAL REFERENCES:**   V 02898 2086

DOCUMENT DATE: 07/05/2018
MUNICIPALITY: HACKENSACK

FEES / TAXES:

| | |
|---|---|
| Recording Fee: Assignment of Mortgage | $40.00 |
| Additional Pages Fee | $30.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| Total: | $73.00 |

INSTRUMENT #: 18-055261
Recorded Date: 08/01/2018 02:40:33 PM

I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.

*John S. Hogan*

John S. Hogan
Bergen County Clerk

Recording Fees: $73.00
Realty Transfer Tax Fees: $0.00

OFFICIAL RECORDING COVER PAGE                     Page 1 of 5

# PLEASE DO NOT DETACH
### THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

This instrument was prepared by and
after recordation return to:

McCoy & Orta, P.C.
100 North Broadway, 26th Floor
Oklahoma City, OK 73102
Telephone: (888) 236-0007

| Jurisdiction: | Bergen County |
| State: | New Jersey |
| Loan No.: | 501232168 |
| M&O Ref.: | 7486.119 |
| Loan Name: | Lenox Hudson |

## ASSIGNMENT OF MULTIFAMILY MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

FOR VALUE RECEIVED, **FEDERAL HOME LOAN MORTGAGE CORPORATION**, whose address is 8200 Jones Branch Drive, McLean, VA 22102 ("Assignor"), conveys, assigns, transfers, and sets over unto **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE SECURITIES, INC., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-SB51**, ("Assignee"), whose address is One Federal Street, 3rd Floor, Mail Code EX-MA-FED, Boston, MA 02110 without recourse, representation or warranty, express or implied, except as set forth in that certain related Mortgage Loan Purchase Agreement, all the right, title and interest of Assignor in and to the Multifamily Mortgage, Assignment of Rents and Security Agreement and other documents, if any, described in Schedule A attached hereto and incorporated herein, together with the note or notes described therein, and all other documents and instruments relating to or securing said Multifamily Mortgage, Assignment of Rents and Security Agreement or note or notes described therein, encumbering, among other things, the premises described in Exhibit A attached hereto and incorporated herein and the improvements thereon.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns forever.

Dated this 5th day of July, 2018, to be effective as of the 24th day of July, 2018.

FEDERAL HOME LOAN MORTGAGE CORPORATION,
a corporation organized and existing under the laws of the
United States

By: _____
Name: Mary Ellen Slavinskas
Title:  Director
         Multifamily Operations

STATE OF VIRGINIA          §
                           §
COUNTY OF FAIRFAX          §

On the 5th day of July, 2018, before me, the undersigned, a Notary Public in and
for said State, personally appeared Mary Ellen Slavinskas, Director, Multifamily
Operations, of Federal Home Loan Mortgage Corporation, personally known to me or
proved to me on the basis of satisfactory evidence to be the person whose name is
subscribed to the within instrument and acknowledged to me that she executed the same in
her authorized capacity, and that by her signature on the instrument the person, or the
entity upon behalf of which the person acted, executed the instrument, and that such
individual made such appearance before the undersigned, in Fairfax County, Virginia.

WITNESS my hand and official seal.

_____
Name of Notary Public

[ S E A L ]
My Commission Expires:

```
ADRIENNE HOLLEY PUCHALSKI
        NOTARY PUBLIC
    REGISTRATION # 310096
COMMONWEALTH OF VIRGINIA
  MY COMMISSION EXPIRES
        JULY 31, 2020
```

Loan No.: 501232168
M&O File No.: 7486.119
Loan Name: Lenox Hudson
Pool: SB-51

**SCHEDULE A**

Multifamily Mortgage, Assignment of Rents and Security Agreement dated as of March 27, 2018, by LENOX HUDSON LLC, a New Jersey limited liability company, to HUNT MORTGAGE PARTNERS, LLC ("Original Lender"), in the amount of $2,165,000.00 ("Mortgage"), recorded on April 5, 2018, in Virtual Book 2898, Page 2086 in the office of the County Clerk of Bergen County, New Jersey ("Real Estate Records").

The Mortgage was assigned from Original Lender to FEDERAL HOME LOAN MORTGAGE CORPORATION by that certain Assignment of Security Instrument dated as of March 27, 2018, to be effective as of March 27, 2018, and recorded on April 5, 2018, in Virtual Book 2898, Page 2111, in the Real Estate Records.

Loan No.: 501232168
M&O File No.: 7486.119
Loan Name: Lenox Hudson
Pool: SB-51

**EXHIBIT A**
**LEGAL DESCRIPTION**

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEGINNING at a point located in the southwesterly sideline of Hudson Street, said point being distant 137.45 feet measured southeasterly along the aforementioned sideline of Hudson Street from its intersection with the southwesterly sideline of Kansas Street, as produced, and from said beginning point running; thence

1. Along the aforementioned sideline of Hudson Street, South 10 degrees 00 minutes 00 seconds East, 84.60 feet to a point; thence

2. South 80 degrees 00 minutes 00 seconds West, 168.60 feet to a point; thence

3. North 03 degrees 49 minutes 06 seconds East, 87.12 feet to a point; thence

4. North 80 degrees 00 minutes 00 seconds East, 167.79 feet to the point and place of BEGINNING.

Being in accordance with a survey prepared by Hallard & Associates, Watchung, New Jersey dated April 20, 2007.

NOTE FOR INFORMATION:  Being Lot(s) 24, Block 67, Tax Map of the City of Hackensack, County of Bergen.

Loan No.: 501232168
M&O File No.: 7486.119
Loan Name: Lenox Hudson
Pool: SB-51

John S. Hogan
Bergen County Clerk

**Bergen County Clerk**
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 18-022345.03

V 02898 2115

RECORDED DATE: 04/05/2018 10:01:57 AM

FILE NUMBER : 000738R-18

| Document Type: | UCC1 - Real Estate Financial Stmt | Transaction #: | 9090353 |
|---|---|---|---|
| | | Document Page Count: | 6 |
| | | Operator Id: | CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MADISON TITLE AGENCY, LLC<br>1125 OCEAN AVENUE<br>LAKEWOOD  NJ  08701<br>ERECORDED | Madison Title Agency, LLC<br><br><br>(732) 333-2667 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| LENOX HUDSON LLC | FEDERAL HOME LOAN MORTGAGE CORPORATION |
| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |
| | HUNT MORTGAGE PARTNERS LLC |

MARGINAL REFERENCES:

| MUNICIPALITY: HACKENSACK | INSTRUMENT #: 18-022345.03 |
|---|---|
| FEES / TAXES: | Recorded Date: 04/05/2018 10:01:57 AM |

Recording Fee: UCC 1 - Financial
Statement                                    $25.00
Total:                                        $25.00

I hereby CERTIFY that this document is recorded
in the Clerk's Office in Bergen County, New
Jersey.

John S. Hogan
Bergen County Clerk

Recording Fees: $25.00
Realty Transfer Tax Fees: $0.00

**OFFICIAL RECORDING COVER PAGE**                    Page 1 of 7

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Cassin & Cassin LLP
2900 Westchester Avenue, Suite 402
Purchase, New York 10577
Attn: Recording Departments

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| LENOX HUDSON LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 210 River Street, Suite 12 | Hackensack | NJ | 07601 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 8200 Jones Branch Drive | McLean | VA | 22102 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

See Schedule B to UCC attached hereto and a part hereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:  ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:  ☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
File with the County Clerk of Bergen County, State of New Jersey     Hunt/Lenox Hudson     Freddie Mac Loan Number: 501232168

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

**LENOX HUDSON LLC**

OR
9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only _one_ additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR
10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME _or_ ☒ ASSIGNOR SECURED PARTY'S NAME: Provide only _one_ name (11a or 11b)

11a. ORGANIZATION'S NAME

**HUNT MORTGAGE PARTNERS, LLC**

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Hunt Mortgage Group 11501 Outlook Street, Suite 300 | Overland Park | KS | 66211 | USA |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

---

13. [X] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   [X] is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

Lenox Hudson
107 – 109 Hudson St, Hackensack, New Jersey 07601

Block:     67
Lot:       24
City:      HACKENSACK
County:    BERGEN

17. MISCELLANEOUS:     File with the County Clerk of Bergen County, State of New Jersey

UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)



Financing Statement Exhibit B – SBL
(Revised 11-02-2015)

## EXHIBIT B

All of Debtor's present and future right, title, and interest in and to all of the following:

(1)     "**Fixtures**," which means all property owned by Debtor which is attached to the real property described in Exhibit A ("**Land**") and/or the improvements located on the Land ("**Improvements**") ("**Property**" means the Land and/or the Improvements) so as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators and installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment.

(2)     "**Personalty**," which means all of the following:

    (i)     Accounts (including deposit accounts) of Debtor related to the Property.

    (ii)    Equipment and inventory owned by Debtor, which are used now or in the future in connection with the ownership, management or operation of the Land or Improvements or are located on the Land or Improvements, including furniture, furnishings, machinery, building materials, goods, supplies, tools, books, records (whether in written or electronic form) and computer equipment (hardware and software).

    (iii)   Other tangible personal property owned by Debtor which is used now or in the future in connection with the ownership, management or operation of the Land or Improvements or is located on the Land or in the Improvements, including ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances (other than Fixtures).

    (iv)    Any operating agreements relating to the Land or the Improvements.

    (v)     Any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements.

Financing Statement Exhibit B - SBL

(vi)    All other intangible property, general intangibles and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land and including subsidy or similar payments received from any sources, including a **"Governmental Authority"** (defined as any board, commission, department, agency or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Property, or the use, operation or improvement of the Property, or over Debtor).

(vii)   Any rights of Debtor in or under any letter of credit required under the terms of the Loan Agreement evidencing and securing the loan (**"Loan"**) secured by this financing statement (**"Loan Agreement"**).

(3)    All current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights of way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated.

(4)    All proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Property, whether or not Debtor obtained the insurance pursuant to Secured Party's requirement.

(5)    All awards, payments and other compensation made or to be made by any Governmental Authority with respect to the Land, or if Debtor's interest in the Land is pursuant to a ground lease, the ground lease and the leasehold estate created by such ground lease (**"Leasehold Estate"**), the Improvements, the Fixtures, the Personalty or any other part of the Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof.

(6)    All contracts, options and other agreements for the sale of the Land, or the Leasehold Estate, as applicable, the Improvements, the Fixtures, the Personalty or any other part of the Property entered into by Debtor now or in the future, including cash or securities deposited to secure performance by parties of their obligations.

(7)    All **"Rents,"** which means all rents (whether from residential or non-residential space), revenues and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Property, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Debtor is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due or to become due.

(8)     All "Leases," which means all present and future leases, subleases, licenses, concessions or grants or other possessory interests in force now or hereafter, whether oral or written, covering or affecting the Property, or any portion of the Property (including proprietary leases or occupancy agreements if Debtor is a cooperative housing corporation), and all modifications, extensions or renewals.

(9)     All earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Property, and all undisbursed proceeds of the Loan.

(10)    All deposits to a "**Reserve Fund**" (defined as all amounts deposited by the Debtor with Secured Party in connection with the Loan for the payment of taxes or insurance premiums or as otherwise required pursuant to the Loan Agreement), whether in cash or as a letter of credit.

(11)    All refunds or rebates of taxes by a Governmental Authority (other than refunds applicable to periods before the real property tax year in which this financing statement is recorded or filed) or insurance premiums by an insurance company.

(12)    All tenant security deposits which have not been forfeited by any tenant under any Lease and any bond or other security in lieu of such deposits.

(13)    All names under or by which the Property or any part of it may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Property.

(14)    All proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds.

**[NO FURTHER TEXT ON THIS PAGE]**

## EXHIBIT A

## LEGAL DESCRIPTION

All that certain lot, place or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEGINNING at a point located in the southwesterly sideline of Hudson Street, said point being distant 137.45 feet measured southeasterly along the aforementioned sideline of Hudson Street from its intersection with the southwesterly sideline of Kansas Street, as produced, and from said beginning point running; thence

1. Along the aforementioned sideline of Hudson Street, South 10 degrees 00 minutes 00 seconds East, 84.60 feet to a point; thence

2. South 80 degrees 00 minutes 00 seconds West, 188.60 feet to a point; thence

3. North 03 degrees 49 minutes 06 seconds East, 87.12 feet to a point; thence

4. North 80 degrees 00 minutes 00 seconds East, 167.79 feet to the point and place of BEGINNING.

Being in accordance with a survey prepared by Hallard & Associates, Watchung, New Jersey dated April 20, 2007.

NOTE FOR INFORMATION:  Being Lot(s) 24, Block 67, Tax Map of the City of Hackensack, County of Bergen.

Financing Statement Exhibit B - SBL                                      Page 4

Bergen County Clerk              BK 02898  PG 2121          04/05/2018 10:01 AM      7 of 7    ** End of Document **

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/

INSTRUMENT # 18-055261.01

V 03015 2040

RECORDED DATE: 08/01/2018 02:40:34 PM

FILE NUMBER : 000738R-18

| | |
|---|---|
| | Transaction #: 9139296 |
| Document Type:   UCC Assignment | Document Page Count:   2 |
| | Operator Id:   CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MCCOY & ORTA, P.C.<br>100 N. BROADWAY, SUITE 2600<br>OKLAHOMA CITY  OK  73102<br>ERECORDED | McCoy & Orta, P.C.<br><br><br>(405) 236-0003 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| LENOX HUDSON LLC | US BANK NA |
| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |
| | WELLS FARGO COMMERCIAL MORTGAGE<br>SECURITIES INCORPORATED<br>MULTIFAMILY MORTGAGE PASS THROUGH<br>CERTIFICATES SERIES 2018 SB51 |

MARGINAL REFERENCES:

| MUNICIPALITY:  HACKENSACK | INSTRUMENT #: 18-055261.01<br>Recorded Date: 08/01/2018 02:40:34 PM |
|---|---|
| FEES / TAXES:<br>    Recording Fee: UCC Assignment          $25.00<br>Total:                                                $25.00 | I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.<br><br>*John S. Hogan*<br><br>John S. Hogan<br>Bergen County Clerk<br><br><br>Recording Fees: $25.00<br>Realty Transfer Tax Fees: $0.00 |

## OFFICIAL RECORDING COVER PAGE

Page 1 of 3

# PLEASE DO NOT DETACH

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.

## UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Nick Barzellone 405-236-0003

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

McCoy & Orta, P.C.
100 North Broadway, 26th Floor
Oklahoma City, OK 73102

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
738R-18 filed 4/5/18

**1b.** ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:     AND     Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME |
|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE* |
| 7b. INDIVIDUAL'S SURNAME |
| INDIVIDUAL'S FIRST PERSONAL NAME |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One Federal St., 3rd Fl., Mail Code EX-MA-FED | Boston | MA | 02110 | USA |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

* FOR THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE SECURITIES, INC.,
MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-SB51

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME |
|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
M&O Ref.: 7486.119 Lenox Hudson (Loan No. 501232168) FILE WITH BERGEN COUNTY, NJ

UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**
FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER:  Same as item 1a on Amendment form
738R-18 filed 4/5/18

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME
FEDERAL HOME LOAN MORTGAGE CORPORATION

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13):  Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit:

13a. ORGANIZATION'S NAME
LENOX HUDSON LLC

OR

13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

15. This FINANCING STATEMENT AMENDMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

17. Description of real estate:

18. MISCELLANEOUS:

Bergen County Clerk          BK 03015 PG 2042          08/01/2018 02:40 PM          3 of 3          ** End of Document **

Consideration $ EX.
Realty Transfer Fee $ EX. No Fee
Recording Fee No Fee
By A. C. Jones

THIS INDENTURE, made this 3rd day of December
in the year of our Lord One Thousand Nine Hundred and
Seventy-One, between 165 MAIN CORPORATION, a New Jersey
Corporation having an office at 200 Route 46, Little
Ferry, New Jersey, hereinafter called "Owner" and
a Body Politic
COUNTY OF BERGEN, having its office at Hackensack,
Bergen County, New Jersey, hereinafter called "County
of Bergen",

W I T N E S S E T H :

Owner, for and in consideration of the sum of less than
Hundred Dollars ($100)
One XXXXXXXXXXXX, lawful money of the United States of
America, to it in hand paid by County of Bergen, the receipt
whereof is hereby acknowledged, has given, granted and con-
veyed, and by these presents does give, grant and convey
unto County of Bergen, its successors and assigns a per-
manent easement and right of way for the future widening
of Hudson Street.  The easement and right of way hereby
granted covers a strip of land situate, lying and being
in the City of Hackensack, County of Bergen and State of
New Jersey, as shown outlined in red on the survey attached
hereto and hereby made a part, and is more particularly
described as follows:

BEGINNING at a point in the northwesterly line
of Hudson Street (as the same is now laid out and in
use), distant 222.05 feet southwesterly from its
intersection with the northwesterly side of Kansas
Street and running thence (1) northwesterly along
the southwesterly line of Lot 25 in Block 67 as
shown on the Assessment Map of the City of Hackensack,
N. J. to a point, which point measures 35 feet from
the center line of Hudson Street (as now laid out and

R 3/2/72          BOOK 5619 PAGE 141

in use); thence (2) northeasterly and parallel with the center line of Hudson Street (as now laid out and in use) 84.60 feet to a point in the north-easterly line of Lot 24 in Block 67 as shown on the Assessment Map of the City of Hackensack; thence (3) southeasterly and along the same, be the distance what it may, to a point in the north-westerly line of Hudson Street (as now laid out and in use); thence (4) southwesterly and along said northwesterly side of Hudson Street 84.60 feet to the point and place of BEGINNING.

SUBJECT to federal, state and municipal regula-tions affecting the use of said premises and encum-brances, if any, of record.

The Owner for itself, its successors and assigns, covenants and agrees with the County of Bergen, its succes-sors and assigns that no building or structures of any kind whatsoever shall be erected on, in or above the above described strip of land, however, pavements, walks and the like are permitted.  This covenant shall run with the land.

The County of Bergen, for itself and its succes-sors and assigns, covenants and agrees with the Owner, its successors and assigns that after the widening of Hudson Street or after any disturbance of the above described land for the purpose for which this easement is given, the County of Bergen shall at its own cost and expense restore the surface of the said land and the lands of the premises of the Owner immediately adjacent thereto to the condition in which they were immediately prior to the commencement of the work.

By the acceptance of this Indenture the County of Bergen agrees to abide by the terms and conditions

- 2 -

herein on its part to be performed and shall be deemed a

signatory hereto.

IN WITNESS WHEREOF, Owner has hereunto affixed

its corporate seal and caused these presents to be signed

by its proper officers thereunto duly authorized, all as

of the day and year first above written.

165 MAIN CORPORATION

By ~~Bruno Fosi~~

BRUNO FOSI - President

Attest:

~~Ruth Fosi~~
RUTH E. FOSI - Sec'ty.

The within Instrument was
prepared by:  Guy J. Lanza, Esq.

STATE OF NEW JERSEY )  ss.:
COUNTY OF BERGEN     )

BE IT REMEMBERED, that on this 3rd day of December
in the year of our Lord Nineteen Hundred and Seventy-one
before me, the subscriber, an Attorney at Law of New
Jersey, personally appeared BRUNO FOSI
who I am satisfied is ──── President of 165 MAIN
CORPORATION, the corporation named in and which executed
the foregoing instrument, and is the person who signed
said instrument as such officer for and on behalf of said
corporation, and he acknowledged that said instrument was
made by said corporation and sealed with its corporate seal
as the voluntary act and deed of said corporation by virtue
of authority from its Board of Directors.  The full and
actual consideration paid or to be paid for the transfer
of title to realty evidenced by the within Grant, as such
consideration is defined in P. L. 1968, c. 49, Sec. 1 (c)
is $1.00.  Consideration is less than One Hundred ($100.00)
Dollars.

~~Guy J. Lanza~~
Guy J. Lanza,
Attorney at Law of New Jersey

- 3 -
BOOK 5619 PAGE 143



RECEIVED
1972 MAR -2 PM 3:52
BERGEN COUNTY CLERK

MAR-2'72
REC'D

Consideration $ EX.
Realty Transfer Fee EX.
Recording Fee NO FEE
By R.C. Total $ NO FEE

EASEMENT AGREEMENT

BETWEEN

165 MAIN CORPORATION,
a New Jersey Corporation,

AND

COUNTY OF BERGEN

Dated: Dec. 3, 1971

Record and Return to —
BERGEN COUNTY COUNSEL
Administrative Bldg.
Hackensack, N.J. 07601

BOOK 5619 PAGE 145

END OF DOCUMENT

John S. Hogan
Bergen County Clerk

**Bergen County Clerk**
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 19-040821

V 03278 1843

RECORDED DATE: 06/27/2019 09:11:44 AM

| | |
|---|---|
| Transaction #: | 9252162 |
| Document Page Count: | 2 |
| Operator Id: | CLERK |

Document Type:   NON ABSTRACTED DEED

**RETURN TO:**

BETTER RESEARCH LLC
1 PARAGON DRIVE
MONTVALE NJ 07645
ERECORDED

**SUBMITTED BY:**

Better Research LLC

(718) 215-5138

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| LENOX HUDSON LLC | JUDAH A  ZELMANOVITZ |
| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |
| | NEIL  FINK |

MARGINAL REFERENCES:

DOCUMENT DATE:  06/12/2019
MUNICIPALITY: HACKENSACK

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: NON ABSTRACTED DEED | $30.00 |
| Additional Pages Fee | $10.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| Total: | $43.00 |

INSTRUMENT #: 19-040821
Recorded Date: 06/27/2019 09:11:44 AM

I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.

John S. Hogan
Bergen County Clerk

Recording Fees: $43.00
Realty Transfer Tax Fees: $0.00

**OFFICIAL RECORDING COVER PAGE**                    Page 1 of 3

# PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Prepared By & Send
Recorded Document to:

Judah A. Zelmanovitz, Esq.
Fink & Zelmanovitz, P.C.
3839 Flatlands Avenue, Suite 206
Brooklyn, New York 11234

## DECLARATION OF RESTRICTION

This DECLARATION OF RESTRICTION made as of June 12, 2019, by LENOX HUDSON LLC a New Jersey limited liability company with an address at 636 S forest Dr., Teaneck, NJ 07666 (the "Declarant").

## WITNESSETH

WHEREAS, the Declarant is the fee owner of the premises: 107-109 Hudson Street, Hackensack, NJ 07601, as described on the legal description annexed hereto as Schedule A (the "Premises"); and

WHEREAS, the Declarant wishes to set forth hereinafter a declaration of his intention with reference to the Premises.

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION RECEIVED, THE DECLARANT HEREBY DECLARES AS FOLLOWS:

1. The Declarant shall not sell, mortgage, assign, lease, convey, transfer, encumber, pledge, hypothecate or otherwise take any action creating a security interest in the Premises without the written consent of Judah A. Zelmanovitz or Neil Fink, having an address at Fink & Zelmanovitz, P.C., 3839 Flatlands Avenue, Suite 206, Brooklyn, New York 11234. Any such transfer, assignment or encumbrance, without written consent of Judah A. Zelmanovitz or Neil Fink shall be null and void and of no force and effect.

2. This declaration shall be binding on the heirs, personal representatives, successors and assigns of the Declarant.

3. This Declaration may not be changed or modified orally and may only be changed, modified or rescinded with the written consent of Judah A. Zelmanovitz or Neil Fink.

4. Only Judah A. Zelmanovitz, Neil Fink or their delegates shall have the right to terminate or rescind this Declaration of Restriction.

NO FURTHER TEXT
SIGNATURE PAGE FOLLOWS

IN WITNESS WHEREOF, the undersigned has duly executed this Declaration of Restriction as of the day and year first above written.

LENOX HUDSON LLC

By: _____
Name: Seth Levine
Title:  Sole Member

State of New York )
                      : ss.
County of Kings   )

On June 12, 2019 before me, the undersigned, personally appeared Seth Levine personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC

**ANDREW SELEVAN**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires 1/25/2021**

**NEW JERSEY TAX & ASSESSMENT SEARCH**

*Charles Jones*
A DataTrace Company

| | |
|---|---|
| **For:** | BRENNAN TITLE ABSTRACT LLC |
| **Customer ID:** | 240195385 |
| **Reference #:** | BT18420 |
| **Order #:** | 6878650/MT-241-6878650 |
| **Completed Date:** | 08/29/2019 |

**Report Fee:** $35.50

## CERTIFICATE OF CURRENT PROPERTY TAX AND ASSESSMENT STATUS FOR:

**Municipality:** HACKENSACK CITY(BERGEN)       65 Central Avenue
(201) 646-3929      HACKENSACK, NJ 07601

| | | | |
|---|---|---|---|
| **Block:** | 67 | **Owner:** LENOX HUDSON LLC | |
| **Lot:** | 24 | **Property Location:** 107-109 HUDSON ST. | |
| **Also:** | | **Mailing:** PO BOX 1136 ENGLEWOOD CLIFFS NJ 07632 | |
| **Lot Size:** | 15233SF | **Tax Rate:** 3.357 per $100 of Assessed Value | **Assessed Values:** |
| **Prop. Code:** | 4C-Apartments | | **Land:** $295,900 |
| | | | **Improvement:** $1,807,600 |

*\*Not to be used to determine the "residential use" for the purposes of P.L. 2004, c. 66 section 8.*     **Total:** $2,103,500

**Deduction:** None

**Cert. Of Occup.:** New Construction, Change of Us
**Smoke detector:** Required as per NJAC 5:70-4.19
Call (201) 646-7685 for inspection     **Inspection Fee:** $30.00 for inspection

| | | | | |
|---|---|---|---|---|
| **2018** | **Taxes:** | | $58,618.28 | PAID IN FULL |
| **2019** | **Qtr 1** | **Due: 02/01/2019** | $14,655.00 | PAID |
| **2019** | **Qtr 2** | **Due: 05/01/2019** | $14,655.00 | PAID |
| **2019** | **Qtr 3** | **Due: 08/01/2019** | $20,589.15 | PAID; ESTIMATED TAX BILL |
| **2019** | **Qtr 4** | **Due: 11/01/2019** | | TO BE DETERMINED |
| **2020** | **Qtr 1** | **Due: 02/01/2020** | | TO BE DETERMINED |
| **2020** | **Qtr 2** | **Due: 05/01/2020** | | TO BE DETERMINED |

**Added Assessments:** None

**Water:** PRIVATE - SUEZ 69 Devoe Pl. Hackensack,NJ 07601  800-422-5987

**Sewer:** Included with Taxes; Subject to excess charges

**Confirmed Assessments:** None

**Liens:** None

**General Remark:** 2019 TAXES WILL REFLECT CHANGE IN ASSESSED VALUE.

**UNCONFIRMED ASSESSMENTS:**

**Ordinance #:** None     **Adopted On:** None     **Improvement Type:** None

*Charles Jones LLC* guarantees that the above information accurately reflects the contents of the public record as of the completed date.



NEW JERSEY SUPERIOR COURT,
UNITED STATES DISTRICT COURT AND
UNITED STATES BANKRUPTCY COURT

240-1953-85                    RE: BT18420

**CERTIFIED TO:**

            BRENNAN TITLE ABSTRACT LLC
            457 HADDONFIELD RD STE 305
            CHERRY HILL NJ 08002


CHARLES JONES LLC HEREBY CERTIFIES THAT IT HAS SEARCHED THE INDEX OF THE
CIVIL JUDGMENT AND ORDER DOCKET OF THE SUPERIOR COURT OF NEW JERSEY, THE
INDEX OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY,
AND THE INDEX OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF
NEW JERSEY AND DOES NOT FIND REMAINING UNSATISFIED OF RECORD IN ANY OF
THESE COURTS A JUDGMENT OR OTHER DOCKETED RECORD REFERRED TO BY THE
RESPECTIVE INDICES WHICH CONSTITUTES A GENERAL LIEN ON REAL PROPERTY IN
NEW JERSEY, NOR ANY CERCLA LIEN ON SPECIFIC REAL PROPERTY WITHIN NEW
JERSEY NOR ANY PETITION COMMENCING PROCEEDINGS IN BANKRUPTCY EXCEPT AS
BELOW SET FORTH AGAINST:

                                     FROM         TO

     LENOX HUDSON LLC    (Entity)      08-29-1999  08-29-2019
          *** Name is CLEAR ***


DATED     08-29-2019
TIME      08:45 AM

FEES: $ 12.50
TAX:  $  0.00
TOTAL:$ 12.50                    CHARLES JONES LLC
                                 P.O. BOX 8488
RN19-246-03708  246   0879246 25  TRENTON, NJ 08650



```
*****************************************
*** UNITED STATES PATRIOT NAME SEARCH ***
*****************************************
```

240-1953-85                    RE: BT18420
**CERTIFIED TO:**


                    BRENNAN TITLE ABSTRACT LLC
                    457 HADDONFIELD RD STE 305
                    CHERRY HILL NJ 08002


CHARLES JONES LLC HEREBY CERTIFIES THAT IT HAS SEARCHED THE
LIST OF "SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS"
MAINTAINED BY THE OFFICE OF FOREIGN ASSETS CONTROL, U.S.
DEPARTMENT OF THE TREASURY, PURSUANT TO EXECUTIVE ORDER 13224 AS
AMENDED BY EXECUTIVE ORDER 13268, AS WELL AS "THE CONSOLIDATED
SANCTIONS LIST" THAT INCLUDES THE LIST OF "FOREIGN SANCTIONS
EVADERS" PURSUANT TO EXECUTIVE ORDER 13608 AND MAINTAINED BY
THE OFFICE OF FOREIGN ASSETS CONTROL, U.S. DEPARTMENT OF THE
TREASURY AND REPORTS THE FOLLOWING FINDINGS WITH RESPECT TO THE
NAME(S) LISTED BELOW:

                                                 THROUGH

LENOX HUDSON LLC (Entity)                        09-01-2019


```
              ***********************************
              ***** CLEAR PATRIOT NAME SEARCH *****
              ***********************************
```


              NOTE:  According to the U.S. Department of Treasury, no U.S.
              person may deal with any Libyan or Iraqi government official
              whether their name appears on the list or not.


DATE ISSUED: 09-03-2019

FEES: $  2.00
TAX: $  0.00
TOTAL:$  2.00                      CHARLES JONES LLC
                                   P.O. BOX 8488
PA19-246-03709  246    0867246 25  TRENTON, NJ 08650

# EXHIBIT O

American Land Title Association

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

*Transaction Identification Data for reference only:*
Issuing Agent:   **BRENNAN TITLE ABSTRACT, LLC**
Issuing Office:    **457 Haddonfield Rd, Suite 305, Cherry Hill, NJ 08002**
Issuing Office's ALTA® Registry ID:
Loan ID Number:
Commitment Number:
Issuing Office File Number:    **BT18421**
Property Address:    **54-78 Temple Avenue, Hackensack, NJ 08362**
Revision Number:

## SCHEDULE A

File No. **BT18421**

1.  Commitment Date: **August 12, 2019**

Termination Date: 180 days
after effective date

2.  Policy to be issued:

    (a) _____

        Proposed Insured:

        Proposed Policy Amount: $

    (b) _____

        Proposed Insured:

        Proposed Policy Amount: $

**THIS REPORT IS ISSUED FOR INFORMATION ONLY AND IS NOT TO BE USED FOR INSURANCE WITHOUT PRIOR CONSENT OF THIS COMPANY. LIABILITY ASSUMED HEREBY DOES NOT EXCEED $1,000.00.**

3.  The estate or interest in the Land described or referred to in this Commitment is Fee Simple.

4.  The Title is, at the Commitment Date, vested in:

    **Lenox Temple LLC, a New Jersey limited liability company by deed from Lighthouse Temple Avenue, LLC, a New Jersey limited liability company, dated June 12, 2009, recorded July 16, 2009, in the Clerk's Office of the County of Bergen, New Jersey, in Deed Book V00176, page 1599.**

    **NOTE: Property is incorrectly assessed to Judah Zelmanovitz not property owner.**

Countersigned:
BRENNAN TITLE ABSTRACT, LLC

By: _____
    *Authorized Signatory*

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part iI—Exceptions; and a counter-signature by the Company or its issuing agent that may be in eiectronic form.*

NEW JERSEY LAND TITLE
INSURANCE RATING BUREAU

NJRB 3-09
Last Revised: 07/01/18

**American Land Title Association**

**Commitment for Title Insurance**
**Adopted 08-01-2016**
**Technical Corrections 04-02-2018**

## SCHEDULE A

### (continued)

File No. **BT18421**

5.   The Land is described as follows:

      **For information purposes only:**   **54-78 Temple Avenue, City of Hackensack**
                                             **Bergen County, New Jersey**
                                           **Block 511 Lot 11 Tax Map**

      **SEE CONTINUATION OF SCHEDULE A FOR LEGAL DESCRIPTION**

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

American Land Title Association

Commitment for Title Insurance<br>Adopted 08-01-2016<br>Technical Corrections 04-02-2018

## SCHEDULE A

### (continued)

File No. **BT18421**

### LEGAL DESCRIPTION

ALL that certain lot, parcel or tract of land, situate and lying in the City of Hackensack, County of Bergen, State of New Jersey, and being more particularly described as follows:

BEING known and designated as Lot 18-23 as shown on a certain map entitled, "Map of Property of Anderson and Ward, situated in Hackensack, Bergen County, N.J.", duly filed in the office of the Bergen County Clerk on May 25, 1972 as Map No. 196.

BEGINNING at a point in the Northeasterly side of Temple Avenue, distant 471.54 feet Northwesterly from its intersection with the Northwesterly side of Hackensack Avenue; running thence

(1)     Along the Northeasterly side of Temple Avenue, North 43 degrees 10 minutes West, 300.00 feet; thence

(2)     North 46 degrees 50 minutes East, 212.93 feet; thence

(3)     South 43 degrees 04 minutes 10 seconds East, 300.00 feet; thence

(4)     South 46 degrees 50 minutes West, 212.42 feet to the point and place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 11 in Block 511 on the City of Hackensack Tax Map.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**American Land Title Association**

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE B, PART I

### Requirements

File No. **BT18421**

All of the following Requirements must be met:

1. The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2. Pay the agreed amount for the estate or interest to be insured.

3. Pay the premiums, fees, and charges for the Policy to the Company.

4. Documents satisfactory to the Company that convey the Title or create the Mortgage to be Insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5. You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

6. In the event that the proceeds of the loan to be secured by the mortgage to be insured are not to be fully disbursed at Closing, the Company must be notified and this Commitment will then be modified accordingly.

7. Payment of all taxes, water, sewer rents and assessments, if any.

8. Proof of the record owner's marital or civil union status is required and, if married or if there is a civil union partner, and the premises to be insured is or has ever been occupied as the principal marital or principal civil union residence of the record owner, then his or her spouse or civil union partner must join in the deed or mortgage and affidavit of title.

9. This Company requires a Notice of Settlement to be filed pursuant to N.J.S.A. 46:26A-11 et seq. prior to Closing. The notice should be filed as nearly as possible to, but not more than 60 days prior to the anticipated closing date. Should the anticipated closing not take place within 60 days of the filing of the Notice of Settlement, another notice must be filed. If both a Deed and Mortgage are involved, two Notices of Settlement must be filed, one for the Deed and one for the Mortgage. If the closing is postponed, another Notice of Settlement may be recorded prior to the expiration of the first recorded Notice of Settlement. A filed copy of the Notice(s) of Settlement must be provided to the Company as part of the post closing package. NOTE: Subject to any recording delay in Bergen County.

10. This Company must be contacted by the Closing Attorney to request a rundown at least twenty-four (24) hours prior to the scheduled closing. In the event such rundown is not requested, any mortgages, liens or judgments shall remain as an exception to the policy unless same have been satisfied.

11. Form 1099-S must be completed at closing and filed by the Closing Attorney in accordance with the Tax Reform Act of 1986 in Code Section 6045 (e). NOTE: Pertains to purchase transactions only.

12. If the proposed transaction is based upon a power of attorney, the power of attorney, deed (if applicable), and affidavit of the attorney in fact must be furnished for review and must be recorded. The Company must be furnished acceptable proof that the power is in effect and is exercised while the principal is alive, that the power remains in effect and that the power of attorney has not been revoked at the time of

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its Issuing agent that may be in electronic form.*

**American Land Title Association**

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE B, PART I

### (continued)

File No. **BT18421**

execution, delivery and recording of the mortgage and/or deed. At that time, the Company may make additional requirements or exceptions.

13. If Grantor is a corporation, this company requires completion of a Corporate Affidavit of Title and a Corporate Resolution with respect to the proposed conveyance.

14. If Grantor is a partnership, this company requires proof that the Partnership Agreement is in full force and effect, and the terms of such have not been modified or altered in any way. All general partner(s) must execute the Deed of conveyance.

15. Taxes, Assessments, Sewer and Water charges are as follows:

| | |
|---|---|
| Tax Search: | See Copies Attached |
| Assessment Search: | See Copies Attached |
| Sewer Search: | See Copies Attached |
| Water Search: | See Copies Attached |

16. Superior Court of New Jersey and United States District Court Search: See Copies Attached.

17. Furnish satisfactory proof of the marital status:  N/A.

18. Cancellation or other disposition of the MultiFamily Mortgage, Assignment of Rents and Security Agreement from Lenox Temple LLC, a New Jersey limited liability company to Greystone Servicing Corporation, Inc., dated March 27, 2018, and recorded April 4, 2018, in Mortgage Book V2897, Page 1248, to secure $6,675,000.00.

    Assignment of Security Instrument to Federal Home Loan Mortgage Corporation recorded April 4, 2018 in Book V2897, Page 1272.

    Assignment of MultiFamily Mortgage, Assignment of Rents and Security Agreement to U.S. Bank National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., MultiFamily Mortgage Pass-Through Certificates, Series 2018-SB51 recorded August 2, 2018 in Book V3016, Page 766.

19. Termination or other disposition of UCC-1 Financing Statement, recorded April 4, 2018 in the Office of the Bergen County Clerk, showing Lenox Temple LLC (as Debtor) and Federal Home Loan Mortgage Corporation (as Secured Party) in Book V2897, Page 1276.

    Assignment of UCC to U.S. Bank National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., MultiFamily Mortgage Pass-Through Certiflcates, Series 2018-SB51 recorded August 2, 2018 in Book V3016, Page 771.

20. New Jersey Superior Court, US District Court & US Bankruptcy Court Judgments vs. Lenox Temple LLC show(s) clear.  (See attached).

21. US Patriot Search vs. Lenox Temple LLC shows clear.

    NOTE: Judgments, if any, to be satisfied of record or affidavit submitted that same are not against persons in chain of title and/or purchasers, but against other with the same or similar names.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**American Land Title Association**

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

### SCHEDULE B, PART I

#### (continued)

File No. **BT18421**

22.  Subject to facts as would be disclosed by sellers, purchasers, and/or borrowers affidavit of title, to be submitted.

NOTE: Although compliance or non-compliance with environmental matters is beyond the scope of coverage afforded by the title policy, we wish to call your attention (for informational purposes only) to the fact that the proposed transaction may involve lands subject to the Industrial Site Recovery Act (I.S.R.A.), N.J.S.A. 13:K-6, et seq. Please note that this Company is not legally authorized to insure that the proposed transaction comports with the provisions of any environmental laws, including I.S.R.A., N.J.S.A. 13:1K-6 et seq.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Scheduie A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

NEW JERSEY LAND TITLE
INSURANCE RATING BUREAU

NJRB 3-09
Last Revised: 07/01/18

**American Land Title Association**

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE B, PART II

### Exceptions

File No. **BT18421**

THIS COMMITMENT DOES NOT REPUBLISH ANY COVENANT, CONDITION, RESTRICTION, OR LIMITATION CONTAINED IN ANY DOCUMENT REFERRED TO IN THIS COMMITMENT TO THE EXTENT THAT THE SPECIFIC COVENANT, CONDITION, RESTRICTION, OR LIMITATION VIOLATES STATE OR FEDERAL LAW BASED ON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, GENDER IDENTITY, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1.  Notwithstanding any provision of the policy to the contrary, the following matters are expressly excluded from the coverage of the policy, and the Company will not pay loss or damage, costs, attorney's fees or expenses that arise by reason of any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the land.

2.  Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I—Requirements are met.

3.  Right or claims of parties in possession of the land not shown by the public records.

4.  Any liens on your title, arising now or later, for labor and material, not shown by the public records.

5.  Subject to possible additional taxes assessed or levied under N.J.S.A. 54:4-63.1 et seq.

6.  Subsurface conditions and/or encroachments not disclosed by an instrument of record. (Fee Policy only.)

7.  TAXES, CHARGES AND ASSESSMENTS: The payment of all taxes, assessments, water and sewer charges, up through and including the current installments.

8.  Restrictions as set forth in Deed Book V3270 Page 572.

9.  Restrictions as set forth in Deed Book V3287 Page 1308.

10. Restrictions as set forth in Deed Book V3299 Page 1125.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

NEW JERSEY LAND TITLE
INSURANCE RATING BUREAU

NJRB 3-09
Last Revised: 07/01/18





Fm 196 Fil. 5/25/1872



# MAP

of Property of

## Anderson and Ward,

SITUATED IN

## Hackensack Bergen County

N.J.

| 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|----|----|----|----|----|----|----|----|----|----|----|----|

CROSS ST.

Property of the Bergen County Clerk's Office
Printed at 100's to scale



Property of the Bergen County Clerk's Office
Printed at 160% to scale

800920(g·NJ·Cp·KV)

PREPARED BY: _Richard Kelin_

RICHARD S. KELIN, ESQ.

# DEED

```
09-067572.01 Deed > 350,000
V  Bk: 00176  Pg: 1599-1605 Rec. Fee $100.00
Kathleen A. Donovan, Bergen County Clerk
Recorded 07/16/2009  11:42:25 AM

Consideration        : $7,000,000.00
Realty Transfer Fee  : $82,175.00
State Portion        : $61,400.00
County Portion       : $10,500.00
Municipality Portion : $10,275.00
```

**THIS DEED** is made on June _12_, 2009

**BETWEEN**

LIGHTHOUSE TEMPLE AVENUE, LLC
a New Jersey limited liability company

Whose post office address is 2 Executive Drive, Suite 470, Fort Lee, New Jersey 07024, referred to as the Grantor

**AND**

LENOX TEMPLE LLC,
a New Jersey limited liability company

Whose post office address is 2200 Fletcher Avenue, Fort Lee, New Jersey 07024, referred to as the Grantee

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

1.  TRANSFER OF OWNERSHIP. The Grantor grants and conveys (transfers ownership of) the property (called the "Property") described below to the Grantee. This transfer is made for the sum of SEVEN MILLION AND 00/100 ($7,000,000.00) DOLLARS.

The Grantor acknowledges receipt of this money.

2.  TAX MAP REFERENCE. (N.J.S.A. 46:15-1.1) Municipality of Hackensack
Block No.   511    Lot No.   11        Account No.

3.  PROPERTY. The Property consists of the land and all the buildings and structures on the land in the City of Hackensack, County of Bergen and State of New Jersey. The legal description is:

Please see attached legal description annexed hereto, made a part hereof and recorded herein.

The street address of the Property is:  54-78 Temple Avenue, Hackensack, New Jersey.

BEING the same premises conveyed to Grantor herein by deed from Stanley Lee dated May 14, 2007 and recorded June 7, 2007 in the office of the Bergen County Clerk's Office in Deed Book 9330, page 173.

By accepting this Deed, the Grantee confirms that it is assuming the existing first mortgage made to Sovereign Bank dated May 17, 2007 and recorded on June 7, 2007 in the Bergen County Clerk's Office in Mortgage Book 16790 at Page 775, in the original amount of $3,877,000.00, which mortgage was assigned to Fannie Mae, by Assignment of Mortgage dated May 17, 2007 and recorded on June 7, 2007 in the Bergen County Clerk's Office in Book 1411 at Page 116.

The Grantee further confirms that it is assuming the existing second mortgage made to Sovereign Bank dated February 14, 2008 and recorded on February 21, 2008 in the Bergen County Clerk's Office in Mortgage Book 17187 at Page 398, in the original amount of $650,000.00.

4. PROMISES BY GRANTOR. The Grantor promises that the Grantor has done no act to encumber the Property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the Property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

5. SIGNATURES. The Grantor signs this Deed as of the date at the top of the first page.

WITNESSED BY:

HARRY TAWIL

LIGHTHOUSE TEMPLE AVENUE, LLC

By: _____ (Seal)
Meyer Orbach, Manager

STATE OF NEW JERSEY:

                        SS

COUNTY OF BERGEN    :

    I certify that on June 1٤, 2009, Meyer Orbach, personally came before me and stated to my satisfaction that: (a) he signed, sealed and delivered this Deed as the Manager of Lighthouse Temple Avenue, LLC, the limited liability company named in this Deed; and (b) this Deed was signed and made by the limited liability company as its voluntary act and deed by virtue of authority from all of its members; and (c) made this Deed for $7,000,000.00 as full and actual consideration paid or to be paid for the transfer of title (Such consideration is defined in N.J.S.A.46:15-5.).

_____
Notary Public

AMANDA M. SALOTTI
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 12/10/2012

RECORD AND RETURN TO:

Kensington Vanguard National
    Land Services
39 West 37th St. - Ste 700
New York, NY 10018

LEGAL

DESCRIPTION

ALL that certain tract or parcel of land situated, lying, and being in the City of Hackensack, the County of Bergen, and the State of New Jersey, being more particularly described as follows:

BEING known and designated as Lot 18-23 as shown on a certain map entitled, "Map of Property of Anderson and Ward, situated in Hackensack, Bergen County, N.J.", duly filed in the Office of the Bergen County Clerk on May 25, 1972 as Map No. 196.

BEGINNING at a point in the northeasterly side of Temple Avenue, distant 471.54 feet northwesterly from its intersection with the northwesterly side of Hackensack Avenue; running thence

1. Along the northeasterly side of Temple Avenue, North 43 degrees 10 minutes West, 300.00 feet; thence

2. North 46 degrees 50 minutes East, 212.93 feet; thence

3. South 43 degrees 04 minutes 10 seconds East, 300.00 feet; thence

4. South 46 degrees 50 minutes West, 212.42 feet to the point and place of BEGINNING.

FOR INFORMATION ONLY:

BLOCK: 511    LOT: 11

Said premises is more commonly known as 54-78 Temple Avenue, Hackensack, New Jersey



GIT/REP-3
(12-07)

State of New Jersey
**SELLER'S RESIDENCY CERTIFICATION/EXEMPTION**
(C.55, P.L. 2004)

(Please Print or Type)

### SELLER(S) INFORMATION (See Instructions, Page 2)

Name(s)

LIGHTHOUSE TEMPLE AVENUE, LLC

Current Resident Address:

Street: c/o The Orbach Group, 2 Executive Drive, Suite 470

| City, Town, Post Office | State | Zip Code |
|---|---|---|
| Fort Lee | NJ | 07024 |

### PROPERTY INFORMATION (Brief Property Description)

| Block(s) | Lot(s) | Qualifier |
|---|---|---|
| 511 | 11 | |

Street Address:

54-78 Temple Avenue

| City, Town, Post Office | State | Zip Code |
|---|---|---|
| Hackensack | NJ | |

| Seller's Percentage of Ownership | Consideration | Closing Date |
|---|---|---|
| 100% | $7,000,000.00 | June  , 2009 |

### SELLER ASSURANCES (Check the Appropriate Box) (Boxes 2 through 8 apply to NON-residents)

1. ☐ I am a resident taxpayer (individual, estate, or trust) of the State of New Jersey pursuant to N.J.S.A. 54A:1-1 et seq. and will file a resident gross income tax return and pay any applicable taxes on any gain or income from the disposition of this property.

2. ☐ The real property being sold or transferred is used exclusively as my principal residence within the meaning of section 121 of the federal Internal Revenue Code of 1986, 26 U.S.C. s. 121.

3. ☐ I am a mortgagor conveying the mortgaged property to a mortgagee in foreclosure or in a transfer in lieu of foreclosure with no additional consideration.

4. ☐ Seller, transferor or transferee is an agency or authority of the United States of America, an agency or authority of the State of New Jersey, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, or a private mortgage insurance company.

5. ☒ Seller is not an individual, estate or trust and as such not required to make an estimated payment pursuant to N.J.S.A.54A:1-1 et seq.

6. ☐ The total consideration for the property is $1,000 or less and as such, the seller is not required to make an estimated payment pursuant to N.J.S.A. 54A:5-1-1 et seq.

7. ☐ The gain from the sale will not be recognized for Federal income tax purposes under I.R.C. Section 721, 1031, 1033 or is a cemetery plot. (CIRCLE THE APPLICABLE SECTION). If such section does not ultimately apply to this transaction, the seller acknowledges the obligation to file a New Jersey income tax return for the year of the sale (see Instructions).

☐ No non-like kind property received.

8. ☐ Transfer by an executor or administrator of a decedent to a devisee or heir to effect distribution of the decedent's estate in accordance with the provisions of the decedent's will or the intestate laws of this state.

### SELLER(S) DECLARATION

The undersigned understands that this declaration and its contents may be disclosed or provided to the New Jersey Division of Taxation and that any false statement contained herein could be punished by fine, imprisonment, or both. I furthermore declare that I have examined this declaration and, to the best of my knowledge and belief, it is true, correct and complete.

Lighthouse Temple Avenue, LLC

June 12, 2009
Date

BY:
Meyer Orbach, Manager
(Seller) Please indicate if Power of Attorney or Attorney in Fact

_____
Date

_____
Signature
(Seller) Please indicate if Power of Attorney or Attorney in Fact

RTF-1 (Rev. 7/08)
MUST SUBMIT IN DUPLICATE

**STATE OF NEW JERSEY**
**AFFIDAVIT OF CONSIDERATION FOR USE BY SELLER**
(Chapter 49, P.L. 1968, as amended through Chapter 33, P.L. 2006) (N.J.S.A. 46:15-5 et seq.)
BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE OF THIS FORM.

STATE OF NEW YORK

| | FOR RECORDER'S USE ONLY |
|---|---|
| SS. County Municipal Code | Consideration $ |
| COUNTY OF BERGEN          223 | RTF paid by seller $ |
| | Date 7/16/09 By |
| MUNICIPALITY OF PROPERTY LOCATION  Hackensack | *Use symbol "C" to indicate that fee is exclusively for county use. |

(1) PARTY OR LEGAL REPRESENTATIVE (See Instructions #3 and #4 on reverse side)
of Lighthouse Temple Avenue, LLC (the "LLC")
Deponent, Meyer Orbach, Manager, being duly affirmed
(Name)
does hereby says that he/she is the LLC is the Grantor in a deed dated June 12, 2009 transferring
(Grantor, Legal Representative, Corporate Officer, Officer of Title Company, Lending Institution, etc.)
real property identified as Block number  511  Lot number  11  located at
54-78 Temple Avenue, Hackensack, New Jersey  and  annexed  thereto.
(Street Address, Town)

(2) CONSIDERATION $7,000,000.00  (See Instructions #1 and #5 on reverse side)

(3) Property transferred is Class 4A  4B  4C (circle one). If property transferred is Class 4A, calculation in Section 3A below is required.

(3A) REQUIRED CALCULATION OF EQUALIZED VALUATION FOR ALL CLASS 4A COMMERCIAL PROPERTY TRANSACTIONS:
(See Instructions #5A and #7 on reverse side)
Total Assessed Valuation ÷ Director's Ratio = Equalized Assessed Valuation

$ _____ ÷ _____ % = $ _____
If Director's Ratio is less than 100%, the equalized valuation will be an amount greater than the assessed value. If Director's Ratio is equal to or in
excess of 100%, the assessed value will be equal to the equalized valuation.

(4) FULL EXEMPTION FROM FEE (See Instruction #8 on reverse side)
Deponent states that this deed transaction is fully exempt from the Realty Transfer Fee imposed by C. 49, P.L. 1968, as amended through
C. 66, P.L. 2004, for the following reason(s). Mere reference to exemption symbol is insufficient. Explain in detail.

(5) PARTIAL EXEMPTION FROM FEE (See Instruction #9 on reverse side)
NOTE: All boxes below apply to grantor(s) only. ALL BOXES IN APPROPRIATE CATEGORY MUST BE CHECKED. Failure to do so will
void claim for partial exemption. Deponent claims that this deed transaction is exempt from State portions of the Basic Fee, Supplemental
Fee, and General Purpose Fee, as applicable, imposed by C. 176, P.L. 1975, C. 113, P.L. 2004, and C. 66, P.L. 2004 for the following
reason(s):

A.  SENIOR CITIZEN  Grantor(s) ☐ 62 years of age or over. * (See Instruction #9 on reverse side A or B)
B.  BLIND PERSON   Grantor(s) ☐ legally blind or; *
    DISABLED PERSON Grantor(s) ☐ permanently and totally disabled ☐ Receiving disability payments ☐ Not gainfully employed*
    Senior citizens, blind persons, or disabled persons must also meet all of the following criteria:
    ☐ Owned and occupied by grantor(s) at time of sale.   ☐ Resident of State of New Jersey.
    ☐ One or two-family residential premises.              ☐ Owners as joint tenants must all qualify.
    *IN THE CASE OF HUSBAND AND WIFE, PARTNERS IN A CIVIL UNION COUPLE, ONLY ONE GRANTOR NEEDS TO QUALIFY IF TENANTS
    BY THE ENTIRETY.

C.  LOW AND MODERATE INCOME HOUSING (See Instruction #9 on reverse side)
    ☐ Affordable according to H.U.D. standards.   ☐ Reserved for occupancy.
    ☐ Meets income requirements of region.        ☐ Subject to resale controls.

(6) NEW CONSTRUCTION (See Instructions #2, #10 and #12 on reverse side)
    ☐ Entirely new improvement.          ☐ Not previously occupied.
    ☐ Not previously used for any purpose.  ☐ "NEW CONSTRUCTION" printed clearly at
                                            the top of the first page of the deed.

(7) Deponent makes this Affidavit to induce county clerk or register of deeds to record the deed and accept the fee submitted herewith in
accordance with the provisions of Chapter 49, P.L. 1968, as amended through Chapter 33, P.L. 2006.

Lighthouse Temple Avenue, Lighthouse Temple Avenue, LLC
By: _____   _____
    Meyer Orbach, Manager          Owner Name
    Signature of Deponent          2 Executive Drive, Suite 470

Subscribed and sworn to before me
this ___ day of June , 20 09
2 Executive Dr, Fort Lee, NJ 07024
_____          Deponent Address     Grantor Address at Time of Sale
Notary Public
XXX-XX-  049  07024
Last 3 digits in Grantor's Social Security Number   Name/Company of Settlement Officer

AMANDA M. SALOTTI
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 12/10/2012

| FOR OFFICIAL USE ONLY |
|---|
| Instrument Number _____ County _____ |
| Deed Number _____ Book _____ Page _____ |
| Deed Dated _____ Date Recorded _____ |

County recording officers shall forward one copy of each Affidavit of Consideration for Use by Seller when Section 3A is completed.
STATE OF NEW JERSEY- DIVISION OF TAXATION
PO BOX 251
TRENTON, NJ 08695-0251
ATTENTION: REALTY TRANSFER FEE UNIT
The Director of the Division of Taxation in the Department of the Treasury has prescribed this form as required by law, and may not be altered or amended
without prior approval of the Director. For information on the Realty Transfer Fee or to print a copy of this Affidavit, visit the Division of Taxation website at:
www.state.nj.us/treasury/taxation/lpt/localtax.shtml

RTF-1EE (Rev. 7/08)
MUST SUBMIT IN DUPLICATE

**STATE OF NEW JERSEY**
**AFFIDAVIT OF CONSIDERATION FOR USE BY BUYER**
(Chapter 49, P.L.1968, as amended through Chapter 33, P.L. 2006) (N.J.S.A. 46:15-5 et seq.)
BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE OF THIS FORM

STATE OF NEW JERSEY } SS. County Municipal Code

| | | FOR RECORDER'S USE ONLY |
|---|---|---|
| COUNTY | BERGEN | Consideration $ 7,000,000.00 |
| | 219 | RTF paid by buyer $ |
| | | Date 7/16/09   By |

MUNICIPALITY OF PROPERTY LOCATION  Hackensack

(1) PARTY OR LEGAL REPRESENTATIVE (See Instructions #3 and #4 on reverse side) _____ XXX-XX-X  0  4  9
Last 3 Digits in Grantee's Social Security Number

Deponent, Jose M Carrasco , being duly sworn according to law upon his/her oath,
(Name)

deposes and says that he/she is the Agent in a deed dated June/12/2009 transferring
(Grantor, Legal Representative, Corporate Officer, Officer of Title Company, Lending Institution, etc.)

real property identified as Block number 511 Lot number 11 located at

54-78 Temple Avenue, Hackensack, NJ 07601 and annexed thereto.
(Street Address, Town)

(2) CONSIDERATION $ 7,000,000.00 (See Instructions #1, #5, and #11 on reverse side)

Entire consideration is in excess of $1,000,000:

PROPERTY CLASSIFICATION CHECKED BELOW SHOULD BE TAKEN FROM THE OFFICIAL TAX LIST (A PUBLIC RECORD)
OF THE MUNICIPALITY WHERE THE REAL PROPERTY IS LOCATED IN THE YEAR THAT THE TRANSFER IS MADE.

(A) When Grantee is required to remit the 1% fee, complete below:

☐ Class 2 - Residential
☐ Class 3A - Farm property (Regular) and any
other real property transferred to same grantee
in conjunction with transfer of Class 3A property

☐ Class 4A – Commercial Properties
(if checked, calculation in (C) required below)
☐ Class 4C - Residential Cooperative Unit
(4 Families or less)

(B) When Grantee is not required to remit the 1% fee, complete below:

☐ Property class. Circle applicable class(es):   1   4B   (4C)   15
Property classes: 1-Vacant Land, 4B-Industrial properties, 4C-Apartments (other than cooperative unit), 15-Public Property
☐ Exempt Organization pursuant to federal Internal Revenue Code of 1986
☐ Incidental to corporate merger or acquisition and equalized assessed valuation less than 20% of total value of
all assets exchanged in merger or acquisition (If checked, calculation in (C) below required and MUST ATTACH
COMPLETED RTF-4)

(C) REQUIRED CALCULATION OF EQUALIZED ASSESSED VALUATION FOR ALL CLASS 4A COMMERCIAL
PROPERTY TRANSACTIONS: (See Instructions #6 and #7 on reverse side)
Total Assessed Valuation ÷ Director's Ratio = Equalized Valuation

$ _____ ÷ _____ % = $ _____
If Director's Ratio is less than 100%, the equalized valuation will be an amount greater than the assessed valuation. If Director's Ratio
is equal to or in excess of 100%, the assessed valuation will be equal to the equalized value.

(3) TOTAL EXEMPTION FROM FEE (See Instruction #8 on reverse side)
Deponent states that this deed transaction is fully exempt from the Realty Transfer Fee imposed by C. 49, P.L. 1968, as amended
through C. 66, P.L. 2004, for the following reason(s). Mere reference to exemption symbol is insufficient. Explain in detail.

_____
_____

(4) Deponent makes Affidavit of Consideration for Use by Buyer to induce county clerk or register of deeds to record the deed and
accept the fee submitted herewith pursuant to the provisions of Chapter 49, P.L. 1968, as amended through Chapter 33, P.L. 2006.

Subscribed and sworn to before me
this 23 day of JUNE , 2009

_____
Signature of Deponent

39 West, 37th ST, 7th Floor
Deponent Address

JEFFREY S. LENDER
Notary Public - State of New York
No. 02LE6104785
Qualified in New York County
Commission Expires 02/02/2012

LightHouse Temple Avenue, LLc
Grantee Name

2 Executive Drive, Suite 470, Fort LEE, NJ 07024
Grantee Address at Time of Sale

KV National Land Services
Name/Company of Settlement Officer

| FOR OFFICIAL USE ONLY | |
|---|---|
| Instrument Number_____ | County_____ |
| Deed Number_____ | Book_____ Page_____ |
| Deed Dated_____ | Date Recorded_____ |

County Recording Officers shall forward one copy of each Affidavit of Consideration for Use by Buyer recorded with deeds to:
**STATE OF NEW JERSEY- DIVISION OF TAXATION**
PO BOX 251
TRENTON, NJ 08695-0251
ATTENTION: REALTY TRANSFER FEE UNIT

The Director of the Division of Taxation in the Department of the Treasury has prescribed this form as required by law, and it may not be altered or amended
without prior approval of the Director. For further information on the Realty Transfer Fee or to print a copy of this Affidavit, visit the Division of Taxation website at
**www.state.nj.us/treasury/taxation/lpt/localtax.htm**

John S. Hogan
Bergen County Clerk

**Bergen County Clerk**
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 18-021999
V 02897 1248
RECORDED DATE: 04/04/2018 10:39:45 AM

| | |
|---|---|
| | Transaction #: 9089965 |
| **Document Type:** Mortgage | Document Page Count: 23 |
| | Operator Id: CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MADISON TITLE AGENCY, LLC<br>1125 OCEAN AVENUE<br>LAKEWOOD NJ 08701<br>ERECORDED | Madison Title Agency, LLC<br><br><br>(732) 333-2667 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| LENOX TEMPLE LLC | GREYSTONE SERVICING CORPORATION INCORPORATED |

| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |
|---|---|
| | |

MARGINAL REFERENCES:

| DOCUMENT DATE: 03/27/2018<br>MUNICIPALITY: HACKENSACK | INSTRUMENT #: 18-021999<br>Recorded Date: 04/04/2018 10:39:45 AM |
|---|---|
| FEES / TAXES:<br>  Recording Fee: Mortgage $30.00<br>  Additional Pages Fee $220.00<br>  Homeless Trust Fund - Bergen County $3.00<br>  Total: $253.00 | I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.<br><br>*John A. Hogan*<br>John S. Hogan<br>Bergen County Clerk<br><br>Recording Fees: $253.00<br>Realty Transfer Tax Fees: $0.00 |

OFFICIAL RECORDING COVER PAGE       Page 1 of 24

# PLEASE DO NOT DETACH
THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Prepared by, and after recording
return to:

Romer Debbas LLP
275 Madison Avenue, Suite 801
New York, New York 10016
Attention: Christian Daglieri, Esq.

Record and Return to:
MADISON TITLE AGENCY, LLC
COMMERCIAL DEPARTMENT
1125 OCEAN AVENUE
LAKEWOOD, NJ 08701
MTANJ - 105489

**MULTIFAMILY MORTGAGE,
ASSIGNMENT OF RENTS
AND SECURITY AGREEMENT**

**NEW JERSEY**

**(Revised 3-1-2014)**

**THIS INSTRUMENT IS FOR USE
ONLY FOR MULTIFAMILY PROPERTIES
CONTAINING MORE THAN 6 RESIDENTIAL UNITS**

**MULTIFAMILY MORTGAGE,**
**ASSIGNMENT OF RENTS**
**AND SECURITY AGREEMENT**

**NEW JERSEY**

**(Revised 3-1-2014)**

THIS MULTIFAMILY MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT (**"Instrument"**) is made to be effective this 27th day of March, 2018, between **LENOX TEMPLE LLC**, a New Jersey limited liability company, whose address is 210 River Street, Suite 24, Hackensack, New Jersey 07601, as mortgagor (**"Borrower"**), and **GREYSTONE SERVICING CORPORATION, INC.**, a corporation organized and existing under the laws of the State of Georgia, whose address is 419 Belle Air Lane, Warrenton, Virginia 20186, as mortgagee (**"Lender"**). Borrower's organizational identification number, if applicable, is **NOT APPLICABLE.**

## RECITAL

Borrower is indebted to Lender in the principal amount of $6,675,000.00, as evidenced by Borrower's Multifamily Note payable to Lender, dated as of the date of this Instrument, and maturing on April 1, 2038 (**"Maturity Date"**).

## AGREEMENT

TO SECURE TO LENDER the repayment of the Indebtedness, and all renewals, extensions and modifications of the Indebtedness, and the performance of the covenants and agreements of Borrower contained in the Loan Documents, Borrower mortgages, warrants, grants, conveys and assigns to Lender the Mortgaged Property, including the Land located in Bergen County, State of New Jersey and described in Exhibit A attached to this Instrument.

Borrower warrants and represents that Borrower is lawfully seized of the Mortgaged Property and has the right, power and authority to mortgage, grant, convey and assign the Mortgaged Property, and that the Mortgaged Property is unencumbered, except as shown on the schedule of exceptions to coverage in the title policy issued to and accepted by Lender contemporaneously with the execution and recordation of this Instrument and insuring Lender's interest in the Mortgaged Property (**"Schedule of Title Exceptions"**). Borrower covenants that Borrower will warrant and defend generally the title to the Mortgaged Property against all claims and demands, subject to any easements and restrictions listed in the Schedule of Title Exceptions.

**Covenants.** In consideration of the mutual promises set forth in this Instrument, Borrower and Lender covenant and agree as follows:

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

1. **Definitions.** The following terms, when used in this Instrument (including when used in the above recitals), will have the following meanings and any capitalized term not specifically defined in this Instrument will have the meaning ascribed to that term in the Loan Agreement:

**"Attorneys' Fees and Costs"** means (a) fees and out-of-pocket costs of Lender's and Loan Servicer's attorneys, as applicable, including costs of Lender's and Loan Servicer's in-house counsel, support staff costs, costs of preparing for litigation, computerized research, telephone and facsimile transmission expenses, mileage, deposition costs, postage, duplicating, process service, videotaping and similar costs and expenses; (b) costs and fees of expert witnesses, including appraisers; (c) investigatory fees; and (d) the costs for any opinion required by Lender pursuant to the terms of the Loan Documents.

**"Borrower"** means all Persons identified as "Borrower" in the first paragraph of this Instrument, together with their successors and assigns.

**"Business Day"** means any day other than a Saturday, a Sunday or any other day on which Lender or the national banking associations are not open for business.

**"Event of Default"** means the occurrence of any event described in Section 8.

**"Fixtures"** means all property owned by Borrower which is attached to the Land or the Improvements so as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators and installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment.

**"Governmental Authority"** means any board, commission, department, agency or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Mortgaged Property, or the use, operation or improvement of the Mortgaged Property, or over Borrower.

**"Improvements"** means the buildings, structures and improvements now constructed or at any time in the future constructed or placed upon the Land, including any future alterations, replacements and additions.

**"Indebtedness"** means (i) the principal of, (ii) interest at the fixed or variable rate set forth in the Note on, and (iii) all other amounts due at any time under, the Note, the Loan

Page 2

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

Agreement, this Instrument or any other Loan Document, including prepayment charges, late charges, default interest and advances as provided in Section 7 to protect the security of this Instrument.

"**Land**" means the land described in <u>Exhibit A</u>.

"**Leases**" means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property (including proprietary leases or occupancy agreements if Borrower is a cooperative housing corporation), and all modifications, extensions or renewals.

"**Lender**" means the entity identified as "Lender" in the first paragraph of this Instrument, or any subsequent holder of the Note.

"**Loan Agreement**" means the Loan Agreement executed by Borrower and Lender and dated as of the date of this Instrument, as such agreement may be amended from time to time.

"**Loan Documents**" means the Note, this Instrument, the Loan Agreement, all guaranties, all indemnity agreements, all collateral agreements, UCC filings, O&M Programs, the MMP and any other documents now or in the future executed by Borrower, any Guarantor or any other Person in connection with the Loan evidenced by the Note, as such documents may be amended from time to time.

"**Loan Servicer**" means the entity that from time to time is designated by Lender or its designee to collect payments and deposits and receive Notices under the Note, this Instrument, the Loan Agreement and any other Loan Document, and otherwise to service the Loan evidenced by the Note for the benefit of Lender. Unless Borrower receives Notice to the contrary, the Loan Servicer is the entity identified as "Lender" in the first paragraph of this Instrument.

"**Mortgaged Property**" means all of Borrower's present and future right, title and interest in and to all of the following:

    (a)    The Land.

    (b)    The Improvements.

    (c)    The Fixtures.

    (d)    The Personalty.

    (e)    All current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights of way, strips and gores of land, streets, alleys, roads, sewer rights,

waters, watercourses and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated.

(f) All proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not Borrower obtained the Insurance pursuant to Lender's requirement.

(g) All awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from Condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof.

(h) All contracts, options and other agreements for the sale of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations.

(i) All proceeds from the conversion, voluntary or involuntary, of any of the items described in subsections (a) through (h) inclusive into cash or liquidated claims, and the right to collect such proceeds.

(j) All Rents and Leases.

(k) All earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of the loan secured by this Instrument.

(l) All deposits to a Reserve Fund, whether in cash or as a letter of credit.

(m) All refunds or rebates of Taxes by a Governmental Authority (other than refunds applicable to periods before the real property tax year in which this Instrument is dated) or Insurance premiums by an insurance company.

(n) All tenant security deposits which have not been forfeited by any tenant under any Lease and any bond or other security in lieu of such deposits.

(o) All names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property.

"**Note**" means the Note (including any Amended and Restated Note, Consolidated, Amended and Restated Note, or Extended and Restated Note) executed by Borrower in favor of Lender and dated as of the date of this Instrument, including all schedules, riders, allonges and addenda, as such Note may be amended, modified and/or restated from time to time.

"**Notice**" or "**Notices**" means all notices, demands, Lender approvals and other communication required under the Loan Documents, provided in accordance with the requirements of Section 10.03 of the Loan Agreement.

"**Person**" means any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

"**Personalty**" means all of the following:

(a)     Accounts (including deposit accounts) of Borrower related to the Mortgaged Property.

(b)     Equipment and inventory owned by Borrower, which are used now or in the future in connection with the ownership, management or operation of the Land or Improvements or are located on the Land or Improvements, including furniture, furnishings, machinery, building materials, goods, supplies, tools, books, records (whether in written or electronic form) and computer equipment (hardware and software).

(c)     Other tangible personal property owned by Borrower which is used now or in the future in connection with the ownership, management or operation of the Land or Improvements or is located on the Land or in the Improvements, including ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances (other than Fixtures).

(d)     Any operating agreements relating to the Land or the Improvements.

(e)     Any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements.

(f)     All other intangible property, general intangibles and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land and including subsidy or similar payments received from any sources, including a Governmental Authority.

New Jersey                                                                          Page 5
Multifamily Mortgage, Assignment of Rents
and Security Agreement

(g)     Any rights of Borrower in or under letters of credit.

**"Property Jurisdiction"** means the jurisdiction in which the Land is located.

**"Rents"** means all rents (whether from residential or non-residential space), revenues and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Mortgaged Property, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Borrower is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due, or to become due.

**"Reserve Fund"** means all amounts deposited by the Borrower with Lender in connection with the Loan for the payment of Taxes or insurance premiums or as otherwise required pursuant to the Loan Agreement.

**"Taxes"** means all taxes, assessments, vault rentals and other charges, if any, whether general, special or otherwise, including all assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, will become a Lien on the Land or the Improvements, including any payments made in lieu of Taxes.

**"UCC"** means the Uniform Commercial Code as promulgated in the applicable jurisdiction.

2.     **Uniform Commercial Code Security Agreement.**

(a)     This Instrument is also a security agreement under the UCC for any of the Mortgaged Property which, under applicable law, may be subjected to a security interest under the UCC, for the purpose of securing Borrower's obligations under this Instrument and to further secure Borrower's obligations under the Note, this Instrument and other Loan Documents, whether such Mortgaged Property is owned now or acquired in the future, and all products and cash and non-cash proceeds thereof (collectively, **"UCC Collateral"**), and by this Instrument, Borrower grants to Lender a security interest under the UCC in the UCC Collateral.  To the extent necessary under applicable law, Borrower hereby authorizes Lender to prepare and file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest.

(b)     Unless Borrower gives Notice to Lender within 30 days after the occurrence of any of the following, and executes and delivers to Lender modifications or supplements of this Instrument (and any financing statement which may be filed in connection with this Instrument) as Lender may require, Borrower will not (i) change its name, identity, structure or jurisdiction of organization; (ii) change the location of its place of business (or chief executive office if more than one place of business); or (iii) add

to or change any location at which any of the Mortgaged Property is stored, held or located.

(c)   If an Event of Default has occurred and is continuing, Lender will have the remedies of a secured party under the UCC, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Lender may exercise its remedies against the UCC Collateral separately or together, and in any order, without in any way affecting the availability of Lender's other remedies.

(d)   This Instrument also constitutes a financing statement with respect to any part of the Mortgaged Property that is or may become a Fixture, if permitted by applicable law.

3.   **Assignment of Rents; Appointment of Receiver; Lender in Possession.**

(a)   As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Rents.

(i)    It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower.

(ii)   Promptly upon request by Lender, Borrower agrees to execute and deliver such further assignments as Lender may from time to time require. Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only.

(iii)  For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, Rents will not be deemed to be a part of the Mortgaged Property. However, if this present, absolute and unconditional assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents will be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a Lien on Rents in favor of Lender, which Lien will be effective as of the date of this Instrument.

(b)   (i)    Until the occurrence of an Event of Default, Lender hereby grants to Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender and to apply all Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including Imposition Reserve Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities, Taxes and insurance premiums (to the extent

not included in deposits to Reserve Funds), tenant improvements and other capital expenditures.

(ii)    So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Instrument.

(iii)    After the occurrence of an Event of Default, and during the continuance of such Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender. From and after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents will automatically terminate and Lender will without Notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid. Borrower will pay to Lender upon demand all Rents to which Lender is entitled.

(iv)    At any time on or after the date of Lender's demand for Rents, Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender.  No tenant will be obligated to inquire further as to the occurrence or continuance of an Event of Default. No tenant will be obligated to pay to Borrower any amounts which are actually paid to Lender in response to such a notice. Any such notice by Lender will be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Borrower will not interfere with and will cooperate with Lender's collection of such Rents.

(c)    If an Event of Default has occurred and is continuing, then Lender will have each of the following rights and may take any of the following actions:

(i)    Lender may, regardless of the adequacy of Lender's security or the solvency of Borrower and even in the absence of waste, enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the making of Repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing the assignment of Rents pursuant to Section 3(a), protecting the Mortgaged Property or the security of this Instrument, or for such other purposes as Lender in its discretion may deem necessary or desirable.

**New Jersey**
**Multifamily Mortgage, Assignment of Rents**
**and Security Agreement**

**Page 8**

(ii)     Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law.

(iii)    If Borrower is a housing cooperative corporation or association, Borrower hereby agrees that if a receiver is appointed, the order appointing the receiver may contain a provision requiring the receiver to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including deposits to Reserve Funds, it being acknowledged and agreed that the Indebtedness is an obligation of Borrower and must be paid out of maintenance charges payable by Borrower's tenant shareholders under their proprietary leases or occupancy agreements.

(iv)     Lender or the receiver, as the case may be, will be entitled to receive a reasonable fee for managing the Mortgaged Property.

(v)      Immediately upon appointment of a receiver or immediately upon Lender's entering upon and taking possession and control of the Mortgaged Property, Borrower will surrender possession of the Mortgaged Property to Lender or the receiver, as the case may be, and will deliver to Lender or the receiver, as the case may be, all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property and all security deposits and prepaid Rents.

(vi)     If Lender takes possession and control of the Mortgaged Property, then Lender may exclude Borrower and its representatives from the Mortgaged Property.

Borrower acknowledges and agrees that the exercise by Lender of any of the rights conferred under this Section 3 will not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and Improvements.

(d)      If Lender enters the Mortgaged Property, Lender will be liable to account only to Borrower and only for those Rents actually received. Except to the extent of Lender's gross negligence or willful misconduct, Lender will not be liable to

Page 9

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

Borrower, anyone claiming under or through Borrower or anyone having an interest in the Mortgaged Property, by reason of any act or omission of Lender under Section 3(c), and Borrower hereby releases and discharges Lender from any such liability to the fullest extent permitted by law.

(e)    If the Rents are not sufficient to meet the costs of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes will become an additional part of the Indebtedness as provided in Section 7.

(f)    Any entering upon and taking of control of the Mortgaged Property by Lender or the receiver, as the case may be, and any application of Rents as provided in this Instrument will not cure or waive any Event of Default or invalidate any other right or remedy of Lender under applicable law or provided for in this Instrument.

4.    **Assignment of Leases; Leases Affecting the Mortgaged Property.**

(a)    As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all of Borrower's right, title and interest in, to and under the Leases, including Borrower's right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.

(i)    It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all of Borrower's right, title and interest in, to and under the Leases. Borrower and Lender intend this assignment of the Leases to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only.

(ii)    For purposes of giving effect to this absolute assignment of the Leases, and for no other purpose, the Leases will not be deemed to be a part of the Mortgaged Property.

(iii)    However, if this present, absolute and unconditional assignment of the Leases is not enforceable by its terms under the laws of the Property Jurisdiction, then the Leases will be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a Lien on the Leases in favor of Lender, which Lien will be effective as of the date of this Instrument.

(b)    Until Lender gives Notice to Borrower of Lender's exercise of its rights under this Section 4, Borrower will have all rights, power and authority granted to Borrower under any Lease (except as otherwise limited by this Section or any other provision of this Instrument), including the right, power and authority to modify the terms of any Lease or extend or terminate any Lease. Upon the occurrence of an Event of Default, and during the continuance of such Event of Default, the permission given

Page 10

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

to Borrower pursuant to the preceding sentence to exercise all rights, power and authority under Leases will automatically terminate. Borrower will comply with and observe Borrower's obligations under all Leases, including Borrower's obligations pertaining to the maintenance and disposition of tenant security deposits.

(c)   (i)   Borrower acknowledges and agrees that the exercise by Lender, either directly or by a receiver, of any of the rights conferred under this Section 4 will not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and the Improvements.

(ii)   The acceptance by Lender of the assignment of the Leases pursuant to Section 4(a) will not at any time or in any event obligate Lender to take any action under this Instrument or to expend any money or to incur any expenses.

(iii)   Except to the extent of Lender's gross negligence or willful misconduct, Lender will not be liable in any way for any injury or damage to person or property sustained by any Person in or about the Mortgaged Property.

(iv)   Prior to Lender's actual entry into and taking possession of the Mortgaged Property, Lender will not be obligated for any of the following:

(A)   Lender will not be obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease).

(B)   Lender will not be obligated to appear in or defend any action or proceeding relating to the Lease or the Mortgaged Property.

(C)   Lender will not be responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property. The execution of this Instrument by Borrower will constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and will be that of Borrower, prior to such actual entry and taking of possession.

(d)   Upon delivery of Notice by Lender to Borrower of Lender's exercise of Lender's rights under this Section 4 at any time after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, Lender immediately will have all rights, powers and authority granted to Borrower under any Lease, including the right,

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

Page 11

power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.

(e)     Borrower will, promptly upon Lender's request, deliver to Lender an executed copy of each residential Lease then in effect.

(f)     If Borrower is a cooperative housing corporation or association, notwithstanding anything to the contrary contained in this Instrument, so long as Borrower remains a cooperative housing corporation or association and is not in breach of any covenant of this Instrument, Lender consents to the following:

(i)     Borrower may execute leases of apartments for a term in excess of 2 years to a tenant shareholder of Borrower, so long as such leases, including proprietary leases, are and will remain subordinate to the Lien of this Instrument.

(ii)    Borrower may surrender or terminate such leases of apartments where the surrendered or terminated lease is immediately replaced or where Borrower makes its best efforts to secure such immediate replacement by a newly-executed lease of the same apartment to a tenant shareholder of Borrower. However, no consent is given by Lender to any execution, surrender, termination or assignment of a lease under terms that would waive or reduce the obligation of the resulting tenant shareholder under such lease to pay cooperative assessments in full when due or the obligation of the former tenant shareholder to pay any unpaid portion of such assessments.

5.    **Prepayment Charge.**  Borrower will be required to pay a Prepayment charge in connection with certain prepayments of the Indebtedness, including a payment made after Lender's exercise of any right of acceleration of the Indebtedness, as provided in the Note.

6.    **Application of Payments.**  If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Lender may apply that payment to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Neither Lender's acceptance of an amount that is less than all amounts then due and payable nor Lender's application of such payment in the manner authorized will constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Borrower's obligations under this Instrument, the Note and all other Loan Documents will remain unchanged.

7.    **Protection of Lender's Security; Instrument Secures Future Advances.**

(a)     If Borrower fails to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Mortgaged Property, Lender's security or Lender's rights under this

Page 12

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws, fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, file such documents, disburse such sums and take such actions as Lender reasonably deems necessary to perform such obligations of Borrower and to protect Lender's interest, including all of the following:

(i)   Lender may pay Attorneys' Fees and Costs.

(ii)  Lender may pay fees and out-of-pocket expenses of accountants, inspectors and consultants.

(iii) Lender may enter upon the Mortgaged Property to make Repairs or secure the Mortgaged Property.

(iv)  Lender may procure the Insurance required by the Loan Agreement.

(v)   Lender may pay any amounts which Borrower has failed to pay under the Loan Agreement.

(vi)  Lender may perform any of Borrower's obligations under the Loan Agreement.

(vii) Lender may make advances to pay, satisfy or discharge any obligation of Borrower for the payment of money that is secured by a Prior Lien.

(b)   Any amounts disbursed by Lender under this Section 7, or under any other provision of this Instrument that treats such disbursement as being made under this Section 7, will be secured by this Instrument, will be added to, and become part of, the principal component of the Indebtedness, will be immediately due and payable and will bear interest from the date of disbursement until paid at the Default Annual Interest Rate.

(c)   Nothing in this Section 7 will require Lender to incur any expense or take any action.

8.   **Events of Default.** An Event of Default under the Loan Agreement will constitute an Event of Default under this Instrument.

9.   **Remedies Cumulative.** Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument, the Loan Agreement or any other Loan Document or afforded by applicable law or equity, and each will be cumulative and may be exercised concurrently, independently or successively, in any order. Lender's exercise of any particular right or remedy will not in any way prevent Lender from exercising any

Page 13

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

other right or remedy available to Lender. Lender may exercise any such remedies from time to time and as often as Lender chooses.

10.   **Waiver of Statute of Limitations, Offsets and Counterclaims.** Borrower waives the right to assert any statute of limitations as a bar to the enforcement of the Lien of this Instrument or to any action brought to enforce any Loan Document. Borrower hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Lender or otherwise to offset any obligations to make the payments required by the Loan Documents. No failure by Lender to perform any of its obligations under this Instrument will be a valid defense to, or result in any offset against, any payments that Borrower is obligated to make under any of the Loan Documents.

11.   **Waiver of Marshalling.**

   (a)   Notwithstanding the existence of any other security interests in the Mortgaged Property held by Lender or by any other party, Lender will have the right to determine the order in which any or all of the Mortgaged Property will be subjected to the remedies provided in this Instrument, the Note, the Loan Agreement or any other Loan Document or under applicable law. Lender will have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies.

   (b)   Borrower and any party who now or in the future acquires a security interest in the Mortgaged Property and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Mortgaged Property be sold in the inverse order of alienation or that any of the Mortgaged Property be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

12.   **Reserved.**

13.   **Governing Law; Consent to Jurisdiction and Venue.** This Instrument, and any Loan Document which does not itself expressly identify the law that is to apply to it, will be governed by the laws of the Property Jurisdiction. Borrower agrees that any controversy arising under or in relation to the Note, this Instrument or any other Loan Document may be litigated in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction will have jurisdiction over all controversies that may arise under or in relation to the Note, any security for the Indebtedness or any other Loan Document. Borrower irrevocably consents to service, jurisdiction and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise. However, nothing in this Section 13 is intended to limit Lender's right to bring any suit, action or proceeding relating to matters under this Instrument in any court of any other jurisdiction.

14.   **Notice.**  All Notices, demands and other communications under or concerning this Instrument will be governed by the terms set forth in the Loan Agreement.

15.   **Successors and Assigns Bound.**  This Instrument will bind the respective successors and assigns of Borrower and Lender, and the rights granted by this Instrument will inure to Lender's successors and assigns.

16.   **Joint and Several Liability.**  If more than one Person signs this Instrument as Borrower, the obligations of such Persons will be joint and several.

17.   **Relationship of Parties; No Third Party Beneficiary.**

   (a)   The relationship between Lender and Borrower will be solely that of creditor and debtor, respectively, and nothing contained in this Instrument will create any other relationship between Lender and Borrower. Nothing contained in this Instrument will constitute Lender as a joint venturer, partner or agent of Borrower, or render Lender liable for any debts, obligations, acts, omissions, representations or contracts of Borrower.

   (b)   No creditor of any party to this Instrument and no other Person will be a third party beneficiary of this Instrument or any other Loan Document. Without limiting the generality of the preceding sentence, (i) any arrangement ("**Servicing Arrangement**") between Lender and any Loan Servicer for loss sharing or interim advancement of funds will constitute a contractual obligation of such Loan Servicer that is independent of the obligation of Borrower for the payment of the Indebtedness, (ii) Borrower will not be a third party beneficiary of any Servicing Arrangement, and (iii) no payment by the Loan Servicer under any Servicing Arrangement will reduce the amount of the Indebtedness.

18.   **Severability; Amendments.**

   (a)   The invalidity or unenforceability of any provision of this Instrument will not affect the validity or enforceability of any other provision, and all other provisions will remain in full force and effect.  This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument.

   (b)   This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

19.   **Construction.**

   (a)   The captions and headings of the Sections of this Instrument are for convenience only and will be disregarded in construing this Instrument.  Any reference in this Instrument to a "Section" will, unless otherwise explicitly provided, be construed as referring to a Section of this Instrument.

New Jersey                                                                              Page 15
Multifamily Mortgage, Assignment of Rents
and Security Agreement

    (b)    Any reference in this Instrument to a statute or regulation will be construed as referring to that statute or regulation as amended from time to time.

    (c)    Use of the singular in this Instrument includes the plural and use of the plural includes the singular. The use of one gender includes the other gender, as the context may require.

    (d)    As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation."

    (e)    Unless the context requires otherwise, (i) any definition of or reference to any agreement, instrument or other document in this Instrument will be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Instrument), and (ii) any reference in this Instrument to any Person will be construed to include such Person's successors and assigns.

    (f)    Any reference in this Instrument to "Lender's requirements," "as required by Lender," or similar references will be construed, after Securitization, to mean Lender's requirements or standards as determined in accordance with Lender's and Loan Servicer's obligations under the terms of the Securitization documents.

20.    **Subrogation.** If, and to the extent that, the proceeds of the Loan evidenced by the Note, or subsequent advances under Section 7, are used to pay, satisfy or discharge a Prior Lien, such loan proceeds or advances will be deemed to have been advanced by Lender at Borrower's request, and Lender will automatically, and without further action on its part, be subrogated to the rights, including Lien priority, of the owner or holder of the obligation secured by the Prior Lien, whether or not the Prior Lien is released.

21-30.  **Reserved.**

31.    **Acceleration; Remedies.** At any time during the existence of an Event of Default, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, and may foreclose this Instrument by judicial proceeding and may invoke any other remedies permitted by New Jersey law, provided in equity or provided in this Instrument or in any other Loan Document. Lender will be entitled to collect all costs and expenses incurred in pursuing such remedies, including Attorneys' Fees and Costs permitted by Rules of Court, costs of documentary evidence, abstracts and title reports.

32.    **Release.** Upon payment of the Indebtedness, Lender will cancel this Instrument. Borrower will pay Lender's reasonable costs incurred in canceling this Instrument.

33.  **No Claim of Credit for Taxes.** Borrower will not make or claim credit on or deduction from the principal or interest on the sums secured by this Instrument by reason of any municipal or governmental taxes, assessments or charges assessed upon the Mortgaged Property, or claim any deduction from the taxable value of the Mortgaged Property by reason of this Instrument.

34.  **Loan Subject to Modification.** This Instrument is subject to "modification" as such term is defined in N.J.S.A. 46:9-8.1 *et seq.* and will be subject to the priority provisions thereof.

35.  **Additional Environmental Provisions.** Any reference in this Instrument or in any other Loan Document to Section 5.05 or Section 6.12 of the Loan Agreement will be construed as referring together to Section 5.05 or Section 6.12 of the Loan Agreement and this Section. In addition to the representations, warranties and covenants of Borrower in Section 5.05 and 6.12 of the Loan Agreement, Borrower represents, warrants, and covenants as follows:

     (a)  None of the real property owned and/or occupied by Borrower and located in New Jersey, including the Mortgaged Property, has been used, is now being used, or, without the prior express written consent of Lender, will in the future be used as a "Major Facility," as that term is defined in N.J.S.A. 58:10-23.11b.

     (b)  If any real property owned by Borrower and located in New Jersey, including the Mortgaged Property, is used in the future, with the prior express written consent of Lender, as a Major Facility, then Borrower will furnish the New Jersey Department of Environmental Protection with all the information required by N.J.S.A. 58:10-23.11d1 through 11d17 inclusive with respect to that property. Borrower further covenants and agrees that, so long as Borrower owns or operates any real property located in New Jersey which is used as a Major Facility, Borrower will duly file or cause to be filed with the Director or the Division of Taxation in the New Jersey Department of the Treasury, a tax report or return and will pay or make provision in accordance with and pursuant to N.J.S.A. 58:10-23.11h.

     (c)  No Lien has been attached to any revenues or any real or any personal property owned by Borrower and located in New Jersey, including the Mortgaged Property, as a result of the administrator of the New Jersey Spill Compensation Fund expending monies from such fund to pay for "Damages," as that term is defined in N.J.S.A. 58:10-23.11g, and/or "Clean up and Removal Costs," as that term is defined in N.J.S.A. 58:10-23.11b, arising from an intentional or unintentional action or omission by Borrower or any previous owner and/or operator of such real property resulting in the releasing, spilling, pumping, pouring, emitting, emptying or dumping of any Hazardous Materials into the waters of New Jersey or onto land from which it might flow or drain into such waters or into waters outside the jurisdiction of New Jersey where damage may have resulted to the lands, waters, fish, shellfish, wildlife, biota, air and other resources owned, managed, held in trust or otherwise controlled by New Jersey.

(d)   In connection with any purchase of the Mortgaged Property or any other real property acquired by Borrower on or after January 1, 1984, Borrower required that the seller of such real property, including the Mortgaged Property, comply with the applicable provisions of the New Jersey Industrial Site Recovery Act, formerly known as the Environmental Cleanup Responsibility Act (N.J.S.A. 13:1K-6 *et seq.*), as amended, and the seller did comply with such provisions.

(e)   If there is a Lien filed against the Mortgaged Property by the New Jersey Department of Environmental Protection pursuant to and in accordance with the provisions of N.J.S.A. 58:10-23.11f, as a result of the administrator of the New Jersey Spill Compensation Fund having expended monies from such fund to pay for "Damages," as that term is defined in N.J.S.A. 58:10-23.11g, and/or "Cleanup and Removal Costs," as that term is defined in N.J.S.A. 58:10-23.11b, arising from an intentional or unintentional action or omission of Borrower, resulting in the releasing, spilling, pumping, pouring, emitting, emptying or dumping of any Hazardous Materials into the waters of New Jersey or onto lands from which it might flow or drain into such waters, within 30 days from the date that Borrower is given notice that the Lien has been placed against the Mortgaged Property or within such shorter period of time if New Jersey has commenced steps to cause the Mortgaged Property to be sold pursuant to the Lien, Borrower will take one of the following actions:

   (i)   Pay the claim and remove the Lien from the Mortgaged Property.

   (ii)   Furnish one of the following to Lender:

      (A)   A bond reasonably satisfactory to Lender and the title company which issued the title policy accepted by Lender contemporaneously with the execution and recordation of this Instrument, in the amount of the claim out of which the Lien arises.

      (B)   A cash deposit in the amount of the claim out of which the Lien arises.

      (C)   Other security reasonably satisfactory to Lender in an amount sufficient to discharge the claim out of which the Lien arises.

(f)   Borrower hereby agrees that if the provisions of the New Jersey Industrial Site Recovery Act (N.J.S.A. 13:1K-6 *et seq.*) become applicable to all or any portion of the Mortgaged Property subsequent to the date of this Instrument, Borrower will give prompt Notice to Lender of such applicability, and Borrower will take immediate requisite action to ensure full compliance with such Act.

36.   <u>TRUE AND CORRECT COPY</u>. BORROWER HEREBY DECLARES THAT BORROWER HAS READ THIS INSTRUMENT, HAS RECEIVED A COMPLETELY FILLED-IN COPY OF IT WITHOUT CHARGE THEREFOR,

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

AND HAS SIGNED THIS INSTRUMENT AS OF THE DATE AT THE TOP OF THE FIRST PAGE.

37.   **WAIVER OF TRIAL BY JURY.**

    (a)   BORROWER AND LENDER EACH COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY.

    (b)   BORROWER AND LENDER EACH WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

38.   **Obligation to Pay at Default Rate.** Borrower agrees that it is the intention of Borrower and Lender that in the event of a foreclosure or other action to enforce the terms of any or all of the Loan Documents, and the entry of a judgment in such foreclosure or other enforcement action ("**Judgment**"), Borrower's obligation to pay Lender interest at the Default Rate (as defined in the Note), any taxes, insurance, premiums or other charges advanced by Lender, or attorney's fees or other costs and expenses incurred by Lender with respect to any or all of the Loan Documents, whether paid or incurred before or after the entry of such Judgment, will not be deemed to have merged into the Judgment and will survive the entry of such Judgment and continue in full force and effect until all such sums have been paid in full to Lender.

39.   **Attached Riders.** The following Riders are attached to this Instrument:

    NONE

40.   **Attached Exhibits.** The following Exhibits, if marked with an "X" in the space provided, are attached to this Instrument:

|X|    Exhibit A    Description of the Land (required)
|_|    Exhibit B    Modifications to Instrument
|_|    Exhibit C    Ground Lease Description (if applicable)

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, Borrower has signed and delivered this Instrument or has caused this Instrument to be signed and delivered by its duly authorized representative.

**BORROWER:**

**LENOX TEMPLE LLC**, a New Jersey limited liability company

By: _____
    Name:  Seth P. Levine
    Title:   Managing Member


STATE OF _New Jersey_ )
                   ) ss.:
COUNTY OF _Bergen_ )

    On the 13th day of March in the year 2018 before me, the undersigned, a Notary Public in and for the State, personally appeared Seth P. Levine personally known to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

**ANDREW SELEVAN**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires 1/25/2021**


New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

Bergen County Clerk        V  BK 02897  PG 1269        04/04/2018 10:39 AM        22 of 24

EXHIBIT A

DESCRIPTION OF THE LAND

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEING known and designated as Lot 18-23 as shown on a certain map entitled, "Map of Property of Anderson and Ward, situated in Hackensack, Bergen County, N.J.", duly filed in the Office of the Bergen County Clerk on May 25, 1972 as Map No.196.

BEGINNING at a point in the northeasterly side of Temple Avenue, distant 471.54 feet northwesterly from its intersection with the northwesterly side of Hackensack Avenue; running thence

1. Along the northeasterly side of Temple Avenue, North 43 degrees 10 minutes West, 300.00 feet; thence

2. North 46 degrees 50 minutes East, 212.93 feet; thence

3. South 43 degrees 04 minutes 10 seconds East, 300.00 feet; thence

4. South 46 degrees 50 minutes West, 212.42 feet to the point and place of BEGINNING.

The above description is in accordance with a survey made by Hallard & Associates dated April 20, 2007.

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

Bergen County Clerk                    V  BK 02897  PG 1270                    04/04/2018 10:39 AM                    23 of 24

## EXHIBIT B

### MODIFICATIONS TO INSTRUMENT

The following modifications are made to the text of the Instrument that precedes this Exhibit:

NONE

New Jersey
Multifamily Mortgage, Assignment of Rents
and Security Agreement

Page B-1

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/

SEAL OF BERGEN COUNTY · NEW JERSEY

INSTRUMENT # 18-021999.01

V 02897 1272

RECORDED DATE: 04/04/2018 10:39:46 AM

| | |
|---|---|
| **Document Type:** Assignment of Mortgage | Transaction #: 9089965 |
| | Document Page Count: 3 |
| | Operator Id: CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MADISON TITLE AGENCY, LLC<br>1125 OCEAN AVENUE<br>LAKEWOOD NJ 08701<br>ERECORDED | Madison Title Agency, LLC<br><br><br>(732) 333-2667 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| GREYSTONE SERVICING CORPORATION INCORPORATED | FEDERAL HOME LOAN MORTGAGE CORPORATION |
| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |
| | |

**MARGINAL REFERENCES:** V BK 02897 PG 1248

DOCUMENT DATE: 03/05/2018
MUNICIPALITY: HACKENSACK

FEES / TAXES:

| | |
|---|---|
| Recording Fee: Assignment of Mortgage | $40.00 |
| Additional Pages Fee | $20.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| **Total:** | **$63.00** |

INSTRUMENT #: 18-021999.01
Recorded Date: 04/04/2018 10:39:46 AM

I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.



John S. Hogan
Bergen County Clerk

Recording Fees: $63.00
Realty Transfer Tax Fees: $0.00

**OFFICIAL RECORDING COVER PAGE**

Page 1 of 4

# PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Prepared by, and after recording
return to:

Romer Debbas LLP
275 Madison Avenue, Suite 801
New York, New York 10016
Attention: Christian Daglieri, Esq.

Record and Return to:
MADISON TITLE AGENCY, LLC
COMMERCIAL DEPARTMENT
1125 OCEAN AVENUE
LAKEWOOD, NJ 08701
M120\ 175439A

Freddie Mac Loan Number: 499472136
Property Name: 54-78 Temple Avenue

## ASSIGNMENT OF SECURITY INSTRUMENT

### (Revised 12-19-2014)

FOR VALUABLE CONSIDERATION, **GREYSTONE SERVICING CORPORATION, INC.,**
a corporation organized and existing under the laws of the State of Georgia (**"Assignor"**), having
its principal place of business at 419 Belle Air Lane, Warrenton, Virginia 20186, hereby assigns,
grants, sells and transfers to the **FEDERAL HOME LOAN MORTGAGE CORPORATION,** a
corporation organized and existing under the laws of the United States (**"Assignee"**), having its
principal place of business at 8200 Jones Branch Drive, McLean, Virginia 22102, and Assignee's
successors, transferees and assigns forever, all of the right, title and interest of Assignor in and to the
Multifamily Mortgage, Assignment of Rents and Security Agreement dated March 27, 2018, entered
into by **LENOX TEMPLE LLC ("Borrower")** for the benefit of Assignor, securing an
indebtedness of Borrower to Assignor in the principal amount of $6,675,000.00 recorded in the land
records of Bergen County, State of New Jersey at the city register's office (**"Instrument"**), which
indebtedness is secured by the property described in <u>Exhibit A</u> attached to this Assignment and
incorporated into it by this reference.

Together with the Note or other obligation described in the Instrument and all obligations secured
by the Instrument now or in the future.

## [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Assignment of Security Instrument

IN WITNESS WHEREOF, Assignor has executed this Assignment as of _March 27_, 2018, to be effective as of the effective date of the Instrument.

ASSIGNOR:

GREYSTONE SERVICING CORPORATION, INC., a corporation organized and existing under the laws of the State of Georgia

By: _____
     Name:  Dian Coleman
     Title:   Managing Director of Closing

STATE OF TENNESSEE  )
                   ) ss.:
COUNTY OF SHELBY     )

On the _5th_ day of _March_ in the year 2018 before me, the undersigned, a Notary Public in and for the State, personally appeared Dian Coleman personally known to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

NICOLE BAILEY NEWBERN
STATE
OF
TENNESSEE
NOTARY
PUBLIC
SHELBY COUNTY
MY COMMISSION EXPIRES JANUARY 29, 2020

Assignment of Security Instrument

Bergen County Clerk          V  BK 02897  PG 1274          04/04/2018 10:39 AM          3 of 4

**EXHIBIT A**

DESCRIPTION OF THE PROPERTY

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEING known and designated as Lot 18-23 as shown on a certain map entitled, "Map of Property of Anderson and Ward, situated in Hackensack, Bergen County, N.J.", duly filed in the Office of the Bergen County Clerk on May 25, 1972 as Map No.196.

BEGINNING at a point in the northeasterly side of Temple Avenue, distant 471.54 feet northwesterly from its intersection with the northwesterly side of Hackensack Avenue; running thence

1. Along the northeasterly side of Temple Avenue, North 43 degrees 10 minutes West, 300.00 feet; thence

2. North 46 degrees 50 minutes East, 212.93 feet; thence

3. South 43 degrees 04 minutes 10 seconds East, 300.00 feet; thence

4. South 46 degrees 50 minutes West, 212.42 feet to the point and place of BEGINNING.

The above description is in accordance with a survey made by Hallard & Associates dated April 20, 2007.

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 18-055408

V 03016 0766

RECORDED DATE: 08/02/2018 10:01:41 AM

| | |
|---|---|
| Transaction #: | 9139547 |
| Document Page Count: | 4 |
| Operator Id: | CLERK |

**Document Type:** Assignment of Mortgage

**RETURN TO:**

MCCOY & ORTA, P.C.
100 N. BROADWAY, SUITE 2600
OKLAHOMA CITY OK 73102
ERECORDED

**SUBMITTED BY:**

McCoy & Orta, P.C.

(405) 236-0003

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION | US BANK NA |
| **ADDITIONAL PRIMARY NAMES** | **ADDITIONAL SECONDARY NAMES** |
| | WELLS FARGO COMMERCIAL MORTGAGE SECURITIES INCORPORATED MULTIFAMILY MORTGAGE PASS THROUGH CERTIFICATES SERIES 2018 SB51 |

**MARGINAL REFERENCES:** V 02897 1248

DOCUMENT DATE: 07/05/2018
MUNICIPALITY: HACKENSACK

FEES / TAXES:
| | |
|---|---|
| Recording Fee: Assignment of Mortgage | $40.00 |
| Additional Pages Fee | $30.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| Total: | $73.00 |

INSTRUMENT #: 18-055408
Recorded Date: 08/02/2018 10:01:41 AM

I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.

*John S. Hogan*

John S. Hogan
Bergen County Clerk

Recording Fees: $73.00
Realty Transfer Tax Fees: $0.00

## OFFICIAL RECORDING COVER PAGE

Page 1 of 5

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

This instrument was prepared by and
after recordation return to:

McCoy & Orta, P.C.
100 North Broadway, 26th Floor
Oklahoma City, OK 73102
Telephone: (888) 236-0007

| | |
|---|---|
| Jurisdiction: | Bergen County |
| State: | New Jersey |
| Loan No.: | 499472136 |
| M&O Ref.: | 7486.117 |
| Loan Name: | 54-78 Temple Avenue |

## ASSIGNMENT OF MULTIFAMILY MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

FOR VALUE RECEIVED, **FEDERAL HOME LOAN MORTGAGE CORPORATION**, whose address is 8200 Jones Branch Drive, McLean, VA 22102 ("Assignor"), conveys, assigns, transfers, and sets over unto **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE SECURITIES, INC., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-SB51**, ("Assignee"), whose address is One Federal Street, 3rd Floor, Mail Code EX-MA-FED, Boston, MA 02110 without recourse, representation or warranty, express or implied, except as set forth in that certain related Mortgage Loan Purchase Agreement, all the right, title and interest of Assignor in and to the Multifamily Mortgage, Assignment of Rents and Security Agreement and other documents, if any, described in Schedule A attached hereto and incorporated herein, together with the note or notes described therein, and all other documents and instruments relating to or securing said Multifamily Mortgage, Assignment of Rents and Security Agreement or note or notes described therein, encumbering, among other things, the premises described in Exhibit A attached hereto and incorporated herein and the improvements thereon.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns forever.

Dated this 5th day of July, 2018, to be effective as of the 24th day of July, 2018.

FEDERAL HOME LOAN MORTGAGE CORPORATION,
a corporation organized and existing under the laws of the
United States

By: _____
Name: Mary Ellen Slavinskas
Title:  Director
        Multifamily Operations

STATE OF VIRGINIA              §
                               §
COUNTY OF FAIRFAX              §

On the 5th day of July, 2018, before me, the undersigned, a Notary Public in and
for said State, personally appeared Mary Ellen Slavinskas, Director, Multifamily
Operations, of Federal Home Loan Mortgage Corporation, personally known to me or
proved to me on the basis of satisfactory evidence to be the person whose name is
subscribed to the within instrument and acknowledged to me that she executed the same in
her authorized capacity, and that by her signature on the instrument the person, or the
entity upon behalf of which the person acted, executed the instrument, and that such
individual made such appearance before the undersigned, in Fairfax County, Virginia.

WITNESS my hand and official seal.

                                  _____
                                  Name of Notary Public

[ S E A L ]
My Commission Expires:

                          ┌─────────────────────────────────┐
                          │   ADRIENNE HOLLEY PUCHALSKI      │
                          │        NOTARY PUBLIC             │
                          │     REGISTRATION # 310098        │
                          │   COMMONWEALTH OF VIRGINIA       │
                          │    MY COMMISSION EXPIRES         │
                          │        JULY 31, 2020             │
                          └─────────────────────────────────┘

Loan No.: 499472136
M&O File No.: 7486.117
Loan Name: 54-78 Temple Avenue
Pool: SB-51

**SCHEDULE A**

Multifamily Mortgage, Assignment of Rents and Security Agreement dated as of March 27, 2018, by LENOX TEMPLE LLC, a New Jersey limited liability company, to GREYSTONE SERVICING CORPORATION, INC. ("Original Lender"), in the amount of $6,675,000.00 ("Mortgage"), recorded on April 4, 2018, in Virtual Book 2897, Page 1248 in the office of the County Clerk of Bergen County, New Jersey ("Real Estate Records").

The Mortgage was assigned from Original Lender to FEDERAL HOME LOAN MORTGAGE CORPORATION by that certain Assignment of Security Instrument dated as of March 27, 2018, to be effective as of March 27, 2018, and recorded on April 4, 2018, in Virtual Book 2897, Page 1272, in the Real Estate Records.

Loan No.: 499472136
M&O File No.: 7486.117
Loan Name: 54-78 Temple Avenue
Pool: SB-51

**EXHIBIT A**
**LEGAL DESCRIPTION**

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEING known and designated as Lot 18-23 as shown on a certain map entitled, "Map of Property of Anderson and Ward, situated in Hackensack, Bergen County, N.J.", duly filed in the Office of the Bergen County Clerk on May 25, 1972 as Map No.198.

BEGINNING at a point in the northeasterly side of Temple Avenue, distant 471.54 feet northwesterly from its intersection with the northwesterly side of Hackensack Avenue; running thence

1. Along the northeasterly side of Temple Avenue, North 43 degrees 10 minutes West, 300.00 feet; thence

2. North 46 degrees 50 minutes East, 212.93 feet; thence

3. South 43 degrees 04 minutes 10 seconds East, 300.00 feet; thence

4. South 46 degrees 50 minutes West, 212.42 feet to the point and place of BEGINNING.

The above description is in accordance with a survey made by Hallard & Associates dated April 20, 2007.

Loan No.: 499472136
M&O File No.: 7486.117
Loan Name: 54-78 Temple Avenue
Pool: SB-51

Bergen County Clerk          BK 03016 PG 0770          08/02/2016 10:01 AM          5 of 5      ** End of Document **

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 18-021999.02

V 02897 1276

RECORDED DATE: 04/04/2018 10:39:47 AM

FILE NUMBER : 000730-18

| | |
|---|---|
| | Transaction #: 9089965 |
| Document Type:   UCC 1 - Financial Statement | Document Page Count: 6 |
| | Operator Id: CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MADISON TITLE AGENCY, LLC<br>1125 OCEAN AVENUE<br>LAKEWOOD  NJ 08701<br>ERECORDED | Madison Title Agency, LLC |
| | (732) 333-2667 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| LENOX TEMPLE LLC | FEDERAL HOME LOAN MORTGAGE CORPORATION |
| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |
| | GREYSTONE SERVICING CORPORATION INCORPORATED |

MARGINAL REFERENCES:

| MUNICIPALITY: HACKENSACK | INSTRUMENT #: 18-021999.02 |
|---|---|
| FEES / TAXES: | Recorded Date: 04/04/2018 10:39:47 AM |
| Recording Fee: UCC 1 - Financial<br>Statement          $25.00 | I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey. |
| Total:                           $25.00 | |
| | John S. Hogan<br>Bergen County Clerk |
| | Recording Fees: $25.00<br>Realty Transfer Tax Fees: $0.00 |

OFFICIAL RECORDING COVER PAGE                          Page 1 of 7

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Romer Debbas LLP
275 Madison Avenue, Suite 801
New York, New York 10016
Attention: Christian Daglieri, Esq.

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| LENOX TEMPLE LLC | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 210 River Street, Suite 24 | Hackensack | NJ | 07601 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| Not Applicable | | LLC | New Jersey | | NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| Not Applicble | | | | | NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 8200 Jones Branch Drive | McLean | VA | 22102 | USA |

4. This FINANCING STATEMENT covers the following collateral:

See Exhibit A and Exhibit B annexed hereto and made a part hereof.

| 5. ALTERNATIVE DESIGNATION [if applicable] | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

2851.043          Bergen  County - Freddie Mac Loan #  499472136

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**UCC FINANCING STATEMENT ADDENDUM**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

OR **LENOX TEMPLE LLC**

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11d. SEE INSTRUCTIONS | ADD'L INFO RE: ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any
Not Applicable | | | | □ NONE

12. □ ADDITIONAL SECURED PARTY'S or ☑ ASSIGNOR S/P'S   NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR **GREYSTONE SERVICING CORPORATION, INC,**

12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY
**419 Belle Air Lane** | **Warrenton** | **VA** | **20186** | **USA**

13. This FINANCING STATEMENT covers □ timber to be cut or □ as-extracted collateral, or is filed as a ☑ fixture filing.

14. Description of real estate:

Premises:     **54-78 Temple Avenue, Hackensack,**
              **New Jersey 07601**


County:    **Bergen**

Block:     **511**

Lot:       **11**

16. Additional collateral description:

**See Exhibit A and Exhibit B annexed hereto and made a part hereof.**

15. Name and address of a RECORD OWNER of above-described real estate
(if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a □ Trust or □ Trustee acting with respect to property held in trust or □ Decedent's Estate

18. Check only if applicable and check only one box.
□ Debtor is a TRANSMITTING UTILITY
□ Filed in connection with a Manufactured-Home Transaction — effective 30 years
□ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

**Financing Statement**
**Exhibit A**
**Legal Description of Property**

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEING known and designated as Lot 18-23 as shown on a certain map entitled, "Map of Property of Anderson and Ward, situated in Hackensack, Bergen County, N.J.", duly filed in the Office of the Bergen County Clerk on May 25, 1972 as Map No. 196.

BEGINNING at a point in the northeasterly side of Temple Avenue, distant 471.54 feet northwesterly from its intersection with the northwesterly side of Hackensack Avenue; running thence

1. Along the northeasterly side of Temple Avenue, North 43 degrees 10 minutes West, 300.00 feet; thence

2. North 46 degrees 50 minutes East, 212.93 feet; thence

3. South 43 degrees 04 minutes 10 seconds East, 300.00 feet; thence

4. South 46 degrees 50 minutes West, 212.42 feet to the point and place of BEGINNING.

The above description is in accordance with a survey made by Hallard & Associates dated April 20, 2007.



Financing Statement Exhibit B – SBL
(Revised 11-02-2015)

## EXHIBIT B

All of Debtor's present and future right, title, and interest in and to all of the following:

(1)     "Fixtures," which means all property owned by Debtor which is attached to the real property described in Exhibit A ("Land") and/or the improvements located on the Land ("Improvements") ("Property" means the Land and/or the Improvements) so as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators and installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment.

(2)     "Personalty," which means all of the following:

(i)     Accounts (including deposit accounts) of Debtor related to the Property.

(ii)    Equipment and inventory owned by Debtor, which are used now or in the future in connection with the ownership, management or operation of the Land or Improvements or are located on the Land or Improvements, including furniture, furnishings, machinery, building materials, goods, supplies, tools, books, records (whether in written or electronic form) and computer equipment (hardware and software).

(iii)   Other tangible personal property owned by Debtor which is used now or in the future in connection with the ownership, management or operation of the Land or Improvements or is located on the Land or in the Improvements, including ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances (other than Fixtures).

(iv)    Any operating agreements relating to the Land or the Improvements.

(v)     Any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements.

(vi)    All other intangible property, general intangibles and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land and including subsidy

or similar payments received from any sources, including a "**Governmental Authority**" (defined as any board, commission, department, agency or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Property, or the use, operation or improvement of the Property, or over Debtor).

(vii)   Any rights of Debtor in or under any letter of credit required under the terms of the Loan Agreement evidencing and securing the loan ("**Loan**") secured by this financing statement ("**Loan Agreement**").

(3)   All current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights of way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated.

(4)   All proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Property, whether or not Debtor obtained the insurance pursuant to Secured Party's requirement.

(5)   All awards, payments and other compensation made or to be made by any Governmental Authority with respect to the Land, or if Debtor's interest in the Land is pursuant to a ground lease, the ground lease and the leasehold estate created by such ground lease ("**Leasehold Estate**"), the Improvements, the Fixtures, the Personalty or any other part of the Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof.

(6)   All contracts, options and other agreements for the sale of the Land, or the Leasehold Estate, as applicable, the Improvements, the Fixtures, the Personalty or any other part of the Property entered into by Debtor now or in the future, including cash or securities deposited to secure performance by parties of their obligations.

(7)   All "**Rents**," which means all rents (whether from residential or non-residential space), revenues and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Property, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Debtor is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due or to become due.

(8)   All "**Leases**," which means all present and future leases, subleases, licenses, concessions or grants or other possessory interests in force now or hereafter, whether oral or written, covering or affecting the Property, or any portion of the Property (including proprietary leases or occupancy agreements if Debtor is a cooperative housing corporation), and all modifications, extensions or renewals.

Financing Statement Exhibit B – SBL                                         Page 2

(9)    All earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Property, and all undisbursed proceeds of the Loan.

(10)   All deposits to a "**Reserve Fund**" (defined as all amounts deposited by the Debtor with Secured Party in connection with the Loan for the payment of taxes or insurance premiums or as otherwise required pursuant to the Loan Agreement), whether in cash or as a letter of credit.

(11)   All refunds or rebates of taxes by a Governmental Authority (other than refunds applicable to periods before the real property tax year in which this financing statement is recorded or filed) or insurance premiums by an insurance company.

(12)   All tenant security deposits which have not been forfeited by any tenant under any Lease and any bond or other security in lieu of such deposits.

(13)   All names under or by which the Property or any part of it may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Property.

(14)   All proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds.

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 18-055408.01

V 03016 0771

RECORDED DATE: 08/02/2018 10:01:42 AM

FILE NUMBER : 000730-18

| | | |
|---|---|---|
| | Transaction #: | 9139547 |
| Document Type:   UCC Assignment | Document Page Count: | 2 |
| | Operator Id: | CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MCCOY & ORTA, P.C.<br>100 N. BROADWAY, SUITE 2600<br>OKLAHOMA CITY  OK  73102<br>ERECORDED | McCoy & Orta, P.C.<br><br><br>(405) 236-0003 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| LENOX TEMPLE LLC | US BANK NA |
| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |
| | |

MARGINAL REFERENCES:

| MUNICIPALITY: HACKENSACK | |
|---|---|
| FEES / TAXES:<br> Recording Fee: UCC Assignment    $25.00<br>Total:                              $25.00 | INSTRUMENT #: 18-055408.01<br>Recorded Date: 08/02/2018 10:01:42 AM<br><br>I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.<br><br>John S. Hogan<br>Bergen County Clerk<br><br>Recording Fees: $25.00<br>Realty Transfer Tax Fees: $0.00 |

OFFICIAL RECORDING COVER PAGE                                   Page 1 of 3

# PLEASE DO NOT DETACH
THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Nick Barzellone 405-236-0003

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

McCoy & Orta, P.C.
100 North Broadway, 26th Floor
Oklahoma City, OK 73102

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
730-18 filed 4/4/18

1b. ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☑ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes:  AND  Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address. Complete item 6a or 6b; and item 7a or 7b and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE*

OR 7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                  SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One Federal St., 3rd Fl., Mail Code EX-MA-FED | Boston | MA | 02110 | USA |

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes:  ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

* FOR THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE SECURITIES, INC.,
MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-SB51

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (Name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
FEDERAL HOME LOAN MORTGAGE CORPORATION

OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA
M&O Ref.: 7486.117 54-78 Temple Avenue (Loan No. 499472136) FILE WITH BERGEN COUNTY, NJ

UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**
FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form

730-18 filed 4/4/18

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME

FEDERAL HOME LOAN MORTGAGE CORPORATION

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit.

13a. ORGANIZATION'S NAME

LENOX TEMPLE LLC

OR

13b. INDIVIDUAL'S SURNAME          FIRST PERSONAL NAME          ADDITIONAL NAME(S)/INITIAL(S)     SUFFIX

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing

17. Description of real estate:

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

18. MISCELLANEOUS:

UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 04/20/11)

John S. Hogan
Bergen County Clerk

**Bergen County Clerk**
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/





INSTRUMENT # 19-038349

V 03270 0572

RECORDED DATE: 06/18/2019 10:02:39 AM

| | |
|---|---|
| Transaction #: | 9248775 |
| Document Page Count: | 3 |
| Operator Id: | CLERK |

**Document Type:** Deed

| RETURN TO: | SUBMITTED BY: |
|---|---|
| BETTER RESEARCH LLC<br>1 PARAGON DRIVE<br>MONTVALE  NJ 07645<br>ERECORDED | Better Research LLC<br><br><br>(718) 215-5138 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| LENOX TEMPLE LLC | JUDAH A  ZELMANOVITZ |
| **ADDITIONAL PRIMARY NAMES** | **ADDITIONAL SECONDARY NAMES** |
| | NEIL  FINK |

**MARGINAL REFERENCES:**

DOCUMENT DATE: 05/21/2019
MUNICIPALITY: HACKENSACK
LOT:  0011
BLOCK: 0511
GRANTEE ADDRESS:      3839 FLATLAND AVENUE
SUITE 206
BROOKLYN  NY 11234

FEES / TAXES:
   Recording Fee: Deed      $40.00
   Additional Pages Fee     $20.00
   Homeless Trust Fund - Bergen County   $3.00
Total:           $63.00

INSTRUMENT #: 19-038349
Recorded Date: 06/18/2019 10:02:39 AM

I hereby CERTIFY that this document is recorded
in the Clerk's Office in Bergen County, New
Jersey.

John S. Hogan
Bergen County Clerk

Recording Fees: $63.00
Realty Transfer Tax Fees: $0.00

OFFICIAL RECORDING COVER PAGE

Page 1 of 4

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Prepared By & Send
Recorded Document to:

Judah A. Zelmanovitz, Esq.
Fink & Zelmanovitz, P.C.
3839 Flatlands Avenue, Suite 206
Brooklyn, New York 11234

## DECLARATION OF RESTRICTION

This DECLARATION OF RESTRICTION made as of May 21, 2019, by LENOX TEMPLE, LLC a New Jersey limited liability company with an address at 636 S forest Dr., Teaneck, NJ 07666 (the "Declarant").

## WITNESSETH

WHEREAS, the Declarant is the fee owner of the premises: 54-78 Temple Avenue, Hackensack, NJ 07601, as described on the legal description annexed hereto as Schedule A (the "Premises"); and

WHEREAS, the Declarant wishes to set forth hereinafter a declaration of his intention with reference to the Premises.

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION RECEIVED, THE DECLARANT HEREBY DECLARES AS FOLLOWS:

1.  The Declarant shall not sell, mortgage, assign, lease, convey, transfer, encumber, pledge, hypothecate or otherwise take any action creating a security interest in the Premises without the written consent of Judah A. Zelmanovitz or Neil Fink, having an address at Fink & Zelmanovitz, P.C., 3839 Flatlands Avenue, Suite 206, Brooklyn, New York 11234. Any such transfer, assignment or encumbrance, without written consent of Judah A. Zelmanovitz or Neil Fink shall be null and void and of no force and effect.

2.  This declaration shall be binding on the heirs, personal representatives, successors and assigns of the Declarant.

3.  This Declaration may not be changed or modified orally and may only be changed, modified or rescinded with the written consent of Judah A. Zelmanovitz or Neil Fink.

4.  Only Judah A. Zelmanovitz, Neil Fink or their delegates shall have the right to terminate or rescind this Declaration of Restriction.

NO FURTHER TEXT
SIGNATURE PAGE FOLLOWS

IN WITNESS WHEREOF, the undersigned has duly executed this Declaration of Restriction as of the day and year first above written.

LENOX TEMPLE, LLC

By: _____

Name: Seth Levine

Title:   Sole Member

State of New York)
                 : ss.
County of Kings   )

On May 21, 2019 before me, the undersigned, personally appeared Seth Levine personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC

MOISHE A PERL
Notary Public, State of New York
No. 01PE6037772
Qualified in Kings County
Commission Expires June 29, 2022

<u>**SCHEDULE A**</u>

<u>**THE PREMISES**</u>

All that certain lot, tract or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Hackensack City, County of Bergen, State of New Jersey being more particularly described as follows:

BEING known and designated as Lot 18-23 as shown on a certain map entitled, "Map of Property of Anderson and ward, situated in Hackensack, Bergen County, N.J.", duly filed in the Office of the Bergen County, N.J.", duly filed in the Office of the Bergen County Clerk on May 25, 1972 as Map No.196.

BEGINNING at a point the northeasterly side of Temple Avenue, distant 471.54 feet northwesterly from its intersection with the northwesterly side of Hackensack Avenue; running thence

1. Along the northeasterly side of Temple Avenue, North 43 degrees 10 minutes West, 300.00 feet; thence

2. North 46 degrees 50 minutes East, 212.93 feet; thence

3. South 43 degrees 04 minutes 10 seconds East, 300.00 feet; thence

4. South 46 degrees 50 minutes West, 212.42 feet to the point and place of BEGINNING.

FOR INFORMATION ONLY:
County: Bergen, Municipality: Hackensack City
Tax Block: 511, Tax Lot: 11
Address: 54-78 Temple Avenue, Hackensack, NJ 07601.

The above Tax Lot and Block designation and the street address designation is for informational purposes only and is not to be construed as part of the legal description.

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 19-043442

V 03287 1308

RECORDED DATE: 07/05/2019 03:09:10 PM

| | |
|---|---|
| Transaction #: | 9256642 |
| Document Page Count: | 3 |
| Operator Id: | CLERK |

**Document Type:** NON ABSTRACTED DEED

**RETURN TO:**

MADISON TITLE AGENCY, LLC
1125 OCEAN AVENUE
LAKEWOOD NJ 08701
ERECORDED

**SUBMITTED BY:**

Madison Title Agency, LLC

(732) 333-2667

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| TEANECK PLAZA VENTURES LLC | HERBERT  TEPFER |
| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |
| LENOX TEMPLE LLC | |

**MARGINAL REFERENCES:**

DOCUMENT DATE: 01/15/2019
MUNICIPALITY: TEANECK
LOT: 1
BLOCK: 5008

FEES / TAXES:
| | |
|---|---|
| Recording Fee: NON ABSTRACTED DEED | $30.00 |
| Additional Pages Fee | $20.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| Total: | $53.00 |

INSTRUMENT #: 19-043442
Recorded Date: 07/05/2019 03:09:10 PM

I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.

John S. Hogan
Bergen County Clerk

Recording Fees: $53.00
Realty Transfer Tax Fees: $0.00

**OFFICIAL RECORDING COVER PAGE**

Page 1 of 4

# PLEASE DO NOT DETACH

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

## DECLARATION OF RESTRICTIONS

Declaration of Restrictions made this _____ day of JANUARY, 2019, by SETH LEVINE, Managing Member(s) of:

**TEANECK PLAZA VENTURES LLC,** as to PARCEL 1 and **LENOX TEMPLE LLC,** as to PARCEL 2, both with an address at, 210 RIVER ST, STE 24, HACKENSACK, NJ 07601, herein called Declarant(s), do/es hereby state that,

### WITNESSETH:

**WHEREAS** the Declarant(s) is/are the Managing Member(s) of **TEANECK PLAZA VENTURES LLC,** as to PARCEL 1 and **LENOX TEMPLE LLC,** as to PARCEL 2, both with an address at, 210 RIVER ST, STE 24, HACKENSACK, NJ 07601, **NEW JERSEY** Limited Liability Company(ies); and

**WHEREAS** the LLC(s) is/are the owner(s) of premise(s):

**PARCEL 1:** 1407 PALISADE AVE, TEANECK, NJ 07666
County: BERGEN Block: 5008 Lot: 1

**PARCEL 2:** 54-78 TEMPLE AVE, HACKENSACK, NJ 07601
County: BERGEN Block: 511 Lot: 11

**WHEREAS** the Declarant(s) wishes to set forth herein a declaration of his intention with reference to the LLC and the premises.

**NOW, THEREFORE, THE DECLARANT(S) HEREBY DECLARES AS FOLLOWS.**

1. The LLC(s) shall not transfer nor assign nor encumber all or part of the fee estate and/or the interest of the Declarant(s), and nor enter into any lease or third-party agreement, in or relating to the premises without the written consent of HERBERT TEPFER, as Interested Party. Any such transfer, assignment, encumbrance or agreement, without the written consent of HERBERT TEPFER, as Interested Party, shall be null and void and of no force and effect.

2. This Declaration shall be binding upon the heirs, personal representatives, successors and assigns of the Declarant.

3. This Declaration may not be changed or modified orally.

**IN WITNESS WHEREOF,** the Declarant has executed this Declaration this _____ day of JANUARY, 2019.

Consented and Agreed to by

HERBERT TEPFER
as Interested Party

TEANECK PLAZA VENTURES LLC,
as to PARCEL 1
BY: SETH LEVINE
as Declarant(s)

LENOX TEMPLE LLC,
as to PARCEL 2
BY: SETH LEVINE
as Declarant(s)

State of _____, County of _____ ss.:

On the _____ day of JANUARY in the year 2019 before me, the undersigned, personally appeared   HERBERT TEPFER personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

Diamond Diamanté
Notary Public, NEW YORK
Reg #: 01DI6193371
Qualified: KINGS County
Comm Exp: 9-15-2020

State of ___NJ___, County of ___Bergen___) ss.:

On the 15th day of JANUARY year 2019, before me, the undersigned, personally appeared SETH LEVINE *
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

_____
*Notary Public*

**ANDREW SELEVAN
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 1/25/2021**

* on behalf of Teaeck Plaza Ventures, LLC and Lenox Temple LLC.

### DECLARATION OF RESTRICTIONS, EASEMENT & COVENANT

TITLE NO.: LT-1611-NJ / MTANJ-125489

========================================

TEANECK PLAZA VENTURES LLC, as to PARCEL 1
as Declarant(s)

PARCEL 1: 1407 PALISADE AVE, TEANECK, NJ 07666
County: BERGEN Block: 5008 Lot: 1

And

LENOX TEMPLE LLC, as to PARCEL 2
as Declarant(s)

PARCEL 2: 54-78 TEMPLE AVE, HACKENSACK, NJ 07601
County: BERGEN Block: 511 Lot: 11

TO

HERBERT TEPFER
as Interested Party

========================================

Return and Mail To:

HERBERT TEPFER, ESQ.
TEPFER & TEPFER P.C.
4429 18th AVENUE
BROOKLYN, NY 11204-1202
718-854-7200
TEPFERLAW@GMAIL.COM

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 19-046734

V 03299 1125

RECORDED DATE: 07/19/2019 12:09:34 PM

| | |
|---|---|
| Transaction #: | 9261592 |
| Document Page Count: | 3 |
| Operator Id: | CLERK |

**Document Type:** NON ABSTRACTED DEED

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MADISON TITLE AGENCY, LLC<br>1125 OCEAN AVENUE<br>LAKEWOOD NJ 08701<br>ERECORDED | Madison Title Agency, LLC<br><br><br>(732) 333-2667 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| LENOX TEMPLE LLC | HERBERT  TEPFER |
| **ADDITIONAL PRIMARY NAMES** | **ADDITIONAL SECONDARY NAMES** |
| TEANECK PLAZA VENTURES LLC<br>SETH  LEVINE | |

**MARGINAL REFERENCES:**

DOCUMENT DATE: 01/15/2019
MUNICIPALITY: TEANECK AND HACKENSACK
LOT: 1    11
BLOCK: 5008  511

FEES / TAXES:
| | |
|---|---|
| Recording Fee: NON ABSTRACTED DEED | $30.00 |
| Additional Pages Fee | $20.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| Total: | $53.00 |

INSTRUMENT #: 19-046734
Recorded Date: 07/19/2019 12:09:34 PM

I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.



John S. Hogan
Bergen County Clerk

Recording Fees: $53.00
Realty Transfer Tax Fees: $0.00

OFFICIAL RECORDING COVER PAGE                    Page 1 of 4

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Bergen County Clerk                    V  BK 03299  PG 1126            07/19/2019 12:09 PM              2 of 4

## DECLARATION OF RESTRICTIONS

Declaration of Restrictions made this ___ day of JANUARY, 2019, by SETH LEVINE, Managing Member(s) of:

TEANECK PLAZA VENTURES LLC, as to PARCEL 1 and LENOX TEMPLE LLC, as to PARCEL 2,
both with an address at, 210 RIVER ST, STE 24, HACKENSACK, NJ 07601,
herein called Declarant(s), do/es hereby state that,

### WITNESSETH:

**WHEREAS** the Declarant(s) is/are the Managing Member(s) of TEANECK PLAZA VENTURES LLC, as to PARCEL 1 and LENOX TEMPLE LLC, as to PARCEL 2, both with an address at, 210 RIVER ST, STE 24, HACKENSACK, NJ 07601, NEW JERSEY Limited Liability Company(ies); and

**WHEREAS** the LLC(s) is/are the owner(s) of premise(s):

PARCEL 1: 1407 PALISADE AVE, TEANECK, NJ 07666
County: BERGEN Block: 5008 Lot: 1

PARCEL 2: 54-78 TEMPLE AVE, HACKENSACK, NJ 07601
County: BERGEN Block: 511 Lot: 11

**WHEREAS** the Declarant(s) wishes to set forth herein a declaration of his intention with reference to the LLC and the premises.

**NOW, THEREFORE, THE DECLARANT(S) HEREBY DECLARES AS FOLLOWS.**

1.     The LLC(s) shall not transfer nor assign nor encumber all or part of the fee estate and/or the interest of the Declarant(s), and nor enter into any lease or third-party agreement, in or relating to the premises without the written consent of HERBERT TEPFER, as Interested Party.  Any such transfer, assignment, encumbrance or agreement, without the written consent of HERBERT TEPFER, as Interested Party, shall be null and void and of no force and effect.

2.     This Declaration shall be binding upon the heirs, personal representatives, successors and assigns of the Declarant.

3.     This Declaration may not be changed or modified orally.

**IN WITNESS WHEREOF,** the Declarant has executed this Declaration this ___ day of JANUARY, 2019.

Consented and Agreed to by

HERBERT TEPFER
as Interested Party

TEANECK PLAZA VENTURES LLC,
as to PARCEL 1
BY: SETH LEVINE
as Declarant(s)

LENOX TEMPLE LLC,
as to PARCEL 2
BY: SETH LEVINE
as Declarant(s)

State of __N J__, County of __Bergen__ ) ss.:

On the __11__ day of JANUARY in the year 2019 before me, the undersigned, personally appeared   HERBERT TEPFER personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

Diamond Diamanté
Notary Public: NEW YORK
Reg #: 01D16193371
Qualified: KINGS County
Comm Exp: 9-15-2020

State of __New Jersey__ County of __Bergen__ ) ss.:

On the 18th day of JANUARY year 2019, before me, the undersigned, personally appeared SETH LEVINE personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

_____
*Notary Public*

ANDREW SELEVAN
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 1/25/2021

# DECLARATION OF RESTRICTIONS, EASEMENT & COVENANT

TITLE NO.: LT-1611-NJ / MTANJ-125489
====================================

TEANECK PLAZA VENTURES LLC, as to PARCEL 1
as Declarant(s)

PARCEL 1: 1407 PALISADE AVE, TEANECK, NJ 07666
County: BERGEN Block: 5008 Lot: 1

And

LENOX TEMPLE LLC, as to PARCEL 2
as Declarant(s)

PARCEL 2: 54-78 TEMPLE AVE, HACKENSACK, NJ 07601
County: BERGEN Block: 511 Lot: 11

TO

HERBERT TEPFER
as Interested Party

====================================

Return and Mail To:

HERBERT TEPFER, ESQ.
TEPFER & TEPFER P.C.
4429 18th AVENUE
BROOKLYN, NY 11204-1202
718-854-7200
TEPFERLAW@GMAIL.COM

*Charles Jones*
A DataBase Company

**NEW JERSEY TAX & ASSESSMENT SEARCH**

| | |
|---|---|
| **For:** | BRENNAN TITLE ABSTRACT LLC |
| **Customer ID:** | 240195385 |
| **Reference #:** | BT18421 |
| **Order #:** | 6878708/MT-241-6878708 |
| **Completed Date:** | 08/29/2019 |

**Report Fee:**     $35.50

### CERTIFICATE OF CURRENT PROPERTY TAX AND ASSESSMENT STATUS FOR:

Municipality: HACKENSACK CITY(BERGEN)          65 Central Avenue
              (201) 646-3929                  HACKENSACK, NJ 07601

| | | | |
|---|---|---|---|
| **Block:** | 511 | **Owner:** ZELMANOVITZ, JUDAH A | |
| **Lot:** | 11 | **Property Location:** 54-78 TEMPLE AVE | |
| **Also:** | | **Mailing:** 54-78 TEMPLE AVE HACKENSACK, NJ 07601 | |
| **Lot Size:** | 300X213 | **Tax Rate:** 3.357 per $100 of Assessed Value | **Assessed Values:** |
| **Prop. Code:** | 4C-Apartments | | Land:       $2,280,000 |
| | | | Improvement: $3,787,800 |

*Not to be used to determine the "residential use" for the purposes of P.L. 2004, c. 66 section 8.*          **Total:**       $6,067,800

**Deduction:**     None

**Cert. Of Occup.:**   New Construction, Change of Us
**Smoke detector:**    Required as per NJAC 5:70-4.19
                       Call (201) 646-7685 for inspection          **Inspection Fee:** $30.00 for inspection

| | | | | |
|---|---|---|---|---|
| **2018** | **Taxes:** | | $189,564.85 | PAID IN FULL |
| **2019** | **Qtr 1** | Due: 02/01/2019 | $47,391.00 | PAID |
| **2019** | **Qtr 2** | Due: 05/01/2019 | $47,391.00 | PAID |
| **2019** | **Qtr 3** | Due: 08/01/2019 | $54,274.99 | PAID; ESTIMATED TAX BILL |
| **2019** | **Qtr 4** | Due: 11/01/2019 | | TO BE DETERMINED |
| **2020** | **Qtr 1** | Due: 02/01/2020 | | TO BE DETERMINED |
| **2020** | **Qtr 2** | Due: 05/01/2020 | | TO BE DETERMINED |
| **Added Assessments:** | | None | | |

**Water:**          PRIVATE - SUEZ 69 Devoe Pl. Hackensack,NJ 07601  800-422-5987

**Sewer:**          Included with Taxes; Subject to excess charges

**Confirmed Assessments:**  None

**Liens:**          None

**General Remark:**       SUBJECT TO ADD'L 6% PENALTY FOR BALANCES OVER $10,000.00
                         **UNCONFIRMED ASSESSMENTS:**

**Ordinance #:** None        **Adopted On:** None        **Improvement Type:** None
*Charles Jones LLC* guarantees that the above information accurately reflects the contents of the public record as of the completed date.



NEW JERSEY SUPERIOR COURT,
UNITED STATES DISTRICT COURT AND
UNITED STATES BANKRUPTCY COURT

240-1953-85                    RE: BT18421

**CERTIFIED TO:**

        BRENNAN TITLE ABSTRACT LLC
        457 HADDONFIELD RD STE 305
        CHERRY HILL NJ 08002


CHARLES JONES LLC HEREBY CERTIFIES THAT IT HAS SEARCHED THE INDEX OF THE
CIVIL JUDGMENT AND ORDER DOCKET OF THE SUPERIOR COURT OF NEW JERSEY, THE
INDEX OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY,
AND THE INDEX OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF
NEW JERSEY AND DOES NOT FIND REMAINING UNSATISFIED OF RECORD IN ANY OF
THESE COURTS A JUDGMENT OR OTHER DOCKETED RECORD REFERRED TO BY THE
RESPECTIVE INDICES WHICH CONSTITUTES A GENERAL LIEN ON REAL PROPERTY IN
NEW JERSEY, NOR ANY CERCLA LIEN ON SPECIFIC REAL PROPERTY WITHIN NEW
JERSEY NOR ANY PETITION COMMENCING PROCEEDINGS IN BANKRUPTCY EXCEPT AS
BELOW SET FORTH AGAINST:

                                      FROM          TO

     LENOX TEMPLE LLC   (Entity)      08-30-1999  08-30-2019
          *** Name is CLEAR ***



DATED     08-30-2019
TIME      08:45 AM

FEES: $ 12.50
TAX:  $  0.00
TOTAL:$ 12.50                    CHARLES JONES LLC
                                P.O. BOX 8488
RN19-247-02047  247   0626247 25   TRENTON, NJ 08650



```
*******************************************
*** UNITED STATES PATRIOT NAME SEARCH ***
*******************************************
```

240-1953-85                     RE: BT18421
**CERTIFIED TO:**


                BRENNAN TITLE ABSTRACT LLC
                457 HADDONFIELD RD STE 305
                CHERRY HILL NJ 08002


CHARLES JONES LLC HEREBY CERTIFIES THAT IT HAS SEARCHED THE
LIST OF "SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS"
MAINTAINED BY THE OFFICE OF FOREIGN ASSETS CONTROL, U.S.
DEPARTMENT OF THE TREASURY, PURSUANT TO EXECUTIVE ORDER 13224 AS
AMENDED BY EXECUTIVE ORDER 13268, AS WELL AS "THE CONSOLIDATED
SANCTIONS LIST" THAT INCLUDES THE LIST OF "FOREIGN SANCTIONS
EVADERS" PURSUANT TO EXECUTIVE ORDER 13608 AND MAINTAINED BY
THE OFFICE OF FOREIGN ASSETS CONTROL, U.S. DEPARTMENT OF THE
TREASURY AND REPORTS THE FOLLOWING FINDINGS WITH RESPECT TO THE
NAME(S) LISTED BELOW:

                                            THROUGH

LENOX TEMPLE LLC (Entity)                   09-02-2019


```
              **********************************
              ***** CLEAR PATRIOT NAME SEARCH *****
              **********************************
```


NOTE:  According to the U.S. Department of Treasury, no U.S.
person may deal with any Libyan or Iraqi government official
whether their name appears on the list or not.


DATE ISSUED: 09-04-2019

FEES: $  2.00
TAX:  $  0.00
TOTAL:$  2.00                     CHARLES JONES LLC
                                  P.O. BOX 8488
PA19-247-02048  247   0624247 25  TRENTON, NJ 08650

# EXHIBIT P

**American Land Title Association**

**Commitment for Title Insurance**
**Adopted 08-01-2016**
**Technical Corrections 04-02-2018**

*Transaction Identification Data for reference only:*
Issuing Agent:   **BRENNAN TITLE ABSTRACT, LLC**
Issuing Office:    **457 Haddonfield Rd, Suite 305, Cherry Hill, NJ 08002**
Issuing Office's ALTA® Registry ID:
Loan ID Number:
Commitment Number:
Issuing Office File Number:   **BT18422**
Property Address:    **1407 Palisade Avenue, Hackensack, NJ 07601**
Revision Number:

## SCHEDULE A

File No. **BT18422**

1.   Commitment Date: **August 12, 2019**           Termination Date: <u>180</u> days
                                                                        after effective date

2.   Policy to be issued:

    (a) _____

        Proposed Insured:

        Proposed Policy Amount: $

    (b) _____

        Proposed Insured:

        Proposed Policy Amount: $

**THIS REPORT IS ISSUED FOR INFORMATION ONLY AND IS NOT TO BE USED FOR INSURANCE WITHOUT PRIOR CONSENT OF THIS COMPANY. LIABILITY ASSUMED HEREBY DOES NOT EXCEED $1,000.00.**

3.   The estate or interest in the Land described or referred to in this Commitment is Fee Simple.

4.   The Title is, at the Commitment Date, vested in:

    **Teaneck Plaza Ventures, LLC, a limited liability company of the state of New Jersey by deed from Hellas Holdings, L.L.C., a limited liability company of the state of New Jersey, dated March 19, 2015, recorded March 27, 2015, in the Clerk's Office of the County of Bergen, New Jersey, in Deed Book V1896, page 2199.**

Countersigned:
BRENNAN TITLE ABSTRACT, LLC

By: _____
     *Authorized Signatory*

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**American Land Title Association**

**Commitment for Title Insurance**
**Adopted 08-01-2016**
**Technical Corrections 04-02-2018**

**SCHEDULE A**

**(continued)**

File No. **BT18422**

5.   The Land is described as follows:

For information purposes only:   **1407 Palisade Avenue, Township of Teaneck**
**Bergen County, New Jersey**
**Block 5008 Lot 1 Tax Map**

**SEE CONTINUATION OF SCHEDULE A FOR LEGAL DESCRIPTION**

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

NEW JERSEY LAND TITLE
INSURANCE RATING BUREAU

American Land Title Association

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE A

(continued)

File No. **BT18422**

LEGAL DESCRIPTION

ALL that certain lot, piece or parcel of land situate, lying and being in the Township of Teaneck, County of Bergen, State of New Jersey known and designated as Lots 1, 2, 3, 4, 5, 6 and 7 (1 to 7 inclusive) in Block 460G on a certain map entitled "Supplementary Map of West Englewood Square, Teaneck, New jersey, belonging to Nelson M. Ayers, January 1926" made by Reginald W. Wells, Civil Engineer and Surveyor and filed in the Bergen County Clerk's Office on March 22, 1926 as Map No. 2083.

The seven lots above mentioned are contiguous and taken tougher form a tract of land which is more particularly described as follows:

BEGINNING at a point on the Southwesterly street line of The Plaza (formerly Market Street) distant 225.0 feet along the same from its intersection with the Northwesterly street line (formerly Westfield Avenue) thence from said point of beginning

(1)   South 38 degrees 19 minutes West 137.37 feet to a point; thence

(2)   North 53 degrees 16 minutes West 185.34 feet to a point on the Southeasterly street line of Palisade Avenue (formerly Station Avenue); thence

(3)   North 44 degrees 10 minutes East along said street line of Palisade Avenue 24.81 feet to a point on the said Southwesterly street line of The Plaza (formerly Market Street); thence

(4)   Easterly along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 109.0 feet, a distance of 76.41 feet to a point; thence

(5)   Southeasterly continuing along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 180.0 feet, a distance of 138.18 feet to a point; thence

(6)   South 51 degrees 41 minutes East still along said street line of The Plaza (formerly Market Street) 25.0 feet to the point and place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 1 in Block 5008 on the Township of Teaneck Tax Map.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

NEW JERSEY LAND TITLE
INSURANCE RATING BUREAU

NJRB 3-09
Last Revised: 07/01/18

American Land Title Association

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE B, PART I

### Requirements

File No. **BT18422**

All of the following Requirements must be met:

1.   The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2.   Pay the agreed amount for the estate or interest to be insured.

3.   Pay the premiums, fees, and charges for the Policy to the Company.

4.   Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5.   You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

6.   In the event that the proceeds of the loan to be secured by the mortgage to be insured are not to be fully disbursed at Closing, the Company must be notified and this Commitment will then be modified accordingly.

7.   Payment of all taxes, water, sewer rents and assessments, if any.

8.   Proof of the record owner's marital or civil union status is required and, if married or if there is a civil union partner, and the premises to be insured is or has ever been occupied as the principal marital or principal civil union residence of the record owner, then his or her spouse or civil union partner must join in the deed or mortgage and affidavit of title.

9.   This Company requires a Notice of Settlement to be filed pursuant to N.J.S.A. 46:26A-11 et seq. prior to Closing. The notice should be filed as nearly as possible to, but not more than 60 days prior to the anticipated closing date. Should the anticipated closing not take place within 60 days of the filing of the Notice of Settlement, another notice must be filed. If both a Deed and Mortgage are involved, two Notices of Settlement must be filed, one for the Deed and one for the Mortgage. If the closing is postponed, another Notice of Settlement may be recorded prior to the expiration of the first recorded Notice of Settlement. A filed copy of the Notice(s) of Settlement must be provided to the Company as part of the post closing package. NOTE: Subject to any recording delay in Bergen County.

10.   This Company must be contacted by the Closing Attorney to request a rundown at least twenty-four (24) hours prior to the scheduled closing. In the event such rundown is not requested, any mortgages, liens or judgments shall remain as an exception to the policy unless same have been satisfied.

11.   Form 1099-S must be completed at closing and filed by the Closing Attorney in accordance with the Tax Reform Act of 1986 in Code Section 6045 (e). NOTE: Pertains to purchase transactions only.

12.   If the proposed transaction is based upon a power of attorney, the power of attorney, deed (if applicable), and affidavit of the attorney in fact must be furnished for review and must be recorded. The Company must be furnished acceptable proof that the power is in effect and is exercised while the principal is alive, that the power remains in effect and that the power of attorney has not been revoked at the time of

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

American Land Title Association

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE B, PART I

### (continued)

File No. **BT18422**

execution, delivery and recording of the mortgage and/or deed. At that time, the Company may make additional requirements or exceptions.

13. If Grantor is a corporation, this company requires completion of a Corporate Affidavit of Title and a Corporate Resolution with respect to the proposed conveyance.

14. If Grantor is a partnership, this company requires proof that the Partnership Agreement is in full force and effect, and the terms of such have not been modified or altered in any way. All general partner(s) must execute the Deed of conveyance.

15. Taxes, Assessments, Sewer and Water charges are as follows:

| | |
|---|---|
| Tax Search: | See Copies Attached |
| Assessment Search: | See Copies Attached |
| Sewer Search: | See Copies Attached |
| Water Search: | See Copies Attached |

16. Superior Court of New Jersey and United States District Court Search: See Copies Attached.

17. Furnish satisfactory proof of the marital status:  N/A.

18. Cancellation or other disposition of the Mortgage from Teaneck Plaza Ventures, LLC to Affinity Federal Credit Union, dated September 12, 2018, and recorded September 24, 2018, in Mortgage Book V3061, Page 498, to secure $3,900,000.00.

    Assignment of Rents and Leases between Teaneck Plaza Ventures, LLC to Affinity Federal Credit Union, dated September 12, 2018, and recorded September 24, 2018, in Book V3061, Page 519.

19. Termination or other disposition of UCC-1 Financing Statement, recorded September 24, 2018 in the Office of the Bergen County Clerk, showing Teaneck Plaza Ventures, LLC (as Debtor) and Affinity Federal Credit Union (as Secured Party) in Book V3061, Page 528.

20. Cancellation or other disposition of the Mortgage and Security Agreement from Teaneck Plaza Ventures, LLC; Lenox McKinley, LLC; and Lenox South Park, LLC to Hutton Ventures, LLC, dated December 11, 2015, recorded August 15, 2019, in Mortgage Book V3323, Page 1637, securing $2,200,000.00.

    Assignment of Leases between Teaneck Plaza Ventures, LLC; Lenox McKinley, LLC; and Lenox South Park, LLC to Hutton Ventures, LLC, dated December 11, 2015, recorded August 15, 2019, in Book V3323, Page 1657.

21. Termination or other disposition of UCC-1 Financing Statement, recorded August 15, 2019 in the Office of the Bergen County Clerk, showing Teaneck Plaza Ventures, LLC (as Debtor) and Hutton Ventures, LLC (as Secured Party) in Book V3323, Page 1667.

22. Option Agreement between Teaneck Plaza Ventures, LLC; Lenox McKinley, LLC; and Lenox South Park, LLC ("Seller") to Hutton Ventures, LLC ("Optionholder"), dated November 11, 2015, recorded December 1, 2015 in Book V2116, Page 88.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

American Land Title Association

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE B, PART I

### (continued)

File No. **BT18422**

Subordination of Option Agreement between Teaneck Plaza Ventures, LLC ('Owner'), Hutton Ventures, LLC ("Optionholder") and Lakeland Bank ("Mortgagee"), dated April 13, 2016, recorded April 25, 2016 in Book V2243, Page 1578.

Option Modification Agreement between Teaneck Plaza Ventures, LLC; Lenox McKinley, LLC; and Lenox South Park, LLC ("Seller") to Hutton Ventures, LLC ("Optionholder"), dated November 9, 2016, recorded March 8, 2017 in Book V2556, Page 1815.

23. Option Agreement between Teaneck Plaza Ventures, LLC; Lenox McKinley, LLC; and Lenox South Park, LLC ("Seller") to Hutton Ventures, LLC ("Optionholder"), dated December 11, 2015, recorded January 11, 2016 in Book V2153, Page 810.

Subordination of Option Agreement between Teaneck Plaza Ventures, LLC ('Owner'), Hutton Ventures, LLC ("Optionholder") and Lakeland Bank ("Mortgagee"), dated April 13, 2016, recorded April 25, 2016 in Book V2243, Page 1585.

Option Modification Agreement between Teaneck Plaza Ventures, LLC; Lenox McKinley, LLC; and Lenox South Park, LLC ("Seller") to Hutton Ventures, LLC ("Optionholder"), dated November 9, 2016, recorded March 8, 2017 in Book V2556, Page 1712.

24. New Jersey Superior Court, US District Court & US Bankruptcy Court Judgments vs. Teaneck Plaza Ventures, LLC show(s) clear.  (See attached).

25. US Patriot Search vs. Teaneck Plaza Ventures, LLC shows clear.

NOTE: Judgments, if any, to be satisfied of record or affidavit submitted that same are not against persons in chain of title and/or purchasers, but against other with the same or similar names.

26. Subject to facts as would be disclosed by sellers, purchasers, and/or borrowers affidavit of title, to be submitted.

NOTE: Although compliance or non-compliance with environmental matters is beyond the scope of coverage afforded by the title policy, we wish to call your attention (for informational purposes only) to the fact that the proposed transaction may involve lands subject to the Industrial Site Recovery Act (I.S.R.A.), N.J.S.A. 13:K-6, et seq. Please note that this Company is not legally authorized to insure that the proposed transaction comports with the provisions of any environmental laws, including I.S.R.A., N.J.S.A. 13:1K-6 et seq.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

American Land Title Association

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE B, PART II

### Exceptions

File No. **BT18422**

THIS COMMITMENT DOES NOT REPUBLISH ANY COVENANT, CONDITION, RESTRICTION, OR LIMITATION CONTAINED IN ANY DOCUMENT REFERRED TO IN THIS COMMITMENT TO THE EXTENT THAT THE SPECIFIC COVENANT, CONDITION, RESTRICTION, OR LIMITATION VIOLATES STATE OR FEDERAL LAW BASED ON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, GENDER IDENTITY, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. Notwithstanding any provision of the policy to the contrary, the following matters are expressly excluded from the coverage of the policy, and the Company will not pay loss or damage, costs, attorney's fees or expenses that arise by reason of any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the land.

2. Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I—Requirements are met.

3. Right or claims of parties in possession of the land not shown by the public records.

4. Any liens on your title, arising now or later, for labor and material, not shown by the public records.

5. Subject to possible additional taxes assessed or levied under N.J.S.A. 54:4-63.1 et seq.

6. Subsurface conditions and/or encroachments not disclosed by an instrument of record. (Fee Policy only.)

7. TAXES, CHARGES AND ASSESSMENTS: The payment of all taxes, assessments, water and sewer charges, up through and including the current installments.

8. Restrictions as set forth in Deed Book V3286 Page 591.

9. Restrictions as set forth in Deed Book V3287 Page 1308.

10. Restrictions as set forth in Deed Book V3299 Page 1125.

11. Restrictions as set forth in Deed Book V3315 Page 857.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*





Fm 2083 FiL 3/22/1926





SUPPLEMENTARY MAP OF
WEST ENGLEWOOD SQUARE
TEANECK, NEW JERSEY
BELONGING TO
NELSON M. AYERS
SCALE 1" = 50'          JANUARY - 1926

BLOCK 460-H

LAND FORMERLY OF CONRAD N. JORDAN

S. 53 - 16 E.

| Lot | Distance |
|-----|----------|
| 8 | 124.26 |
| 9 | 123.57 |
| 10 | 122.88 |
| 11 | 122.19 |
| 12 | 121.50 |
| 13 | 120.81 |
| 14 | 120.12 |
| 15 | 119.43 |
| 16 | 118.74 |
| 17 | 118.05 |
| 18 | 117.36 |
| 19 | 116.67 |
| 20 | 115.98 |
| 21 | 115.29 |
| 22 | 114.60 |
| 23 | 113.91 |
| 24 | 113.22 |
| 25 | 112.53 |
| 26 | 111.84 |
| 27 | 111.15 |
| 28 | 110.46 |
| 29 | 109.77 |
| 30 | 109.08 |
| 31 | 109.39 |
| 32 | 107.70 |

Property of the Bergen County Clerk's Office
Printed at 100% to scale



WEST ENGLEWOOD DEPOT

Property of the Bergen County Clerk's Office
Printed at 100% Full Scale



INSTRUMENT # 15-021424

V 01896 2199

RECORDED DATE: 03/27/2015 11:46:54 AM

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/

| | |
|---|---|
| Document Type:   Deed > 1,000,000 | Transaction #:            6838661 |
| | Document Page Count:   6 |
| | Operator Id:              CLERK |

**RETURN TO:**

NATIONAL GRANITE TITLE INCURANCE AGENCY
155 NORTH MAIN STREET
NEW CITY  NY  10956

**SUBMITTED BY:**

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| HELLAS HOLDINGS LLC | TEANECK PLAZA VENTURES LLC |

**ASSOCIATED DOCUMENT(S):**

MUNICIPALITY: TEANECK
CONSIDERATION AMT:  $3,050,000.00
LOT:  1
BLOCK:  5008

FEES / TAXES:
| | |
|---|---|
| Recording Fee: Deed > 1,000,000 | $40.00 |
| Additional Pages Fee | $50.00 |
| Basic Fee - County | $3,050.00 |
| Basic Fee - State | $7,625.00 |
| N.J.A.H.T.F Fee | $4,350.00 |
| P.H.P.F Fee | $1,525.00 |
| E.A.A. Fee | $6,615.00 |
| General Purpose Fee | $11,215.00 |
| 1% Grantee Fee | $30,500.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| Total: | $64,973.00 |

INSTRUMENT #: 15-021424
Recorded Date: 03/27/2015 11:46:54 AM

I hereby CERTIFY that this document is recorded
in the Clerk's Office in Bergen County, New
Jersey.

John S. Hogan
Bergen County Clerk

OFFICIAL RECORDING COVER PAGE                    Page 1 of 7

## PLEASE DO NOT DETACH



# Deed

AT-1101R

NATIONAL GRANITE TITLE INSURANCE
155 NORTH MAIN STREET
NEW CITY, NY 10956
(845) 639-1415- FAX (845) 639-1239
INFO@NATIONALGRANITE.COM

This Deed is made on **March 19, 2015,**
BETWEEN
**Hellas Holdings, L.L.C.**
a limited liability company of the state of **New Jersey**
having its principal office at
**175 Fair Street, Palisades Park, NJ 07650**
referred to as the Grantor,
AND
**Teaneck Plaza Ventures, LLC**
a limited liability company of the state of **New Jersey**
whose post office address is
**210 River Street, Suite 24, Hackensack, NJ 07601**
referred to as the Grantee.
The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

```
15-021424    Deed > 1,000,000
V Bk: 01896 Pg: 2199-2205   Rec. Fee $93.00
John S. Hogan, Bergen County Clerk
Recorded 03/27/2015  11:46:54 AM
```

1.   **Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the property (called the "Property") described below to the Grantee.  This transfer is made for the sum of **$ 3,050,000.00, Three Million Fifty Thousand Dollars and No Cents**
The Grantor acknowledges receipt of this money.

2.   **Tax Map Reference** (N.J.S.A. 46:26A-3) Municipality of **Teaneck**
Block No. **5008**, Lot No. **1**, Qualifier No. , Account No.
☐   No property tax identification number is available on the date of this Deed.  *(Check Box if Applicable)*

3.   **Property**   The Property consists of the land and all the building and structures on the land in the **City of Teaneck** County of **Bergen** and State of New Jersey.  The legal description is:

☑   Please see attached Legal Description annexed hereto and made part hereof.  *(Check Box if Applicable)*

Being the same premises conveyed to the Grantor herein by Deed from Hellas Company, Ltd. Dated May 13, 2006 and recorded May 22, 2006 in the Office of the Bergen County Clerk in Deed Book 9082, page 253.  Said Deed transferred title from Hellas Company, Ltd. to Hellas Holdings, L.L.C., pursuant to a Certificate of Merger filed on April 6, 2006.

```
Consideration        : $3,050,000.00
Realty Transfer Fee  : $34,380.00
State Portion        : $25,455.00
County Portion       : $4,575.00
Municipality Portion : $4,350.00
1- Grantee Fee       : $30,500.00
```

Prepared by:

Reena Forst, Esq.

(For Recorders Use Only)

104 - Deed - Bargain and Sale
Cov. as to Grantor's Acts - Corp. to Ind. or Corp.
Rev. 5/12  PS/12

Powered by
**HOTdocs**

©2012 by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510   Page 1

Bergen County Clerk          V BK 01896 PG 2200        03/27/2015 11:46 AM        2 of 7

The street address of the Property is:
**1407-1413 Palisade Avenue and 196-210 The Plaza, Teaneck, NJ**

**4. Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the Property. This promise is called a "Covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the Property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**5. Signatures.** This Deed is signed and attested to by the Grantor's proper corporate officers as of the date at the top of the first page. (Print name below each signature.)

Witnessed or Attested by:

_____   By: _____
                                       **Diana C. Nicholson, Manager**

STATE OF NEW JERSEY, COUNTY OF **Essex** SS:
I CERTIFY that on **March 19, 2015**
**Diana C. Nicholson**
personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a)  was the maker of the attached Deed;
(b)  was authorized to and did execute this Deed as **Manager** of **Hellas Holdings, L.L.C.** the entity named in this Deed;
(c) made this Deed for **$ 3,050,000.00** as the full and actual consideration paid or to be paid for the transfer of title. (Such consideration is defined in N.J.S.A. 46:15-5); and
(d) executed this Deed as the act of the entity.

┌─────────────────────────────────────┐
│ RECORD AND RETURN TO                 │
│  Jay Greenfield, Esq.                │
│  A.Y. Strauss LLC                    │
│  101 Eisenhower Parkway, Suite 300   │
│  Roseland, NJ  07068                 │
└─────────────────────────────────────┘

_____
**Reena Forst, Attorney at Law of New Jersey**
*Print name and title below signature*

104 - Deed - Bargain and Sale
Cov. as to Grantor's Acts - Corp. to Ind. or Corp.
Rev. 5/12  P5/12

©2012 by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com  800-222-0510     Page 2

Bergen County Clerk                    V  BK 01896  PG 2201          03/27/2015 11:46 AM          3 of 7

## OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

Title No.:  AT-1101R

### LEGAL DESCRIPTION

ALL that certain lot, piece or parcel of land situate, lying and being in the Township of Teaneck, County of Bergen, State of New Jersey known and designated as Lots 1, 2, 3, 4, 5, 6 and 7 (1 to 7 inclusive) in Block 460G on a certain map entitled "Supplementary Map of West Englewood Square, Teaneck, New Jersey, belonging to Nelson M. Ayers, January 1926" made by Reginald W. Wells, Civil Engineer and Surveyor and filed in the Bergen County Clerk's Office on March 22, 1926 as Map No. 2083.

The seven lots above mentioned are contiguous and taken together form a tract of land which is more particularly described as follows:

BEGINNING at a point on the southwesterly street line of The Plaza (formerly Market Street) distant 225.0 feet along the same from its intersection with the northwesterly street line (formerly Westfield Avenue) thence from said point of beginning (1) South 38 degrees 19 minutes West 137.37 feet to a point; thence (2) North 53 degrees 16 minutes West 185.34 feet to a point on the southeasterly street line of Palisade Avenue (formerly Station Street); thence (3) North 44 degrees 10 minutes East along said street line of Palisade Avenue 24.81 feet to a point on the said southwesterly street line of The Plaza (formerly Market Street); thence (4) Easterly along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 109.0 feet, a distance of 76.41 feet to a point; thence (5) Southeasterly continuing along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 180.0 feet, a distance of 138.18 feet to a point; thence (6) South 51 degrees 41 minutes East still along said street line of The Plaza (formerly Market Street) 25.0 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY: Being Block 5008 Lot 1 on the Tax Map of the Township of Teaneck, County of Bergen and State of New Jersey.

GIT/REP-3
(5-12)

State of New Jersey
# Seller's Residency Certification/Exemption
(C.55, P.L. 2004)

(Please Print or Type)

**SELLER(S) INFORMATION (see Instructions, page 2):**

Name(s)  Hellas Holdings, L.L.C.

Current Resident Address  Fair Street

City, Town, Post Office  Palisade Park                    State  NJ   Zip Code   07650

**PROPERTY INFORMATION (Brief Property Description):**

Block(s)  5008                   Lot(s)  1                         Qualifier

Street Address  196-210 The Plaza; 1407-1413 Palisade Avenue

City, Town, Post Office  Teaneck                         State  NJ   Zip Code   07666

Seller's Percentage of Ownership    100    Consideration $3,050,000.00        Closing Date   3/19/2015

**SELLER'S ASSURANCES (Check the Appropriate Box) (Boxes 2 through 10 apply to Residents and Non-residents):**

1. ☒ I am a resident taxpayer (individual, estate or trust) of the State of New Jersey pursuant to N.J.S.A. 54A:1-1 et seq. and will file a resident gross income tax return and pay any applicable taxes on any gain or income from the disposition of this property.

2. ☐ The real property being sold or transferred is used exclusively as my principal residence within the meaning of section 121 of the federal Internal Revenue Code of 1986, 26 U.S.C. s. 121.

3. ☐ I am a mortgagor conveying the mortgaged property to a mortgagee in foreclosure or in a transfer in lieu of foreclosure with no additional consideration.

4. ☐ Seller, transferor or transferee is an agency or authority of the United States of America, an agency or authority of the State of New Jersey, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, or a private mortgage insurance company.

5. ☒ Seller is not an individual, estate or trust and as such not required to make an estimated payment pursuant to N.J.S.A. 54A:1-1 et seq.

6. ☐ The total consideration for the property is $1,000 or less and as such, the seller is not required to make an estimated payment pursuant to N.J.S.A. 54A:5-1-1 et seq.

7. ☐ The gain from the sale will not be recognized for Federal income tax purposes under I.R.C. Section 721, 1031, 1033 or is a cemetery plot. (CIRCLE THE APPLICABLE SECTION.) If such section does not ultimately apply to this transaction, the seller acknowledges the obligation to file a New Jersey income tax return for the year of the sale (see instructions).

   ☐ No non-like kind property received.

8. ☐ Transfer by an executor or administrator of a decedent to a devisee or heir to effect distribution of the decedent's estate in accordance with the provisions of the decedent's will or the intestate laws of this state.

9. ☐ The property being sold is subject to a short sale instituted by the mortgagee, whereby the seller has agreed not to receive any proceeds from the sale and the mortgagee will receive all proceeds paying off an agreed amount of the mortgage.

10. ☐ The deed being recorded is a deed dated prior to the effective date of P.L. 2004, c. 55 (August, 1, 2004), and was previously unrecorded.

**SELLER(S) DECLARATION:**

The undersigned understands that this declaration and its contents may be disclosed or provided to the New Jersey Division of Taxation and that any false statement contained herein could be punished by fine, imprisonment, or both. I furthermore declare that I have examined this declaration and, to the best of my knowledge and belief, it is true, correct and complete. By checking this box ☐ I certify that the Power of Attorney to represent the seller(s) has been previously recorded or is being recorded simultaneously with the deed to which this form is attached.

March 19, 2015
Date                           Signature    (Seller) Please indicate if Power of Attorney or Attorney-in-Fact
                               Hellas Holding, L.L.C. By Diana Nicholson, Manager

Date                           Signature    (Seller) Please indicate if Power of Attorney or Attorney in Fact

1647 – Seller's Residency Certification/Exemption
GIT/REP-3
Rev. 5/12   P2/14

Powered by
IOT docs

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com  800.222.0510   Page 1

Bergen County Clerk              V BK 01896 PG 2203          03/27/2015 11:46 AM         5 of 7

MUST SUBMIT IN DUPLICATE
NC1645 - Affidavit of Consideration
RTF-1 (Rev. 7/14/10)   P324

Printed by ALL-STATE LEGAL®
www.aslegal.com   800.222.0510   Page 1

STATE OF NEW JERSEY
**AFFIDAVIT OF CONSIDERATION FOR USE BY SELLER**
(Chapter 49, P.L. 1968, as amended through Chapter 33, P.L. 2006)(N.J.S.A. 46:15-5 et seq.)
BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE OF THIS FORM.

| STATE OF NEW JERSEY | } SS. | County Municipal Code | FOR RECORDER'S USE ONLY |
|---|---|---|---|
| COUNTY **ESSEX** | | 0260 | Consideration $ 3,050,000.00 |
| | | | RTF paid by seller $ 54,380.00 |
| | | | Date _____ By _____ |

† Use symbol "C" to indicate that fee is exclusively for county use.

Municipality of Property Location: **Teaneck**

**(1) PARTY OR LEGAL REPRESENTATIVE** *(Instructions 3 and 4 attached)*

Deponent, **Diana Nicholson**, being duly sworn according to law upon his/her oath deposes
_____ *(Name)*

and says that he/she is the **Manager** in a deed dated **3/19/15**
_____ *(Grantor, Legal Representative, Corporate Officer, Officer of Title Co., Lending Institution, etc.)*

transferring real property identified as Block No. **6008** , Lot No. **1** located at
**198-210 The Plaza and 1407-1413 Palisade Avenue, Teaneck** and annexed thereto.
*(Street Address, Town)*

**(2) CONSIDERATION: $3,050,000.00** _____ *(Instructions 1 and 5)* ☐ no prior mortgage to which property is subject.

**(3)** Property transferred is Class **(4A)** 4B   4C   (circle one). If property transferred is Class 4A, calculation in Section 3A is required.

**(3A) REQUIRED CALCULATION of Equalized Valuation for all Class 4A (Commercial) Property Transactions:**
*(Instructions 5A and 7)*

Total Assessed Valuation ÷ Director's Ratio = Equalized Assessed Valuation
$ **2,356,700.** ÷ **100** % = $ **2,356,700.**

If Director's Ratio is less than 100%, the equalized valuation will be an amount greater than the assessed value.  If Director's Ratio
is equal to or in excess of 100%, the assessed value will be equal to the equalized valuation.

**(4) FULL EXEMPTION FROM FEE:** *(Instruction 8)*

Deponent states that this deed transaction is fully exempt from the Realty Transfer Fee imposed by C. 49, P.L.
1968, as amended through C. 66, P.L. 2004, for the following reason(s).  Mere reference to the exemption symbol is
insufficient. Explain in detail. _____

**(5) PARTIAL EXEMPTION FROM FEE:** *(Instruction 9)* NOTE: All boxes below apply to grantor(s) only.  ALL
BOXES IN APPROPRIATE CATEGORY MUST BE CHECKED.  Failure to do so will void claim for partial exemption.
Deponent claims that this deed transaction is exempt from the State's portion of the Basic, Supplemental and
General Purpose Fee, as applicable, imposed by C. 176, P.L. 1975; C. 113, P.L. 2004 and C. 66, P.L. 2004 for the following
reason(s):

**A.  SENIOR CITIZEN** *(Instruction 9)*
☐ Grantor(s) 62 years of age or over*
☐ Owned and occupied by grantor(s) at time of sale
☐ One- or two-family residential premises
☐ Resident of the State of New Jersey
☐ Owners as joint tenants must all qualify

**B.  BLIND PERSON** *(Instruction 9)*
☐ Grantor(s) legally blind*
☐ Owned and occupied by grantor(s) at time of sale
☐ One- or two-family residential premises
☐ Resident of the State of New Jersey
☐ Owners as joint tenants must all qualify
  * IN THE CASE OF HUSBAND AND WIFE OR
   STATUTORY PARTNER, ONLY ONE GRANTOR
   NEED QUALIFY IF TENANTS BY THE ENTIRETY.

**DISABLED PERSON** *(Instruction 9)*
☐ Grantor(s) permanently and totally disabled*
☐ Grantor(s) receiving disability payments*
☐ Grantor(s) not gainfully employed*
☐ Owned and occupied by grantor(s) at time of sale
☐ One- or two-family residential premises
☐ Resident of the State of New Jersey
☐ Owners as joint tenants must all qualify

**C.  LOW AND MODERATE INCOME HOUSING** *(Instruction 9)*
☐ Affordable according to HUD standards
☐ Meets income requirements of region
☐ Reserved for occupancy
☐ Subject to resale controls

**(6) NEW CONSTRUCTION** *(Instructions 2, 10 and 12)*
☐ Entirely new improvement
☐ Not previously used for any purpose
☐ Not previously occupied
☐ "New Construction" printed clearly at top of the first page of the deed

**(7) RELATED LEGAL ENTITIES TO LEGAL ENTITIES** *(Instructions 5, 12 and 14)*
☐ No prior mortgage assumed or to which property is subject at time of sale
☐ No contributions to capital by either grantor or grantee legal entity
☐ No stock or money exchanged by or between grantor or grantee legal entities

**(8)** Deponent makes this Affidavit to induce the County Clerk or Register of Deeds to record the deed and accept the fee
submitted herewith in accordance with the provisions of Chapter 49, P.L. 1968, as amended through Chapter 33, P.L. 2006.

Subscribed and sworn to before me
this **Nineteenth** day
of **March**, 20 **15** .

_Hollas Holdings, L.L.C._
*Deponent Signature*   *Grantor Name*

175 Fair Street, Palisade Park,   175 Fair Street, Palisade Park, New
New Jersey 07650                   Jersey 07650
*Deponent Address*                 *Grantor Address at Time of Sale*

DENNIS C. SATRIANI
NOTARY PUBLIC OF NEW JERSEY
ID # 2321098
MY COMMISSION EXPIRES NOV. 19, 2019
*Notary Public*

XXX-XX-X **1   3   0**   Nat'l Granite Title Ins. Agency, Inc.
Last 3 digits in Grantor's Soc. Sec. No.   Name/Company of Settlement Officer

| FOR OFFICIAL USE ONLY | |
|---|---|
| Instrument Number _____ | County _____ |
| Deed Number _____ | Book _____ Page _____ |
| Deed Dated _____ | Date Recorded _____ |

When section 3A is completed, county recording
officers shall forward one copy of each Affidavit of
Consideration for Use by Seller to:
State of New Jersey – Division of Taxation, P.O. Box 251, Trenton, NJ 08695-0251, Attention: Realty Transfer Fee Unit

The Director of the Division of Taxation in the Department of the Treasury has prescribed this form as required by law, and it may not be
altered or amended without the prior approval of the Director. For information on the Realty Transfer Fee or to print a copy of this
Affidavit, visit the Division of Taxation website at www.state.nj.us/treasury/taxation/lpt/localtax.htm.

RTF-1EE (Rev. 7/08)
* MUST SUBMIT IN DUPLICATE

STATE OF NEW JERSEY
**AFFIDAVIT OF CONSIDERATION FOR USE BY BUYER**
(Chapter 49, P.L.1968, as amended through Chapter 33, P.L. 2006) (N.J.S.A. 46:15-5 et seq.)
BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE OF THIS FORM

STATE OF NEW JERSEY

| | | FOR RECORDER'S USE ONLY | |
|---|---|---|---|
| COUNTY _Bergen_ }SS. County Municipal Code _0260_ | | Consideration | 3,050,000 |
| | | RTF paid by buyer | 30,500 |
| MUNICIPALITY OF PROPERTY LOCATION _Teaneck_ | | Date _____ By _____ | M |

**(1) PARTY OR LEGAL REPRESENTATIVE** *(See Instructions #3 and #4 on reverse side)*         XXX-XX-X **990**
                                                                                                          *Last 3 Digits in Grantee's Social Security Number*

Deponent, _Seth Levine_ , being duly sworn according to law upon his/her oath,
                        (Name)

deposes and says that he/she is the _manager of grantee_ in a deed dated _3/19/15_ transferring
                              (Grantee, Legal Representative, Corporate Officer, Officer of Title Company, Lending Institution, etc.)

real property identified as Block number _5008_ , Lot number _1_ located at

_1407 Palisades Ave, Teaneck, NJ_ and annexed thereto.
            (Street Address, Town)

**(2) CONSIDERATION** $ _3,050,000_ *(See Instructions #1, #5, and #11 on reverse side)*

Entire consideration is in excess of $1,000,000:

PROPERTY CLASSIFICATION CHECKED BELOW SHOULD BE TAKEN FROM THE OFFICIAL TAX LIST (A PUBLIC RECORD) OF THE MUNICIPALITY WHERE THE REAL PROPERTY IS LOCATED IN THE YEAR THAT THE TRANSFER IS MADE.

(A) When Grantee is required to remit the 1% fee, complete below.

☐ Class 2 - Residential                              ☑ Class 4A – Commercial Properties
☐ Class 3A - Farm property (Regular) and any            (if checked, calculation on (C) required below)
  other real property transferred to same grantee    ☐ Class 4C - Residential Cooperative Unit
  in conjunction with transfer of Class 3A property      (4 Families or less)

(B) When Grantee is not required to remit the 1% fee, complete below:

☐ Property class. Circle applicable class(es):   1     4B     4C     15
      Property classes: 1-Vacant Land, 4B-Industrial properties, 4C-Apartments (other than cooperative unit), 15-Public Property
☐ Exempt Organization pursuant to federal Internal Revenue Code of 1986
☐ Incidental to corporate merger or acquisition and equalized assessed valuation less than 20% of total value of
  all assets exchanged in merger or acquisition (if checked, calculation in (C) below required and MUST ATTACH
  COMPLETED RTF-4)

**(C) REQUIRED CALCULATION OF EQUALIZED ASSESSED VALUATION FOR ALL CLASS 4A COMMERCIAL PROPERTY TRANSACTIONS:** *(See Instructions #5 and #7 on reverse side)*
Total Assessed Valuation ÷ Director's Ratio = Equalized Valuation

$ _2,356,700_ ÷ _100_ % = $ _2,356,700_ .

If Director's Ratio is less than 100%, the equalized valuation will be an amount greater than the assessed valuation. If Director's Ratio is equal to or in excess of 100%, the assessed valuation will be equal to the equalized valuation.

**(3) TOTAL EXEMPTION FROM FEE** *(See Instruction #8 on reverse side)*
Deponent states that this deed transaction is fully exempt from the Realty Transfer Fee imposed by C. 49, P.L. 1968, as amended through C. 66, P.L. 2004, for the following reason(s). Mere reference to exemption symbol is insufficient. Explain in detail.

_____
_____

**(4)** Deponent makes Affidavit of Consideration for Use by Buyer to induce county clerk or register of deeds to record the deed and accept the fee submitted herewith pursuant to the provisions of Chapter 49, P.L. 1968, as amended through Chapter 33, P.L. 2006.

Subscribed and sworn to before me                  _Teaneck Plaza Ventures, LLC_
this _19th_ day of _March_ , 2015        _____                Grantee Name
                                          Signature of Deponent
_Yehuda C. Greenfeld_                    _636 South First St._          _210 River Street, Suite 24, Hackensick,_
_Attorney in the State_                     Deponent Address               _NJ 07601_
_of New Jersey_                          _Teaneck, NJ 07666_        Grantee Address at Time of Sale

                                                                   _National Granik Title Insurance_
                                                                   Name/Company of Settlement Officer

                              FOR OFFICIAL USE ONLY
                         Instrument Number _____ County _____
                         Deed Number _____ Book _____ Page _____
                         Deed Dated _____ Date Recorded _____

County Recording Officers shall forward one copy of each Affidavit of Consideration for Use by Buyer recorded with deeds to:
STATE OF NEW JERSEY- DIVISION OF TAXATION
PO BOX 251
TRENTON, NJ 08695-0251
ATTENTION: REALTY TRANSFER FEE UNIT
The Director of the Division of Taxation in the Department of the Treasury has prescribed this form as required by law, and it may not be altered or amended without prior approval of the Director. For further information on the Realty Transfer Fee or to print a copy of this Affidavit, visit the Division of Taxation website at
www.state.nj.us/treasury/taxation/lpt/localtax.htm

John S. Hogan
Bergen County Clerk

**Bergen County Clerk**
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 18-067857

V 03061 0498

RECORDED DATE: 09/24/2018 02:18:33 PM

| | |
|---|---|
| Transaction #: | 9157807 |
| Document Page Count: | 20 |
| Operator Id: | CLERK |

Document Type:   Mortgage

**RETURN TO:**

WORLD WIDE LAND TRANSFER
BUILDING 8 NESHAMINY INTERPLEXSUITE 117
TREVOSE PA 19053
ERECORDED

**SUBMITTED BY:**

World Wide Land Transfer

(215) 245-5650

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| TEANECK PLAZA VENTURES LLC | AFFINITY FEDERAL CREDIT UNION |
| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |

MARGINAL REFERENCES:   V 03061 0519

DOCUMENT DATE: 09/12/2018
MUNICIPALITY: TEANECK

FEES / TAXES:

| | |
|---|---|
| Recording Fee: Mortgage | $30.00 |
| Additional Pages Fee | $190.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| Total: | $223.00 |

**INSTRUMENT #: 18-067857**
Recorded Date: 09/24/2018 02:18:33 PM

I hereby CERTIFY that this document is recorded
in the Clerk's Office in Bergen County, New
Jersey.



John S. Hogan
Bergen County Clerk

Recording Fees: $223.00
Realty Transfer Tax Fees: $0.00

## OFFICIAL RECORDING COVER PAGE

Page 1 of 21

# PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

MORTGAGE

FROM

TEANECK PLAZA VENTURES, LLC

TO

AFFINITY FEDERAL CREDIT UNION

Dated:  September 12, 2018

RECORD AND RETURN TO:

Jeremy M. Garlock
Schenck, Price, Smith & King, LLP
220 Park Avenue /  PO Box 991
Florham Park, NJ 07932

## MORTGAGE

This Mortgage ("Mortgage") is made on the 12th day of September, 2018,

By **TEANECK PLAZA VENTURES, LLC,** a New Jersey limited liability company, having an address of 210 River Street, Hackensack, New Jersey 07601 ("Mortgagor"), and

**AFFINITY FEDERAL CREDIT UNION,** having offices at 73 Mountainview Boulevard, PO Box 621, Basking Ridge, New Jersey 07920 ("Mortgagee");

Background.    This Mortgage secures various Obligations (as defined below) including, without limitation, a loan by Mortgagee to Mortgagor in the original principal amount of Three Million Nine Hundred Thousand and 00/100 ($3,900,000.00) Dollars, plus interest thereon, as evidenced by the Note. In consideration of the above-referenced loan and other good and valuable consideration, receipt of which is hereby acknowledged, Mortgagor agrees as follows:

### SECTION 1. - DEFINITIONS AND INTERPRETATIONS

The definitions of the capitalized terms used in this Mortgage and the Note are set forth in the body of this Mortgage and in Appendix A attached hereto and incorporated herein in its entirety.

### SECTION 2. - GRANTING CLAUSE

To secure the observance, payment and performance of all Obligations, Mortgagor hereby mortgages, grants a security interest in, and absolutely assigns all rents, profits, leases, income and proceeds arising from, the Mortgaged Property to Mortgagee and to Mortgagee's successors and assigns forever. These grants are, however, made upon the express condition that after all Obligations are paid and performed in full, this Mortgage shall be discharged by Mortgagee upon Mortgagor's request.

### SECTION 3. - MORTGAGED PROPERTY

The "Mortgaged Property" consists of the Land, the Improvements, the Fixtures and Equipment, all Leases and Rents, all Awards and Proceeds, all Other Rights, and all present and future estate, right, title, interest, property, possessory interest and claims whatsoever in law as well as in equity of Mortgagor or any other owner in and to the Land, Improvements and Fixtures, Equipment and Other Rights.

### SECTION 4. - REPRESENTATIONS

Mortgagor, knowing and agreeing that Mortgagee shall rely hereon, hereby represents and warrants to Mortgagee that:

4.1. Warranty of Title.  Mortgagor holds good and marketable title in fee simple to the Mortgaged Property free of all liens, restrictions, taxes and encumbrances, other than any Permitted Encumbrances, and will warrants and forever defend that title and the enforceability and priority of all liens created under this Mortgage against all claims whatsoever, except for Permitted Encumbrances, at Mortgagor's sole expense.

4.2.   Valid Obligations.  This Mortgage and the Note are valid and binding obligations of Mortgagor, enforceable in accordance with their terms.  This Mortgage constitutes a valid first priority mortgage lien on, and absolute assignment of Leases and Rents, and security interest in the Mortgaged Property, subject to any Permitted Encumbrances.

4.3.   Existence and Authority.  Mortgagor has full power, authority and license to enter into and perform this Mortgage and the other Loan Documents to which Mortgagor is a party and Mortgagor has full power, authority and license to own and operate the Mortgaged Property and to conduct its business as now being conducted.  Mortgagor has obtained all necessary consents, authorizations, permits, licenses and approvals required before Mortgagor may execute and deliver this Mortgage and operate the Mortgaged Property.

4.4.   No Conflicts.  The execution, delivery and performance of this Mortgage and other Loan Documents by Mortgagor will violate no charter, bylaw, lease, indenture, agreement, instrument, law, ordinance, regulation, order or administrative ruling to which Mortgagor is subject or a party or that affects or relates to the Mortgaged Property.

4.5.   Proceedings.  There is no action, application, petition, proceeding or hearing pending or threatened against any Obligor or the Mortgaged Property that might (a) adversely affect any Obligor's ability to perform the Mortgage or any other Loan Document, (b) involve the possibility of any material adverse change in any Obligor's economic condition, (c) relate to any land use variance, subdivision, zoning or other matters, (d) involve the possibility of any limitation on any intended uses of the Mortgaged Property, (e) impair the lien or security of this Mortgage or the value of the Mortgaged Property, or (f) involve possible or threatened claims totaling in excess of $10,000.00.

4.6.   Compliance with Laws.  Mortgagor and the Mortgaged Property is in compliance with all laws, regulations, ordinances and codes that are applicable to the use and operation of the Mortgaged Property, including, without limitation, all Environmental Laws.  All present and planned uses and tenants of the Mortgaged Property are in full compliance with applicable zoning, environmental and building laws, ordinances, regulations and codes.  Mortgagor and all tenants of the Mortgaged Property have obtained all certificates of occupancy and building and other permits that are required for all intended uses of, and for any construction, renovations and repairs with respect to, the Mortgaged Property.

4.7.   Condition of Property.  The Mortgaged Property is structurally sound, in good condition and suitable for its intended use.

4.8.   Taxes.  All property taxes and assessments due and owing in connection with the Mortgaged Property have been paid in full through the date of this Mortgage, including any penalties, deficiency assessments and interest.  Mortgagor has filed all tax returns and reports required to be filed by it and has paid all taxes that are due and owing, including penalties, deficiency assessments and interest.

4.9.   Financial Information and Condition.  All financial statements and all tax returns of Mortgagor and of the Guarantors delivered to Mortgagee truly set forth the financial condition of Mortgagor and of the Guarantors and the results of operations of such entities or persons as of that date and there has been no material adverse change since then.  All other statements, representations and warranties made by or on behalf of Mortgagor or on behalf of the Guarantors to Mortgagee have been, and as of the date of the Mortgage are, accurate and complete and no information has been omitted that would make any of them misleading or incomplete.  Immediately prior to and after the making of, this Mortgage, Mortgagor and Guarantors were not, nor will be, "insolvent" as that term is defined in N.J.S.A. 14a:1-2(K) OR 11 U.S.C.A. 101(31).

4.10.  Survival.  All representations and warranties made by, or on behalf of, Mortgagor in this Mortgage or otherwise made to Mortgagee shall survive the closing of this Mortgage and any independent investigation by Mortgagee.

4.11.  Purpose of Loan.  The proceeds of the Loan shall be used solely for the following purpose: refinance of the Mortgaged Property.

## SECTION 5. - MORTGAGOR'S COVENANTS

Mortgagor and any other owner of the Mortgaged Property covenant and agree that they shall do all of the following:

5.1.  Obligations.  Pay all indebtedness, and abide by all terms and conditions, under all Obligations, including without limitation this Mortgage and the Note;

5.2.  Escrow Account.  At the time of each monthly payment, pay to Mortgagee (a) the sum equal to one-twelfth (1/12th) of the known (or if not known, estimated by Mortgagee) annual real estate taxes levied against the premises by governmental entities and (b) such sums, if required by Mortgagee, as are necessary to assure the timely payment of all charges described in Section 6 below, to be held by Mortgagee in a non-interest bearing account and applied by Mortgagee to the payment of such taxes, assessments and other charges when due.  If the total of such monthly payments shall exceed the amounts actually paid by Mortgagee for taxes, assessments and other charges, as the case may be, such excess shall be credited on subsequent monthly payments of the same nature; but if the total of such monthly payments shall be insufficient to pay taxes, assessments and other charges when due, then Mortgagor shall pay to Mortgagee, on demand, any amount necessary to make up the deficiency.  Notwithstanding the foregoing, upon the occurrence of an Event of Default, Mortgagee may apply all sums in said escrow account to the reduction of the Obligations;

5.3.  Financial Reporting.  Immediately notify Mortgagee of any Material Adverse Change in the financial condition of Mortgagor and deliver to the Mortgagee the following:

(a)  annually, within thirty (30) days of filing, a signed copy of annual Federal Income Tax Returns for Mortgagor;

(b)  annually, within thirty (30) days of filing, the Guarantor shall provide a copy of his annual Federal Income Tax Returns including Schedules K-1 for all related and/or affiliated entities and updated personal financial statements on Mortgagee's approved form listing assets, including a schedule of real estate owned, and liabilities in sufficient detail to provide an accurate accounting to indicate personal financial condition;

(c)  annually, Mortgagor shall provide a certified rent roll for the Mortgaged Property as well as any new, extended or modified lease agreements for the Mortgaged Property including extensions; and

(d)  such other information about Mortgagor, their Affiliates or any Guarantor as Mortgagee requests.

5.4.  Use of Property.  Make or permit no use of the Mortgaged Property other than for mixed use residential and commercial retail purposes.

5.5.  Condition of Property.  Prevent any waste with respect to the Mortgaged Property, keep the Mortgaged Property in good and clean condition and make all repairs that are either required in the ordinary course of business to operate the Mortgaged Property or that are requested by Mortgagee in its reasonable discretion.

5.6.  Alterations.  Make no material change to or renovation of, nor remove, any material Improvements or Fixtures and Equipment without the express prior written consent of Mortgagee in its reasonable discretion.  All changes, renovations, removals and repairs shall be made in a good and workmanlike manner to the reasonable satisfaction of Mortgagee and in accordance with all applicable building and zoning laws.

5.7.  Notice of Loss or Condemnation.  Notify Mortgagee immediately in writing upon learning that (a) there may be any casualty on, or loss to or of, any Mortgaged Property or (b) condemnation proceedings have commenced with respect to the Mortgaged Property.

5.8.  Inspections.  At any time during regular business hours and as often as reasonably requested, permit Mortgagee and its agents and employees to examine, audit and make copies and abstracts from any and all books and records of Mortgagor, and to visit and inspect the Mortgaged Property.

5.9.  Compliance With Laws.  Comply with all laws, ordinances, regulations and restrictions affecting the Mortgaged Property.

5.10.  Transfers or Liens.  Without the express prior written consent of Mortgagee in its absolute discretion, make or permit no Transfer in the ownership or control of the Mortgaged Property.

5.11.  Preservation.  Preserve and maintain all authorizations, consents, licenses, permits, registrations and qualifications that are necessary for the transaction of business and the operation of the Mortgaged Property.

5.12.  Indemnification.  Indemnify, defend (with counsel reasonably acceptable to Mortgagee) and hold harmless Mortgagee (including Mortgagee's agents, employees, officers and directors) against all losses, claims, suits, fines, damages and expenses, including reasonable attorney's fees and disbursements, incurred by reason of, or in connection with, this Mortgage or the Mortgaged Property or in maintaining Mortgagee's interest in the Mortgaged Property, including, without limitation, all losses, claims, suits, fines, damages and expenses incurred by reason of, or in connection with, Mortgagor's breach of any provision of Section 7 of this Mortgage or any violation of any Environmental Law of the Use of Hazardous Substances on the Mortgaged Property.

5.13.  Leasing Covenants.  As to all leases and rentals, comply with each of the following:

(a)  accept no payments more than thirty (30) days in advance of the due date under any leases relating to the Mortgaged Property; and

(b)  permit no use of the Mortgaged Property that would violate any provision of this Mortgage, including all provisions relating to environmental matters; and

(c)  abide by and perform all duties of the landlord under any leases affecting the Mortgaged Property; and

(d)   enter into or agree to enter into no new lease or modify or terminate no lease affecting the Mortgaged Property, except with the express prior written approval of Mortgagee in its reasonable discretion; and

(e)   any existing or future lease, or other agreement for the use or occupancy, of any Mortgaged Property shall provide that:

(i)   it is subordinate and subject in all respects to the lien and provisions of this Mortgage including all covenants and restrictions as to the use and condition of the Mortgaged Property; and

(ii)   all representations and covenants as to environmental matters, including those set forth in Section 7, are to become express covenants and representations of the tenant or occupant; and

(iii)   copies of notices or letters asserting or discussing any defaults on the part of the landlord shall be simultaneously sent to Mortgagee (attention: Commercial Loan Department) by certified mail; and

(iv)   within five (5) days of request by Mortgagee, the lessee or occupant will deliver to Mortgagee a notarized statement as to the default status of any lease or occupancy agreement and execute any document requested by Mortgagee to confirm that any lease or occupancy agreement is subordinate and subject to the lien and provisions of this Mortgage.

5.14.   Banking Relationship.   Mortgagor shall maintain its primary banking relationship with Mortgagee for the term of the Loan along with auto-debit for all loan payments.   Mortgagor shall also maintain all tenant security deposit accounts with Mortgagee for the term of the Loan.   Failure of Mortgagor to maintain the foregoing accounts within forty-five (45) days from the date of this Mortgage shall result in an increase in the interest rate of the Note by one (1.00%) per annum.

5.15.   Additional Liens.   Mortgagor shall not, directly or indirectly, create, incur, assume or permit to exist any Lien on or with respect to the Mortgaged Property without the prior express written consent of the Mortgagee.

5.16   Debt Service Coverage Ratio.   On an annual fiscal basis beginning in 2019, Mortgagor shall maintain Debt Service Coverage Ratio of 1.20x during the term of the Loan as verified by Mortgagor's federal income tax returns. Debt Service Coverage Ratio ("DSCR") shall be defined as the ratio of net operating income plus depreciation and amortization to principal and interest payments. Mortgagor's failure to maintain the required DSCR, at Mortgagee's option, shall cause the Note to bear interest at the default rate in effect from time to time thereunder, until compliance is verified or a subsequent fiscal year by the Mortgagor's federal income tax returns.

### SECTION 6. - INSURANCE

6.1.   Insurance Coverage.   Mortgagor shall keep the Mortgaged Property insured as follows:

(a)   Casualty Insurance.   Maintain extended coverage casualty insurance written in the name of Mortgagor in the broadest "all risks" form available on a full replacement cost basis covering all Mortgaged Property, including all Improvements and Fixtures and Equipment.   That insurance shall

be in amounts that are no less than the full insurable value of the Mortgaged Property (without any deduction for depreciation) with a deductible amount of no greater than $5,000.00 and shall be in amounts reasonably satisfactory of Mortgagee.

(b)     Liability Insurance.   Maintain comprehensive general liability insurance in the name of Mortgagor, including a contractual liability endorsement and a completed operations and personal injury coverage, with a combined single limit for any one occurrence in amounts reasonably satisfactory to Mortgagee.

(c)     Flood Insurance.  If any portion of the Mortgaged Property is located in a flood hazard area for which insurance is available under the Flood Disaster Protection Act of 1973 or the National Flood Insurance Act of 1968, maintain flood insurance on that portion in an amount reasonably acceptable to Mortgagee.

(d)     Interruption Insurance.  If requested by Mortgagee, rental interruption insurance for loss caused by perils of the type covered by the above-referenced casualty insurance in amounts at least equal to one hundred (100%) percent of the sum of (i) twelve (12) monthly payments of principal and interest under the Note and (ii) real estate taxes and insurance premiums required to pay taxes and other charges and maintain insurance for the Mortgaged Property over a twelve (12) month period.

(e)     Policy Terms.  All policies shall meet the following requirements:

(i)     overall blanket or excess coverage policies may be supplied provided, however, that all insurance shall be in amounts sufficient to prevent any insured from being a co-insurer and that the amount of the casualty insurance coverage attributable to the Mortgaged Property is clearly set forth; and

(ii)     all policies shall (a) name Mortgagee "and its successors and assigns as their interests may appear" as "mortgagee insured" and "loss payee" on all casualty insurance and as "additional insured" as to all other insurance, (b) contain an endorsement stating that, as to the interest of Mortgagee, such policy "shall not be impaired, invalidated or affected by any statement, act or neglect of any insured, loss payee or other Person, or by any failure to make any report to the insurer, or by the institution of any proceeding to execute upon any lien," and (c) contain a provision stating that such policy "shall not be cancelled or modified except after thirty (30) days prior written notice delivered to Mortgagee (attn: Commercial Mortgage Department) at Mortgagee's address first listed above or as subsequently directed in writing by Mortgagee; and

(iii)     all policies shall be in a form reasonably acceptable to Mortgagee and shall be issued by financially sound insurers duly licensed and authorized to conduct that type of insurance business in New Jersey; and

(iv)     all policies of insurance and endorsements thereof, together with a paid receipt, shall be deposited with Mortgagee prior to the closing of this Mortgage. At least thirty (30) days prior to the expiration of any such policies, Mortgagee shall furnish paid receipts and other evidence satisfactory to Mortgagee that all such policies have been renewed or replaced; and

(v)     all policies shall provide that the insurance proceeds and awards may be adjusted only after obtaining the prior written consent of Mortgagee and shall be paid directly to Mortgagee to the extent required in Section 6.2.

6.2.  Insurance Proceeds.  Mortgagee shall have the exclusive authority to do each of the following in Mortgagee's absolute discretion:

(a)     Receive directly all Awards and Proceeds;

(b)     Settle or compromise all claims relating to all Awards and Proceeds; and

(c)     Determine whether to apply any Awards and Proceeds to reduce the Note or any other Obligations or to repair or replace any Mortgaged Property.

## SECTION 7. - ENVIRONMENTAL MATTERS

7.1.  Environmental Representations.  Mortgagor hereby represents and warrants to Mortgagee that:

(a)     Except as otherwise disclosed to Mortgagee by Mortgagor in writing, neither Mortgagor nor, to the best knowledge of Mortgagor, any other existing or former occupant of the Mortgaged Property, has (i) Used any Hazardous Substances in violation of any Environmental Law, (ii) received any notice, or is on notice, of any claim, investigation, cleanup or testing program, government expenditures, litigation or administrative proceeding, actual or threatened, or any order, writ or judgment that relates to any Use of pollutants of any kind, including any Hazardous Substances, on, or by any occupant of, the Mortgaged Property.

(b)     No Hazardous Substances have been, or will be, Used on, or by any occupant of the Mortgaged Property, other than common cleaning and maintenance agents in small quantities for standard maintenance uses.

(c)     In connection with any acquisition, sale, closing, transfer, change in control or merger of Mortgagor, any other occupant, owner or tenant of the Mortgaged Property, or the Mortgaged Property itself, since December 31, 1983, ISRA has by completing a "cleanup plan" as that term in defined in N.J.A.C. 7:1-3.3., which cleanup plan has been approved, without condition or reservation, by the New Jersey Department of Environmental Protection.

(d)     The Mortgaged Property has not been, and will not be, used as a "major facility," as that term is defined in N.J.S.A. 58:10-23.11(b)(1).

7.2.  Restrictions on Hazardous Uses.  Without Mortgagee's prior written consent, which may be granted or withheld in Mortgagee's sole discretion, Mortgagor shall make or permit no use of the Mortgaged Property that would:

(a)     involve an industrial establishment having a Standard Industrial Classification code number that would subject the Mortgaged Property to ISRA, except for Guarantors' code number; or

(b)     involve the Use of any Hazardous Substances, except for use in the ordinary course of the medical office practice and properly stored safe cleaning and maintenance agents in reasonable amounts for standard maintenance uses or as specifically permitted in advance in writing by Mortgagee in its absolute discretion.

7.3. <u>Notice to Mortgagee</u>. Mortgagor shall notify Mortgagee immediately in writing upon learning of:

(a)     any spill, discharge or release of any Hazardous Substances on or near the Mortgaged Property;

(b)     any circumstances that may result in a violation of Section 7.2;

(c)     any circumstances or transactions that would require compliance with ISRA in connection with the Mortgaged Property; or

(d)     any governmental inquiry or inspection is undertaken or an enforcement notice issued with respect to Hazardous Substances on or Used with respect to the Mortgaged Property.

7.4. <u>Environmental Audits</u>. If Mortgagee has reason to believe that there are any Hazardous Substances on the Mortgaged Property and/or that Mortgagor has breached any of the terms and conditions of this Section 7, Mortgagee may require that Mortgagor retain a qualified and licensed environmental audit of the Mortgaged Property, which engineer and audit, including testing and sampling procedures, shall be reasonably acceptable to Mortgagee and which audit report shall be delivered to Mortgagee within thirty (30) days of Mortgagee's initial request and shall be prepared at Mortgagor's sole expense.

7.5. <u>Security for Cleanup</u>. If any investigation, environmental report or governmental investigation or order indicates that there may exist any damage or risk to the Mortgaged Property, or any liability of any Mortgagor relating to any Hazardous Substances or other environmental conditions with respect to the Mortgaged Property, Mortgagee may require Mortgagor to furnish immediately an indemnity bond in an amount determined by Mortgagee, in its absolute reasonable discretion, to be sufficient to pay all actual and estimated cleanup costs and to protect against any liens that may arise with respect to such potential cleanup costs. Mortgagee's demand that Mortgagor post any bond or other security shall not be a waiver of any Event of Default or of any other right or remedy available to Mortgagee.

<u>SECTION 8. - EVENTS OF DEFAULT</u>

Any of the following events or conditions shall, at the option of Mortgagee, constitute an "Event of Default" under this Mortgage and the other Loan Documents and Obligations if not cured within the applicable cure period, if any, set forth below:

8.1. <u>Payments</u>. Any failure to make on its due date any payment required to be made by Mortgagor under this Mortgage, the Note or any other Loan Document or Obligations; or

8.2. <u>Other Terms</u>. Any failure to perform or observe any term or condition (not otherwise recited under this Section 8) under this Mortgage, the Note or any other Loan Document or Obligations; or

8.3. <u>Representations</u>. Any representation, statement or warranty made by or on behalf of any Obligor in this Mortgage, the Affidavit of Title or any other Loan Document, certificate or other writing made or given to Mortgagee at any time shall be incorrect, incomplete or misleading when made in any material respect; or

8.4. <u>Failure to Obtain Permission</u>. Mortgagor shall do, or permit to be done, any act for which Mortgagee's consent is required under this Mortgage or any other Loan Document without first obtaining such consent in writing; or

8.5. <u>Financial Information and Inspections</u>. Any failure to furnish financial information or to permit inspection of the Mortgaged Property or any records as required under this Mortgage or any other Loan Document; or

8.6. <u>Failure to Maintain Insurance</u>. Any failure to maintain, or provide satisfactory evidence of, any insurance coverage required under this Mortgage or any other Loan Document; or

8.7. <u>Lien Defaults or Foreclosures</u>. Any default or modification (without Mortgagee's prior written consent) shall have occurred in any mortgage, assignment, encumbrance or agreement constituting a Permitted Encumbrance, and any applicable cure period as to such default shall have expired, or proceedings shall have been instituted or actions taken for the foreclosure or enforcement of any mortgage, judgment, assignment or other lien or encumbrance affecting the Mortgaged Property; or

8.8. <u>Warrants and Tax Liens</u>. Any warrant of attachment or for distraint, or notice of tax or other lien shall be issued relating to, or encumbering, any portion of the Mortgaged Property that is not discharged, or stayed and bonded, to the reasonable satisfaction of Mortgagee within thirty (30) days of entry; or

8.9. <u>Judgments</u>. Any judgment shall be entered against Mortgagor in excess of Five Thousand ($5,000.00) Dollars, that is not (a) within sixty (60) days of entry, discharged, or stayed and bonded, to the satisfaction of Mortgagee or (b) fully covered by insurance and the insurance company has unconditionally accepted liability for that judgment; or

8.10. <u>Loss of Collateral</u>. There occurs any casualty on, or loss or destruction of, any Mortgaged Property that, in Mortgagee's reasonable judgment, involves damage to or loss of property having a value of Fifteen Thousand ($15,000.00) Dollars or more, unless such loss or destruction is fully covered by insurance (subject to a standard insurance policy deductible provision of $5,000 or less) to the reasonable satisfaction of Mortgagee; or

8.11. <u>Hazardous Substances</u>. There occurs any Use of any Hazardous Substances on the Mortgaged Property or by Mortgagor that will require Ten Thousand ($10,000.00) Dollars or more to remedy; or

8.12. <u>Insolvency</u>. Any filing of a petition by or against any Obligor under any bankruptcy or insolvency law or an assignment by any Obligor of any property or assets for the benefit of creditors, or the failure of any Obligor to pay debts in the ordinary course as those debts become due, or the calling of a meeting of creditors of any Obligor to obtain any general financial accommodation provided, however, that any Obligor shall have forty-five (45) days to obtain a court order dismissing any bankruptcy or insolvency proceeding that is filed without consent of the debtor; or

8.13. <u>Seizure of Property</u>. Any seizure by governmental authorities of, or the imposition of legal restraints against, the Mortgaged Property, which is not, within thirty (30) days of such seizure or imposition, released, discharged or fully bonded to the reasonable satisfaction of Mortgagee; or

8.14. <u>Non-Permitted Encumbrance</u>. Any mortgage, assignment, lien, judgment or interest shall encumber any Mortgaged Property with the exception of any Permitted Encumbrances; or

8.15. _Default in Leases_. Any material default on the part of Mortgagor shall occur under or there shall be a termination of any leases that presently or may in the future affect the Mortgaged Property and account for more than thirty (30%) percent of the annual rentals from the Mortgaged Property; or

8.16. _Dissolution; Death_. Any Obligor shall fail to remain in good standing in its state of incorporation or organization or dissolves, or any individual Obligor dies; or

8.17. _Material Adverse Change_. Any Material Adverse Change in the creditworthiness or financial condition of any Obligor that, in the reasonable opinion of Mortgagee, materially increases Mortgagee's risk; or

8.18. _Material Default With Third Party_. A default under any material indebtedness or other material obligations of any Obligor to any third party that entitles such third party to declare such indebtedness or obligation due prior to its date of maturity; or

8.19. _Conveyance_. If without the consent of the Mortgagee (which consent in any and all circumstances may be withheld in the sole and absolute discretion of the Mortgagee) any part of the Mortgaged Property or any interest of any nature whatsoever therein or any interest of any nature whatsoever in Mortgagor is in any manner, by operation of law or otherwise, whether directly or indirectly, further encumbered, sold, transferred, assigned or conveyed, and irrespective of whether any such further encumbrance, sale, transfer, assignment or conveyance is voluntary, by reason or operation of law or is otherwise made.

## SECTION 9. - REMEDIES

Upon the occurrence of an Event of Default, Mortgagee may, at its option, do any of the following in any order at any time and in any combination:

9.1. _Acceleration of Obligations_. Declare all principal, interest and expenses outstanding under the Note, this Mortgage and any other Obligations to be immediately due and payable in full; or

9.2. _Foreclosure_. Institute proceedings to foreclose on all or any portion of the Mortgaged Property, and following receipt of a judgment of foreclose, cause the sale of the Mortgaged Property in accordance with applicable law, in one or several parcels, at Mortgagee's option; or

9.3. _Receiver_. Obtain the appointment of a receiver of the rents, profits, leases, income and refunds arising from the Mortgaged Property without the necessity of providing either the inadequacy of the security or insolvency of any Obligor, and each Obligor does hereby waive such proof and consent to the appointment of a receiver; or

9.4. _Absolute Assignment of Rents_. With or without instituting proceedings to foreclose on, or appoint a receiver for, the Mortgaged Property, revoke Mortgagor's license to collect rents and exercise all of Mortgagee's remedies under the Assignment of Rents and Leases from Mortgagor to Mortgagor of even date, including, without limitation, the right to notify tenants of the Mortgaged Property to pay rents directly to Mortgagee, take possession of and rent the Mortgaged Property, either in Mortgagee's name or in the name of the owner of such Mortgaged Property, receive and apply the rents and profits, after the payment of any collection, operating and management expenses, including management commissions and attorney's fees and disbursements, against the Note and other Obligations, being accountable only for the rents and profits that are actually received by it while in possession; or

9.5.   UCC Remedies.  Exercise all rights and remedies available to a secured party under the New Jersey Uniform Commercial Code as in effect from time to time; or

9.6.   Collection Action.  Institute a collection action directly against any Obligor, either without acceleration for the balance of any Obligations then past due or, following acceleration, for all Obligations; or

9.7.   Freeze; Setoff.  Hold, apply, freeze or set-off (without notice) on account of any Obligations, funds of any Obligor on deposit with Mortgagee in any account, fund or certificate, any indebtedness that Mortgagee may owe to any Obligor or any other tangible or intangible property owned by any Obligor that may be in the possession or under the control of Mortgagee; or

9.8.   Increase in Interest Rate.  Increase the rate of interest under any Obligation, including, without limitation, the Note, to rate equal to five (5) percentage points (5%) above the rate of interest set forth in such Obligation.  This increase shall be retroactive to the date of the first occurrence of an Event of Default, shall be computed on the basis of actual days elapsed over a 360-day year.

9.9.   Other Remedies.  Exercise any other rights and remedies available under this Mortgage, any other Loan Document, Obligations or other document or agreements of any kind, or that are available at law or in equity; or

9.10.   Proceeds.   Apply proceeds of any Mortgaged Property first to costs and expenses of liquidation, sale or collection, including any attorneys' fees and disbursements and then to payment of any Obligation in whatever order Mortgagee may, in its discretion, elect; or

9.11.   Expenses.  Collect all of the collection expenses permitted under Section 10 of this Mortgage or otherwise permitted under law and have the amount of such expenses, together with all prepayment penalties due pursuant to the Note, which penalties shall be computed pursuant to the terms thereof and treating prepayment as occurring on the date of default, included in any judgment or decree obtained by Mortgagee, to the extent permitted by law.

### SECTION 10. - COLLECTION EXPENSES

If Mortgagee employs counsel for advice or representation after an Event of Default (whether or not formally declared) relating to the collection or enforcement of this Mortgage, the Note, or any other Loan Document or Obligations (whether or not suit is actually instituted), Mortgagee may collect from any Obligor all of Mortgagee's reasonable expenses and fees including (a) all reasonable fees and disbursements of Mortgagee's counsel and (b) all expenses of, or in anticipation of, litigation including fees and expenses of witnesses, experts, stenographers, title and lien searches and appraisals.  All those collection fees and expenses shall be due and payable upon demand, shall bear interest at the default rate in effect from time to time under the Note and shall become Obligations secured by this Mortgage and any other collateral that secures any Obligations.

### SECTION 11. - MORTGAGEE'S PERFORMANCE

If Mortgagor fails to perform any duty or obligation imposed upon Mortgagor under this Mortgage or any other Loan Document when due, Mortgagee may, at its option (with or without declaring an Event of Default), perform any such duty or obligation including payment of any tax, governmental charge or insurance premium, making repairs to the Mortgaged Property, rendering it free of any Hazardous

Substances or liens or performing any lease obligation. The expenses incurred by Mortgagee in performing any of the Mortgagor's duties or obligations shall be added to the monies owing under the Note, with interest at the rate in effect from time to time under the Note, and shall be secured by this Mortgage and by all collateral given to secure any Obligations. Any action taken by Mortgagee pursuant to this Section shall not constitute a waiver of any Event of Default or an undertaking to perform or complete any of the Mortgagor's duties, nor shall it impose any responsibility on Mortgagee to perform any of Mortgagor's duties in the future.

### SECTION 12. - SECURITY AGREEMENT

Mortgagor hereby grants Mortgagee a security interest, under the Uniform Commercial Code as enacted in the State of New Jersey, in all of the Mortgagor's right, title and interest in and to all existing and future-acquired Fixtures and Equipment, Awards and Proceeds, Leases and Rents, Other Rights, and all tax and insurance escrows held by Mortgagee pursuant to this Mortgage. In order to perfect the security interests granted hereunder, this mortgage shall be filed in the appropriate state real property records, and Mortgagor, as debtor, has executed UCC-1 financing statements in favor of Mortgagee, as secured party, which statements shall be filed with all appropriate county filing offices.

### SECTION 13. - ABSOLUTE ASSIGNMENT OF LEASES AND RENTS

This Mortgage also serves as an absolute assignment of all existing and future rentals, leases, profits, income, revenues and proceeds arising from the Mortgaged Property as provided and set forth in the Assignment of Rents and Leases from Mortgagor to Mortgagor of even date, provided, however, that so long as there is no Event of Default, Mortgagor shall be granted a revocable license from Mortgagee to remain in possession of, and to collect all rentals arising from, the Mortgaged Property. This assignment shall not, however, render Mortgagee responsible for the performance of any duties under any lease, nor for any negligence in the management, operation or maintenance of the Mortgaged Property or for any resulting damage, loss or injury. The receipt by Mortgagee of any rentals or profits pursuant to this assignment shall not cure any Event of Default or affect any foreclosure or other liquidation proceeding that may be pending at any time. Mortgagor hereby irrevocably appoints Mortgagee as Mortgagor's attorney-in-fact to exercise all rights and remedies of Mortgagor as landlord and manager of the Mortgaged Property.

### SECTION 14. - MODIFICATIONS

This Mortgage is subject to Modification. To the extent permitted by law, this Mortgage secures all Modifications from the date upon which this Mortgage was originally recorded, including future loans and extensions of credit and changes in the interest rate, due date, amount or other terms and conditions of any Obligations.

### SECTION 15. - MISCELLANEOUS

15.1. Further Assurances; Corrections. Mortgagor shall, within five (5) days of Mortgagee's request, execute any documents, provide any lien or other searches, and do anything that Mortgagee determines to be reasonably necessary to establish, perfect, assure or maintain the existence and priorities of, Mortgagee's liens against the Mortgaged Property, the reasonable costs of so doing be paid by Mortgagor. In case of the occurrence of any errors in the execution of the Loan Documents, Mortgagor authorizes Mortgagee to make all necessary corrections in order to cause the Loan Documents to conform to the terms and conditions agreed to by Mortgagor and Mortgagee.

15.2. Notices. All notices, demands, requests, consents and other communications shall be in writing and served by hand delivery, by certified mail, return receipt requested, or by a recognized overnight delivery service, to the addresses set forth in the caption of this Mortgage, unless proper written notice has been given to all other parties of any change in address. Notices and other written communication shall be deemed to have been properly served upon delivery to the designated address provided, however, that any notice or other communication sent by certified mail, return receipt requested, shall be deemed to have been properly served on the third business day after mailing, regardless of when it is actually received.

15.3. No Jury Trial. MORTGAGOR HEREBY WAIVES ANY RIGHT TO REQUEST A TRIAL BY JURY IN ANY LITIGATION WITH RESPECT TO ANY ASPECT OF THIS MORTGAGE OR ANY OTHER LOAN DOCUMENT AND REPRESENTS THAT MORTGAGOR HAS CONSULTED WITH COUNSEL SPECIFICALLY AS TO THIS WAIVER. BY ACCEPTING THIS MORTGAGE, MORTGAGEE ALSO WAIVES ITS RIGHT TO REQUEST A TRIAL BY JURY.

15.4. No Waivers. Mortgagee shall not be deemed to have waived any of its rights or remedies under this Mortgage or any other Loan Document by:

(a)     forbearing or failing to exercise, or delaying in exercising, any rights and remedies; or

(b)     forbearing or failing to insist upon, or delaying in insisting upon, the strict performance of any term or condition of this Mortgage or any other Loan Document;

(c)     granting any extension, modification or waiver of any term or condition of this Mortgage or any other Loan Document, except to the extent expressly provided in any written extension, modification, or waiver; or

(d)     any other act, omission, forbearance or delay by Mortgagee, its officers, agents, servants or employees; or

(e)     any waiver of any rights or remedies on any one occasion.

15.5. Collection Duties. Mortgagee shall be under no duty or obligation to:

(a)     preserve, protect or marshal any Mortgaged Property or other collateral for any Obligations; or

(b)     preserve or protect any rights in any Mortgaged Property or other Collateral against any person claiming an interest adverse to that of Mortgagor or other Obligor; or

(c)     realize upon any Mortgaged Property or other collateral in any particular order or manner or seek repayment of any Obligations from any particular source.

15.6. Waiver of Defense. Mortgagor hereby waives any defense based on the failure to name any tenant or occupant of the Mortgaged Property as a defendant in any foreclosure action or other litigation with respect to this Mortgage.

15.7. Written Changes Only. No change, extension, modification, amendment or waiver of any term or condition of this Mortgage or any other Loan Document shall be valid or binding upon Mortgagee, unless it is in writing and has been executed by duly authorized officer of Mortgagee.

15.8. <u>Correction of Documents</u>. If any Loan Documents contain an error or incorrect terms or were improperly prepared or executed, or if a document intended to constitute part of the Loan Documents was inadvertently omitted, then in each such case Mortgagor agrees to execute property documents promptly.

15.9. <u>Successors and Assigns</u>. This Mortgage shall be binding upon Mortgagor and its successors and assigns, and inure to the benefit of Mortgagee, and its successors and assigns.

15.10. <u>New Jersey Law and Jurisdiction</u>. All terms of this Mortgage and the other Loan Documents shall be governed by and construed according to the laws of the State of New Jersey. Mortgagor hereby consents to personal jurisdiction in the State of New Jersey with respect to any and all matters arising under or relating to this Mortgage and all other Loan Documents.

15.11. <u>Partial Invalidity</u>. If any term or provision of this Mortgage is at any time held to be invalid by any court of competent jurisdiction, that invalidity shall not affect the remaining terms and provisions of this Mortgage, which shall continue to be in full force and effect.

15.12. <u>Receipt of Copies</u>. Mortgagor hereby acknowledges receipt of a true copy of this Mortgage, the Note and the other Loan Documents without charge.

*Signature page to follow*

Mortgagor has duly executed this Mortgage as of the date first written above.

WITNESS:                                    TEANECK PLAZA VENTURES, LLC

_____              By: _____
Andrew Seleven, Esq.                          Seth Levine, Managing Member

## ACKNOWLEDGMENT

STATE OF NEW JERSEY            )
                               ss.:
COUNTY OF MORRIS               )

On the 12th day of September, 2018, before me personally came Seth Levine, to me known to be the person who executed the foregoing instrument, and who, being by me duly sworn, did depose and say that he is the managing member of **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company; and that he executed the foregoing instrument in the name of said limited liability company, and that he had authority to sign the same, and acknowledged that he executed the same as the act and deed of said limited liability company.

_____
Andrew Seleven , Esq.
Attorney at Law
State of New Jersey

<u>"EXHIBIT A"</u>
<u>Legal Description</u>

ALL THAT CERTAIN lot, piece or parcel of land situate, lying and being in the Township of Teaneck, County of Bergen and State of New Jersey known and designated as Lots 1, 2, 3, 4, 5, 6 and y (1 to 7 inclusive) in Block 460G on a certain map entitled "Supplementary Map of West Englewood Square, Teaneck, New Jersey, belonging to Nelson M. Ayers, January 1926" made by Reginald W. Wells, Civil Engineer and Surveyor and filed in the Bergen County Clerk's Office on March 22, 1926 as Map No. 2083.

The seven lots above mentioned are contiguous and taken together from a tract of land which is more particularly described as follows:

BEGINNING at a point on the southwesterly street line of The Plaza (formerly Market Street) distant 225.0 feet along the same from its intersection with the northwesterly street line (formerly Westfield Avenue) thence from said point of beginning (1) South 38 degrees 19 minutes West 137.37 feet to a point; thence (2) North 53 degrees 16 minutes West 185.34 feet to a point on the southeasterly street line of Palisade Avenue (formerly Station Street); thence (3) North 44 degrees 10 minutes East along aid street line of Palisade Avenue 24.81 feet to a point on the said southwesterly street line of The Plaza (formerly Market Street); thence (4) Easterly along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 109.0 feet, a distance of 76.41 feet to a point; thence (5) Southeasterly continuing along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 180.0 feet, a distance of 138.18 feet to a point; thence (6) South 51 degrees 41 minutes East still along said street line of The Plaza (formerly Market Street) 25.0 feet to the point or place of BEGINNING.

## APPENDIX A

### GLOSSARY OF DEFINED TERMS

"Affidavit of Title" means the affidavit of title given by Mortgagor to Mortgagee in connection with this Mortgage.

"Affiliates" of a party means (a) any Person directly or indirectly controlling, under common control with, or controlled by, that party, (b) any Person in which that party directly or indirectly owns or controls any interest, (c) any employee, officer, shareholder, director, subsidiary or joint venture of that party and (d) any relative of the foregoing.

"Appendix" means an Appendix to this Mortgage.

"Awards and Proceeds" means all awards, damages, claims, payments, insurance proceeds (other than from liability insurance coverage) and other compensation with respect to the Land, Improvements, Fixtures and Equipment and other interests described in Section 3 (collectively referred to as "Awards and Proceeds") including those arising from: (a) any governmental taking or exercise of eminent domain, (b) any damage, injury, casualty or other destruction or loss or (c) any change of grade or vacation of any street.

"Commitment Letter" means the letter dated August 7, 2018 from Mortgagee to Mortgagor setting forth certain terms of the Loan Documents.

"Environmental Laws" means ISRA, the Spill Compensation and Control Act (N.J.S.A. 58:10-23.11 et seq.), the Freshwater Wetlands Protection Act (N.J.S.A. 13:9B-1 et seq.), the New Jersey Underground Storage of Hazardous Substances Act (N.J.S.A. 58:10A-21 et seq.), the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. _9601 et seq.), the Resource Conservation and Recovery Act (42 U.S.C. _6901, et seq.), and all other federal, state and local laws, rules and regulations regarding environmental matters.

"Expenses" means any and all fees, costs and expenses, including legal fees and disbursements, copying costs, delivery and postage charges and all filing and recording costs.

"Event of Default" has the meaning set forth in Section 8.

"Fixtures and Equipment" means all fixtures, machinery, equipment, appliances, goods, chattels, furniture, furnishings and personal property of every nature presently or in the future attached to, or used or intended to be used in connection with, the Land or Improvements, or to be erected on the Land or Improvements, or to be erected on the Land or Improvements, including gas and electric fixtures, radiators, heaters, engines, machinery, boilers, ovens, elevators, bathtubs, sinks, water closets, faucets, air conditioning equipment, plumbing and heating fixtures, refrigerators, freezers, shades, blinds, draperies, carpets and all replacement and substitutions for, proceeds of, and warranties with respect to, such property.

"Governmental Authority" means any federal, state or local political subdivision, governmental authority, agency, commission or board.

"Guarantor(s)" means any Person who at any time guarantees payment or performance of any Obligations to the Mortgagee, and such Person's successors or heirs, and assigns.

"Guaranty(ies)" means all guaranties of any Obligations presently or in the future executed by any Guarantor in favor of Mortgagee.

"Hazardous Substances" means any pollutants and dangerous substances including radon, and any "hazardous wastes" or hazardous substances" as defined in any Environmental Law.

"Improvements" means all buildings, structures and other improvements of every nature presently or in the future on, attached to or used in connection with the Land, including all betterments, substitutions, replacements and proceeds, and all appurtenances and paved roads and walkways adjacent, or relating to, the foregoing or to the Land.

ISRA" means the Industrial Site Recovery Act (N.J.S.A. 13:1K-6 et seq.) and all regulations promulgated thereunder.

"Land" means the land and property commonly known as 1407 Palisade Avenue, Teaneck, New Jersey (Block 5008, Lot 1) and having a legal description as set forth on Exhibit A to this Mortgage.

"Leases and Rents" means all rents, issues, profits, revenues, royalties and benefits now or hereafter due to Mortgagor in connection with the Land or Improvements including all rights and interests of Mortgagor as landlord under any existing and future leases with respect to the Land, Improvements and Fixtures and Equipment.

"Lien" and "Liens"  shall mean with respect to any asset, any mortgage, deed of trust, pledge, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or other) or preference, priority, security interest or other security agreement of any kind or nature whatsoever (including any conditional sale or other title retention agreement, any financing lease involving substantially the same economic effect as any of the foregoing and the filing of any financing statement under the Uniform Commercial Code or comparable Law of any jurisdiction).

"Loan Documents" means this Mortgage, the Note, the Guaranties, the Commitment Letter and all other agreements, documents, notes, affidavits and certificates executed in connection with this Mortgage.

"Material Adverse Change" means any set of circumstances or events which (a) has or could reasonably be expected to have any material adverse effect whatsoever upon the validity or enforceability of this Mortgage, (b) is or could reasonably be expected to be material and adverse to the business, properties, assets, financial condition, results of operations or prospects of Mortgagor taken as a whole, (c) impairs materially or could reasonably be expected to impair materially the ability of Mortgagor taken as a whole to duly and punctually pay or perform its obligations or the underlying Loan, or (d) impairs materially or could be reasonably expected to impair materially the ability of Mortgagee, to the extent permitted, to enforce its legal remedies pursuant to this Mortgage.

"Modification" shall have the meaning set forth in N.J.S.A. 46:9-8.1 et seq., which statute relates, inter alia, to changes in the interest rate, due date or other terms or conditions of a "mortgage loan," or future advances pursuant to a "line of credit," as defined in that statute.

"Mortgage" means this mortgage and all modifications, renewals and extensions of, and all amendments to, this mortgage; this Mortgage is the Mortgage referred to in the Note.

"Mortgagee" means the mortgagee named in the above caption of this Mortgage and its successors and assigns.

"Mortgagor" means the mortgagor named in the above caption of this Mortgage and its successors and assigns.

"Mortgaged Property" shall have the meaning set forth in Section 3 of this Mortgage.

"Note" means the mortgage promissory note of this same date from Mortgagor to the order of Mortgagee in the original principal amount of Three Million Nine Hundred Thousand and 00/100 ($3,900,000.00) Dollars, as amended, modified, renewed, extended or replaced from time to time.

"Obligations" means all debts, liabilities, duties and obligations owing from any Obligor to Mortgagee, whether direct or indirect, now existing or in the future created or acquired, contingent or non-contingent, due or to become due, liquidated or unliquidated, including the Note, any Guaranty of the Note, all other Loan Documents, all Modifications and all expenses of Mortgagee to protect the Mortgaged Property or Mortgagee's interest in the Mortgaged Property.

"Obligor(s)" means each Mortgagor and each Guarantor, and every other Person who may now or in the future has any duties, debts or liabilities to Mortgagee pursuant to any Loan Document.

"Other Rights" means all other rights whatsoever that Mortgagor or any other owner has or may acquire in the Land, Improvements, Fixtures and Equipment, Awards and Proceeds and all other above-described property and interests, including all rights, privileges, liberties, rights of way, tenements, hereditaments, easements, public spaces, streets, alleys, appurtenances and sewer, air, mineral, water and subsurface rights of all kinds hereto belonging or in any way appertaining.

"Permitted Encumbrances" means (a) any lien for municipal real estate taxes, assessments or utilities that are not yet due and payable, and (b) any easements that do not, in Mortgagee's reasonable judgment, interfere with the intended use or operation, or impair the value, of the Mortgaged Property.

"Person(s)" means an individual, corporation, limited liability corporation, non-profit corporation, partnership, limited partnership, joint venture, trust, joint stock company, unincorporated organization, association, Governmental Authority or other business entity.

"Prime Rate" means the rate of interest that Mortgagee adopts from time to time as its official prime rate. The prime rate is not tied to any external rate of interest or index and does not necessarily reflect the lowest rate of interest actually charged at any given time by Mortgagee to any particular class or category of customers of Mortgagee. Any change in the prime rate shall be effective immediately when adopted by the Mortgagee, without notice to any Obligor.

"Section" means a section or subsection of this Mortgage.

"Transfer" means any change in ownership or control, whether or not that change is voluntary, involuntary or by operation of law, direct or indirect, or by merger (regardless of who is the survivor of that merger) or by any pledge, mortgage, assignment, sale, lease, lien, encumbrance, option, transfer or disposal of any kind.

To "Use" a substance means to generate, store, refine, treat, discharge, handle, refine, spill, release, emit, leach or dispose of that substance in any manner.

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/

INSTRUMENT # 18-067857.01

V 03061 0519

RECORDED DATE: 09/24/2018 02:18:34 PM

| | |
|---|---|
| Transaction #: | 9157807 |
| Document Page Count: | 8 |
| Operator Id: | CLERK |

**Document Type:** Mortgage

**RETURN TO:**

WORLD WIDE LAND TRANSFER
BUILDING 8 NESHAMINY INTERPLEXSUITE 117
TREVOSE  PA  19053
ERECORDED

**SUBMITTED BY:**

World Wide Land Transfer

(215) 245-5650

**PRIMARY NAME**

TEANECK PLAZA VENTURES LLC

**SECONDARY NAME**

AFFINITY FEDERAL CREDIT UNION

**ADDITIONAL PRIMARY NAMES**

**ADDITIONAL SECONDARY NAMES**

**MARGINAL REFERENCES:**   V BK 03061 PG 0498

**DOCUMENT DATE:** 09/12/2018
**MUNICIPALITY:** TEANECK

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: Mortgage | $30.00 |
| Additional Pages Fee | $70.00 |
| Additional Marginal Notation Fee | $10.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| Total: | $113.00 |

**INSTRUMENT #:** 18-067857.01
**Recorded Date:** 09/24/2018 02:18:34 PM

I hereby CERTIFY that this document is recorded
in the Clerk's Office in Bergen County, New
Jersey.

John S. Hogan
Bergen County Clerk

Recording Fees: $113.00
Realty Transfer Tax Fees: $0.00

**OFFICIAL RECORDING COVER PAGE**

Page 1 of 9

# PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.



RECORD AND RETURN TO:
Jeremy M. Garlock
Schenck, Price, Smith & King, LLP
220 Park Avenue / PO Box 991
Florham Park, NJ 07932
~~LT - RELIANT~~

## ASSIGNMENT OF RENTS AND LEASES

KNOW ALL MEN BY THESE PRESENTS THAT as of September 12, 2018, **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company, having an address of 210 River Street, Hackensack, New Jersey 07601 (hereinafter called "Assignor"), in consideration of One ($1.00) Dollar paid by **AFFINITY FEDERAL CREDIT UNION**, having offices at 73 Mountainview Boulevard, PO Box 621, Basking Ridge, New Jersey 07920 (hereinafter called "Assignee") and for other valuable consideration, the receipt of which is hereby acknowledged, hereby conveys, transfers and assigns unto Assignee, its successors and assigns, all of the rights, interests and privileges: (a) which Assignor as lessor has and may have in the leases, subleases, contracts, licenses or other agreements now existing or hereafter made and affecting the use and/or occupancy of the Mortgaged Property (as hereinafter defined) by any lessee, or any part thereof, as any such document may have been, or may from time to time be hereafter modified, extended and renewed, including but not limited to, those leases set forth and described on the schedule attached hereto and made a part hereof as **Exhibit B** (all of the foregoing rights, interests and privileges being collectively referred to as the "Leases"); and (b) which Assignor has and may have by virtue of any guaranty or surety agreement with respect to the tenant's obligations under any of such Leases, as such guaranties or surety agreements may have been, or may from time to time be hereafter, modified and extended. Assignor will, on request of Assignee, execute further assignments of any future leases affecting the Mortgaged Property or any part thereof and further assignments of any guaranties or surety agreements made in connection therewith;

TOGETHER with all the right, power and authority of Assignor to alter, modify or change the terms of said Leases or any guaranty thereof, or surety agreement relating thereto, or to surrender, renew, cancel or terminate the same; and

TOGETHER with all rents, income, security deposits and profits arising from said Leases and renewals thereof, if any, (collectively, the "Rents"); and

TOGETHER with all monies posted with any governmental unit or agency for bonds or on- or off-site improvements and all governmental approvals, permits and licenses.

This is an absolute, unconditional, present and true Assignment (and not pledged as security) and is made in connection with the following: (i) the obligations of Assignor under the Mortgage Promissory Note from Assignor to the order of Assignee dated September 12, 2018, as the same may be amended, restated, replaced or modified from time to time ("Note"), evidencing a loan from Assignee to Assignor in the original principal amount of Three Million Nine Hundred Thousand and 00/100 ($3,900,000.00) Dollars ("Loan"), and all increases, extensions, amendments or modifications of the Loan, and all additional loans made hereafter, if any, by Assignee to Assignor or its successors and assigns; and (ii) the Assignor's "Obligations" (as defined in the Mortgage) under the Mortgage from Assignee to Assignor dated September 12, 2018, covering the "Mortgaged Property" as defined therein and as more particularly described therein and in **Exhibit A** attached hereto ("Mortgaged Property"), as the same may be amended, restated, replaced

or modified from time to time ("Mortgage") (the Note, the Mortgage, this Assignment and all other documents executed in connection with the Loan, as they may from time to time be hereafter modified, extended and renewed, are hereinafter collectively referred to as the "Loan Documents"). This Assignment is also made upon the following terms and conditions:

      1.     The acceptance of this Assignment and the collection of the Rents or other payments under the Leases or any sums under the guaranties or surety agreements hereby assigned shall not constitute a waiver of any rights of Assignee under the terms of any of the Loan Documents. It is expressly understood and agreed, notwithstanding any contrary terms in any of the Loan Documents, that Assignor shall have a revocable license to collect, but not prior to accrual, such Rents, incomes, issues and profits from the Leases, guaranties and surety agreements and to retain, use and enjoy the same; provided, however, that even before an "Event of Default" (as such term is defined in the Mortgage) occurs, no Rents shall be collected or accepted more than one (1) month in advance without the prior written consent of Assignee.

      2.     Anything to the contrary notwithstanding, Assignor hereby assigns to Assignee any award made hereafter to it in any court proceeding involving any of the lessees of any portion of the Mortgaged Property in any bankruptcy, insolvency or reorganization proceedings in any state or Federal court and any and all payments made by lessees in lieu of rent. Assignor hereby appoints Assignee as its irrevocable attorney-in-fact to appear in any action and/or to collect any such award or payment. It is hereby understood and agreed that the foregoing right shall be effective immediately but that the Assignee agrees not to exercise its rights hereunder until an Event of Default occurs.

      3.     It is hereby understood and agreed that this Assignment shall be effective immediately but that the Assignee agrees not to exercise its rights hereunder until an Event of Default occurs. Upon the occurrence of an Event of Default, Assignor's license to collect Rents shall automatically terminate with or without notice, and Assignee at its option, under order of court or by operation of law, may enter and take possession of the Mortgaged Property with or without foreclosing or other legal action, and manage the same, and whether or not in possession, may collect all or any Rents accruing from such Leases, collect all or any sums due or becoming due under such guaranties and surety agreements, evict lessees, bring or defend any suits in connection with the possession of the Mortgaged Property in its own name or Assignor's name, make such repairs as Assignee deems appropriate, and perform such other acts in connection with the management and operation of the Mortgaged Property as Assignee, in its sole discretion, may deem proper. Upon occurrence of an Event of Default, Assignor shall deliver to Assignee the originals of all Leases of the Mortgaged Property or any portion thereof. This Assignment shall be an assignment and not merely a pledge of all such Leases to Assignee, and Assignor will execute any further assignments necessary to perfect the transfer of such Leases to Assignee.

      4.     After the occurrence of an Event of Default, all sums collected and received by Assignee out of the Rents of the Mortgaged Property shall be applied to the payment of any or all of the following: costs of management; repairs and upkeep of the Mortgaged Property; all taxes, assessments, premiums for public liability insurance and insurance premiums payable by the Assignor or other owner as provided in the Mortgage; any taxes imposed upon or collectible by Assignee under any federal or state law or any law or ordinance enacted by any political subdivision thereof; or any costs reasonably determined necessary and proper to maintain and protect the collateral value of the Mortgaged Property. The provisions contained in the immediately preceding sentence shall not, however, limit the right of Assignee to apply any Rents received (when taxes and insurance payments are not then due and owing) against the repayment of the Obligations (as defined in the Mortgage). No credit shall be given by Assignee for any sum or sums received from the Rents until the money collected is actually received at the address of Assignee hereinafter specified and no credit shall be given for any uncollected Rents or other uncollected amounts or bills, nor

shall credit toward the Obligations be given for any Rents after Assignee has obtained possession of the Mortgaged Property under order of court or by operation of law.

5.      Assignee may, after occurrence of any Event of Default, from time to time appoint and dismiss such agents or employees as shall be necessary for the collection of the Rents and for the proper care and operation of the Mortgaged Property, and Assignor hereby grants to such agents or employees so appointed full and irrevocable authority to manage the Mortgaged Property and to do all acts relating to such management, including among other things, the making of new Leases in the name of Assignor or otherwise, the alteration or amendment of existing Leases, the authorization of repairs or replacements to maintain the building or buildings and chattels situated upon the Mortgaged Property in good and tenantable condition, and the making of such alterations or improvements, as, in the judgment of the Assignee, may be necessary to maintain or increase the income from the Mortgaged Property.  Assignee shall have the sole control of such agents or employees whose remuneration shall be paid out of the Rents at such rate as Assignee shall deem appropriate, and Assignor agrees that Assignee shall not be liable for monies that may come into its hands unless actually received by Assignee at its address hereinafter specified.

6.      The collection and application of the Rents to the Obligations, as set forth in and secured by the Loan Documents or as otherwise above provided, shall not constitute a waiver or cure of any Event of Default which might at the time of application or thereafter exist under the Loan Documents, and the payment of the Obligations may be accelerated in accordance with the terms of the Loan Documents notwithstanding such application.

7.      The receipt by Assignee of any Rents pursuant to this Assignment, after the institution of foreclosure or sale proceedings under the Mortgage, shall not cure any Event of Default or affect such proceedings or any sale pursuant thereto.

8.      Assignee shall not be obligated to perform or discharge, nor does it by acceptance hereof undertake to perform or discharge, any obligation or duty to be performed or discharged by Assignor under any of the Leases, and Assignor shall and hereby does agree to indemnify and defend Assignee for, and to save it harmless from and against, any and all claims, demands, liabilities, judgments, costs, expenses, losses or damages (collectively referred to as "Liabilities") (a) arising out of or resulting from any of the Leases, guaranties, surety agreements or (b) by reason of the Assignee being required, for any reason whatsoever, to perform or discharge any obligation, duty or liability thereof or (c) by reason of the assertion by any person, firm, corporation or governmental authority of any alleged obligation or undertaking on the Assignee's part to perform or discharge any of the terms, covenants, or agreements contained in said Leases or otherwise as a result of this Assignment.  This Assignment shall not place responsibility for the control, care, management or repair of the Mortgaged Property upon Assignee, or make Assignee responsible or liable for any negligence in the management, operation, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any lessee, any licensee, employee or other person.  Should the Assignee incur Liabilities under said Leases or under or by reason of this Assignment or in the defense of any such claims or demands, the amount thereof, including, without limitation, all reasonable attorney's fees and costs and expenses, shall be paid by Assignor to Assignee upon demand, together with interest until the date of payment at the Default Interest Rate (as such term is defined in the Note).  Upon the failure of the Assignor to do so, the Assignee may declare all sums secured hereby immediately due and payable.

9.      Assignor covenants to Assignee as follows:  to observe and perform all of the obligations to be imposed upon the lessor in said Leases and not to do or permit anything to be done to impair the security thereof; not to collect any of the Rents arising or accruing from the Mortgaged Property more than one (1) month in advance of the time when the same shall become due under the terms of said Leases; not to discount any future accruing Rents; and not to execute any other assignment of the Rents or Leases.

10.     Assignor covenants and represents to Assignee as follows: that Assignor has title to, and full right to assign such Leases, guaranties, surety agreements and the Rents due or to become due thereunder; that true copies of such Leases, guaranties and surety agreements have been submitted to Assignee for approval; that no other assignment of any interest therein has been made; that there are no existing defaults under the provisions thereof; and that Assignor will not hereafter cancel, surrender or terminate any of such Leases, guaranties and surety agreements, exercise any option which might lead to such termination, or change, alter or modify them, or consent to the release of any party liable thereunder or to the assignment of the lessees' interest under any such Leases or guaranties or surety agreements without the prior written consent of Assignee, which consent shall not be unreasonably withheld.

11.     After an Event of Default, Assignee shall have the right to give notice in writing of this Assignment to any lessee under any of such Leases and to any guarantor of any such Leases.

12.     A violation of any of the covenants, representations and provisions contained in this Assignment by Assignor, which is not cured within ten (10) days of written notice from Assignee, shall be deemed an Event of Default hereunder and under the terms of all Loan Documents.

13.     A material default by Assignor under any of the terms of the Leases assigned herein, which default continues beyond any applicable grace and/or cure period, shall be deemed an Event of Default hereunder and under the terms of all Loan Documents.  Any and all expenditures made by Assignee in curing such a default on Assignor's behalf, with interest thereon at the Default Rate (as such term is defined in the Note), shall become part of the Obligations set forth in and secured by this Assignment and the Loan Documents.

14.     Notices required hereunder shall be hand delivered, sent by certified mail, return receipt requested, or sent by overnight courier delivery service, in each instance addressed to a party at its address set forth above or to such other address specified in a notice by one party to the other.

15.     The affidavit of any officer, supervisor or attorney of Assignee alleging (a) that all or any part of the Obligations secured by this Assignment and the Loan Documents remains unpaid or (b) that an Event of Default has occurred shall in each instance be and constitute conclusive evidence to any third party of the validity, effectiveness and continuing force of this Assignment, and any such third party may and is hereby authorized to rely thereon; provided, however, no such affidavit shall be conclusive evidence as between the Assignee and the Assignor. Upon any Event of Default claimed by Assignee, a demand on any lessee under said Leases by Assignee for the payment of Rent or other charges shall be sufficient warrant to the lessee to make all such future payments to Assignee without the necessity for further consent by Assignor and notwithstanding any objections made by Assignor.

16.     Without prejudice to any of its rights hereunder, the Assignee may take or release other security, may release any party primarily or secondarily liable for any indebtedness secured hereby, may grant extensions, renewals or indulgences with respect to such indebtedness, and may apply any other security therefor held by it to the satisfaction of the indebtedness secured hereby or arising hereunder.

17.     Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the powers and rights granted it herein shall be deemed to be a waiver by Assignee of its rights and remedies under the Loan Documents.  This assignment is made by Assignor and may be accepted by Assignee without in any way limiting or constricting any of the rights, powers and remedies possessed by Assignee under the terms of the Loan Documents. The right of Assignee to collect any indebtedness secured hereby

and to enforce any other security therefor owned by it may be exercised by Assignee either prior to, simultaneously with or subsequent to any action taken by it under this Assignment.

18.     Assignor shall give Assignee written notice of the name and address of the bank and the account number applicable to the segregated escrow account which shall be maintained by Assignor as the depository of tenant security deposits, which account shall be maintained in compliance with all requirements of applicable law concerning the holding of such deposits.  Assignor will also give written authorization to such bank to permit Assignee to receive any information requested by Assignee as to the status and balance of such account.  Assignor hereby assigns, pledges and grants a security interest in and to Assignee all of Assignor's right, title and interest to such bank account as collateral security for the Obligations secured by this Assignment and Assignor agrees that upon, but not before, the occurrence of an Event of Default, the sums in said bank account, shall, at the election of Assignee, in accordance with applicable law, be payable to Assignee as assignee and secured creditor of such bank account.

19.     This Assignment shall inure to the benefit of the Assignee and its successors and assigns and any holder of any of the Note and the other Loan Documents, and shall be binding upon the Assignor and its administrators, successors and assigns.

20.     Assignee shall not be deemed to be an agent, partner or joint venturer of Assignor or of any other person, and nothing herein contained shall be construed to impose any liability upon Assignee by reason of the assignment granted hereby.

21.     This Assignment shall be governed by and construed in accordance with the laws, including the conflict of law rules, of the State of New Jersey except to the extent that procedural matters must be governed by the law of the jurisdiction wherein the Mortgaged Property is located.  Whenever possible, each provision of this Assignment shall be interpreted in such manner as to be effective and valid under applicable law; but if any provision of this Assignment shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Assignment.

22.     The rights of the Assignee to collect and receive the rents assigned hereunder or to exercise any of the rights or powers herein granted to the Assignee shall, to the extent not prohibited by law, extend also to (a) the period from and after the filing of any bankruptcy petition by Assignee at any time, including a filing after entry of any judgment of foreclosure, and (b) the period from and after the filing of any suit to foreclose the lien of the Mortgage, including the entry of any judgment of foreclosure and any period allowed by law for the redemption of the premises after any foreclosure sale.  The entry of any foreclosure judgment on the Mortgage shall not be deemed a merger of this Assignment into any other document and this Assignment shall survive such entry of judgment.

23.     This Assignment cannot be modified except with the written consent of the party against whom enforcement is sought.

24.     This Assignment may be terminated at any time by Assignee.

25.     When all of the Obligations are fully and finally paid and the Note and Mortgage terminated, Assignee's right, title and interest in the Mortgaged Property shall terminate; and at the request of Assignor, Assignee shall execute and deliver to Assignor the appropriate instrument in recordable form, discharging the lien of this Assignment and acknowledging satisfaction of the Obligations and this Assignment.

IN WITNESS WHEREOF, Assignor has duly executed this Assignment on the day and year first above written.

WITNESS:                                    TEANECK PLAZA VENTURES, LLC

_____              By: _____
Andrew Seleven, Esq.                        Seth Levine, Managing Member


### ACKNOWLEDGMENT

STATE OF NEW JERSEY              )
                                                         ss.:
COUNTY OF MORRIS                )

On the 12th day of September, 2018, before me personally came Seth Levine, to me known to be the person who executed the foregoing instrument, and who, being by me duly sworn, did depose and say that he is the managing member of **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company; and that he executed the foregoing instrument in the name of said limited liability company, and that he had authority to sign the same, and acknowledged that he executed the same as the act and deed of said limited liability company.

_____
Andrew Seleven, Esq.
Attorney at Law
State of New Jersey

## EXHIBIT A
### Legal Description

ALL THAT CERTAIN lot, piece or parcel of land situate, lying and being in the Township of Teaneck, County of Bergen and State of New Jersey known and designated as Lots 1, 2, 3, 4, 5, 6 and y (1 to 7 inclusive) in Block 460G on a certain map entitled "Supplementary Map of West Englewood Square, Teaneck, New Jersey, belonging to Nelson M. Ayers, January 1926" made by Reginald W. Wells, Civil Engineer and Surveyor and filed in the Bergen County Clerk's Office on March 22, 1926 as Map No. 2083.

The seven lots above mentioned are contiguous and taken together from a tract of land which is more particularly described as follows:

BEGINNING at a point on the southwesterly street line of The Plaza (formerly Market Street) distant 225.0 feet along the same from its intersection with the northwesterly street line (formerly Westfield Avenue) thence from said point of beginning (1) South 38 degrees 19 minutes West 137.37 feet to a point; thence (2) North 53 degrees 16 minutes West 185.34 feet to a point on the southeasterly street line of Palisade Avenue (formerly Station Street); thence (3) North 44 degrees 10 minutes East along aid street line of Palisade Avenue 24.81 feet to a point on the said southwesterly street line of The Plaza (formerly Market Street); thence (4) Easterly along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 109.0 feet, a distance of 76.41 feet to a point; thence (5) Southeasterly continuing along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 180.0 feet, a distance of 138.18 feet to a point; thence (6) South 51 degrees 41 minutes East still along said street line of The Plaza (formerly Market Street) 25.0 feet to the point or place of BEGINNING.

<u>EXHIBIT B</u>

<u>LIST OF LEASES</u>

All Leases between Assignor, as landlord, and any other person or entity, as tenant, now existing or hereafter entered into including, without limitation, the Leases listed below. The omission of any or all presently existing leases from this Schedule B shall not be deemed an omission of such Leases from the effect of this Assignment, it being the intent of the parties that all such Leases now existing or hereafter entered into shall be subject to this Assignment, whether or not specifically enumerated below.

**John S. Hogan**
**Bergen County Clerk**

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 19-053579

V 03323 1637

RECORDED DATE: 08/15/2019 02:48:29 PM

| | |
|---|---|
| **Document Type:** Mortgage | Transaction #: 9276841 |
| | Document Page Count: 19 |
| | Operator Id: CLERK |

**RETURN TO:**

VASTOLA & SULLIVAN
P.O.BOX
MIDDLESEX NJ 08846

**SUBMITTED BY:**

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| HUTTON VENTURES LLC | TEANECK PLAZA VENTURES LLC |
| **ADDITIONAL PRIMARY NAMES** | **ADDITIONAL SECONDARY NAMES** |
| | LENOX MCKINLEY LLC |
| | LENOX SOUTH PARK LLC |

**MARGINAL REFERENCES:**

DOCUMENT DATE: 12/11/2015
MUNICIPALITY: TEANECK

FEES / TAXES:
| | |
|---|---|
| Recording Fee: Mortgage | $30.00 |
| Additional Pages Fee | $180.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| Total: | $213.00 |

INSTRUMENT #: 19-053579
Recorded Date: 08/15/2019 02:48:29 PM

I hereby CERTIFY that this document is recorded
in the Clerk's Office in Bergen County, New
Jersey.

*John S. Hogan*

John S. Hogan
Bergen County Clerk

Recording Fees: $213.00
Realty Transfer Tax Fees: $0.00

## OFFICIAL RECORDING COVER PAGE

Page 1 of 20

# PLEASE DO NOT DETACH
### THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Bergen County Clerk                    V  BK 03323  PG 1638        08/15/2019 02:48 PM           2 of 20

3
19
213

| Bergen County Recording Data Page | Official Use Only · Barcode |
| Honorable John S. Hogan | |
| Bergen County Clerk | |

19-053579      Mortgage
V Bk: 03323 Pg: 1637-1656   Rec. Fee $213.00
John S. Hogan, Bergen County Clerk
Recorded 08/15/2019  02:48:29 PM

**Official Use Only – Realty Transfer Fee**

| Date of Document: | Type of Document: |
| 12/11/2015 | Mortgage and Security Agreement |

| First Party Name: | Second Party Name: |
| Hutton Ventures LLC | Teaneck Plaza Ventures, LLC; |
| | Lenox McKinley, LLC and |
| | Lenox South Park, LLC |

Additional Parties:

---

V BOOK 3323 PAGE 1657

**THE FOLLOWING SECTION IS REQUIRED FOR DEEDS ONLY**

| Block: | Lot: |

Municipality:

Consideration:

Mailing Address of Grantee:

---

**THE FOLLOWING SECTION IS FOR ORIGINAL MORTGAGE BOOKING & PAGE INFORMATION FOR ASSIGNMENTS, RELEASES, SATISFACTIONS, DISCHARGES & OTHER ORIGINAL MORTGAGE AGREEMENTS ONLY**

| Original Book: | Original Page: |

---

**BERGEN COUNTY RECORDING DATA PAGE**
Please do not detach this page from the original document as it
contains important recording information and is part of the permanent record.

Prepared By _____
John J. Sullivan, Jr., Esq.

## MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE made this _____ day of December 2015  between **TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC**, having an address at 636 South Forest Drive, Teaneck, New Jersey 07666 (herein called the "Mortgagor") and **HUTTON VENTURES LLC**, having its principal office at 333 7th Avenue, Third Floor, New York, New York 10001 (herein called the "Mortgagee").

### WITNESSETH:

WHEREAS, **TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC** is indebted to the Mortgagee in the principal sum of **TWO MILLION TWO HUNDRED THOUSAND ($2,200,000.00) DOLLARS** with interest thereon at the rates and terms more particularly set forth in a certain Promissory Note of even date herewith from **TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC; SUSSEX VENTURES, LLC; ENGLEWOOD NORSE, LLC; POST AVENUE VENTURES, LLC; and PAVILION NORSE LIMITED LIABILITY COMPANY** to the Mortgagee herein as Payee (the "Note"); and

WHEREAS, the Mortgagor is the owner in fee simple of those certain tracts or parcels of real property and improvements thereon located in the Township of Teaneck and City of Hackensack, County of Bergen and State of New Jersey.

NOW, THEREFORE, for the better securing of the payment of the moneys owing on said Note and all extensions and renewals thereof and substitutions therefor, including other payments mentioned therein for the protection of the security as well as to the Mortgagor with interest thereon as may from time to time be agreed upon, the Mortgagor has granted, bargained, sold and conveyed and by these presents does grant, bargain, sell and convey to the Mortgagee and to its successors and assigns, ALL the following tracts or parcels of land and premises located in the Township of Teaneck and City of Hackensack, County of Bergen and State of New Jersey as more particularly described in Schedule A attached hereto and made a part hereof (hereafter referred to as the "Mortgaged Premises").

TOGETHER with:

A.      All and singular any tenements, hereditaments, and appurtenances thereunto belonging, or in anywise appertaining, and the reversion or reversions, remainder and remainders; and also all the estate, right, title, interest, property, possession, claim and demand whatsoever, in law as well as in equity, of the Mortgagor, of, in and to the same and every part and parcel thereof; together with appurtenances; including all fixtures affixed to the same, or intended so to be, and also all equipment and improvements intended so to be, and also all equipment and improvements now in, upon, or which may hereafter be installed or placed in or upon the same, adapted to or necessary for the complete and comfortable use, enjoyment or occupancy thereof;

1

B.      All right, title and interest of the Mortgagor in and to the land lying in the streets and roads in front of and adjoining the Premises; and funds on hand with the Mortgagee to pay the same, mortgagor shall forthwith make a deposit sufficient to permit the payment of each to be made in full when due. It is the intention of the parties that the mortgagor shall deposit with the Mortgagee the necessary funds so that the Mortgagee at all times during the term of this mortgage and any extension thereof have on hand sufficient deposits covering the various items for the respective accrued periods pertaining to each of them so that the deposits of one shall not be used for the payment of another except however that the Mortgagee, at its option, may use the deposits of one for the payment of another and any resulting deficiencies shall forthwith be paid by the mortgagor. The said funds shall bear no interest. Upon an assignment of said mortgage, the Mortgagee shall have the right to pay over the balance of such deposits in its possession to the assignee and the Mortgagee shall thereupon be completely released from all liability with respect to such deposits and the mortgagor or owner of the premises shall look solely to the assignee or transferee in reference thereto. This provision shall apply to every transfer of such deposits to a new assignee. Upon full payment of the mortgage indebtedness or at any prior time at the election of the holder of said mortgage, the balance of the deposits in its possession shall be paid over to the record owner of the premises and no other party shall have any right or claim thereto in any event. Mortgagor agrees, at Mortgagee's request to make the aforesaid deposits with Mortgagee's servicing agent.

## I.   COVENANTS

1.      The Mortgagor is seized of an indefeasible estate in fee simple in the Mortgaged Premises, and the Mortgagor warrants title to the Mortgaged Premises.

2.      The Mortgagor shall keep any buildings and other structures to be erected upon the Mortgaged Premises, including fixtures and equipment, insured against loss or damage by fire, and will insure against such other hazards as Mortgagee may specify, by insurers (having a Bests Rating of A+ or greater) and in amounts approved by the Mortgagee, with loss payable to the Mortgagee as first Mortgagee and co-insured under a N.J. mortgage insurance clause, and shall deliver said policy or policies to the Mortgagee; and in default thereof, the Mortgagee may effect such insurance. The Mortgagor hereby assigns to the Mortgagee all rights to demand and receive all money payable under any of said policies of insurance, or certificates of insurance with respect to public liability insurance, and the rights to settle or compromise all claims thereunder, and all money received may be applied on account of the indebtedness secured hereby or used to repair or replace the buildings on the Mortgaged Premises, as the Mortgagee shall elect. In the event of loss or damage, the Mortgagor shall give immediate notice thereof to the Mortgagee. The Mortgagee may make proof of loss if not made promptly by the Mortgagor, and each insurance company concerned is hereby authorized and directed to make payment for such loss or damage directly to the Mortgagee instead of to the Mortgagor and the Mortgagee jointly. At least thirty (30) days prior to the expiration of any such policies the Mortgagor shall furnish evidence satisfactory to the Mortgagee that the policies have been renewed or replaced or are no longer required. The fire insurance policies required by this paragraph shall contain the usual extended coverage endorsement; that in addition thereto the Mortgagor, immediately after notice and demand, will keep the Premises insured against war

2

9.      The Mortgagor shall, upon written request of the Mortgagee, certify within seven (7) days to such person as the Mortgagee may designate, by writing duly acknowledged, the amount of principal and interest then owing on this Mortgage, and whether any offsets or defenses exist against the indebtedness evidenced by the Note.

10.      The Mortgagee may, at its option, expend money for insurance, payment of taxes, assessments, municipal or governmental rates, charges, impositions, liens and water and sewer rents or any part thereof and for repair, maintenance and preservation of the Mortgaged Premises, or of any buildings or other structures thereon, including fixtures, or for the discharge of any liens or encumbrances on the Mortgaged Premises, or for perfecting the title thereto, or for enforcing collection of the indebtedness secured hereby, or for any water, gas or electric charge imposed for any services rendered to the Mortgaged Premises, or for the protecting or preserving of any use being made of the Mortgaged Premises, or for advances of any trustee or receiver of the Mortgaged Premises, or for any additions or improvements to the Mortgaged Premises, or to any buildings or other structures thereon, including fixtures considered desirable by the Mortgagee while it or any receiver or trustee is in possession thereof; and all money so paid, with interest at the default rate fixed in the Note, shall be a lien on the Mortgaged Premises added to the principal amount of the Note and secured by this Mortgage and shall be due and payable upon demand.

11.      No owner of the Mortgaged Premises shall be entitled to any credit by reason of payment of any tax thereon.

12.      This Mortgage constitutes a security agreement under the Uniform Commercial Code as adopted by the New Jersey Statutes and the Mortgagor's title and interest in and to all tangible goods, chattels, fixtures, furniture, machinery, equipment, and property of Mortgagor used in and necessary to the operation of building(s) and structure(s), including, without limitation, all window shades, all lighting, heating, ventilating, air-conditioning, sprinkling, plumbing, gas, water, power, incinerating, and laundry systems and fixtures, all engines, machinery, boilers, ranges, furnaces, elevators and meters, minors, refrigerators, refrigeration plants, cabinets, shades, storm and screen windows, doors and appliances, which are now, or which may hereafter be, placed or located in, on, or upon the Mortgaged Premises herein defined, together with all additions and accessories thereto, substitutions therefor, and replacements thereof and all cash and non-cash proceeds thereof. The Mortgagor shall execute, deliver, file and re-file any financing statements, continuation statements, or other security agreements that the Mortgagee may require from time to time to confirm the lien of this Mortgage with respect to such property. Without limiting the foregoing, the Mortgagor hereby irrevocably appoints the Mortgagee attorney-in-fact for the Mortgagor to execute, deliver and file such instruments for and on behalf of the Mortgagor. Notwithstanding any release of any or all of that property included in the Mortgaged Premises which is deemed "real property", and/or proceedings to foreclose this Mortgage or its satisfaction of record, the terms hereof shall survive as a security agreement with respect to the security interest created hereby and referred to above until the repayment or satisfaction in full of the obligations of the Mortgagor as are not or hereafter secured hereby.

4

risk and any other hazard that may reasonably be required by the Mortgagee.

3.      In the event the Mortgaged Premises, or any part thereof, shall be taken and condemned for public purposes by the proper governmental authorities, the Mortgagor shall have no claim against the award for damages, or be entitled to any portion of the award until the entire indebtedness secured by this Mortgage shall be paid in full and all rights to damages of the Mortgagor are hereby assigned to the Mortgagee to the extent of the principal indebtedness as remains unpaid (the Mortgagor, however, having the right to appeal said award to the courts of competent jurisdiction). The satisfaction of the principal amount of any portion thereof by virtue of application of any condemnation award upon exercise of any authority with the right of eminent domain shall constitute a prepayment to the flail extent thereof and the agreement, if any, between the parties hereto relating to a privilege to the Mortgagor to prepay the indebtedness secured hereby and providing for premiums to the Mortgagee in certain events upon prepayment shall be fully applicable in such circumstances.

4.      The Mortgagor agrees to comply with all laws, rules, regulations and ordinances made or promulgated by lawful authority and now or hereafter applicable to the Mortgaged Premises within such lime as may be required by law.

5.      The Mortgagor shall keep and maintain any buildings, other structures, and improvements on the Mortgaged Premises, including fixtures and equipment, in good and substantial repair, and will make such repairs as may be required by the Mortgagee within thirty (30) days from written notice from the Mortgagee. The Mortgagor shall not do, and shall not permit to be done, any act which may in any way impair or weaken the security under this Mortgage, and the Mortgagor shall not remove or demolish or substantially alter, without the prior express written consent of the Mortgagee, any building, structure or improvement on the Mortgage Premises.

6.      The Mortgagee may collect a late charge of six (6%) percent on each payment, or any portion thereof, which is more than ten (10) days in arrears, to cover the extra expense involved in handling said delinquent payments.

7.      The Mortgagor shall pay taxes, assessments, municipal or governmental rates, charges, impositions, liens and water and sewer rents or any part thereof; heretofore or hereafter imposed upon or which may become a lien against the Mortgaged Premises, within ten (10) days after the same is due and payable and shall submit proof of such payment to the Mortgagee within ten (10) days of such payment.

8.      The Mortgagor hereby unconditionally and absolutely assigns all rents, issues, and profits arising out of or from the Mortgaged Premises to the Mortgagee. Upon the occurrence of a default by the Mortgagor under this Mortgage or under the Note, then the Mortgagee shall be entitled to enter upon and take possession of the Mortgaged Premises, and collect and receive all rents, issues and profits arising from the Mortgaged Premises, including the rents, issues and profits then due and unpaid to the Mortgagor and also those thereafter to fall due all as more specifically set forth in the Assignment of Leases executed by the Mortgagor simultaneously herewith.

3

15.    During the term of the Loan, in the event of the passage after the date hereof of any law of the State of New Jersey, or any other governmental entity imposing any tax in addition to income taxation upon the profit realized by the Mortgagee from this transaction, whether such imposition arises from a new law or the change in any existing laws now in force for the taxation of mortgages, or debts secured thereby, for state or local purposes, or the manner of the operation of any such law, so as to affect the interest of the Mortgagee, then and in such event, the Mortgagor shall bear and pay the full amount of such taxes, provided that if for any reason payment thereof would constitute usury or render the loan or indebtedness secured hereby wholly or partially usurious under any of the terms or provisions of the obligation secured hereunder, or this Mortgage, or otherwise, the Mortgagee may, at the Mortgagee's option, pay the amount or portion of such taxes as renders the loan or indebtedness secured hereby unlawful or usurious, in which event the Mortgagor shall concurrently therewith pay the remaining lawful and nonusurious portion or balance of said taxes. In the event of the passage of any law as aforesaid which is prospective in nature, then prior to the effective date of any such law, the Mortgagor shall have the right to prepay the Note for which this Mortgage serves as security in full and not in part and thereafter discharge the lien of this Mortgage from the Mortgaged Premises. Nothing herein shall require the Mortgagor to pay any taxes on income of the Mortgagee except in the event of the passage of any law as aforesaid wherein the Mortgagor does not elect to pay the Note in full prior to its effective date or wherein the effective date of the law is retroactive.

14.    Environmental Issues. (i) Mortgagor shall furnish the Mortgagee with such information concerning the identity, location and use of "Hazardous Substances" as such terms is defined in N.J.S.A. 58:10-23.11b ("Hazardous Substances"), at the Mortgaged Premises as Mortgagee may request from time to time.

(ii)    No part of the Mortgaged Premises, has or is now being used as a "Major Facility" without the express prior written consent of Mortgagee;

(iii)    Should the Mortgagor cause or permit any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of Hazardous Substances, onto the Mortgaged Premises, without having obtained a permit issued by the appropriate governmental authorities, the Mortgagor shall promptly clean up such spill, leak, etc., in accordance with the provisions of the New Jersey Spill Compensation and Control Act and any other applicable environmental law;

(iv)    Mortgagor agrees that Mortgagee shall have the right to conduct or have conducted by its agents or contractors, such environmental inspections as Mortgagee shall reasonably deem necessary or advisable from time to time at the sole cost and expense of the Mortgagor. Mortgagor shall, and shall cause each tenant of the Mortgaged Premises to cooperate without limitation supplying such information concerning the operations conducted, and Hazardous Substances located at the Mortgaged Premises;

(v) Any and all representations, warranties, statements or other information (whether oral or written) made by the Mortgagor or any representative of the Mortgagor to the Mortgagee or an agent of the Mortgagee concerning the environmental status or quality of the Mortgaged Premises

5

and the operations conducted thereon was true and correct as of the date when made and was not incomplete or inaccurate in any material respect;

(vi) From time to time, upon request of the Mortgagee, Mortgagor shall, and shall cause each tenant of the Mortgaged Premises to, supply Mortgagee with a detailed site plan of the Mortgaged Premises containing the following information:

a.   the location and type of all operations conducted thereon identified by the applicable Standard Industrial Classification Code;

b.   the location and type of all Hazardous Substances maintained, stored, processed or otherwise located on the Mortgaged Premises;

c.   the location of all electric transformers and underground tanks; and

d.   such other information as Mortgagee may deem relevant;

(vii) Mortgagor shall provide Mortgagee:

a.   immediate notice of any material change in any operations conducted at the Mortgaged Premises by the Mortgagor or any tenant thereof;

b.   immediate notice of the commencement of, or any change in, operations at the Mortgaged Premises which involve the generation, manufacture, refinement, transportation, heating, storage, handling or disposal of any Hazardous Substances;

c.   annually, a site plan of the Mortgaged Premises as described in Section (vi) above provided; and

d.   from time to time, copying the Mortgagee on all correspondence from and to governmental agencies or departments, including without limitation, the Federal Environmental Protection Agency and the New Jersey Department of Environmental Protection, relating to the environmental status or quality of the Mortgaged Premises and the operations conducted thereon;

(viii)  Mortgagor shall notify Mortgagee immediately upon any event, situation or occurrence, involving a tenant of the Mortgaged Premises or the Mortgagor which triggers the provisions of N.J.S.A. 15:1K-6 et seq. ("ISRA") with respect to the Mortgaged Premises. Mortgagor will require any tenant of the Mortgaged Premises which is about to "cease" operations or "transfer" operations (as those terms are construed in ISRA) to obtain the prior express approval of the New Jersey Department of Environmental Protection of (i) a negative declaration, or (ii) the actual clean-up of the relevant part of the Mortgaged Premises before said cessation or transfer occurs; notwithstanding provisions in ISRA which do not require such compliance prior to cessation or transfer of operations;

(ix)  Mortgagor has provided the Mortgagee with evidence of the New Jersey Department of Environmental Protection's approval of all submissions, if any, made by Mortgagor

6

## II.   THE MORTGAGOR SHALL BE IN DEFAULT OF THIS MORTGAGE UPON THE OCCURRENCE OF ANY OF THE FOLLOWING EVENTS:

1.   In the event that any representation or warranty made by the Mortgagor in this Mortgage, in the Note, or in any other writing used in connection herewith, shall prove to be false, incorrect, or misleading in any substantial and material respect as of the date when made.

2.   In the event that the Mortgagor shall have failed to make payment of any installment of principal or interest or any other payment due on the Note within ten (10) days after its due date as set forth in the Note.

3.   In the event the Mortgagor shall have failed to duly observe or perform any covenant, condition or agreement on the part of the Mortgagor to be observed or performed pursuant to the terms of the Mortgage, the Note, or any other loan document, other than the payment of monies which shall be governed by paragraph 2 above, and such default shall have remained uncured for a period of thirty (30) days after notice thereof to the Mortgagor by the Mortgagee, except in the event of a lapse of insurance coverage as required hereunder and, in that event, the thirty (30) day period is reduced to five (5) days.

4.   In the event that the Mortgagor shall have applied for or consented to the appointment of a custodian, receiver, trustee or liquidator of all or a substantial part of its assets; or shall generally be unable to pay its debts when due; or shall have admitted in writing its inability to pay its debts as they mature; or shall have made a general assignment for the benefit of its creditors; or shall have a petition or an answer seeking reorganization or an arrangement with its creditors or shall have taken advantage of any insolvency law, or shall have submitted an answer admitting the material allegations of a petition in bankruptcy, reorganization or insolvency proceedings, or an order, judgment or decree shall have been entered, without the application, approval or consent of the Mortgagor, by any Court of competent jurisdiction approving a petition seeking reorganization of the Mortgagor, or appointing a custodian, receiver, trustee or liquidator of the Mortgagor, or a substantial part of its assets and such order, judgment or decree shall have continued unstayed and in effect for any period of forty-five (45) consecutive days; or shall have failed to remove an involuntary petition in bankruptcy filed against it within forty-five (45) days of the filing thereof; or if any Order for Relief shall have been entered under the Federal Bankruptcy Code.

5.   In the event of any change in the ownership of the Mortgaged Premises, or if the Mortgagor is a corporation, the sale or transfer of any part of the stock of the Mortgagor to anyone not presently a stockholder or, if the Mortgagor is a partnership, the sale or transfer of any partnership interest by the partners, or any of them, of the Mortgagor or by the Mortgagor.

6.   In the event that the Mortgagor shall have encumbered, mortgaged or given a security interest in any fixture or fixtures, or shall have, without the consent of the Mortgagee, removed or replaced any fixtures.

8

pursuant to ISRA with respect to the Mortgaged Premises. Since the date the Mortgagor acquired its fee interest in the Mortgaged Premises, the Mortgagor has furnished the New Jersey Department of Environmental Protection with all information required by ISRA. Mortgagor is not aware of any failure to comply with ISRA with respect to the Mortgaged Premises, occurring prior to the date Mortgagor acquired its fee interest in the Mortgaged Premises. The Mortgaged Premises is in full compliance with all applicable environmental laws and regulations;

     (x)    The Mortgagor shall not cause or permit to exist, as a result of an intentional or unintentional action or omission on its part, a releasing, spilling, leaking, pumping, emitting, pouring, emptying or dumping of a Hazardous Substance onto the Mortgaged Premises, unless said release, spill, leak, etc., is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal or state governmental authorities;

     (xi)    Mortgagor agrees to perform such environmental clean-up tasks with respect to the Mortgaged Premises as the Mortgagee may deem necessary or advisable, from time to time, at Mortgagor's sole cost and expense, to bring the Mortgaged Premises into compliance with all applicable federal state and local environmental laws;

     (xii)    In the event that any intentional or unintentional action or omission of the Mortgagor, any tenant of the Mortgaged Premises or any other person or entity results in the releasing, spilling, pumping, pouring, emitting, emptying or dumping of Hazardous Substances onto the Mortgaged Premises, then the Mortgagor shall, within thirty (30) days from the date of said action or omission either (i) pay any claim and remove any lien from the Mortgaged Premises which results or arises from said action or omission, or (ii) furnish (a) a bond satisfactory to the Mortgagee in an amount reasonably necessary to provide for the clean-up of the Mortgaged Premises, (b) a cash deposit in said amount, or (c) other security reasonably satisfactory to the Mortgagee in said amount; and

     (xiii)  The Mortgagor hereby agrees that in the event the provisions of ISRA requiring any submission to the New Jersey Department of Environmental Protection, become applicable to the Mortgaged Premises subsequent to the date hereof; the Mortgagor shall give prompt written notice thereof to the Mortgagee and shall take immediate requisite action to insure full compliance with ISRA.

     15.    The Mortgagor agrees that if the Mortgagee expends any funds to bring the mortgaged premises into compliance with N.J.S.A. 58:10-23.11 et seq. (the Spill Compensation & Control Act) or the Industrial Site Recovery Act or any other Federal, State or local environmental law now or hereafter in effect, or to clear a lien imposed on the Mortgaged Premises pursuant to said laws, the total amount of such funds shall be added to the principal balance of the Note secured by this Mortgage. Such added amount shall bear interest as provided for in the Note.

7

Lender and/or its Affiliates to the Borrower, Guarantors and/or their Affiliates shall constitute an Event of Default as to all loans made by the Lender and/or its Affiliates to the Borrower, Guarantors and/or their Affiliates.

In addition to the foregoing, upon the occurrence of any Event of Default the Lender may forthwith exercise singly, concurrently, successively, or otherwise any and all rights and remedies available to the Lender under any of the Loan Documents or with respect to any Collateral, or available to the Lender by law, equity, statute or otherwise including, without limitation, the right to set off any sums a) deposited by the Borrower with the Lender against the amounts due hereunder or b) posted by the Borrower or its Affiliates with the Lender as collateral for this or any other loan made by the Lender or its Affiliates to the Borrower or its Affiliates.

As to the Borrower, the term "Affiliates" shall mean the Borrower and Guarantors and any other entity in which they maintain an interest.  As to the Lender, the term "Affiliates" shall mean the Lender or any of its related entities.

III.    SHOULD ANY DEFAULT BE MADE BY THE MORTGAGOR THE MORTGAGEE MAY TAKE ANY OR ALL OF THE FOLLOWING ACTIONS, AT THE SAME OR AT DIFFERENT TIMES:

1.    Declare the entire amount of unpaid principal, accrued and unpaid interest and other money due under this Mortgage and the Note secured hereby, immediately due and payable.

2.    All rents, issues and profits collected or received by the Mortgagor shall be accepted and held for the Mortgagee in trust and shall not be co-mingled with the funds and property of the Mortgagor but shall be promptly paid over to the Mortgagee. The Mortgagor shall pay to the Mortgagee a reasonable rental for the Mortgaged Premises occupied by the Mortgagor on the first day of each and every month in advance, as a tenant from month to month hereby recognizing the Mortgagee as landlord; and upon default in any such payment, the Mortgagor shall vacate and surrender possession of the Mortgaged Premises to the Mortgagee or to any receiver, if one has been appointed, and in default thereof, the Mortgagor may be dispossessed by the usual summary proceedings. The Mortgagee agrees that this covenant shall be effective either with or without any action being brought to foreclose this Mortgage, and with or without the Mortgagee having applied for a receiver to collect the rents. Any such tenancy of the Mortgagor shall terminate at the option of the Mortgagee and in any event, upon the delivery of the Deed of any Sheriff or Master following foreclosure.

3.    The Mortgagee may enter upon and take possession of the Mortgaged Premises and rent the same, either in its name or in the name of the owner of such property, and receive the rents, issues and profits, thereof; and apply the same, after the payment of the necessary charges and expenses, including management commissions, on account of the debt secured hereby, being accountable only for such rents and profits as are collected by it while in possession.

10

4.      The Mortgagee, at its option, may foreclose this Mortgage, and upon the filing of a Complaint in Foreclosure, the Mortgagee shall be entitled to the appointment of a receiver of the rents of the Mortgaged Premises without the necessity of proving either inadequacy of the security or insolvency of the Mortgagor or for any person who may be legally or equitably liable to pay money secured hereby, and the Mortgagor and each such person waive such proof and consent to the appointment of such receiver.

5.      In the event of a foreclosure sale of the Mortgaged Premises, the Mortgaged Premises may, at the option of Mortgagee, be sold in one or several parcels.

6.      The Mortgagee may apply on account of the unpaid principal and interest thereon or account of any arrearage of interest thereon, or on account of any balance due to the Mortgagee after a foreclosure sale of the Mortgaged Premises whether or not a deficiency action shall have been instituted, any unexpended moneys still retained by the Mortgagee that were paid by the Mortgagor to the Mortgagee for the payment of, or as security for the payment of taxes, assessments, municipal or governmental rates, charges, impositions, liens, water or sewer rents, or insurance premiums, if any, or in order to secure the performance of some act by the Mortgagor.

## IV.    MISCELLANEOUS

1.      The parties to this Mortgage may agree to change the interest rate, due date or other term or terms of this Mortgage or of the obligation secured by the Mortgage and upon any such modification as defined in N.J.S.A. 46:9-8.1, the priority of the lien of the Mortgage shall relate back to and remain as it was at the time of the recording of the Mortgage, as if the modification was originally included in this Mortgage or as if the modification occurred at the time of recording of this Mortgage.

2.      The rights and remedies herein expressed to be vested in or conferred upon the Mortgagee shall be cumulative and shall be in addition to and not in substitution for or in derogation of the rights and remedies conferred by any applicable law. The failure, at any one or more times, of the Mortgagee to assert the right to declare the principal indebtedness due or the granting of any extension or extensions of time of payment of the Note either to the maker thereof or to any other person, or taking of other or additional security for the payment thereof, or releasing any security, or changing any of the terms of the within Mortgage, or waiver of or failure to exercise any right under any covenant or stipulation herein contained shall not in any way affect this Mortgage nor the rights of the Mortgagee hereunder nor operate as a release from any personal liability upon the Note or other obligation accompanying this Mortgage, nor under any covenant or stipulation therein contained, nor under any agreement assuming the payment of said Note or obligation.

3.      All notices to be given hereunder shall be given by certified and regular mail directed to the Mortgagor or to the Mortgagee at the address shown at the head of this Mortgage.

11

7.    In the event that default is made in any of the terms, covenants and conditions contained in any mortgage constituting a lien upon the Mortgaged Premises prior and superior to the lien hereof, or should proceedings be instituted for the foreclosure or collection of any mortgage, judgment, or lien prior or subordinate to the lien of this Mortgage, affecting the Mortgaged Premises.

8.    In the event that any insurance company authorized to do business in the State of New Jersey by the Department of Insurance, shall refuse to insure said Mortgaged Premises in the form of policy approved by the Mortgagee, for a sum equal to the full insurable value of the Mortgaged Premises.

9.    In the event that the Mortgagor shall have entered into any secondary financing or shall have consented to the placing of any lien on the Mortgaged Premises, whether or not such financing or lien is prior to or subordinate to the lien of the Mortgagee without the prior written consent of the Mortgagee.

10.    In the event that the Mortgagor shall have transferred or caused to have been transferred, title to or possession of any interest in the Mortgaged Premises, or any part thereof, or if the Borrower is a corporation or partnership, in the event there is a change in the management or controlling interest in the Borrower, to any party without the express prior written consent of the Mortgagee.

11.    In the event that the Mortgagor shall have caused or permitted a security interest, perfected or otherwise, other than the security interest specifically provided for or permitted hereunder, to be created in any collateral provided for hereby, or shall have failed to take any action requested by the Mortgagee to perfect or protect the security interest provided for herein.

12.    Any default under any Agreement, including the Note and Loan Agreement, given for the debt secured by this mortgage.

13.    The occurrence of any condition or event which could permit the imposition of a lien on the Mortgaged Premises pursuant to N.J.S.A. 10-23.11 (the Spill Compensation and Control Act) or any violation of the Industrial Site Recovery Act or any other environmental law now or hereafter in effect if not cured within thirty (30) days following such occurrence, event, violation or imposition of lien or if such event cannot be cured within thirty (30) days, then the commencement of such cure provided that the same maybe accomplished within a reasonable time thereafter and provided further no imposition of a lien has been imposed upon the Mortgaged Premises.

14.    Cross Collateral/Cross Default.  Any collateral posted by the Borrower, the Guarantors and/or their Affiliates in favor of the Lender and/or its Affiliates to secure this or any other loan shall be deemed to be additional collateral securing this Loan and vice versa and shall be subject to the remedies available to the Lender and/or its Affiliates in the event of any default by the Borrower, the Guarantors and/or their Affiliates under any loan made to them by the Lender and/or its Affiliates.  A default under any loan made by the

9

4.     If any action or proceeding be commenced (except an action to foreclose this Mortgage or to collect the debt secured thereby), to which action or proceeding the Mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this Mortgage, all sums paid by the Mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this Mortgage, including reasonable counsel fees, shall be added to the Mortgage Debt and bear interest at the interest rate set forth in the Note, and any such sum and the interest thereon shall be a lien on the Premises, prior to any right or title to interest in or claim upon the Premise attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage.

5.     All of the terms, covenants, provisions and conditions herein contained shall be for the benefit of, apply to, and bind the heirs, executors, administrators, successors, and assigns of the Mortgagor and the Mortgagee, and are intended and shall be held to be real covenants running with the land, and the term "Mortgagor" shall also include any and all subsequent owners and successors in title of the Mortgaged Premises.  The Lender may assign the Mortgage, Note and all related loan documents to a third party.

6.     All references herein to "Note" shall be construed to mean "Bond" or any other evidence of indebtedness.

7.     When such interpretation is appropriate, any word denoting gender used herein shall include all persons, natural or artificial, and words used in the singular shall include the plural.

8.     This Mortgage, the loan made hereunder and the rights of the parties shall be governed by and construed under the laws of and by the courts of the State of New Jersey.

9.     The terms of this Mortgage shall not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

**MORTGAGOR ACKNOWLEDGES RECEIPT OF A TRUE COPY HEREOF WITHOUT CHARGE.**

**IN WITNESS WHEREOF**, the Mortgagor has caused this Mortgage to be duly executed as of the day and year first above written.

WITNESS:                                    TEANECK PLAZA VENTURES, LLC

_____                    By: _____
Victoria Marsh                                 Seth Levine, Managing Member

12

|  |  |
|---|---|
| M O R T G A G E | Dated: December // , 2015 |
|  | Record and Return To: |
| TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC |  |
|  | Vastola & Sullivan |
| Mortgagor, | P.O. Box 7 |
|  | Middlesex, New Jersey 08846 |
| To |  |
| HUTTON VENTURES LLC, |  |
| Mortgagee. |  |

To the County Recording Officer of Bergen County:

This Mortgage is fully paid.  I authorize you to cancel it of record.

Dated                          , 20___                    Hutton Ventures LLC

                                          By: _____
                                              Ron Friedman, Managing Member

I certify that the signature of the Lender is genuine.

_____
Notary Public

C:\Vichanda\REAL ESTATE\Mortgage & Loan Documents\HUTTUG LOANS\US SAMPLE PACKET\Hutton Mortgage Loan Docs_levine.doc

14

SCHEDULE A
LEGAL DESCRIPTION
170 South Park  Street, Hackensack, NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey:

TRACT I:

BEGINNING in the easterly line of Park Street at the southwesterly corner of the tract conveyed to John O'Shea by Jane Berry and her husband by deed bearing date May 10, 1958 being the northeasterly corner of the lot hereby conveyed being also 47 feet southerly from the southwesterly corner of the lot conveyed by the said William E. Taylor to Wilhelmina Leinweiber by deed bearing date October 8, 1906; running thence

1. Easterly along said lot conveyed to John O'Shea, 135.00 feet; thence

2. Southerly and parallel with Park Street and along land now or formerly of George Shafer and others, 38.00 feet to the northerly line of a laneway leading from Park Street to Union Street; thence

3. Westerly along said laneway and parallel with the first course, 135.00 feet to the easterly line of Park Street; thence

4. Northerly along Park Street, 38.00 feet to the point of BEGINNING.

TRACT II:

BEGINNING at a point in the southeasterly line of South Park Street distant therein southwesterly 23.59 feet from the point of intersection of the said line of South Park Street with the southwesterly line of property shown on map entitled, "Map of Gamewell Property", which said map is on file in the Office of the Clerk of the County of Bergen, as filed Map No. 372 and from said point of beginning; running thence

1. Along said line of South Park Street, South 22 degrees 41 minutes West, 70.59 feet; thence

2. South 67 degrees 29 minutes East, 135.00 feet; thence

3. North 22 degrees 41 minutes East, 69.43 feet; thence

4. North 66 degrees 59 minutes 30 seconds West, 135.00 feet to the said line of South Park Street and the point of BEGINNING.

BEING further known and described as:

BEGINNING at the point of intersection of the southeasterly R.O.W. line of Park Street (30' R.O.W.) with the northeasterly R.O.W. line of a lane, and running; thence

1. South 67 degrees 29 minutes 00 seconds East, a distance of 135.00 feet to a point; thence

LENOX MCKINLEY, LLC

Victoria Marsh

By: _____
Seth Levine, Managing Member

LENOX SOUTH PARK, LLC

Victoria Marsh

By: _____
Seth Levine, Managing Member

STATE OF NEW JERSEY        :
                           :SS
COUNTY OF MIDDLESEX        :

    I CERTIFY that on December //, 2015, Seth Levine, personally came before me and acknowledged under oath, to my satisfaction, that:

    (a) this person is the Managing Member of TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC, the Company named in this document;
    (b) this person signed this document in their capacity as Managing Member of the company;
    (c) this person is authorized to execute and deliver this document on behalf of TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC; and
    (d) this person knows the proper seal of the Company which was affixed to this document.

_____
Victoria Marsh
Notary Public of the State of New Jersey

VICTORIA B. MARSH
A Notary Public of New Jersey
My Commission Expires 12/20/2015

13

SCHEDULE A
LEGAL DESCRIPTION
88 Mckinley Street, Hackensack NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEGINNING at a point on the easterly line of McKinley Street (formerly known as South First Street), which point is distant 150.00 feet southerly from the intersection of same with the southerly line of Lexington Avenue and from said point of beginning; running thence

1. South 18 degrees 00 minutes West 125.00 feet along said easterly line of McKinley Street to a point; thence

2. South 78 degrees 50 minutes 15 seconds East 150.00 feet to a point; thence

3. North 18 degrees 00 minutes East 125.00 feet more or less to a point; thence

4. North 78 degrees 50 minutes 15 seconds West 150.00 feet to the easterly line of McKinley Street and the point and place of BEGINNING.

Being known and designated as Lots 52, 53, 54 on a map entitled " Map of Property of William E. Taylor, Near Essex Street Depot, Hackensack, N.J." filed October 8, 1894, as Map No. 710 and part of Lot 51 in map entitled "Map of Property of William E. Taylor, near Essex Street Depot, Hackensack, N.J." filed October 8, 1894, as Map No. 710 and part of Lot 14 on Map entitled, "Property of Carl O. Larson, Hackensack, N.J." filed February 6, 1905 as Map No. 950.

NOTE:  Being Lot(s) 22, Block 81, Tax Map of the City of Hackensack, County of Bergen.

NOTE:  Lot and Block shown for informational purposes only.

SCHEDULE A
LEGAL DESCRIPTION
(Continued)
170 South Park Street, Hackensack NJ

2. North 22 degrees 41 minutes 00 seconds East, a distance of 107.43 feet to a point; thence

3. North 66 degrees 59 minutes 30 seconds West, a distance of 135.00 feet to a point; thence

4. South 22 degrees 41 minutes 00 seconds East, a distance of 108.59 feet to the point and place of BEGINNING.

NOTE:  Being Lot(s) 30, Block 222.01, Tax Map of the City of Hackensack, County of Bergen.

NOTE:  Lot and Block shown for informational purposes only.

Bergen County Clerk          BK 03323  PG 1656          08/15/2019 02:48 PM  20 of 20   ** End of Document **

SCHEDULE A
LEGAL DESCRIPTION
1407 Palisade Avenue, Teaneck, NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Teaneck, County of Bergen, State of New Jersey.

BEING known and designated as Lots 1, 2, 3, 4, 5, 6 and 7 (1 to 7 inclusive) in Block 460G on a certain map entitled "Supplementary Map of West Englewood Square, Teaneck, New Jersey, belonging to Nelson M. Ayers, January 1926" made by Reginald W. Wells, Civil Engineer and Surveyor and filed in the Bergen County Clerk's Office on March 22, 1926 as Map No. 2083.

BEGINNING at a point on the southwesterly street line of The Plaza (formerly Market Street) distant 225.00 feet along the same from its intersection with the northwesterly street line (formerly Westfield Avenue) thence from said point of beginning;

1. South 38 degrees 19 minutes West 137.37 feet to a point; thence

2. North 53 degrees 16 minutes West 185.34 feet to a point on the southeasterly street line of Palisade Avenue (formerly Station Street); thence

3. North 44 degrees 10 minutes East along said street line of Palisade Avenue 24.81 feet to a point on the said southwesterly street line of The Plaza (formerly Market Street); thence

4. Easterly along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 109.00 feet, a distance of 76.41 feet to a point; thence

5. Southeasterly continuing along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 180.00 feet, a distance of 138.18 feet to a point; thence

6. South 51 degrees 41 minutes East still along said street line of The Plaza (formerly Market Street) 25.00 feet to the point and place of BEGINNING.

NOTE:  Being Lot(s) 1, Block 5008, Tax Map of the Township of Teaneck, County of Bergen.

NOTE:  Lot and Block shown for informational purposes only.

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 19-053579.01

V 03323 1657

RECORDED DATE: 08/15/2019 02:48:30 PM

| | |
|---|---|
| Transaction #: | 9276841 |
| Document Page Count: | 9 |
| Operator Id: | CLERK |

Document Type:   Mortgage

**RETURN TO:**
VASTOLA  & SULLIVAN
P.O.BOX 7
MIDDLESEX  NJ  08846

**SUBMITTED BY:**

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| TEANECK PLAZA VENTURES LLC | HUTTON VENTURES LLC |
| **ADDITIONAL PRIMARY NAMES** | **ADDITIONAL SECONDARY NAMES** |
| LENOX MCKINLEY LLC<br>LENOX SOUTH PARK LLC | |

**MARGINAL REFERENCES:**

DOCUMENT DATE:  12/11/2015
MUNICIPALITY:  TEANECK

FEES / TAXES:
| | |
|---|---|
| Recording Fee: Mortgage | $30.00 |
| Additional Pages Fee | $80.00 |
| Additional Marginal Notation Fee | $10.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| Total: | $123.00 |

INSTRUMENT #: 19-053579.01
Recorded Date: 08/15/2019 02:48:30 PM

I hereby CERTIFY that this document is recorded
in the Clerk's Office in Bergen County, New
Jersey.

John S. Hogan
Bergen County Clerk

Recording Fees: $123.00
Realty Transfer Tax Fees: $0.00

## OFFICIAL RECORDING COVER PAGE

Page 1 of 10

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Bergen County Clerk        V  BK 03323  PG 1658        08/15/2019 02:48 PM        2 of 10

| Bergen County Recording Data Page<br>Honorable John S. Hogan<br>Bergen County Clerk | *Official Use Only - Barcode* |
|---|---|
| | 19-053679.01 Mortgage<br>V Bk: 03323 Pg: 1657-1666   Rec. Fee $123.00<br>John S. Hogan, Bergen County Clerk<br>Recorded 08/15/2019  02:48:30 PM |

| *Official Use Only – Realty Transfer Fee* |
|---|
| |

| Date of Document:<br><br>12/11/2015 | Type of Document:<br>Assignment of Leases (and Rents) |
|---|---|
| First Party Name:<br>Hutton Ventures LLC | Second Party Name:<br>Teaneck Plaza Ventures, LLC;<br>Lenox McKinley, LLC and<br>Lenox South Park, LLC |
| Additional Parties: | |

| THE FOLLOWING SECTION IS REQUIRED FOR DEEDS ONLY | |
|---|---|
| Block: | Lot: |
| Municipality: | |
| Consideration: | |
| Mailing Address of Grantee: | |

| THE FOLLOWING SECTION IS FOR ORIGINAL MORTGAGE BOOKING & PAGE INFORMATION FOR ASSIGNMENTS,<br>RELEASES, SATISFACTIONS, DISCHARGES & OTHER ORIGINAL MORTGAGE AGREEMENTS ONLY | |
|---|---|
| Original Book: | Original Page: |

| BERGEN COUNTY RECORDING DATA PAGE<br>Please do not detach this page from the original document as it<br>contains important recording information and is part of the permanent record. |
|---|

Prepared By 
John J. Sullivan, Jr., Esq.

## ASSIGNMENT OF LEASES
### (and Rents)

**THIS ASSIGNMENT** made the _____//_____ day of December 2015

**BY: TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC,** having an address at 636 South Forest Drive, Teaneck, New Jersey 07666 (herein called the "MORTGAGOR "),

**TO: HUTTON VENTURES LLC,** with offices at 333 7th Avenue, Third Floor, New York, New York 10001 (called "LENDER ").

### W I T N E S S E T H  THAT:

On even date herewith, Mortgagor made its obligation (called 'Note") to the order of LENDER evidencing debt in the principal amount of **TWO MILLION TWO HUNDRED THOUSAND ($2,200,000.00) DOLLARS** and the MORTGAGOR executed and delivered a Mortgage and Security Agreement bearing the same date as the Note and establishing a security interest in premises situate in the Township of Teaneck and the City of Hackensack, County of Bergen and State of New Jersey, more particularly described in Schedule "A" attached hereto and made a part hereof (called "Premises"); and that

MORTGAGOR has now requested LENDER to make disbursement of the loan evidenced by the Note and Mortgage; and that

As additional security for the payment and performance by MORTGAGOR of its obligations to LENDER under the Note and Mortgage, respectively, MORTGAGOR has undertaken to assign to LENDER all of the right, title and interest of MORTGAGOR as the Landlord in, under and to all present or future leases or verbal tenancies or other occupancy agreements for all or any part of the Premises (hereinafter collectively called the "Leases").

**NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS,** that in consideration of One Dollar and other good and valuable consideration receipt of which is hereby acknowledged and in order to induce LENDER to disburse the loan, as well for and in consideration of an additional, separate valuable consideration paid by LENDER to MORTGAGOR, receipt of which is hereby acknowledged by MORTGAGOR expressing the intent to be legally bound hereby, MORTGAGOR does hereby:

1. Grant, convey, sell; assign, transfer, set over and deliver to LENDER, its successors and assigns all of the right, title and interest MORTGAGOR as the Landlord in, under and to the Leases, TOGETHER WITH all of the rents and other sums payable by the Tenant under the Leases (copies of which are annexed hereto if applicable, or in the case of verbal agreements, written descriptions of

1

Bergen County Clerk          V  BK 03323 PG 1660          08/15/2019 02:48 PM          4 of 10

same, as Exhibit A), AND TOGETHER WITH all of the other benefits and advantages to derived from the Leases as collateral security, nevertheless, for the payment of the indebtedness, interest and all other sums which are payable by MORTGAGOR to LENDER under the Note and Mortgage, and for the performance of all of the other terms, provisions, covenants and conditions of the Note, the Mortgage and of this Assignment which are binding upon MORTGAGOR.

2.       The assignment of rents, profits and income herein granted shall be deemed absolute, and in furtherance thereof, MORTGAGOR agrees that LENDER shall have the absolute right to and a perfected security interest in all rents, issues, income and profit assigned hereunder. MORTGAGOR shall execute and deliver to LENDER all documents and instruments deemed necessary by the LENDER in order to perfect this security interest.

3.       So long as there shall exist no default by the MORTGAGOR in the payment of any indebtedness secured hereby or in the performance of any obligation, covenant or agreement herein in said Loan Documents or in said Leases contained on the part of the MORTGAGOR to be performed, the MORTGAGOR shall have the right to collect at the time of, but not prior to the date provided for the payment thereof, all rents, income and profits arising under said Leases or from the Premises and to retain, use and enjoy the same.

4.       Represent and warrant to LENDER that: (a) the Tenant(s) has accepted possession of the Premises demised by the Leases; and (b) the Leases have not been terminated, canceled, amended, changed or abrogated and continues in full force and effect on the date hereof; and (c) neither MORTGAGOR nor any Tenant is in default under the Leases; and (d) no rents or other sums payable by any Tenant under the Leases have been paid in advance; and (e) MORTGAGOR is the absolute owner of the interest of the Landlord under the Leases and has made no assignments of said interest in anyone other than LENDER; and (f) no Tenant has any defense, set-off or counterclaim under the Leases.

5.       Covenant and agree with LENDER that: (a) LENDER shall have a security interest in the Leases and in the rents, avails and proceeds thereof; and (b) MORTGAGOR will faithfully keep and perform all of the terms, conditions, provisions and covenants of the Leases which are binding upon MORTGAGOR as the Landlord therein; and (c) no rights or remedies of MORTGAGOR as the Landlord under the Leases will be waived or released without the express prior written consent of LENDER; and (d) the Leases will not be terminated, canceled, amended, changed or abrogated, nor will surrender of the demised premises and property or of the leasehold be accepted by MORTGAGOR, nor will any rent be received in advance of the dates specified in the Leases for payment, except upon the express prior consent of LENDER in each case; and (e) at any time or times hereafter when MORTGAGOR may be in default under the Note or Mortgage, or both, LENDER may exercise all the rights of the Landlord under the Leases and may collect from any Tenant all rents and other sums which are payable by any Tenant under the Leases but such collections shall be made by LENDER as agent of MORTGAGOR and after applying so much of the net amount of the rentals and other sums collected as may be necessary to discharge the obligations of MORTGAGOR under the Note and Mortgage, respectively, shall remit any excess to MORTGAGOR. A Tenant may, upon receipt of written demand from LENDER to pay the rents and other sums to LENDER thereafter make such payments without being

2

Bergen County Clerk                    V  BK 03323  PG 1661              08/15/2019 02:48 PM              5 of 10

obligated to determine whether MORTGAGOR was in fact in default under the Note or Mortgage and the Tenant shall be credited pro Canto under the Leases for all such payments made to LENDER; and (f) LENDER shall not be responsible for the control, care or management of the Premises and property demised by the Leases, or for any waste permitted or committed thereon or thereto by any Tenant or by others, or for carrying out any of the duties or obligations of MORTGAGOR under the Leases, nor shall LENDER be liable by reason of any loss, injury or damage sustained or suffered by any Tenant or any other occupant or occupants of the Premises and property demised by the Leases or by any other person or persons whomsoever by reason of any dangerous or defective conditions now or hereafter existing in said Premises and property demised by the Leases; and (g) nothing herein contained shall be construed as a waiver or suspension by LENDER of its right to enforce payment of the indebtedness of MORTGAGOR to LENDER under the Note or Mortgage and interest thereof, and the performance of any of the other duties or obligations of MORTGAGOR, as the Maker under the Note and as the MORTGAGOR under the Mortgage, respectively, all of which duties and obligations of MORTGAGOR shall continue; and (h) this Assignment shall be binding upon MORTGAGOR and the successors, assigns and grantees of MORTGAGOR and shall inure to the benefit of LENDER, its successors, assigns and grantees.

6.    Singular words used herein shall be deemed to include the plural, and vice versa, as the case may be.

7.    This Assignment shall cease to be effective and shall be deemed to have been reassigned to the MORTGAGOR at such time as the Mortgage referred to above shall be canceled of record.

IN WITNESS WHEREOF, this Assignment of Leases has been duly executed the day and year first above written.

WITNESS:

_____
Victoria Marsh

_____
Victoria Marsh

_____
Victoria Marsh

**TEANECK PLAZA VENTURES, LLC**

By: _____
      Seth Levine, Managing Member

**LENOX MCKINLEY, LLC**

By: _____
      Seth Levine, Managing Member

**LENOX SOUTH PARK, LLC**

By: _____
      Seth Levine, Managing Member

3

STATE OF NEW JERSEY          :
                            :SS
COUNTY OF MIDDLESEX          :

    **I CERTIFY** that on December //, 2015, Seth Levine, personally came before me and acknowledged under oath, to my satisfaction, that:

    a.  this person is the Managing Member of **TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC**, the Company named in this document;

    b.  this person signed this document in their capacity as Managing Member of the company;

    c.  this person is authorized to execute and deliver this document on behalf of TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC; and

    d.  this person knows the proper seal of the Company which was affixed to this document.

                Victoria Marsh
                Notary Public of the State of New Jersey

                VICTORIA B. MARSH
                A Notary Public of New Jersey
                My Commission Expires 12/20/2015

Record & Return To:

Vastola & Sullivan
495 Union Avenue
Middlesex, New Jersey 08846

4

SCHEDULE A
LEGAL DESCRIPTION
170 South Park. Street, Hackensack, NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

TRACT I:

BEGINNING in the easterly line of Park Street at the southwesterly corner of the tract conveyed to John O'Shea by Jane Berry and her husband by deed bearing date May 10, 1958 being the northeasterly corner of the lot hereby conveyed being also 47 feet southerly from the southwesterly corner of the lot conveyed by the said William E. Taylor to Wilhelmina Lehnweiber by deed bearing date October 8, 1906; running thence

1. Easterly along said lot conveyed to John O'Shea, 135.00 feet; thence

2. Southerly and parallel with Park Street and along land now or formerly of George Shafer and others, 38.00 feet to the northerly line of a laneway leading from Park Street to Union Street; thence

3. Westerly along said laneway and parallel with the first course, 135.00 feet to the easterly line of Park Street; thence

4. Northerly along Park Street, 38.00 feet to the point of BEGINNING.

TRACT II:

BEGINNING at a point in the southeasterly line of South Park Street distant therein southwesterly 23.59 feet from the point of intersection of the said line of South Park Street with the southwesterly line of property shown on map entitled, "Map of Gamewell Property", which said map is on file in the Office of the Clerk of the County of Bergen, as filed Map No. 372 and from said point of beginning; running thence

1. Along said line of South Park Street, South 22 degrees 41 minutes West, 70.59 feet; thence

2. South 67 degrees 29 minutes East, 135.00 feet; thence

3. North 22 degrees 41 minutes East, 69.43 feet; thence

4. North 66 degrees 59 minutes 30 seconds West, 135.00 feet to the said line of South Park Street and the point of BEGINNING.

BEING further known and described as:

BEGINNING at the point of intersection of the southeasterly R.O.W. line of Park Street (30' R.O.W.) with the northeasterly R.O.W. line of a lane, and running; thence

1. South 67 degrees 29 minutes 00 seconds East, a distance of 135.00 feet to a point; thence

SCHEDULE A
LEGAL DESCRIPTION
(Continued)
170 South Park Street, Hackensack NJ

2. North 22 degrees 41 minutes 00 seconds East, a distance of 107.43 feet to a point; thence

3. North 66 degrees 59 minutes 30 seconds West, a distance of 135.00 feet to a point; thence

4. South 22 degrees 41 minutes 00 seconds East, a distance of 108.59 feet to the point and place of BEGINNING.

NOTE:  Being Lot(s) 30, Block 222.01, Tax Map of the City of Hackensack, County of Bergen.

NOTE:  Lot and Block shown for informational purposes only.

SCHEDULE A
LEGAL DESCRIPTION
88 Mckinley Street, Hackensack NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEGINNING at a point on the easterly line of McKinley Street (formerly known as South First Street), which point is distant 150.00 feet southerly from the intersection of same with the southerly line of Lexington Avenue and from said point of beginning; running thence

1. South 18 degrees 00 minutes West 125.00 feet along said easterly line of McKinley Street to a point; thence

2. South 78 degrees 50 minutes 15 seconds East 150.00 feet to a point; thence

3. North 18 degrees 00 minutes East 125.00 feet more or less to a point; thence

4. North 78 degrees 50 minutes 15 seconds West 150.00 feet to the easterly line of McKinley Street and the point and place of BEGINNING.

Being known and designated as Lots 52, 53, 54 on a map entitled " Map of Property of William E. Taylor, Near Essex Street Depot, Hackensack, N.J." filed October 8, 1894, as Map No. 710 and part of Lot 51 in map entitled "Map of Property of William E. Taylor, near Essex Street Depot, Hackensack, N.J." filed October 8, 1894, as Map No. 710 and part of Lot 14 on Map entitled, "Property of Carl O. Larson, Hackensack, N.J." filed February 6, 1905 as Map No. 950.

NOTE:  Being Lot(s) 22, Block 81, Tax Map of the City of Hackensack, County of Bergen.

NOTE:  Lot and Block shown for informational purposes only.

SCHEDULE A
LEGAL DESCRIPTION
1407 Palisade Avenue, Teaneck, NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Teaneck, County of Bergen, State of New Jersey.

BEING known and designated as Lots 1, 2, 3, 4, 5, 6 and 7 (1 to 7 inclusive) in Block 460G on a certain map entitled "Supplementary Map of West Englewood Square, Teaneck, New Jersey, belonging to Nelson M. Ayers, January 1926" made by Reginald W. Wells, Civil Engineer and Surveyor and filed in the Bergen County Clerk's Office on March 22, 1926 as Map No. 2083.

BEGINNING at a point on the southwesterly street line of The Plaza (formerly Market Street) distant 225.00 feet along the same from its intersection with the northwesterly street line (formerly Westfield Avenue) thence from said point of beginning;

1. South 38 degrees 19 minutes West 137.37 feet to a point; thence

2. North 53 degrees 16 minutes West 185.34 feet to a point on the southeasterly street line of Palisade Avenue (formerly Station Street); thence

3. North 44 degrees 10 minutes East along said street line of Palisade Avenue 24.81 feet to a point on the said southwesterly street line of The Plaza (formerly Market Street); thence

4. Easterly along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 109.00 feet, a distance of 76.41 feet to a point; thence

5. Southeasterly continuing along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 180.00 feet, a distance of 138.18 feet to a point; thence

6. South 51 degrees 41 minutes East still along said street line of The Plaza (formerly Market Street) 25.00 feet to the point and place of BEGINNING.

NOTE:  Being Lot(s) 1, Block 5008, Tax Map of the Township of Teaneck, County of Bergen.

NOTE:  Lot and Block shown for informational purposes only.

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/





INSTRUMENT # 18-067857.02

V 03061 0528

RECORDED DATE: 09/24/2018 02:18:35 PM

FILE NUMBER : 002327R-18

| | |
|---|---|
| **Document Type:** UCC1 - Real Estate Financial Stmt | Transaction #: 9157807 |
| | Document Page Count: 3 |
| | Operator Id: CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| WORLD WIDE LAND TRANSFER | World Wide Land Transfer |
| BUILDING 8 NESHAMINY INTERPLEXSUITE 117 | |
| TREVOSE PA 19053 | |
| ERECORDED | |
| | (215) 245-5650 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| TEANECK PLAZA VENTURES, LLC | AFFINITY FEDERAL CREDIT UNION |
| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |
| | |

MARGINAL REFERENCES:

| MUNICIPALITY: TEANECK | INSTRUMENT #: 18-067857.02 |
|---|---|
| | Recorded Date: 09/24/2018 02:18:35 PM |
| **FEES / TAXES:** | |
| Recording Fee: UCC 1 - Financial Statement $25.00 | I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey. |
| Total: $25.00 | |
| | John S. Hogan |
| | Bergen County Clerk |
| | |
| | Recording Fees: $25.00 |
| | Realty Transfer Tax Fees: $0.00 |

OFFICIAL RECORDING COVER PAGE

Page 1 of 4

# PLEASE DO NOT DETACH

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

(3)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| B. E-MAIL CONTACT AT FILER (optional) |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |

> Schenck, Price, Smith & King, LLP
> 220 Park Avenue
> Florham Park, New Jersey 07932
> Attention: Jeremy M. Garlock, Esq.

LT-1611-NJ

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| TEANECK PLAZA VENTURES, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 210 River Street | Hackensack | NJ | 07601 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| AFFINITY FEDERAL CREDIT UNION | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 73 Mountain View Boulevard | Basking Ridge | NJ | 07920 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All Debtors right title and interest as enumerated on the attached Rider.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative |
|---|---|
| 6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | 6b. Check only if applicable and check only one box: ☐ Agricultural Lien  ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
CM#24519-293      TO BE FILED IN BERGEN COUNTY

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

**UCC FINANCING STATEMENT ADDENDUM**

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank

because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| TEANECK PLAZA VENTURES, LLC |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only **one** additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 10b. INDIVIDUAL'S SURNAME | | | | |
| OR INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME or** ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only **one** name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**

| 13. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☒ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): Same as Debtor above | 16. Description of real estate: 1407 Palisade Avenue, Teaneck, New Jersey (Block 5008, Lot 1) Township of Teaneck County of Bergen State of New Jersey |

**17. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Bergen County Clerk                    V   BK 03061   PG 0530                    09/24/2018 02:18 PM                    3 of 4

## SCHEDULE A - DESCRIPTION OF PROPERTY

All of **TEANECK PLAZA VENTURES, LLC'S** ("the Debtor") right, title and interest in and to all existing and future-acquired Fixtures and Equipment, Awards and Proceeds, Leases and Rents, Other Rights (as all of the preceding terms are defined below), and all tax and insurance escrows held by Affinity Federal Credit Union pursuant to the Mortgage from Debtor to Affinity Federal Credit dated September 12, 2018 ("Mortgage").

"Fixtures and Equipment" means all fixtures, machinery, equipment, appliances, goods, chattels, furniture, furnishings and personal property of every nature presently or in the future attached to, or used or intended to be used in connection with, the Land or Improvements, or to be erected on the Land or Improvements, or to be erected on the Land or Improvements, including gas and electric fixtures, radiators, heaters, engines, machinery, boilers, ovens, elevators, bathtubs, sinks, water closets, faucets, air conditioning equipment, plumbing and heating fixtures, refrigerators, freezers, shades, blinds, draperies, carpets and all replacement and substitutions for, proceeds of, and warranties with respect to, such property. "Land" means the land and property commonly 1407 Palisade Avenue, Teaneck, New Jersey (Block 5008, Lot 1). "Improvements" means all buildings, structures and other improvements of every nature presently or in the future on, attached to or used in connection with the Land, including all betterments, substitutions, replacements and proceeds, and all appurtenances and paved roads and walkways adjacent, or relating to, the foregoing or to the Land.

"Awards and Proceeds" means all awards, damages, claims, payments, insurance proceeds (other than from liability insurance coverage) and other compensation with respect to the Land, Improvements, Fixtures and Equipment and other interests described in Section 3 of the Mortgage (collectively referred to as "Awards and Proceeds") including those arising from: (a) any governmental taking or exercise of eminent domain, (b) any damage, injury, casualty or other destruction or loss or (c) any change of grade or vacation of any street.

"Leases and Rents" means all rents, issues, profits, revenues, royalties and benefits now or hereafter due to Debtor in connection with the Land or Improvements including all rights and interests of Mortgagor as landlord under any existing and future leases with respect to the Land, Improvements and Fixtures and Equipment;

"Other Rights" means all other rights whatsoever that Mortgagor or any other owner has or may acquire in the Land, Improvements, Fixtures and Equipment, Awards and Proceeds and all other above-described property and interests, including all rights, privileges, rights of way, easements, public spaces, streets, alleys, appurtenances and sewer, air, mineral, water and subsurface rights of all kinds.

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 19-053579.02

V 03323 1667

RECORDED DATE: 08/15/2019 02:48:31 PM

FILE NUMBER : 001882-19

| | |
|---|---|
| **Document Type:** UCC 1 - Financial Statement | Transaction #: 9276841<br>Document Page Count: 7<br>Operator Id: CLERK |

**RETURN TO:**

VASTOLA & SULLIVAN
P.O.BOX 7
495 UNION AVENUE STE 2D
MIDDLESEX NJ 08846

**SUBMITTED BY:**

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| TEANECK PLAZA VENTURES LLC | HUTTON VENTURES LLC |
| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |
| | |

**MARGINAL REFERENCES:**

**FEES / TAXES:**

| | | |
|---|---|---|
| Recording Fee: UCC 1 - Financial Statement | $25.00 | - |
| Total: | $25.00 | |

INSTRUMENT #: 19-053579.02
Recorded Date: 08/15/2019 02:48:31 PM

I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.

*John S. Hogan*

John S. Hogan
Bergen County Clerk

Recording Fees: $25.00
Realty Transfer Tax Fees: $0.00

OFFICIAL RECORDING COVER PAGE

Page 1 of 8

# PLEASE DO NOT DETACH
THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Bergen County Clerk     V  BK 03323  PG 1668     08/15/2019 02:48 PM     2 of 8

---

**Bergen County Recording Data Page**
Honorable John S. Hogan
Bergen County Clerk

*Official Use Only - Barcode*

19-053579.02 UCC 1 - Financial Statement
File #: 001882-19
Rec. Fee $25.00
John S. Hogan, Bergen County Clerk
Recorded 08/15/2019  02:48:31 PM

*Official Use Only – Realty Transfer Fee*

| Date of Document: | Type of Document: |
|---|---|
| 12/11/2015 | UCC Financing Statement |

| First Party Name: | Second Party Name: |
|---|---|
| Hutton Ventures LLC | Teaneck Plaza Ventures, LLC |

Additional Parties:

File #: 001882-19
BK 03323 PG 1667
08/15/2019

---

| THE FOLLOWING SECTION IS REQUIRED FOR DEEDS ONLY | |
|---|---|
| Block: | Lot: |
| Municipality: | |
| Consideration: | |
| Mailing Address of Grantee: | |

---

| THE FOLLOWING SECTION IS FOR ORIGINAL MORTGAGE BOOKING & PAGE INFORMATION FOR ASSIGNMENTS, RELEASES, SATISFACTIONS, DISCHARGES & OTHER ORIGINAL MORTGAGE AGREEMENTS ONLY | |
|---|---|
| Original Book: | Original Page: |

---

**BERGEN COUNTY RECORDING DATA PAGE**
Please do not detach this page from the original document as it
contains important recording information and is part of the permanent record.

Bergen County Clerk                    V  BK 03323  PG 1669              08/15/2019 02:48 PM              3 of 8

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

> Vastola Fackelman & Sullivan
> 495 Union Avenue, Suite 2D
> P.O. Box 7
> Middlesex, New Jersey 08846

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| | 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | TEANECK PLAZA VENTURES, LLC | | | |
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 636 South Forest Drive | Teaneck | NJ | 07666 | USA |

| 1d. TAX ID#: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Limited Liability Company | New Jersey | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (2a or 2b) – do not abbreviate or combine names

| | 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. TAX ID#: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | HUTTON VENTURES LLC | | | |
| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 333 7TH AVENUE, THIRD FLOOR | NEW YORK | NY | 10001 | USA |

4. This FINANCING STATEMENT covers the following collateral:

This Financing Statement covers the following types or items of property: all of Debtor's right, title and interest in and to all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements, improvements and all other property as more particularly described in the Rider to UCC filing attached hereto, now or hereafter erected or located on the real property known as Lot 1, Block 5008, on the tax map of the Township of Teaneck, County of Bergen, State of NJ and commonly known as 1407 Palisade Avenue, Teaneck, New Jersey.

| 5. ALTERNATIVE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS  Attach Addendum  (if applicable) | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) (ADDITIONAL FEE)  (optional) | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
County

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# RIDER
## TO
### UNIFORM COMMERCIAL CODE FINANCING STATEMENT

Debtor:        TEANECK PLAZA VENTURES, LLC having an address at 636 South
               Forest Drive, Teaneck, New Jersey 07666

Secured Party: HUTTON VENTURES LLC having an address at 333 7th Avenue, Third
               Floor, New York, New York 10001

ITEM 4 *(CONTINUED)*:   All right, title and interest of Debtor in and to the following
(collectively, the "Property"):

1.  The real property described in Exhibit A attached hereto and made a part hereof (the
    "Land");

2.  All additional lands, estates and development rights hereafter acquired by Debtor for use
    in connection with the Land and the development of the Land and all additional lands and
    estates therein which may, from time to time, by supplemental mortgage or otherwise be
    expressly made subject to the lien of the Security Instrument (as defined below);

3.  The buildings, structures, fixtures, additions, enlargements, extensions, modifications,
    repairs, replacements and improvements now or hereafter erected or located on the Land
    (the "Improvements");

4.  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys,
    passages, sewer rights, water, water courses, water rights and powers, air rights and
    development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes,
    tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or
    hereafter belonging, relating or pertaining to the Land and the Improvements and the
    reversion and reversions, remainder and remainders, and all land lying in the bed of any
    street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center
    line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy
    and rights of curtesy, property, possession, claim and demand whatsoever, both at law
    and in equity, of Debtor of, in and to the Land and the Improvements and every part and
    parcel thereof, with the appurtenances thereto;

5.  All machinery, equipment, fixtures (including, but not limited to, all heating, air
    conditioning, plumbing, lighting, communications and elevator fixtures) and other
    property of every kind and nature whatsoever owned by Debtor, or in which Debtor has or
    shall have an interest, now or hereafter located upon the Land and the Improvements, or
    appurtenant thereto, and usable in connection with the present or future operation and
    occupancy of the Land and the Improvements and all building equipment, materials and
    supplies of any nature whatsoever owned by Debtor, or in which Debtor has or shall have
    an interest, now or hereafter located upon the Land and the Improvements, or appurtenant

Bergen County Clerk               V  BK 03323  PG 1671          08/15/2019 02:48 PM          5 of 8

thereto, or usable in connection with the present or future operation and occupancy of the Land and the Improvements (collectively, the "Personal Property"), and the right, title and interest of Debtor in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located, superior in lien to the lien of the Security Instrument and all proceeds and products of the above;

6.    All leases, subleases and other agreements affecting the use, enjoyment or occupancy of the Land and/or the Improvements heretofore or hereafter entered into and all extensions, amendments and modifications thereto, whether before or after the filing by or against Debtor of any petition for relief under 11 U.S.C. §§ 101 et seq., as the same may be amended from time to time (the "bankruptcy code") (the "leases") and all right, title and interest of Debtor, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Debtor of any petition for relief under the bankruptcy code (the "rents") and all proceeds from the sale or other disposition of the leases and the right to receive and apply the rents to the payment of the indebtedness secured by the Security Instrument;

7.    All proceeds of and any unearned premiums on any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

8.    All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

9.    All refunds, rebates or credits in connection with a reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

10.    All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, proceeds of insurance and condemnation awards, into cash or liquidation claims;

11.    The right, in the name and on behalf of Debtor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of secured party in the Property;

12.    All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein

and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Debtor therein and thereunder, including, without limitation, the right, upon the occurrence and during the continuance of an event of default (as defined in the Security Instrument), or any other document executed in connection therewith, to receive and collect any sums payable to Debtor thereunder; and

13.   All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property.

This UCC Financing Statement is filed in connection with that certain Promissory Note and/or Mortgage and Security Agreement dated as of December __\\____, 2015 (the "Security Instrument") in the principal sum of $2,200,000.00 given by Debtor to Secured Party.

EXHIBIT A
TO
FORM UCC FINANCING STATEMENT


LEGAL DESCRIPTION

SCHEDULE A
LEGAL DESCRIPTION
1407 Palisade Avenue, Teaneck, NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Teaneck, County of Bergen, State of New Jersey:

BEING known and designated as Lots 1, 2, 3, 4, 5, 6 and 7 (1 to 7 inclusive) in Block 460G on a certain map entitled "Supplementary Map of West Englewood Square, Teaneck, New Jersey, belonging to Nelson M. Ayers, January 1926" made by Reginald W. Wells, Civil Engineer and Surveyor and filed in the Bergen County Clerk's Office on March 22, 1926 as Map No. 2083.

BEGINNING at a point on the southwesterly street line of The Plaza (formerly Market Street) distant 225.00 feet along the same from its intersection with the northwesterly street line (formerly Westfield Avenue) thence from said point of beginning;

1. South 38 degrees 19 minutes West 137.37 feet to a point; thence

2. North 53 degrees 16 minutes West 185.34 feet to a point on the southeasterly street line of Palisade Avenue (formerly Station Street); thence

3. North 44 degrees 10 minutes East along said street line of Palisade Avenue 24.81 feet to a point on the said southwesterly street line of The Plaza (formerly Market Street); thence

4. Easterly along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 109.00 feet, a distance of 76.41 feet to a point; thence

5. Southeasterly continuing along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 180.00 feet, a distance of 138.18 feet to a point; thence

6. South 51 degrees 41 minutes East still along said street line of The Plaza (formerly Market Street) 25.00 feet to the point and place of BEGINNING.

NOTE:  Being Lot(s) 1, Block 5008, Tax Map of the Township of Teaneck, County of Bergen.


NOTE:  Lot and Block shown for informational purposes only.





INSTRUMENT # 15-089428

V 02116 0088

RECORDED DATE: 12/01/2015 10:30:14 AM

John S. Hogan
Bergen County Clerk

**Bergen County Clerk**
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



| | |
|---|---|
| **Document Type:**   NON ABSTRACTED DEED | **Transaction #:**        7083267<br>**Document Page Count:**   16<br>**Operator Id:**           CLERK |
| **RETURN TO:**<br><br>VASTOLA FACKELMAN & SULLIVAN<br>P O BOX 7<br>MIDDLESEX  NJ  08846 | **SUBMITTED BY:** |
| **PRIMARY NAME** | **SECONDARY NAME** |
| TEANECK PLAZA VENTURES LLC | TEANECK PLAZA VENTURES LLC |

**ASSOCIATED DOCUMENT(S):**

| | |
|---|---|
| MUNICIPALITY: HACKENSACK<br>LOT:  30<br>BLOCK: 222.01<br><br>FEES / TAXES:<br><br>     Recording:          $183.00<br><br>Total:                  $183.00 | INSTRUMENT #: 15-089428<br>Recorded Date: 12/01/2015 10:30:14 AM<br><br>I hereby CERTIFY that this document is recorded<br>in the Clerk's Office in Bergen County, New<br>Jersey.<br><br>John S. Hogan<br>Bergen County Clerk |

**OFFICIAL RECORDING COVER PAGE**                       Page 1 of 17

# PLEASE DO NOT DETACH
THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.





15-089428   NON ABSTRACTED DEED
V Bk: 02116 Pg: 0088-0104   Rec. Fee $183.50
John S. Hogan, Bergen County Clerk
Recorded 12/01/2015  10:30:14 AM

## OPTION AGREEMENT

This OPTION AGREEMENT (this "Agreement") is made this 11th day of November, 2015, by and among **TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC,** a New Jersey limited liability company ("Seller") and Hutton Ventures LLC, a New Jersey limited liability company (the "Optionholder").

### W̲I̲T̲N̲E̲S̲S̲E̲T̲H̲:

**WHEREAS,** Seller is the equitable owner, fee simple of certain real estate located at 1407 Palisade Avenue, Teaneck, New Jersey; 88 Mckinley Street, Hackensack, New Jersey and 170 South Park Street, Hackensack, New Jersey and more particularly described in Exhibit A attached hereto (the "Real Estate Interest"); and

**WHEREAS,** the Optionholder desires the exclusive right to acquire the Real Estate Interest from Seller, and Seller desires to grant such right to the Real Estate Interest to the Optionholder, all upon the terms and subject to the conditions set forth herein.

**NOW, THEREFORE,** Seller and the Optionholder hereby agree as follows:

### ARTICLE I

### OPTION

1.1    <u>Purchase Option</u>.  For and in consideration of the sum of One Dollars ($1.00)] (the "Option Payment"), payable to Seller on the date hereof, Seller hereby grants to the Optionholder the right to purchase the Real Estate Interest on the terms of and subject to the conditions set forth in this Agreement (the "Option").

1.2    <u>Exercise</u>.  The Option shall be exercised by written notice from the Optionholder to Seller, and given on or before the first (1st) anniversary hereof, (the period from the date of this Agreement through the second (2nd) anniversary hereof, being the "Option Period"). The Optionholder shall have the right, but not the obligation, to exercise the Option and may decline to exercise the Option for any or no reason whatsoever.

1.3    <u>Cash Settlement</u>.  The Optionholder, in its sole discretion, may elect cash settlement of the Option.  In the event the Optionholder elects cash settlement, the Seller shall act as Attorney in Fact and agent for the Optionholder with respect to the sale of the Real Estate Interest, and the amount due under the terms of this Agreement shall be equal to the fair market value of the premises on the date this Option is exercised.  Fair market value shall be determined by an approval appraisal issued by a licensed New Jersey appraiser (the "Cash Settlement Amount").

·

NY:1589361v3

## ARTICLE II

### THE CLOSING AND TRANSFER OF REAL ESTATE INTERESTS

2.1 <u>Closing – Settlement in Specie</u>.  Upon the Optionholder's exercise of the Option, and subject to the terms and conditions set forth in this Agreement, at the Closing (as hereinafter defined), Seller will sell, convey, assign, transfer and deliver to the Optionholder (or its designee(s)), and the Optionholder will purchase, acquire and accept from Seller, the Real Estate Interest for the consideration set forth in Section 2.3 below.  The closing of the purchase and sale of the Real Estate Interests (the "Closing") shall take place at a place of mutual convenience, on a date specified in the Optionholder's notice of exercise which shall be not more than ninety (90) days following the date the Seller receives such notice of exercise pursuant to Section 1.2 above, or at such other place and on such other date as the Optionholder and Seller hereafter agree in writing (the "Closing Date").

2.2 <u>Closing – Cash Settlement</u>.  In the event the Optionholder elects Cash Settlement, upon the sale of the Real Estate Interest, and subject to the terms and conditions set forth in this Agreement, at the Closing (as hereinafter defined), Optionholder will deliver via wire transfer to an account provided by Seller (or its designee(s)), the Cash Settlement Amount.

2.3 <u>Consideration</u>.  In the event the Optionholder exercises this Option the consideration for purchase of the Real Estate Interest shall be as set forth in Article 1.3 above (the "Purchase Price"), payable at Closing by the Optionholder to Seller, by means of wire transfer of immediately available funds to an account designated in writing by Seller to the Optionholder at least three (3) business days before the Closing or, if no such address has been so designated, by check sent to Seller's last known address.

2.4 <u>Deliveries</u>.  Upon demand, Seller shall deliver to the Optionholder:

(i) copies of the deeds for the Real Estate Interests, together with such assignments and transfer instruments as the Optionholder shall require, in form and substance satisfactory to the Optionholder to affect the transfer of ownership of the Real Estate Interest to the Optionholder;

(ii) all other documents, instruments and writings required to be delivered by Seller pursuant to this Agreement or reasonably requested by the Optionholder.

### ARTICLE III
### REPRESENTATIONS AND WARRANTIES OF THE SELLER

3.1 <u>Representations and Warranties of the Seller</u>.  The Seller hereby represents and warrants to the Optionholder as of the date hereof as set forth below:

(a) <u>Due Organization</u>.

NY.1589361v3

- 2 -

(i)     The Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of New Jersey, and has all requisite power and authority, corporate and governmental, to own, lease and operate its respective assets and to carry on its business as now conducted.  The Seller does not transact business in any state other than the State of New Jersey.

(ii)     Copies of the articles of formation and limited liability company operating agreement of the Seller have been furnished by Seller to the Optionholder, and such copies are accurate and complete.

(b)    <u>Ownership of the Real Estate Interest</u>.     There     are     no outstanding options, rights, warrants, conversion rights or other agreements or commitments providing for leasehold or for any other adjustment, purchase or transfer affecting the ownership interests in the Real Estate Interest; Seller owns (beneficially and of record) and has good title to the Real Estate Interest, and has the right, power and capacity to sell, assign and transfer the Real Estate Interests to the Optionholder; the Seller does not require the consent of any other person or entity to this Agreement or the actions taken thereunder; Seller has title in the Real Estate Interest subject to a first Mortgage but otherwise free and clear of any and all Liens (as that term is hereinafter defined); other than this Agreement, Seller has not entered into any contract, agreement or arrangement with respect to the disposition of the Real Estate Interest.  Upon completion of the transactions contemplated hereby at the time of Closing, the Optionholder will have good and marketable title to the Real Estate Interest, free and clear of the Mortgage and any and all Liens.  For purposes of this Agreement, the term "Lien" shall mean any lien, pledge, mortgage, security interest, claim, or any other form of encumbrance.

(c)    <u>Authorization of Transaction</u>.    The Seller has full power and authority to execute and deliver this Agreement and the other documents to be executed and delivered by them at the Closing (the "Transaction Documents") and to perform the obligations hereunder and thereunder.  All acts and proceedings required to be taken by the Seller to authorize the execution, delivery and performance of this Agreement and the other Transaction Documents and all transactions contemplated hereby and thereby has been duly and properly taken.  This Agreement has been, and the other Transaction Documents to be executed and delivered at Closing will be, duly executed and delivered by the Seller.  This Agreement constitutes the lawful, valid and legally binding obligation of the Seller, and the other Transaction Documents will constitute lawful, valid and legally binding obligations, enforceable against Seller in accordance with their respective terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights and remedies and the application of equitable principles.

(d)    <u>Consents and Approvals; No Violations</u>.

(i)     No filing with, and no permit, order, authorization, consent or approval of, any governmental or public body or authority, domestic or foreign, is necessary for the consummation by the Seller of the transactions contemplated by this Agreement.

(ii)     Neither the execution and delivery of this Agreement by the Seller, nor the consummation of the transactions contemplated hereby, nor compliance with any of the provisions hereof will (A) conflict with or result in any breach of any provision of the certificate of formation or operating agreement (or other governing documents) of the Seller, (B) result in a violation or breach of, or constitute (with or without due notice or lapse of time or both) a default under, or give rise to any right of termination, cancellation or acceleration under any of the terms, conditions or provisions of, any indenture, license, contract, agreement or other instrument or obligation to which the Seller is a party or by which either of them or any of their respective properties or assets is or may be bound, or (C) violate any order, writ, injunction, decree, statute, treaty, rule or regulation applicable to the Seller or any of their respective properties or assets.

(e)     Brokers' Fees.  The Seller does not have any liability or obligation to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement for which the Optionholder will be or may reasonably be deemed liable.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF THE OPTIONHOLDER

4.1     The Optionholder hereby represents and warrants to Seller as of the date hereof as set forth:

(a)     Authorization of Transaction.  The Optionholder has the full power and authority to execute and deliver this Agreement and the other Transaction Documents to which it is a party and to perform its obligations hereunder and thereunder.   All acts and proceedings required to be taken by the Optionholder to authorize the execution, delivery and performance of this Agreement and the other Transaction Documents to which it is a party and all transactions contemplated hereby and thereby have been duly and properly taken.  This Agreement has been, and the other Transaction Documents to be executed and delivered by the Optionholder at Closing will be, duly executed and delivered by the Optionholder. This Agreement constitutes the lawful, valid and legally binding obligation of the Optionholder, and the other Transaction Documents, upon execution and delivery by the Optionholder, will constitute lawful, valid and legally binding obligations of the Optionholder, in each case enforceable against the Optionholder in accordance with their respective terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights and remedies and the application of equitable principles.

(b)     Consents and Approvals; No Violations.

(i)     No filing with, and no permit, order, authorization, consent or approval of, any governmental or public body or authority, domestic or foreign, is necessary for the consummation by the Optionholder of the transactions contemplated by this Agreement.

Bergen County Clerk              V  BK 02116  PG 0092          12/01/2015 10:30 AM           5 of 17

(ii)     Neither the execution and delivery of this Agreement by the Optionholder, nor the consummation of the transactions contemplated hereby, nor compliance with any of the provisions hereof will (A) result in a violation or breach of, or constitute (with or without due notice or lapse of time or both) a default under, or give rise to any right of termination, cancellation or acceleration under any of the terms, conditions or provisions of, any indenture, license, contract, agreement or other instrument or obligation to which the Optionholder is a party or by which the Optionholder or any of its properties or assets is or may be bound, or (B) violate any order, writ, injunction, decree, statute, treaty, rule or regulation applicable to the Optionholder or any of its properties or assets.

(c)     Brokers' Fees.  The Optionholder does not have any liability or obligation to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement for which Seller will be or may reasonably be deemed liable.

## ARTICLE V

### COVENANTS OF SELLER

5.1     Interim Conduct of Business.  Except as contemplated by this Agreement or with the prior written consent of the Optionholder, from the date hereof until the sooner of the Closing, expiration of the Option Period, or termination of this Agreement, Seller shall, with respect to the Real Estate Interest, operate in the ordinary course of business, and otherwise consistent with the terms of this Agreement.  Without limiting the generality of the foregoing, Seller will not, without the prior written consent of the Optionholder, do any of the following:

(a)     sell or otherwise dispose of any Real Estate Interest, or grant any options, warrants, or other rights to purchase or acquire (including upon conversion, exchange, or exercise) the Real Estate Interest, without the expressed written consent of the Optionholder;

(b)     agree or commit to do any of the foregoing.

5.2     Consummation.  Subject to the terms and conditions provided herein, upon exercise of the Option, Seller agree to use all reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement in accordance with its terms.

## ARTICLE VI

### CONDITIONS PRECEDENT TO OBLIGATIONS OF THE OPTIONHOLDER

The obligation of the Optionholder to consummate the transactions contemplated by this Agreement is contingent upon the Optionholder election to exercise the Option and is

subject to delivery of all of the items specified in Section 2.4 and fulfillment prior to or at the Closing of the following conditions (unless waived in writing by, and in the sole discretion of, the Optionholder):

      (a)   Accuracy of Warranties and Performance of Covenants. The representations and warranties of Seller contained herein shall be true and accurate as if made on and as of the Closing Date. Seller shall have performed all obligations and complied with each and all of the covenants and agreements required to be performed or complied with by Seller on or prior to the Closing. Seller shall further immediately notify the Optionholder, in writing, in the event that on any date prior to the Closing, any of their representations and warranties contained herein would not be true and accurate if the Closing were instead to occur on such date.

      (b)   No Pending Action. No order of any court, administrative agency or other governmental authority shall be pending which prohibits the carrying out of this Agreement or any of the transactions contemplated hereby or declares unlawful the transactions contemplated hereby.

      (c)   No Adverse Change. There shall not have been, any adverse change in the business, financial condition, operations or results of operations of the Seller.

## ARTICLE VII

## CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER

The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to fulfillment prior to or at the Closing of the following conditions (unless waived in writing by, and in the sole discretion of, Seller):

      (a)   Accuracy of Warranties and Performance of Covenants. The representations and warranties of the Optionholder contained herein shall be true and accurate as if made on and as of the Closing Date. The Optionholder shall have performed all obligations and complied with each and all of the covenants and agreements required to be performed or complied with by the Optionholder on or prior to the Closing.

      (b)   No Pending Action. No order of any court, administrative agency or other governmental authority shall be pending which prohibits the carrying out of this Agreement or any of the transactions contemplated hereby or declares unlawful the transactions contemplated hereby.

## ARTICLE VIII

## INDEMNIFICATION

8.1   Indemnification and Right of Set-Off.

(a)     Notwithstanding any investigation by the Optionholder, Seller shall indemnify and hold harmless the Optionholder from and against any and all losses, damages, liabilities costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, "Losses") caused by or in connection with or relating to any misrepresentation, breach of warranty or failure to fulfill any covenant or agreement contained in this Agreement or in any other Transaction Document, or in any other agreement or document delivered pursuant to the terms hereof or thereof, on the part of Seller, or caused by or in connection with or relating to any legal proceedings initiated or threatened, or based on or with respect to any matter or claim which occurred, accrued or arose, prior to the Closing.

(b)     The Optionholder shall indemnify and hold harmless Seller and its successors and assigns, from and against any and all Losses caused by any misrepresentation, breach of warranty or failure to fulfill any covenant or agreement contained herein on the part of the Optionholder.

(c)     It is understood and agreed that in addition to, and not in limitation of, any and all applicable rights and remedies under this Agreement and under applicable law, the Optionholder hereby reserves and shall have the right to set-off and deduct from any amounts otherwise payable or owing by the Optionholder to Seller under this Agreement or any other Transaction Document or otherwise any and all sums then due and owing by Seller to Optionholder, any or all Losses, incurred or sustained by the Optionholder as a result of any misrepresentation by Seller contained herein or therein or any breach hereof or thereof by Seller, and any damages owing to any Indemnitee pursuant to the indemnification provisions contained in Section 8.1(a) above.  Seller further agree that the Optionholder shall be entitled as a matter of course to specific performance and such other injunctive relief as shall be appropriate.

## ARTICLE IX

## TERMINATION

Notwithstanding anything contained in this Agreement to the contrary, this Agreement may be terminated at any time prior to the Closing:

(a)     by the mutual written consent of Seller and the Optionholder;

(b)     by Seller or the Optionholder, if any court of competent jurisdiction or governmental body, authority or agency having jurisdiction shall have issued an order, decree or ruling or taken any other action restraining, enjoining or otherwise prohibiting the transactions contemplated by this Agreement and such order, decree, ruling or other action shall have become final and non-appealable;

(c)     by the Optionholder, if the Seller shall have breached any of its obligations or representations hereunder in any material respect and such breach shall have continued for a period of 30 days after written notice has been given by the Optionholder to the Seller;

NY:1389361v3

- 7 -

(d)     by Seller, if the Optionholder shall have breached any of its obligations or representations hereunder in any material respect and such breach shall have continued for a period of 30 days after written notice has been given by Seller to the Optionholder; or

(e)     in the event the Optionholder has not exercised the Option during the Option Period.

(f)     By Seller, upon repayment to Optionholder of all sums due and owing by Seller to Optionholder under that certain Promissory Note dated November 11, 2015.

## ARTICLE X

## GENERAL PROVISIONS

10.1    Amendments and Waiver. No amendment, waiver or consent with respect to any provision of this Agreement shall in any event be effective, unless the same shall be in writing and signed by the party to be charged, and then such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

10.2    Notices.    All notices, requests, consents, demands and other communications hereunder must be in writing and shall be personally delivered or sent by facsimile transmission with confirming copy sent by overnight carrier and a delivery receipt obtained, and addressed to the intended recipient as follows:

If to Seller:

c/o Seth Levine
636 South Forest Drive
Teaneck, NJ 07666

If to the Optionholder:

Hutton Ventures, LLC
333 7th Avenue
Third Floor
New York, NY 10001

Any party may change its address or add or change parties for receiving notice by written notice to the other party given in accordance with the foregoing.

10.3    Costs and Expenses; Sales and Transfer Taxes. Each party to this Agreement shall pay such party's own costs and expenses in connection with the execution, delivery and consummation of this Agreement and the other Transaction Documents and the transactions contemplated hereby and thereby.

NY 1589361v3

- 8 -

10.4    Counterparts.  This Agreement may be executed in counterparts and by facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

10.5    Successors and Assigns; Beneficiaries.  This Agreement shall bind and inure to the benefit of the parties named herein and their respective successors, assigns, heirs, devisees, executors, and personal representatives.  The Seller may not assign or delegate this Agreement or any of such party's rights, benefits, duties or obligations under this Agreement without the prior written consent of the Optionholder.  No third party shall be entitled to enforce any provision hereof, and no third party is intended to benefit from this Agreement other than the Indemnitees named or described in Article VIII above.

10.6    Entire Agreement.  This Agreement and the documents referred to herein contain the entire agreement and understanding among the parties with respect to the transactions contemplated hereby and supersede any and all other agreements, understandings and undertakings, whether written or oral, among the parties concerning the subject matter hereof.

10.7    Governing Law; Jurisdiction.  This Agreement shall be interpreted in accordance with the substantive laws of the State of New Jersey applicable to contracts made and to be performed wholly within said State (without giving effect to any contrary conflicts of laws rules of such State).  The parties hereto consent to the exclusive jurisdiction of the Federal and state courts of the State of New Jersey for the adjudication of any dispute arising out of or relating to this Agreement or the transactions contemplated hereby and agree not to assert that any such court is an inconvenient forum for the adjudication of any such dispute.  The parties hereto agree that service of process may be affected in the same way as notice is given pursuant to Section 10.2 hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**SELLER**

TEANECK PLAZA VENTURES, LLC

By: _____
     Seth Levine, Managing Member

LENOX MCKINLEY, LLC

By: _____
     Seth Levine, Managing Member

LENOX SOUTH PARK, LLC

By: _____
     Seth Levine, Managing Member

**OPTIONHOLDER**

HUTTON VENTURES LLC

By: _____
Name: Ron Friedman
Title: Manager

STATE OF NEW JERSEY      :
                           :SS

COUNTY OF MIDDLESEX    :

    I CERTIFY that on November 11th, 2015, Seth Levine, personally came before me and acknowledged under oath, to my satisfaction, that:

    (a)  this person is the Managing Member of **TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC**, the Company named in this document;

    (b)  this person signed this document in their capacity as Managing Member of the company;

    (c)  this person is authorized to execute and deliver this document on behalf of TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC; and

    (d)  this person knows the proper seal of the Company which was affixed to this document.

                             Victoria Marsh
                             Notary Public of the State of New Jersey

                                   VICTORIA B. MARSH
                              A Notary Public of New Jersey
                          My Commission Expires 12/20/2015

STATE OF NEW YORK      :
                           :SS

COUNTY OF _____     :

    I CERTIFY that on November 11, 2015, Ron Friedman, personally came before me and acknowledged under oath, to my satisfaction, that:

    (e)  this person is the Managing Member of **HUTTON VENTURES, LLC**, the Company named in this document;

    (f)  this person signed this document in their capacity as Managing Member of the company;

    (g)  this person is authorized to execute and deliver this document on behalf of HUTTON VENTURES, LLC; and

    (h)  this person knows the proper seal of the Company which was affixed to this document.

    NACHMAN YAAKOV ZISKIND
    Notary Public, State of New York
    No. 02ZI6045602
    Qualified in New York County
    Commission Expires July 31, 2018

                         Notary Public of the State of New York

Exhibit A

## COPY OF DEEDS FOR REAL ESTATE INTEREST

Bergen County Clerk                    V  BK 02116 PG 0100              12/01/2015 10:30 AM              13 of 17

SCHEDULE A
LEGAL DESCRIPTION
170 South Park Street, Hackensack, NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

TRACT I:

BEGINNING in the easterly line of Park Street at the southwesterly corner of the tract conveyed to John O'Shea by Jane Berry and her husband by deed bearing date May 10, 1958 being the northeasterly corner of the lot hereby conveyed being also 47 feet southerly from the southwesterly corner of the lot conveyed by the said William E. Taylor to Wilhelmina Leinweiber by deed bearing date October 8, 1906; running thence

1. Easterly along said lot conveyed to John O'Shea, 135.00 feet; thence

2. Southerly and parallel with Park Street and along land now or formerly of George Shafer and others, 38.00 feet to the northerly line of a laneway leading from Park Street to Union Street; thence

3. Westerly along said laneway and parallel with the first course, 135.00 feet to the easterly line of Park Street; thence

4. Northerly along Park Street, 38.00 feet to the point of BEGINNING.

TRACT II:

BEGINNING at a point in the southeasterly line of South Park Street distant therein southwesterly 23.59 feet from the point of intersection of the said line of South Park Street with the southwesterly line of property shown on map entitled, "Map of Gamewell Property", which said map is on file in the Office of the Clerk of the County of Bergen, as filed Map No. 372 and from said point of beginning; running thence

1. Along said line of South Park Street, South 22 degrees 41 minutes West, 70.59 feet; thence

2. South 67 degrees 29 minutes East, 135.00 feet; thence

3. North 22 degrees 41 minutes East, 69.43 feet; thence

4. North 66 degrees 59 minutes 30 seconds West, 135.00 feet to the said line of South Park Street and the point of BEGINNING.

BEING further known and described as:

BEGINNING at the point of intersection of the southeasterly R.O.W. line of Park Street (30' R.O.W.) with the northeasterly R.O.W. line of a lane, and running; thence

1. South 67 degrees 29 minutes 00 seconds East, a distance of 135.00 feet to a point; thence



SCHEDULE A
LEGAL DESCRIPTION
(Continued)
170 South Park Street, Hackensack NJ

2. North 22 degrees 41 minutes 00 seconds East, a distance of 107.43 feet to a point; thence

3. North 66 degrees 59 minutes 30 seconds West, a distance of 135.00 feet to a point; thence

4. South 22 degrees 41 minutes 00 seconds East, a distance of 108.59 feet to the point and place of BEGINNING.

NOTE:  Being Lot(s) 30, Block 222.01, Tax Map of the City of Hackensack, County of Bergen.

NOTE:  Lot and Block shown for informational purposes only.

SCHEDULE A
LEGAL DESCRIPTION
88 McKinley Street, Hackensack NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEGINNING at a point on the easterly line of McKinley Street (formerly known as South First Street), which point is distant 150.00 feet southerly from the intersection of same with the southerly line of Lexington Avenue and from said point of beginning; running thence

1. South 18 degrees 00 minutes West 125.00 feet along said easterly line of McKinley Street to a point; thence

2. South 78 degrees 50 minutes 15 seconds East 150.00 feet to a point; thence

3. North 18 degrees 00 minutes East 125.00 feet more or less to a point; thence

4. North 78 degrees 50 minutes 15 seconds West 150.00 feet to the easterly line of McKinley Street and the point and place of BEGINNING.

Being known and designated as Lots 52, 53, 54 on a map entitled " Map of Property of William E. Taylor, Near Essex Street Depot, Hackensack, N.J." filed October 8, 1894, as Map No. 710 and part of Lot 51 in map entitled "Map of Property of William E. Taylor, near Essex Street Depot, Hackensack, N.J." filed October 8, 1984, as Map No. 710 and part of Lot 14 on Map entitled, "Property of Carl O. Larson, Hackensack, N.J." filed February 6, 1905 as Map No. 950.

NOTE:  Being Lot(s) 22, Block 81, Tax Map of the City of Hackensack, County of Bergen.

NOTE:  Lot and Block shown for informational purposes only.

SCHEDULE A
LEGAL DESCRIPTION
1407 Palisade Avenue, Teaneck, NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Teaneck, County of Bergen, State of New Jersey.

BEING known and designated as Lots 1, 2, 3, 4, 5, 6 and 7 (1 to 7 inclusive) in Block 460G on a certain map entitled "Supplementary Map of West Englewood Square, Teaneck, New Jersey, belonging to Nelson M. Ayers, January 1926" made by Reginald W. Wells, Civil Engineer and Surveyor and filed in the Bergen County Clerk's Office on March 22, 1926 as Map No. 2083.

BEGINNING at a point on the southwesterly street line of The Plaza (formerly Market Street) distant 225.00 feet along the same from its intersection with the northwesterly street line (formerly Westfield Avenue) thence from said point of beginning;

1. South 38 degrees 19 minutes West 137.37 feet to a point; thence

2. North 53 degrees 16 minutes West 185.34 feet to a point on the southeasterly street line of Palisade Avenue (formerly Station Street); thence

3. North 44 degrees 10 minutes East along said street line of Palisade Avenue 24.81 feet to a point on the said southwesterly street line of The Plaza (formerly Market Street); thence

4. Easterly along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 109.00 feet, a distance of 76.41 feet to a point; thence

5. Southeasterly continuing along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 180.00 feet, a distance of 138.18 feet to a point; thence

6. South 51 degrees 41 minutes East still along said street line of The Plaza (formerly Market Street) 25.00 feet to the point and place of BEGINNING.

NOTE: Being Lot(s) 1, Block 5008, Tax Map of the Township of Teaneck, County of Bergen.

NOTE: Lot and Block shown for informational purposes only.



John S. Hogan
Bergen County Clerk

**Bergen County Clerk**
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 16-030560.03

V 02243 1578

RECORDED DATE: 04/25/2016 02:55:56 PM

| | | |
|---|---|---|
| **Document Type:** NON ABSTRACTED DEED | Transaction #: | 7151338 |
| | Document Page Count: | 6 |
| | Operator Id: | CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MADISON TITLE AGENCY, LLC<br>1125 OCEAN AVENUE<br>LAKEWOOD NJ 08701<br>ERECORDED | Madison Title Agency, LLC<br><br>(732) 333-2667 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| TEANECK PLAZA VENTURES LLC | LAKELAND BANK |

**ASSOCIATED DOCUMENT(S):** V 02116 0088

| | |
|---|---|
| MUNICIPALITY: TEANECK<br>LOT: 0001<br>BLOCK: 5008<br><br>FEES / TAXES:<br><br>Recording:      $93.00<br><br>Total:      $93.00 | **INSTRUMENT #:** 16-030560.03<br>Recorded Date: 04/25/2016 02:55:56 PM<br><br>I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.<br><br>*John S. Hogan*<br>John S. Hogan<br>Bergen County Clerk |

OFFICIAL RECORDING COVER PAGE

Page 1 of 7

# PLEASE DO NOT DETACH
THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

RECORD AND RETURN TO:
Michael J. Brady, Esq.
Harwood Lloyd, LLC
130 Main Street
Hackensack, New Jersey 07601

## SUBORDINATION OF OPTION AGREEMENT

This **SUBORDINATION OF OPTION AGREEMENT** (this "Agreement") is made on April 13, 2016, by and between **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company with an address at 210 River Street, Suite 24, Hackensack, NJ 07601 (hereinafter, "Owner"), **HUTTON VENTURES, LLC** a New Jersey limited liability company with an address at 333 7th Avenue, Third Floor, New York, NY 10001 (hereinafter, "Optionholder"), and **LAKELAND BANK**, a banking corporation organized under the laws of New Jersey, having an address at 250 Oak Ridge Road, Oak Ridge, New Jersey 07438 (hereinafter, "Mortgagee").

### R E C I T A L S

**WHEREAS**, Optionholder holds an option (the "Option") to purchase the real property located at 1407 Palisade Avenue, Teaneck, New Jersey, designated as Block 5008, Lot 1 on the Official Tax Map of the Township of Teaneck, County of Bergen, State of New Jersey (the "Property") pursuant to the terms of that certain Option Agreement by and between Owner and Optionholder, among others, which Option Agreement is dated November 11, 2015 and recorded in the Bergen County Clerk's Office on December 1, 2015 as Instrument Number 15-089428 in Book 2116, page 88 (the "Option Agreement"). The property is more particularly described in "Schedule A" attached hereto and made a part hereof.

**WHEREAS**, Mortgagee is about to make a loan to Owner in the original principal amount of $3,000,000.00 which will be secured by, among other things, a Mortgage and Security Agreement, Assignment of Leases (Absolute) and UCC-1 Financing Statement given by Owner in favor of Mortgagee and to be recorded against the Property (hereinafter collectively referred to as the "New Mortgage") in the Office of the Bergen County Clerk.

**NOW, THEREFORE**, in consideration of the premises, and of the mutual covenants and agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

1.     The undersigned Optionholder hereby subordinates the Option and the Option Agreement as to the Property to the New Mortgage in favor of Mortgagee, which New Mortgage is about to be recorded concurrently or immediately after the recording of this Subordination. The Option and the Option Agreement will be subject to, subordinate and inferior in priority to the New Mortgage. This subordination applies to the Property described herein only. This includes all renewals and extensions of the New Mortgage.

3191916_1

2.    All notices, demands, requests, consents and other communications shall be in writing and served by hand delivery, by certified mail, return receipt requested, or by a recognized overnight delivery service, to the addresses set forth in the caption of this Agreement, unless proper written notice has been given to all other parties of any change in address.  Notices and other written communication shall be deemed to have been properly served upon delivery to the designated address provided, however, that any notice or other communication sent by certified mail, return receipt requested, shall be deemed to have been properly served on the third business day after mailing, regardless of when it is actually received.

If to Mortgagee:            Lakeland Bank
                           417 Cedar Lane
                           Teaneck, NJ 07666
                           Attn.: Max R. Custer, Vice President

With a copy Mortgagee's counsel:   Harwood Lloyd, LLC
                           130 Main Street
                           Hackensack, New Jersey 07601
                           Attn.:  Michael J. Brady, Esq.

If to Owner:               Teaneck Plaza Ventures, LLC
                           210 River Street, Suite 24
                           Hackensack, NJ 07601
                           Attn.: Seth Levine, Member

With a copy to Owner's counsel:   The Law Offices of Andrew Selevan
                           210 River Suite, Suite 12
                           Hackensack, New Jersey 07601
                           Attn.:  Andrew Selevan, Esq

If to Optionholder:        Hutton Ventures, LLC
                           333 7th Avenue, Third Floor
                           New York, NY 10001
                           Attn.:  Eitan Friedman

With a copy to Optionholder's counsel: Vastola & Sullivan, Counsellors at Law
                           495 Union Avenue, Suite 2D
                           Middlesex, New Jersey 08846
                           Attn.: John J. Sullivan, Jr., Esq.

3.    This Agreement changes only the priority of the Option and Option Agreement. The Option Agreement remains in effect in all other respects.

4.    This Agreement is binding upon Optionholder and all who succeed to Optionholder's rights as holder of the Option.

3191916_1

5.     This Agreement contains the entire agreement between the parties on the subjects set forth herein and cannot be changed, modified, waived or canceled except by an agreement in writing executed by the party against whom enforcement of such modification, change, waiver or cancellation is sought.

6.     This Agreement shall be governed by and construed in accordance with the substantive laws of the State of New Jersey. The provisions of this Agreement are to be deemed severable, and the invalidity or unenforceability of any provision shall not affect or impair the remaining provisions which shall continue in full force and effect

7.     This Agreement may be executed in several counterparts each of which when executed and delivered is an original, but all of which together shall constitute one instrument.

8.     The use of the neutral gender in this Agreement shall be deemed to include any other gender, and words in the singular number shall be held to include the plural, when the sense requires.

*[No further text on this page – Signatures appear on following page]*

3191916_1

Bergen County Clerk                    V  BK 02243  PG 1581              04/25/2016 02:55 PM              4 of 7

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement as of the day and year first above written.

|  |  |
|---|---|
| **WITNESS:** | **OPTIONHOLDER:**<br>**HUTTON VENTURES, LLC** |
| _(signature)_ | By: _(signature)_<br>Name: RON FRIEDMAN<br>Title: MEMBER |

### ACKNOWLEDGMENT

STATE OF _NY_ )
          ) ss.:
COUNTY OF _NY_ )

 **I CERTIFY** that on _Nov 3_, 2016, _Ron Fr_ [Name] personally came before me and this person acknowledged under oath, to my satisfaction, that:

 (a) he/she signed and delivered the attached document as _Manager_ [Title] of **HUTTON VENTURES, LLC** the company named in the attached document; and

 (b) this document was signed and made by the company as its voluntary act and deed by virtue of authority from its Members

          _(signature)_
          **Notary Public**

*[Signature page to Subordination of Option Agreement –*
*Signatures continued on following page]*

NACHMAN YAAKOV ZISKIND
Notary Public, State of New York
No. 02ZI6045602
Qualified in New York County
Commission Expires July 31, 2018

3191330_1

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written.

WITNESS:

OWNER:
TEANECK PLAZA VENTURES, LLC

By: _____

**SETH LEVINE**
Member

### ACKNOWLEDGMENT

STATE OF NEW JERSEY    )
                       ) ss.:
COUNTY OF BERGEN       )

I CERTIFY that on ___4/18/16___, 2016, SETH LEVINE personally came before me and this person acknowledged under oath, to my satisfaction, that:

(a)    he signed and delivered the attached document as a Member of TEANECK PLAZA VENTURES, LLC, the company named in the attached document; and

(b)    this document was signed and made by the company as its voluntary act and deed by virtue of authority from its Members.

Notary Public

MICHAEL L. DONINI
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 6/29/2018

MICHAEL L. DONINI
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01DO6007859
Qualified in New York County
Commission Expires Sept. 2, 2019

*[Signature page to Subordination of Option Agreement –
Signatures continued on following page]*

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written.

WITNESS:

MORTGAGEE
LAKELAND BANK

By:

MAX R. CUSTER
Vice President

## ACKNOWLEDGMENT

STATE OF NEW JERSEY )
                     ) ss.:
COUNTY OF BERGEN     )

On this 18th day of April, 2016, before me, the subscriber, personally appeared MAX R. CUSTER, a Vice President of LAKELAND BANK, the New Jersey banking corporation named in the foregoing instrument, who I am satisfied is the person named in and who executed the within instrument, and thereupon acknowledged that he signed, sealed and delivered the same in his capacity as a Vice President of LAKELAND BANK for the purposes therein expressed.

Notary Public

*[Signature page to Subordination of Option Agreement]*

DAWN HORWAY
NOTARY PUBLIC
NEW JERSEY
MY COMMISSION EXPIRES 05/08/2018
ID NO. 2373385

3191916_1





INSTRUMENT # 17-021080

V 02556 1815

RECORDED DATE: 03/08/2017 11:37:36 AM

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/

| Document Type:   Release | Transaction #: | 7418573 |
|---|---|---|
| | Document Page Count: | 9 |
| | Operator Id: | CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| JOHN J SULLIVAN JR ESQUIRE<br>495 UNION AVENUE<br>P O BOX 7<br>MIDDLESEX  NJ  08846 | |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| TEANECK PLAZA VENTURES LLC | HUTTON VENTURES LLC |

ASSOCIATED DOCUMENT(S): V BK 02116 PG 0088

| FEES / TAXES: | | INSTRUMENT #: 17-021080<br>Recorded Date: 03/08/2017 11:37:36 AM |
|---|---|---|
| Recording: | $123.00 | I hereby CERTIFY that this document is recorded<br>in the Clerk's Office in Bergen County, New<br>Jersey. |
| Total: | $123.00 |  |
| | | John S. Hogan<br>Bergen County Clerk |

## OFFICIAL RECORDING COVER PAGE

Page 1 of 10

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Prepared By: _____
John J. Sullivan, Jr., Esquire

17-021080    Release
V Bk: 02556 Pg: 1815-1824   Rec. Fee $123.00
John S. Hogan, Bergen County Clerk
Recorded 03/08/2017  11:37:36 AM

## OPTION MODIFICATION AGREEMENT

THIS AGREEMENT, made this 9 day of Novem 2016 by and between

TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH

PARK, LLC ("Seller") and HUTTON VENTURES, LLC ("Optionholder").

WHEREAS, the parties executed an Option Agreement ("Option") dated November 11, 2015,

regarding premises located at 1407 Palisade Avenue, Teaneck, NJ; 88 Mckinley Street, Hackensack, NJ;

and 170 South Park Street, Hackensack, New Jersey, which premises is more particularly described in

Schedule A, attached hereto; and

WHEREAS, said Option was recorded in the Bergen Clerk's office on December 1, 2015 at

Book 2116, Page 88; and

WHEREAS, the maturity date of said Option is November 11, 2016; and

WHEREAS, the parties are desirous of modifying and extending said Option on the terms and

conditions contained herein.

NOW, THEREFORE, it is agreed as follows:

1.      The date on which the Optionholder may exercise the Option be and is hereby extended

up to and including November 11, 2017.

2.      All other terms and conditions contained in the Option which are not addressed herein

shall remain in full force and effect.

1

SIGNATURES: I agree to the terms of this Option Modification Agreement.

SELLER:

TEANECK PLAZA VENTURES, LLC

By: _____
    Seth Levine, Managing Member

LENOX MCKINLEY, LLC

By: _____
    Seth Levine, Managing Member

LENOX SOUTH PARK, LLC

By: _____
    Seth Levine, Managing Member

OPTIONHOLDER:

HUTTON VENTURES, LLC

By: _____
    Ron Friedman, Manager

2

STATE OF NEW JERSEY        :
                          :SS
COUNTY OF Bergen          :

    I CERTIFY that on November 9, 2016, Seth Levine, personally came before me and acknowledged under oath, to my satisfaction, that:

    (a)  this person is the Managing Member of **TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC**, the Company named in this document;
    (b)  this person signed this document in their capacity as Managing Member of the company;
    (c)  this person is authorized to execute and deliver this document on behalf of TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC; and
    (d)  this person knows the proper seal of the Company which was affixed to this document.

_____
Notary Public of the State of New Jersey

**ANDREW SELEVAN**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires 1/25/2021**

STATE OF NEW YORK   :
                   :SS
COUNTY OF New York  :

    I CERTIFY that on November January 17, 2017, 2016, Ron Friedman, personally came before me acknowledged under oath, to my satisfaction, that:

    (a) this person is the Managing Member of HUTTON VENTURES, LLC, the Company named in this document;
    (b) this person signed this document in his capacity as Managing Member of the Company;
    (c) this person is authorized to execute and deliver this document on behalf of HUTTON VENTURES, LLC; and
    (d) this person knows the proper seal of the Company which was affixed to this document.

**HARRY APPEL**
Notary Public, State of New York
Registration #01AP6310349
Qualified in New York County
Commission Expires August 25, 2018

_____
Notary Public of the State of New York

3

Exhibit A

COPY OF LEGAL DESCRIPTION FOR REAL ESTATE INTEREST

4

SCHEDULE A
LEGAL DESCRIPTION
170 South Park. Street, Hackensack, NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey:

TRACT I:

BEGINNING in the easterly line of Park Street at the southwesterly corner of the tract conveyed to John O'Shea by Jane Berry and her husband by deed bearing date May 10, 1958 being the northeasterly corner of the lot hereby conveyed being also 47 feet southerly from the southwesterly corner of the lot conveyed by the said William E. Taylor to Wilhelmina Leinweiber by deed bearing date October 8, 1906; running thence

1. Easterly along said lot conveyed to John O'Shea, 135.00 feet; thence

2. Southerly and parallel with Park Street and along land now or formerly of George Shafer and others, 38.00 feet to the northerly line of a laneway leading from Park Street to Union Street; thence

3. Westerly along said laneway and parallel with the first course, 135.00 feet to the easterly line of Park Street; thence

4. Northerly along Park Street, 38.00 feet to the point of BEGINNING.

TRACT II:

BEGINNING at a point in the southeasterly line of South Park Street distant therein southwesterly 23.59 feet from the point of intersection of the said line of South Park Street with the southwesterly line of property shown on map entitled, "Map of Gamewell Property", which said map is on file in the Office of the Clerk of the County of Bergen, as filed Map No. 372 and from said point of beginning; running thence

1. Along said line of South Park Street, South 22 degrees 41 minutes West, 70.59 feet; thence

2. South 67 degrees 29 minutes East, 135.00 feet; thence

3. North 22 degrees 41 minutes East, 69.43 feet; thence

4. North 66 degrees 59 minutes 30 seconds West, 135.00 feet to the said line of South Park Street and the point of BEGINNING.

BEING further known and described as:

BEGINNING at the point of intersection of the southeasterly R.O.W. line of Park Street (30' R.O.W.) with the northeasterly R.O.W. line of a lane, and running; thence

1. South 67 degrees 29 minutes 00 seconds East, a distance of 135.00 feet to a point; thence

SCHEDULE A
LEGAL DESCRIPTION
(Continued)
170 South Park Street, Hackensack NJ

2. North 22 degrees 41 minutes 00 seconds East, a distance of 107.43 feet to a point; thence

3. North 66 degrees 59 minutes 30 seconds West, a distance of 135.00 feet to a point; thence

4. South 22 degrees 41 minutes 00 seconds East, a distance of 108.59 feet to the point and place of BEGINNING.

NOTE:  Being Lot(s) 30, Block 222.01, Tax Map of the City of Hackensack, County of Bergen.

NOTE:  Lot and Block shown for informational purposes only.

SCHEDULE A
LEGAL DESCRIPTION
88 McKinley Street, Hackensack NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEGINNING at a point on the easterly line of McKinley Street (formerly known as South First Street), which point is distant 150.00 feet southerly from the intersection of same with the southerly line of Lexington Avenue and from said point of beginning; running thence

1. South 18 degrees 00 minutes West 125.00 feet along said easterly line of McKinley Street to a point; thence

2. South 78 degrees 50 minutes 15 seconds East 150.00 feet to a point; thence

3. North 18 degrees 00 minutes East 125.00 feet more or less to a point; thence

4. North 78 degrees 50 minutes 15 seconds West 150.00 feet to the easterly line of McKinley Street and the point and place of BEGINNING.

Being known and designated as Lots 52, 53, 54 on a map entitled " Map of Property of William E. Taylor, Near Essex Street Depot, Hackensack, N.J." filed October 8, 1894, as Map No. 710 and part of Lot 51 in map entitled "Map of Property of William E. Taylor, near Essex Street Depot, Hackensack, N.J." filed October 8, 1984, as Map No. 710 and part of Lot 14 on Map entitled, "Property of Carl O. Larson, Hackensack, N.J." filed February 6, 1905 as Map No. 950.

NOTE:  Being Lot(s) 22, Block 81, Tax Map of the City of Hackensack, County of Bergen.

NOTE:  Lot and Block shown for informational purposes only.

SCHEDULE A
LEGAL DESCRIPTION
1407 Palisade Avenue, Teaneck, NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Teaneck, County of Bergen, State of New Jersey.

BEING known and designated as Lots 1, 2, 3, 4, 5, 6 and 7 (1 to 7 inclusive) in Block 460G on a certain map entitled "Supplementary Map of West Englewood Square, Teaneck, New Jersey, belonging to Nelson M. Ayers, January 1926" made by Reginald W. Wells, Civil Engineer and Surveyor and filed in the Bergen County Clerk's Office on March 22, 1926 as Map No. 2083.

BEGINNING at a point on the southwesterly street line of The Plaza (formerly Market Street) distant 225.00 feet along the same from its intersection with the northwesterly street line (formerly Westfield Avenue) thence from said point of beginning;

1. South 38 degrees 19 minutes West 137.37 feet to a point; thence

2. North 53 degrees 16 minutes West 185.34 feet to a point on the southeasterly street line of Palisade Avenue (formerly Station Street); thence

3. North 44 degrees 10 minutes East along said street line of Palisade Avenue 24.61 feet to a point on the said southwesterly street line of The Plaza (formerly Market Street); thence

4. Easterly along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 109.00 feet, a distance of 76.41 feet to a point; thence

5. Southeasterly continuing along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 180.00 feet, a distance of 138.18 feet to a point; thence

6. South 51 degrees 41 minutes East still along said street line of The Plaza (formerly Market Street) 25.00 feet to the point and place of BEGINNING.

NOTE:  Being Lot(s) 1, Block 5008, Tax Map of the Township of Teaneck, County of Bergen.

NOTE:  Lot and Block shown for informational purposes only.

| | | |
|---|---|---|
| OPTION MODIFICATION AGREEMENT | : | Dated: November ⌐1⌐, 2016 |
| | : | |
| TEANECK PLAZA VENTURES, LLC; LENOX | : | |
| MCKINLEY, LLC; AND LENOX SOUTH PARK, | : | |
| LLC, | : | |
| | : | |
| Mortgagor, | : | Record and Return to: |
| | : | John J. Sullivan, Jr., Esquire |
| HUTTON VENTURES, LLC, | : | 495 Union Avenue, P.O. Box 7 |
| | : | Middlesex, New Jersey 08846 |
| Mortgagee. | : | |

K:\behenl\REAL ESTATE\Mortgage & Loan Documents\Mortgage\option modification agreement  TEANECK PLAZA lenox.doc

5



INSTRUMENT # 16-002476
V 02153 0810
RECORDED DATE: 01/11/2016 01:31:52 PM

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



| | |
|---|---|
| | Transaction #: 7100271 |
| **Document Type:** NON ABSTRACTED DEED | Document Page Count: 16 |
| | Operator Id: CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| VASTOLA & SULLIVAN<br>495 UNION AVENUE<br>P O BOX 7<br>MIDDLESEX  NJ  08846 | |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| TEANECK PLAZA VENTURES LLC | HUTTON VENTURES LLC |

ASSOCIATED DOCUMENT(S):

| MUNICIPALITY: BERGEN COUNTY | INSTRUMENT #: 16-002476<br>Recorded Date: 01/11/2016 01:31:52 PM |
|---|---|
| FEES / TAXES: | I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey. |
| Recording:        $183.00 | |
| Total:              $183.00 | John S. Hogan<br>Bergen County Clerk |

**OFFICIAL RECORDING COVER PAGE**                                   Page 1 of 17

# PLEASE DO NOT DETACH
THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

36-002476   NON ABSTRACTED DEED
V Bk: 02153 Pg: 0810-0026   Rec. Fee $183.00
John S. Hogan, Bergen County Clerk
Recorded 01/11/2016  01:31:52 PM

*LS   LotR*
*VOSTOla & Sullivan*
*72N   Counsellors AT LAW*
*16P   495 Union Ave*
*183   P.O. Box 7*
*middlesex, N.J. 08846*

## OPTION AGREEMENT

This OPTION AGREEMENT (this "Agreement") is made this ⧸⧸ day of December, 2015, by and among **TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC**, a New Jersey limited liability company ("Seller") and Hutton Ventures LLC, a New Jersey limited liability company (the "Optionholder").

### W̲I̲T̲N̲E̲S̲S̲E̲T̲H̲:

**WHEREAS**, Seller is the equitable owner, fee simple of certain real estate located at 1407 Palisade Avenue, Teaneck, New Jersey; 88 Mckinley Street, Hackensack, New Jersey and 170 South Park Street, Hackensack, New Jersey and more particularly described in Exhibit A attached hereto (the "Real Estate Interest"); and

**WHEREAS**, the Optionholder desires the exclusive right to acquire the Real Estate Interest from Seller, and Seller desires to grant such right to the Real Estate Interest to the Optionholder, all upon the terms and subject to the conditions set forth herein.

**NOW, THEREFORE**, Seller and the Optionholder hereby agree as follows:

## ARTICLE I

## OPTION

1.1   Purchase Option.  For and in consideration of the sum of One Dollars ($1.00)] (the "Option Payment"), payable to Seller on the date hereof, Seller hereby grants to the Optionholder the right to purchase the Real Estate Interest on the terms of and subject to the conditions set forth in this Agreement (the "Option").

1.2   Exercise.  The Option shall be exercised by written notice from the Optionholder to Seller, and given on or before the first (1st) anniversary hereof, (the period from the date of this Agreement through the second (2nd) anniversary hereof, being the "Option Period"). The Optionholder shall have the right, but not the obligation, to exercise the Option and may decline to exercise the Option for any or no reason whatsoever.

1.3   Cash Settlement.  The Optionholder, in its sole discretion, may elect cash settlement of the Option.  In the event the Optionholder elects cash settlement, the Seller shall act as Attorney in Fact and agent for the Optionholder with respect to the sale of the Real Estate Interest, and the amount due under the terms of this Agreement shall be equal to the fair market value of the premises on the date this Option is exercised.  Fair market value shall be determined by an approval appraisal issued by a licensed New Jersey appraiser (the "Cash Settlement Amount").

## ARTICLE II

### THE CLOSING AND TRANSFER OF REAL ESTATE INTERESTS

2.1     Closing – Settlement in Specie.  Upon the Optionholder's exercise of the Option, and subject to the terms and conditions set forth in this Agreement, at the Closing (as hereinafter defined), Seller will sell, convey, assign, transfer and deliver to the Optionholder (or its designee(s)), and the Optionholder will purchase, acquire and accept from Seller, the Real Estate Interest for the consideration set forth in Section 2.3 below.  The closing of the purchase and sale of the Real Estate Interests (the "Closing") shall take place at a place of mutual convenience, on a date specified in the Optionholder's notice of exercise which shall be not more than ninety (90) days following the date the Seller receives such notice of exercise pursuant to Section 1.2 above, or at such other place and on such other date as the Optionholder and Seller hereafter agree in writing (the "Closing Date").

2.2     Closing – Cash Settlement.  In the event the Optionholder elects Cash Settlement, upon the sale of the Real Estate Interest, and subject to the terms and conditions set forth in this Agreement, at the Closing (as hereinafter defined), Optionholder will deliver via wire transfer to an account provided by Seller (or its designee(s)), the Cash Settlement Amount.

2.3     Consideration.  In the event the Optionholder exercises this Option the consideration for purchase of the Real Estate Interest shall be as set forth in Article 1.3 above (the "Purchase Price"), payable at Closing by the Optionholder to Seller, by means of wire transfer of immediately available funds to an account designated in writing by Seller to the Optionholder at least three (3) business days before the Closing or, if no such address has been so designated, by check sent to Seller's last known address.

2.4     Deliveries.     Upon demand, Seller shall deliver to the Optionholder:

(i)     copies of the deeds for the Real Estate Interests, together with such assignments and transfer instruments as the Optionholder shall require, in form and substance satisfactory to the Optionholder to affect the transfer of ownership of the Real Estate Interest to the Optionholder;

(ii)     all other documents, instruments and writings required to be delivered by Seller pursuant to this Agreement or reasonably requested by the Optionholder.

## ARTICLE III
### REPRESENTATIONS AND WARRANTIES OF THE SELLER

3.1     Representations and Warranties of the Seller.  The Seller hereby represents and warrants to the Optionholder as of the date hereof as set forth below:

(a)     Due Organization.

- 2 -

(i)     The Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of New Jersey, and has all requisite power and authority, corporate and governmental, to own, lease and operate its respective assets and to carry on its business as now conducted. The Seller does not transact business in any state other than the State of New Jersey.

(ii)     Copies of the articles of formation and limited liability company operating agreement of the Seller have been furnished by Seller to the Optionholder, and such copies are accurate and complete.

(b)     Ownership of the Real Estate Interest.     There are no outstanding options, rights, warrants, conversion rights or other agreements or commitments providing for leasehold or for any other adjustment, purchase or transfer affecting the ownership interests in the Real Estate Interest; Seller owns (beneficially and of record) and has good title to the Real Estate Interest, and has the right, power and capacity to sell, assign and transfer the Real Estate Interests to the Optionholder; the Seller does not require the consent of any other person or entity to this Agreement or the actions taken thereunder; Seller has title in the Real Estate Interest subject to a first Mortgage but otherwise free and clear of any and all Liens (as that term is hereinafter defined); other than this Agreement, Seller has not entered into any contract, agreement or arrangement with respect to the disposition of the Real Estate Interest. Upon completion of the transactions contemplated hereby at the time of Closing, the Optionholder will have good and marketable title to the Real Estate Interest, free and clear of the Mortgage and any and all Liens. For purposes of this Agreement, the term "Lien" shall mean any lien, pledge, mortgage, security interest, claim, or any other form of encumbrance.

(c)     Authorization of Transaction.     The Seller has full power and authority to execute and deliver this Agreement and the other documents to be executed and delivered by them at the Closing (the "Transaction Documents") and to perform the obligations hereunder and thereunder. All acts and proceedings required to be taken by the Seller to authorize the execution, delivery and performance of this Agreement and the other Transaction Documents and all transactions contemplated hereby and thereby has been duly and properly taken. This Agreement has been, and the other Transaction Documents to be executed and delivered at Closing will be, duly executed and delivered by the Seller. This Agreement constitutes the lawful, valid and legally binding obligation of the Seller, and the other Transaction Documents will constitute lawful, valid and legally binding obligations, enforceable against Seller in accordance with their respective terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights and remedies and the application of equitable principles.

(d)     Consents and Approvals; No Violations.

(i)     No filing with, and no permit, order, authorization, consent or approval of, any governmental or public body or authority, domestic or foreign, is necessary for the consummation by the Seller of the transactions contemplated by this Agreement.

(ii)     Neither the execution and delivery of this Agreement by the Seller, nor the consummation of the transactions contemplated hereby, nor compliance with any of the provisions hereof will (A) conflict with or result in any breach of any provision of the certificate of formation or operating agreement (or other governing documents) of the Seller, (B) result in a violation or breach of, or constitute (with or without due notice or lapse of time or both) a default under, or give rise to any right of termination, cancellation or acceleration under any of the terms, conditions or provisions of, any indenture, license, contract, agreement or other instrument or obligation to which the Seller is a party or by which either of them or any of their respective properties or assets is or may be bound, or (C) violate any order, writ, injunction, decree, statute, treaty, rule or regulation applicable to the Seller or any of their respective properties or assets.

(e)     <u>Brokers' Fees</u>.  The Seller does not have any liability or obligation to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement for which the Optionholder will be or may reasonably be deemed liable.

ARTICLE IV

REPRESENTATIONS AND WARRANTIES OF THE OPTIONHOLDER

4.1     The Optionholder hereby represents and warrants to Seller as of the date hereof as set forth:

(a)     <u>Authorization of Transaction</u>.  The Optionholder has the full power and authority to execute and deliver this Agreement and the other Transaction Documents to which it is a party and to perform its obligations hereunder and thereunder.  All acts and proceedings required to be taken by the Optionholder to authorize the execution, delivery and performance of this Agreement and the other Transaction Documents to which it is a party and all transactions contemplated hereby and thereby have been duly and properly taken.  This Agreement has been, and the other Transaction Documents to be executed and delivered by the Optionholder at Closing will be, duly executed and delivered by the Optionholder. This Agreement constitutes the lawful, valid and legally binding obligation of the Optionholder, and the other Transaction Documents, upon execution and delivery by the Optionholder, will constitute lawful, valid and legally binding obligations of the Optionholder, in each case enforceable against the Optionholder in accordance with their respective terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights and remedies and the application of equitable principles.

(b)     <u>Consents and Approvals; No Violations</u>.

(i)     No filing with, and no permit, order, authorization, consent or approval of, any governmental or public body or authority, domestic or foreign, is necessary for the consummation by the Optionholder of the transactions contemplated by this Agreement.

(ii)     Neither the execution and delivery of this Agreement by the Optionholder, nor the consummation of the transactions contemplated hereby, nor compliance with any of the provisions hereof will (A) result in a violation or breach of, or constitute (with or without due notice or lapse of time or both) a default under, or give rise to any right of termination, cancellation or acceleration under any of the terms, conditions or provisions of, any indenture, license, contract, agreement or other instrument or obligation to which the Optionholder is a party or by which the Optionholder or any of its properties or assets is or may be bound, or (B) violate any order, writ, injunction, decree, statute, treaty, rule or regulation applicable to the Optionholder or any of its properties or assets.

(c)     <u>Brokers' Fees</u>.  The Optionholder does not have any liability or obligation to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement for which Seller will be or may reasonably be deemed liable.

## ARTICLE V

## COVENANTS OF SELLER

5.1     <u>Interim Conduct of Business</u>.  Except as contemplated by this Agreement or with the prior written consent of the Optionholder, from the date hereof until the sooner of the Closing, expiration of the Option Period, or termination of this Agreement, Seller shall, with respect to the Real Estate Interest, operate in the ordinary course of business, and otherwise consistent with the terms of this Agreement.  Without limiting the generality of the foregoing, Seller will not, without the prior written consent of the Optionholder, do any of the following:

(a)     sell or otherwise dispose of any Real Estate Interest, or grant any options, warrants, or other rights to purchase or acquire (including upon conversion, exchange, or exercise) the Real Estate Interest, without the expressed written consent of the Optionholder;

(b)     agree or commit to do any of the foregoing.

5.2     <u>Consummation</u>.  Subject to the terms and conditions provided herein, upon exercise of the Option, Seller agree to use all reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement in accordance with its terms.

## ARTICLE VI

## CONDITIONS PRECEDENT TO OBLIGATIONS OF THE OPTIONHOLDER

The obligation of the Optionholder to consummate the transactions contemplated by this Agreement is contingent upon the Optionholder election to exercise the Option and is

subject to delivery of all of the items specified in Section 2.4 and fulfillment prior to or at the Closing of the following conditions (unless waived in writing by, and in the sole discretion of, the Optionholder):

(a)   Accuracy of Warranties and Performance of Covenants.   The representations and warranties of Seller contained herein shall be true and accurate as if made on and as of the Closing Date.   Seller shall have performed all obligations and complied with each and all of the covenants and agreements required to be performed or complied with by Seller on or prior to the Closing.   Seller shall further immediately notify the Optionholder, in writing, in the event that on any date prior to the Closing, any of their representations and warranties contained herein would not be true and accurate if the Closing were instead to occur on such date.

(b)   No Pending Action.   No order of any court, administrative agency or other governmental authority shall be pending which prohibits the carrying out of this Agreement or any of the transactions contemplated hereby or declares unlawful the transactions contemplated hereby.

(c)   No Adverse Change.   There shall not have been, any adverse change in the business, financial condition, operations or results of operations of the Seller.

## ARTICLE VII

### CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER

The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to fulfillment prior to or at the Closing of the following conditions (unless waived in writing by, and in the sole discretion of, Seller):

(a)   Accuracy of Warranties and Performance of Covenants.   The representations and warranties of the Optionholder contained herein shall be true and accurate as if made on and as of the Closing Date.   The Optionholder shall have performed all obligations and complied with each and all of the covenants and agreements required to be performed or complied with by the Optionholder on or prior to the Closing.

(b)   No Pending Action.   No order of any court, administrative agency or other governmental authority shall be pending which prohibits the carrying out of this Agreement or any of the transactions contemplated hereby or declares unlawful the transactions contemplated hereby.

## ARTICLE VIII

### INDEMNIFICATION

8.1    Indemnification and Right of Set-Off.

(a)     Notwithstanding any investigation by the Optionholder, Seller shall indemnify and hold harmless the Optionholder from and against any and all losses, damages, liabilities costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, "Losses") caused by or in connection with or relating to any misrepresentation, breach of warranty or failure to fulfill any covenant or agreement contained in this Agreement or in any other Transaction Document, or in any other agreement or document delivered pursuant to the terms hereof or thereof, on the part of Seller, or caused by or in connection with or relating to any legal proceedings initiated or threatened, or based on or with respect to any matter or claim which occurred, accrued or arose, prior to the Closing.

(b)     The Optionholder shall indemnify and hold harmless Seller and its successors and assigns, from and against any and all Losses caused by any misrepresentation, breach of warranty or failure to fulfill any covenant or agreement contained herein on the part of the Optionholder.

(c)     It is understood and agreed that in addition to, and not in limitation of, any and all applicable rights and remedies under this Agreement and under applicable law, the Optionholder hereby reserves and shall have the right to set-off and deduct from any amounts otherwise payable or owing by the Optionholder to Seller under this Agreement or any other Transaction Document or otherwise any and all sums then due and owing by Seller to Optionholder, any or all Losses, incurred or sustained by the Optionholder as a result of any misrepresentation by Seller contained herein or therein or any breach hereof or thereof by Seller, and any damages owing to any Indemnitee pursuant to the indemnification provisions contained in Section 8.1(a) above.  Seller further agree that the Optionholder shall be entitled as a matter of course to specific performance and such other injunctive relief as shall be appropriate.

## ARTICLE IX

## TERMINATION

Notwithstanding anything contained in this Agreement to the contrary, this Agreement may be terminated at any time prior to the Closing:

(a)     by the mutual written consent of Seller and the Optionholder;

(b)     by Seller or the Optionholder, if any court of competent jurisdiction or governmental body, authority or agency having jurisdiction shall have issued an order, decree or ruling or taken any other action restraining, enjoining or otherwise prohibiting the transactions contemplated by this Agreement and such order, decree, ruling or other action shall have become final and non-appealable;

(c)     by the Optionholder, if the Seller shall have breached any of its obligations or representations hereunder in any material respect and such breach shall have continued for a period of 30 days after written notice has been given by the Optionholder to the Seller;

NY:1589361v3                               - 7 -

(d)     by Seller, if the Optionholder shall have breached any of its obligations or representations hereunder in any material respect and such breach shall have continued for a period of 30 days after written notice has been given by Seller to the Optionholder; or

(e)     in the event the Optionholder has not exercised the Option during the Option Period.

(f)     By Seller, upon repayment to Optionholder of all sums due and owing by Seller to Optionholder under that certain Promissory Note dated December 11, 2015.

**ARTICLE X**

**GENERAL PROVISIONS**

10.1   <u>Amendments and Waiver</u>.  No amendment, waiver or consent with respect to any provision of this Agreement shall in any event be effective, unless the same shall be in writing and signed by the party to be charged, and then such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

10.2   <u>Notices</u>.   All notices, requests, consents, demands and other communications hereunder must be in writing and shall be personally delivered or sent by facsimile transmission with confirming copy sent by overnight carrier and a delivery receipt obtained, and addressed to the intended recipient as follows:

If to Seller:

c/o Seth Levine
636 South Forest Drive
Teaneck, NJ 07666

If to the Optionholder:

Hutton Ventures, LLC
333 7th Avenue
Third Floor
New York, NY 10001

Any party may change its address or add or change parties for receiving notice by written notice to the other party given in accordance with the foregoing.

10.3   <u>Costs and Expenses; Sales and Transfer Taxes</u>.   Each party to this Agreement shall pay such party's own costs and expenses in connection with the execution, delivery and consummation of this Agreement and the other Transaction Documents and the transactions contemplated hereby and thereby.

- 8 -

10.4   Counterparts.  This Agreement may be executed in counterparts and by facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

10.5   Successors and Assigns; Beneficiaries.   This Agreement shall bind and inure to the benefit of the parties named herein and their respective successors, assigns, heirs, devisees, executors, and personal representatives.  The Seller may not assign or delegate this Agreement or any of such party's rights, benefits, duties or obligations under this Agreement without the prior written consent of the Optionholder.  No third party shall be entitled to enforce any provision hereof, and no third party is intended to benefit from this Agreement other than the Indemnitees named or described in Article VIII above.

10.6   Entire Agreement.  This Agreement and the documents referred to herein contain the entire agreement and understanding among the parties with respect to the transactions contemplated hereby and supersede any and all other agreements, understandings and undertakings, whether written or oral, among the parties concerning the subject matter hereof.

10.7   Governing Law; Jurisdiction.   This Agreement shall be interpreted in accordance with the substantive laws of the State of New Jersey applicable to contracts made and to be performed wholly within said State (without giving effect to any contrary conflicts of laws rules of such State).  The parties hereto consent to the exclusive jurisdiction of the Federal and state courts of the State of New Jersey for the adjudication of any dispute arising out of or relating to this Agreement or the transactions contemplated hereby and agree not to assert that any such court is an inconvenient forum for the adjudication of any such dispute.  The parties hereto agree that service of process may be affected in the same way as notice is given pursuant to Section 10.2 hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**SELLER**

TEANECK PLAZA VENTURES, LLC

By: _____
       Seth Levine, Managing Member

LENOX MCKINLEY, LLC

By: _____
       Seth Levine, Managing Member

LENOX SOUTH PARK, LLC

By: _____
       Seth Levine, Managing Member


**OPTIONHOLDER**

HUTTON VENTURES LLC

By: _____
Name: Ron Friedman
Title: Manager

STATE OF NEW JERSEY     :
                               :SS

COUNTY OF MIDDLESEX    :

      **I CERTIFY** that on December __//__, 2015, Seth Levine, personally came before me and acknowledged under oath, to my satisfaction, that:

      (a) this person is the Managing Member of **TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC**, the Company named in this document;

      (b) this person signed this document in their capacity as Managing Member of the company;

      (c) this person is authorized to execute and deliver this document on behalf of TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC; and

      (d) this person knows the proper seal of the Company which was affixed to this document.

                        Victoria Marsh
                        Notary Public of the State of New Jersey

                        VICTORIA B. MARSH
                        A Notary Public of New Jersey
                        My Commission Expires 12/20/2015

STATE OF NEW YORK     :
                          :SS

COUNTY OF _____/_y___   :

      **I CERTIFY** that on December __??__, 2015, Ron Friedman, personally came before me and acknowledged under oath, to my satisfaction, that:

      (e) this person is the Managing Member of **HUTTON VENTURES, LLC**, the Company named in this document;

      (f) this person signed this document in their capacity as Managing Member of the company;

      (g) this person is authorized to execute and deliver this document on behalf of HUTTON VENTURES, LLC; and

      (h) this person knows the proper seal of the Company which was affixed to this document.

NACHMAN YAAKOV ZISKIND
Notary Public, State of New York
No. 02ZI6045602
Qualified in New York County
Commission Expires July 31, 2018

                        Notary Public of the State of New York

- 11 -

Exhibit **A**

**COPY OF DEEDS FOR REAL ESTATE INTEREST**

SCHEDULE A
LEGAL DESCRIPTION
170 South Park Street, Hackensack, NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

TRACT I:

BEGINNING in the easterly line of Park Street at the southwesterly corner of the tract conveyed to John O'Shea by Jane Berry and her husband by deed bearing date May 10, 1958 being the northeasterly corner of the lot hereby conveyed being also 47 feet southerly from the southwesterly corner of the lot conveyed by the said William E. Taylor to Wilhelmina Leinweiber by deed bearing date October 8, 1906; running thence

1. Easterly along said lot conveyed to John O'Shea, 135.00 feet; thence

2. Southerly and parallel with Park Street and along land now or formerly of George Shafer and others, 38.00 feet to the northerly line of a laneway leading from Park Street to Union Street; thence

3. Westerly along said laneway and parallel with the first course, 135.00 feet to the easterly line of Park Street; thence

4. Northerly along Park Street, 38.00 feet to the point of BEGINNING.

TRACT II:

BEGINNING at a point in the southeasterly line of South Park Street distant therein southwesterly 23.59 feet from the point of intersection of the said line of South Park Street with the southwesterly line of property shown on map entitled, "Map of Gamewell Property", which said map is on file in the Office of the Clerk of the County of Bergen, as filed Map No. 372 and from said point of beginning; running thence

1. Along said line of South Park Street, South 22 degrees 41 minutes West, 70.59 feet; thence

2. South 67 degrees 29 minutes East, 135.00 feet; thence

3. North 22 degrees 41 minutes East, 69.43 feet; thence

4. North 66 degrees 59 minutes 30 seconds West, 135.00 feet to the said line of South Park Street and the point of BEGINNING.

BEING further known and described as:

BEGINNING at the point of intersection of the southeasterly R.O.W. line of Park Street (30' R.O.W.) with the northeasterly R.O.W. line of a lane, and running; thence

1. South 67 degrees 29 minutes 00 seconds East, a distance of 135.00 feet to a point; thence

SCHEDULE A
LEGAL DESCRIPTION
(Continued)
170 South Park Street, Hackensack NJ

2. North 22 degrees 41 minutes 00 seconds East, a distance of 107.43 feet to a point; thence

3. North 66 degrees 59 minutes 30 seconds West, a distance of 135.00 feet to a point; thence

4. South 22 degrees 41 minutes 00 seconds East, a distance of 108.59 feet to the point and place of BEGINNING.

NOTE:  Being Lot(s) 30, Block 222.01, Tax Map of the City of Hackensack, County of Bergen.

NOTE:  Lot and Block shown for informational purposes only.

SCHEDULE A
LEGAL DESCRIPTION
88 Mckinley Street, Hackensack NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEGINNING at a point on the easterly line of McKinley Street (formerly known as South First Street), which point is distant 150.00 feet southerly from the intersection of same with the southerly line of Lexington Avenue and from said point of beginning; running thence

1. South 18 degrees 00 minutes West 125.00 feet along said easterly line of McKinley Street to a point; thence

2. South 78 degrees 50 minutes 15 seconds East 150.00 feet to a point; thence

3. North 18 degrees 00 minutes East 125.00 feet more or less to a point; thence

4. North 78 degrees 50 minutes 15 seconds West 150.00 feet to the easterly line of McKinley Street and the point and place of BEGINNING.

Being known and designated as Lots 52, 53, 54 on a map entitled " Map of Property of William E. Taylor, Near Essex Street Depot, Hackensack, N.J." filed October 8, 1894, as Map No. 710 and part of Lot 51 in map entitled "Map of Property of William E. Taylor, near Essex Street Depot, Hackensack, N.J." filed October 8, 1894, as Map No. 710 and part of Lot 14 on Map entitled, "Property of Carl O. Larson, Hackensack, N.J." filed February 6, 1905 as Map No. 950.

NOTE:  Being Lot(s) 22, Block 81, Tax Map of the City of Hackensack, County of Bergen.


NOTE:  Lot and Block shown for informational purposes only.

SCHEDULE A
LEGAL DESCRIPTION
1407 Palisade Avenue, Teaneck, NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Teaneck, County of Bergen, State of New Jersey.

BEING known and designated as Lots 1, 2, 3, 4, 5, 6 and 7 (1 to 7 inclusive) in Block 460G on a certain map entitled "Supplementary Map of West Englewood Square, Teaneck, New Jersey, belonging to Nelson M. Ayers, January 1926" made by Reginald W. Wells, Civil Engineer and Surveyor and filed in the Bergen County Clerk's Office on March 22, 1926 as Map No. 2083.

BEGINNING at a point on the southwesterly street line of The Plaza (formerly Market Street) distant 225.00 feet along the same from its intersection with the northwesterly street line (formerly Westfield Avenue) thence from said point of beginning;

1. South 38 degrees 19 minutes West 137.37 feet to a point; thence

2. North 53 degrees 16 minutes West 185.34 feet to a point on the southeasterly street line of Palisade Avenue (formerly Station Street); thence

3. North 44 degrees 10 minutes East along said street line of Palisade Avenue 24.81 feet to a point on the said southwesterly street line of The Plaza (formerly Market Street); thence

4. Easterly along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 109.00 feet, a distance of 76.41 feet to a point; thence

5. Southeasterly continuing along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 180.00 feet, a distance of 138.18 feet to a point; thence

6. South 51 degrees 41 minutes East still along said street line of The Plaza (formerly Market Street) 25.00 feet to the point and place of BEGINNING.

NOTE: Being Lot(s) 1, Block 5008, Tax Map of the Township of Teaneck, County of Bergen.

NOTE: Lot and Block shown for informational purposes only.



John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 16-030560.04
V 02243 1585
RECORDED DATE: 04/25/2016 02:55:57 PM

| | |
|---|---|
| **Document Type:** NON ABSTRACTED DEED | **Transaction #:** 7151338 |
| | **Document Page Count:** 6 |
| | **Operator Id:** CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MADISON TITLE AGENCY, LLC<br>1125 OCEAN AVENUE<br>LAKEWOOD NJ 08701<br>ERECORDED | Madison Title Agency, LLC<br><br><br>(732) 333-2667 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| TEANECK PLAZA VENTURES LLC | LAKELAND BANK |

**ASSOCIATED DOCUMENT(S):** V 02153 0810

| | |
|---|---|
| MUNICIPALITY: TEANECK | INSTRUMENT #: 16-030560.04<br>Recorded Date: 04/25/2016 02:55:57 PM |
| FEES / TAXES: | I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey. |
| Recording:        $93.00 | |
| Total:            $93.00 | *John S. Hogan*<br>John S. Hogan<br>Bergen County Clerk |

**OFFICIAL RECORDING COVER PAGE**

Page 1 of 7

# PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

**RECORD AND RETURN TO:**
Michael J. Brady, Esq.
Harwood Lloyd, LLC
130 Main Street
Hackensack, New Jersey 07601

## SUBORDINATION OF OPTION AGREEMENT

This **SUBORDINATION OF OPTION AGREEMENT** (this "Agreement") is made on April 13, 2016, by and between **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company with an address at 210 River Street, Suite 24, Hackensack, NJ 07601 (hereinafter, "Owner"), **HUTTON VENTURES, LLC** a New Jersey limited liability company with an address at 333 7th Avenue, Third Floor, New York, NY 10001 (hereinafter, "Optionholder"), and **LAKELAND BANK**, a banking corporation organized under the laws of New Jersey, having an address at 250 Oak Ridge Road, Oak Ridge, New Jersey 07438 (hereinafter, "Mortgagee").

### R E C I T A L S

**WHEREAS,** Optionholder holds an option (the "Option") to purchase the real property located at 1407 Palisade Avenue, Teaneck, New Jersey, designated as Block 5008, Lot 1 on the Official Tax Map of the Township of Teaneck, County of Bergen, State of New Jersey (the "Property") pursuant to the terms of that certain Option Agreement by and between Owner and Optionholder, among others, which Option Agreement is dated December 11, 2015 and recorded in the Bergen County Clerk's Office on January 11, 2016, as Instrument Number 16-002476 in Book 2153, page 810 (the "Option Agreement"). The property is more particularly described in "Schedule A" attached hereto and made a part hereof.

**WHEREAS,** Mortgagee is about to make a loan to Owner in the original principal amount of $3,000,000.00 which will be secured by, among other things, a Mortgage and Security Agreement, Assignment of Leases (Absolute) and UCC-1 Financing Statement given by Owner in favor of Mortgagee and to be recorded against the Property (hereinafter collectively referred to as the "New Mortgage") in the Office of the Bergen County Clerk.

**NOW, THEREFORE,** in consideration of the premises, and of the mutual covenants and agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

1.     The undersigned Optionholder hereby subordinates the Option and the Option Agreement as to the Property to the New Mortgage in favor of Mortgagee, which New Mortgage is about to be recorded concurrently or immediately after the recording of this Subordination. The Option and the Option Agreement will be subject to, subordinate and inferior in priority to the New Mortgage.   This subordination applies to the Property described herein only. This includes all renewals and extensions of the New Mortgage.

3191330_1

2.      All notices, demands, requests, consents and other communications shall be in writing and served by hand delivery, by certified mail, return receipt requested, or by a recognized overnight delivery service, to the addresses set forth in the caption of this Agreement, unless proper written notice has been given to all other parties of any change in address. Notices and other written communication shall be deemed to have been properly served upon delivery to the designated address provided, however, that any notice or other communication sent by certified mail, return receipt requested, shall be deemed to have been properly served on the third business day after mailing, regardless of when it is actually received.

|                                         |                                                |
|-----------------------------------------|------------------------------------------------|
| If to Mortgagee:                        | Lakeland Bank                                  |
|                                         | 417 Cedar Lane                                 |
|                                         | Teaneck, NJ 07666                              |
|                                         | Attn.: Max R. Custer, Vice President           |
|                                         |                                                |
| With a copy Mortgagee's counsel:        | Harwood Lloyd, LLC                             |
|                                         | 130 Main Street                                |
|                                         | Hackensack, New Jersey 07601                   |
|                                         | Attn.: Michael J. Brady, Esq.                  |
|                                         |                                                |
| If to Owner:                            | Teaneck Plaza Ventures, LLC                    |
|                                         | 210 River Street, Suite 24                     |
|                                         | Hackensack, NJ 07601                           |
|                                         | Attn.: Seth Levine, Member                     |
|                                         |                                                |
| With a copy to Owner's counsel:         | The Law Offices of Andrew Selevan              |
|                                         | 210 River Suite, Suite 12                      |
|                                         | Hackensack, New Jersey 07601                   |
|                                         | Attn.:  Andrew Selevan, Esq.                   |
|                                         |                                                |
| If to Optionholder:                     | Hutton Ventures, LLC                           |
|                                         | 333 7th Avenue, Third Floor                    |
|                                         | New York, NY 10001                             |
|                                         | Attn.: Eitan Friedman                          |
|                                         |                                                |
| With a copy to Optionholder's counsel:  | Vastolla & Sullivan, Counsellors at Law        |
|                                         | 495 Union Avenue, Suite 2D                     |
|                                         | Middlesex, New Jersey 08846                    |
|                                         | Attn.: John J. Sullivan, Jr., Esq.             |

3.      This Agreement changes only the priority of the Option and Option Agreement. The Option Agreement remains in effect in all other respects.

4.      This Agreement is binding upon Optionholder and all who succeed to Optionholder's rights as holder of the Option.

3191330_1

5.     This Agreement contains the entire agreement between the parties on the subjects set forth herein and cannot be changed, modified, waived or canceled except by an agreement in writing executed by the party against whom enforcement of such modification, change, waiver or cancellation is sought.

6.     This Agreement shall be governed by and construed in accordance with the substantive laws of the State of New Jersey. The provisions of this Agreement are to be deemed severable, and the invalidity or unenforceability of any provision shall not affect or impair the remaining provisions which shall continue in full force and effect

7.     This Agreement may be executed in several counterparts each of which when executed and delivered is an original, but all of which together shall constitute one instrument.

8.     The use of the neutral gender in this Agreement shall be deemed to include any other gender, and words in the singular number shall be held to include the plural, when the sense requires.

*[No further text on this page – Signatures appear on following page]*

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement as of the day and year first above written.

WITNESS:

OPTIONHOLDER:
HUTTON VENTURES, LLC

By: _Roy Friedman_____
Name: _Roiv FRIEDMAN_____
Title: _member_____

### ACKNOWLEDGMENT

STATE OF _NY_____ )
                             ) ss.:
COUNTY OF _NY_____ )

   **I CERTIFY** that on _APRIL 1_, 2016, _Roy Friedman_____ [Name] personally came before me and this person acknowledged under oath, to my satisfaction, that:

(a)   he/she signed and delivered the attached document as _Manager_____ [Title] of **HUTTON VENTURES, LLC** the company named in the attached document; and

(b)   this document was signed and made by the company as its voluntary act and deed by virtue of authority from its Members.

                                  Notary Public

*[Signature page to Subordination of Option Agreement – Signatures continued on following page]*

NACHMAN YAAKOV ZISKIND
Notary Public, State of New York
No. 02ZI6045602
Qualified in New York County
Commission Expires July 31, 2018

3191916_1

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written.

WITNESS:

OWNER:
TEANECK PLAZA VENTURES, LLC

By: _____
       SETH LEVINE
       Member

## ACKNOWLEDGMENT

STATE OF NEW JERSEY      )
                           ) ss.:
COUNTY OF BERGEN      )

    I CERTIFY that on _4/18/16_, 2016, SETH LEVINE personally came before me and this person acknowledged under oath, to my satisfaction, that:

    (a)    he signed and delivered the attached document as a Member of TEANECK PLAZA VENTURES, LLC, the company named in the attached document; and

    (b)    this document was signed and made by the company as its voluntary act and deed by virtue of authority from its Members.

                          Notary Public

MICHAEL L. DONINI
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 6/29/2018

MICHAEL L. DONINI
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01DO6097859
Qualified in New York County
Commission Expires Sept. 2, 2019

*[Signature page to Subordination of Option Agreement]*
*Signatures continued on following page]*

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement as of the day and year first above written.

WITNESS:

MORTGAGEE
**LAKELAND BANK**

By: _____

MAX R. CUSTER
Vice President

### ACKNOWLEDGMENT

STATE OF NEW JERSEY        )
                                   ) ss.:

COUNTY OF BERGEN        )

On this 18th day of April, 2016, before me, the subscriber, personally appeared **MAX R, CUSTER**, a Vice President of **LAKELAND BANK**, the New Jersey banking corporation named in the foregoing instrument, who I am satisfied is the person named in and who executed the within instrument, and thereupon acknowledged that he signed, sealed and delivered the same in his capacity as a Vice President of **LAKELAND BANK** for the purposes therein expressed.

_____
Notary Public

*[Signature page to Subordination of Option Agreement]*

DAWN HORWAY
NOTARY PUBLIC
NEW JERSEY
MY COMMISSION EXPIRES 05/08/2018
ID NO. 2373365

DAWN HORWAY
NOTARY PUBLIC
NEW JERSEY
EXPIRES 05/08/2018
ID NO. 2373365

3191330_1



**John S. Hogan**
**Bergen County Clerk**

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 17-021073

V 02556 1712

RECORDED DATE: 03/08/2017 11:32:27 AM

| | | |
|---|---|---|
| Document Type: Release | Transaction #: | 7418567 |
| | Document Page Count: | 8 |
| | Operator Id: | CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| JOHN J SULLIVAN JR ESQUIRE<br>495 UNION AVENUE<br>P O BOX 7<br>MIDDLESEX  NJ  08846 | |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| TEANECK PLAZA VENTURES LLC | HUTTON VENTURES LLC |

**ASSOCIATED DOCUMENT(S):** V BK 02153 PG 0810

| FEES / TAXES: | INSTRUMENT #: **17-021073**<br>Recorded Date: 03/08/2017 11:32:27 AM |
|---|---|
| Recording: $113.00 | I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey. |
| Total: $113.00 | John S. Hogan<br>Bergen County Clerk |

**OFFICIAL RECORDING COVER PAGE**

Page 1 of 9

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

17-021073   Release
V Bk: 02556 Pg: L712-1720   Rec. Fee $113.00
John S. Hogan, Bergen County Clerk
Recorded 03/08/2017   11:32:27 AM

Prepared By: _____
John J. Sullivan, Jr., Esquire

## OPTION MODIFICATION AGREEMENT

THIS AGREEMENT, made this 9 day of ___ 2016 by and between

TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH

PARK, LLC ("Seller") and HUTTON VENTURES, LLC ("Optionholder").

WHEREAS, the parties executed an Option Agreement ("Option") dated December 11, 2015,

regarding premises located at 1407 Palisade Avenue, Teaneck, NJ; 88 Mckinley Street, Hackensack, NJ;

and 170 South Park Street, Hackensack, New Jersey, which premises is more particularly described in

Schedule A, attached hereto; and

WHEREAS, said Option was recorded in the Bergen Clerk's office on January 11, 2016 at Book

02153, Page 810; and

WHEREAS, the maturity date of said Option is December 11, 2016; and

WHEREAS, the parties are desirous of modifying and extending said Option on the terms and

conditions contained herein.

NOW, THEREFORE, it is agreed as follows:

1.      The date on which the Optionholder may exercise the Option be and is hereby extended

up to and including December 11, 2017.

2.      All other terms and conditions contained in the Option which are not addressed herein

shall remain in full force and effect.

1

**SIGNATURES:** I agree to the terms of this Option Modification Agreement.

SELLER:

TEANECK PLAZA VENTURES, LLC

By:_____
Seth Levine, Managing Member

LENOX MCKINLEY, LLC

By:_____
Seth Levine, Managing Member

LENOX SOUTH PARK, LLC

By:_____
Seth Levine, Managing Member

OPTIONHOLDER:

HUTTON VENTURES, LLC

By:_____
Ron Friedman, Manager

2

STATE OF NEW JERSEY      :
                                      :SS
COUNTY OF Bergen         :

    I CERTIFY that on November 9 , 2016, Seth Levine, personally came before me and acknowledged under oath, to my satisfaction, that:

    (a)  this person is the Managing Member of **TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC,** the Company named in this document;
    (b)  this person signed this document in their capacity as Managing Member of the company;
    (c)  this person is authorized to execute and deliver this document on behalf of TEANECK PLAZA VENTURES, LLC; LENOX MCKINLEY, LLC; AND LENOX SOUTH PARK, LLC; and
    (d)  this person knows the proper seal of the Company which was affixed to this document.

_____
Notary Public of the State of New Jersey

**ANDREW SELEVAN**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires 1/25/2021**

STATE OF NEW YORK  :
                                      :SS
COUNTY OF New York   :

    I CERTIFY that on ~~November~~ January 17 2017, Ron Friedman, personally came before me acknowledged under oath, to my satisfaction, that:

    (a)  this person is the Managing Member of HUTTON VENTURES, LLC, the Company named in this document;
    (b)  this person signed this document in his capacity as Managing Member of the Company;
    (c)  this person is authorized to execute and deliver this document on behalf of HUTTON VENTURES, LLC; and
    (d)  this person knows the proper seal of the Company which was affixed to this document.

_____
Notary Public of the State of New York

HARRY APPEL
Notary Public, State of New York
Registration #01AP6310349
Qualified in New York County
Commission Expires August 25, 2018

3

Exhibit A

COPY OF LEGAL DESCRIPTION FOR REAL ESTATE INTEREST

4

SCHEDULE A
LEGAL DESCRIPTION
170 South Park Street, Hackensack, NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey:

TRACT I:

BEGINNING in the easterly line of Park Street at the southwesterly corner of the tract conveyed to John O'Shea by Jane Berry and her husband by deed bearing date May 10, 1956 being the northeasterly corner of the lot hereby conveyed being also 47 feet southerly from the southwesterly corner of the lot conveyed by the said William E. Taylor to Wilhelmina Leinweber by deed bearing date October 8, 1908; running thence

1. Easterly along said lot conveyed to John O'Shea, 135.00 feet; thence

2. Southerly and parallel with Park Street and along land now or formerly of George Shafer and others, 38.00 feet to the northerly line of a laneway leading from Park Street to Union Street; thence

3. Westerly along said laneway and parallel with the first course, 135.00 feet to the easterly line of Park Street; thence

4. Northerly along Park Street, 38.00 feet to the point of BEGINNING.

TRACT II:

BEGINNING at a point in the southeasterly line of South Park Street distant therein southwesterly 23.59 feet from the point of intersection of the said line of South Park Street with the southwesterly line of property shown on map entitled, "Map of Garnewell Property", which said map is on file in the Office of the Clerk of the County of Bergen, as filed Map No. 372 and from said point of beginning; running thence

1. Along said line of South Park Street, South 22 degrees 41 minutes West, 70.59 feet; thence

2. South 67 degrees 29 minutes East, 135.00 feet; thence

3. North 22 degrees 41 minutes East, 69.43 feet; thence

4. North 66 degrees 59 minutes 30 seconds West, 135.00 feet to the said line of South Park Street and the point of BEGINNING.

BEING further known and described as:

BEGINNING at the point of intersection of the southeasterly R.O.W. line of Park Street (30' R.O.W.) with the northeasterly R.O.W. line of a lane, and running; thence

1. South 67 degrees 29 minutes 00 seconds East, a distance of 135.00 feet to a point; thence

SCHEDULE A
LEGAL DESCRIPTION
(Continued)
170 South Park Street, Hackensack NJ

2. North 22 degrees 41 minutes 00 seconds East, a distance of 107.43 feet to a point; thence

3. North 68 degrees 59 minutes 30 seconds West, a distance of 135.00 feet to a point; thence

4. South 22 degrees 41 minutes 00 seconds East, a distance of 108.59 feet to the point and place of BEGINNING.

NOTE:  Being Lot(s) 30, Block 222.01, Tax Map of the City of Hackensack, County of Bergen.

NOTE:  Lot and Block shown for informational purposes only.

Bergen County Clerk            V  BK 02556  PG 1718            03/08/2017 11:32 AM            7 of 9

SCHEDULE A
LEGAL DESCRIPTION
88 McKinley Street, Hackensack NJ

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Hackensack, County of Bergen, State of New Jersey.

BEGINNING at a point on the easterly line of McKinley Street (formerly known as South First Street), which point is distant 150.00 feet southerly from the intersection of same with the southerly line of Lexington Avenue and from said point of beginning; running thence

1. South 18 degrees 00 minutes West 125.00 feet along said easterly line of McKinley Street to a point; thence

2. South 78 degrees 50 minutes 15 seconds East 150.00 feet to a point; thence

3. North 18 degrees 00 minutes East 125.00 feet more or less to a point; thence

4. North 78 degrees 50 minutes 15 seconds West 150.00 feet to the easterly line of McKinley Street and the point and place of BEGINNING.

Being known and designated as Lots 52, 53, 54 on a map entitled " Map of Property of William E. Taylor, Near Essex Street Depot, Hackensack, N.J." filed October 8, 1894, as Map No. 710 and part of Lot 51 in map entitled "Map of Property of William E. Taylor, near Essex Street Depot, Hackensack, N.J." filed October 8, 1984, as Map No. 710 and part of Lot 14 on Map entitled, "Property of Carl O. Larson, Hackensack, N.J." filed February 8, 1905 as Map No. 950.

| | | |
|---|---|---|
| OPTION MODIFICATION AGREEMENT | : | Dated: November 9 , 2016 |
| | : | |
| TEANECK PLAZA VENTURES, LLC; LENOX | : | |
| MCKINLEY, LLC; AND LENOX SOUTH PARK, | : | |
| LLC, | : | |
| | : | |
| Mortgagor, | : | Record and Return to: |
| | : | John J. Sullivan, Jr., Esquire |
| HUTTON VENTURES, LLC, | : | 495 Union Avenue, P.O. Box 7 |
| | : | Middlesex, New Jersey 08846 |
| Mortgagee. | : | |

K:\\sultenh\\REAL ESTATE\\Mortgage & Loan Documents\\Mortgage\\option modification agreement  TEANECK PLAZA hutton 2 doc

5

John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/

INSTRUMENT # 19-043036

V 03286 0591

RECORDED DATE: 07/03/2019 03:01:50 PM

| | |
|---|---|
| Transaction #: | 9256095 |
| Document Page Count: | 3 |
| Operator Id: | CLERK |

**Document Type:** NON ABSTRACTED DEED

**RETURN TO:**

MADISON TITLE AGENCY, LLC
1125 OCEAN AVENUE
LAKEWOOD NJ 08701
ERECORDED

**SUBMITTED BY:**

Madison Title Agency, LLC

(732) 333-2667

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| TEANECK PLAZA VENTURES LLC | LAW OFFICES OF CHAIM C ZLOTOWITZ ESQ PLLC |
| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |
| | CHAIM C  ZLOTOWITZ |

**MARGINAL REFERENCES:**

DOCUMENT DATE:  05/31/2019
MUNICIPALITY: TEANECK

FEES / TAXES:
Recording Fee: NON ABSTRACTED
   DEED               $30.00
Additional Pages Fee        $20.00
Homeless Trust Fund - Bergen County   $3.00

Total:            $53.00

INSTRUMENT #: 19-043036
Recorded Date: 07/03/2019 03:01:50 PM

I hereby CERTIFY that this document is recorded
in the Clerk's Office in Bergen County, New
Jersey.

John S. Hogan
Bergen County Clerk

Recording Fees: $53.00
Realty Transfer Tax Fees: $0.00

**OFFICIAL RECORDING COVER PAGE**

Page 1 of 4

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

## DECLARATION OF RESTRICTION

**DECLARATION OF RESTRICTION** made as of May 31, 2019, by Teaneck Plaza Ventures, LLC, with an address at 210 River Street, Hackensack, NJ 07601 (the "LLC" and/or "Declarant").

W I T N E S S E T H :

WHEREAS, Declarant is the (legal and/or beneficial) owner of the fee to the premises: 1407 Palisade Avenue, Teaneck, NJ 07666 and as further described on Schedule A, attached (the "Premises"); and

WHEREAS, the Declarant wishes to set forth herein a declaration of his intention with reference to the Corp. and the Premises.

NOW, THEREFORE, THE DECLARANT HEREBY DECLARES AS FOLLOWS:

1.      The LLC shall not sell, mortgage, assign, lease, convey, transfer, encumber, pledge, hypothecate or otherwise take any action creating a security interest in the LLC and/or the Premises without the written consent of Law Offices of Chaim C Zlotowitz, Esq. PLLC with an address at 140A Washington Ave, Suite 203, Cedarhurst, NY 11516. Any such transfer, assignment or encumbrance, without the written consent of Law Offices of Chaim C Zlotowitz, Esq. PLLC shall be null and void and of no force and effect.

2.      This Declaration shall be binding on the heirs, personal representatives, successors and assigns of the declarant.

3.      This Declaration may not be changed or modified orally and may only be changed, modified or rescinded with the written consent of Law Offices of Chaim C Zlotowitz, Esq. PLLC

4.      Law Offices of Chaim C Zlotowitz, Esq. PLLC shall have the right to terminate or rescind this Declaration of Restriction by himself without the written consent of any other party.

IN WITNESS WHEREOF, the Declarant has executed this Declaration on May 31, 2019

Teaneck Plaza Ventures, LLC

By: _____
Name: Seth Levine
Title:  Authorized Signatory

STATE OF No Jersy )
                              ss.:
COUNTY OF Bergen )

On the 3b day of May in the year 2019, before me, the undersigned, a notary public in and for said state, personally appeared Seth Levine, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) acted, executed the instrument.

* Authorized Signatory of
Teaneck Plaza Ventures, LLC

_____
Notary Public

**ANDREW SELEVAN**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires 1/25/2021**

Schedule A
Property Description

ALL THAT CERTAIN lot, piece or parcel of land situate, lying and being in the Township of Teaneck, County of Bergen and State of New Jersey known and designated as Lots 1, 2, 3, 4, 5, 6 and y (1 to 7 inclusive) in Block 460G on a certain map entitled "Supplementary Map of West Englewood Square, Teaneck, New Jersey, belonging to Nelson M. Ayers, January 1926" made by Reginald W. Wells, Civil Engineer and Surveyor and filed in the Bergen County Clerk's Office on March 22, 1926 as Map No. 2083.

The seven lots above mentioned are contiguous and taken together from a tract of land which is more particularly described as follows:

BEGINNING at a point on the southwesterly street line of The Plaza (formerly Market Street) distant 225.0 feet along the same from its intersection with the northwesterly street line (formerly Westfield Avenue) thence from said point of beginning (1) South 38 degrees 19 minutes West 137.37 feet to a point; thence (2) North 53 degrees 16 minutes West 185.34 feet to a point on the southeasterly street line of Palisade Avenue (formerly Station Street); thence (3) North 44 degrees 10 minutes East along aid street line of Palisade Avenue 24.81 feet to a point on the said southwesterly street line of The Plaza (formerly Market Street); thence (4) Easterly along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 109.0 feet, a distance of 76.41 feet to a point; thence (5) Southeasterly continuing along said street line of The Plaza (formerly Market Street) along the arc of a curve bearing to the right having a radius of 180.0 feet, a distance of 138.18 feet to a point; thence (6) South 51 degrees 41 minutes East still along said street line of The Plaza (formerly Market Street) 25.0 feet to the point or place of BEGINNING.

Bergen County Clerk          BK 03286  PG 0594          07/03/2019 03:01 PM     4 of 4     ** End of Document **

**EXHIBIT C**

Guarantee

Bergen County Clerk          BK 03286  PG 0594          07/03/2019 03:01 PM     4 of 4     ** End of Document **



John S. Hogan
Bergen County Clerk

Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/

INSTRUMENT # 19-043442

V 03287 1308

RECORDED DATE: 07/05/2019 03:09:10 PM

Transaction #:                9256642
Document Page Count:          3
Operator Id:                  CLERK

Document Type:   NON ABSTRACTED DEED

**RETURN TO:**

MADISON TITLE AGENCY, LLC
1125 OCEAN AVENUE
LAKEWOOD NJ 08701
ERECORDED

**SUBMITTED BY:**

Madison Title Agency, LLC

(732) 333-2667

**PRIMARY NAME**

TEANECK PLAZA VENTURES LLC

**SECONDARY NAME**

HERBERT  TEPFER

**ADDITIONAL PRIMARY NAMES**

LENOX TEMPLE LLC

**ADDITIONAL SECONDARY NAMES**

**MARGINAL REFERENCES:**

DOCUMENT DATE: 01/15/2019
MUNICIPALITY: TEANECK
LOT:  1
BLOCK: 5008

FEES / TAXES:
  Recording Fee: NON ABSTRACTED
  DEED                               $30.00
  Additional Pages Fee               $20.00
  Homeless Trust Fund - Bergen County $3.00
Total:                               $53.00

INSTRUMENT #: 19-043442
Recorded Date: 07/05/2019 03:09:10 PM

I hereby CERTIFY that this document is recorded
in the Clerk's Office in Bergen County, New
Jersey.

John S. Hogan
Bergen County Clerk

Recording Fees: $53.00
Realty Transfer Tax Fees: $0.00

## OFFICIAL RECORDING COVER PAGE

Page 1 of 4

# PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

## DECLARATION OF RESTRICTIONS

Declaration of Restrictions made this ___ day of JANUARY, 2019, by SETH LEVINE, Managing Member(s) of:

TEANECK PLAZA VENTURES LLC, as to PARCEL 1 and LENOX TEMPLE LLC, as to PARCEL 2, both with an address at, 210 RIVER ST, STE 24, HACKENSACK, NJ 07601, herein called Declarant(s), do/es hereby state that,

**WITNESSETH:**

WHEREAS the Declarant(s) is/are the Managing Member(s) of TEANECK PLAZA VENTURES LLC, as to PARCEL 1 and LENOX TEMPLE LLC, as to PARCEL 2, both with an address at, 210 RIVER ST, STE 24, HACKENSACK, NJ 07601, NEW JERSEY Limited Liability Company(ies); and

WHEREAS the LLC(s) is/are the owner(s) of premise(s):

PARCEL 1: 1407 PALISADE AVE, TEANECK, NJ 07666
County: BERGEN Block: 5008 Lot: 1

PARCEL 2: 54-78 TEMPLE AVE, HACKENSACK, NJ 07601
County: BERGEN Block: 511 Lot: 11

WHEREAS the Declarant(s) wishes to set forth herein a declaration of his intention with reference to the LLC and the premises.

NOW, THEREFORE, THE DECLARANT(S) HEREBY DECLARES AS FOLLOWS.

    1.    The LLC(s) shall not transfer nor assign nor encumber all or part of the fee estate and/or the interest of the Declarant(s), and nor enter into any lease or third-party agreement, in or relating to the premises without the written consent of HERBERT TEPFER, as Interested Party.  Any such transfer, assignment, encumbrance or agreement, without the written consent of HERBERT TEPFER, as Interested Party, shall be null and void and of no force and effect.

    2.    This Declaration shall be binding upon the heirs, personal representatives, successors and assigns of the Declarant.

    3.    This Declaration may not be changed or modified orally.

IN WITNESS WHEREOF, the Declarant has executed this Declaration this ___ day of JANUARY, 2019.

Consented and Agreed to by

HERBERT TEPFER
as Interested Party

TEANECK PLAZA VENTURES LLC,
as to PARCEL 1
BY: SETH LEVINE
as Declarant(s)

LENOX TEMPLE LLC,
as to PARCEL 2
BY: SETH LEVINE
as Declarant(s)

State of _____, County of _____ ss.:

On the ___ day of JANUARY in the year 2019 before me, the undersigned, personally appeared   HERBERT TEPFER personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Diamond Diamante
Notary Public: NEW YORK
Reg #: 01DI6193371
Qualified: KINGS County
Comm Exp: 9-15-2020

State of ___NJ___, County of __Bergen__) ss.:

On the 15th day of JANUARY year 2019, before me, the undersigned, personally appeared SETH LEVINE *
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

_____
Notary Public

**ANDREW SELEVAN**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires 1/25/2021**

* on behalf of Teaneck Plaza Ventures, LLC and Lenox Temple LLC.

## DECLARATION OF RESTRICTIONS, EASEMENT & COVENANT

TITLE NO.: LT-1611-NJ / MTANJ-125489
=======================================

TEANECK PLAZA VENTURES LLC, as to PARCEL 1
as Declarant(s)

PARCEL 1: 1407 PALISADE AVE, TEANECK, NJ 07666
County: BERGEN Block: 5008 Lot: 1

And

LENOX TEMPLE LLC, as to PARCEL 2
as Declarant(s)

PARCEL 2: 54-78 TEMPLE AVE, HACKENSACK, NJ 07601
County: BERGEN Block: 511 Lot: 11

TO

HERBERT TEPFER
as Interested Party

===================================

Return and Mail To:

HERBERT TEPFER, ESQ.
TEPFER & TEPFER P.C.
4429 18th AVENUE
BROOKLYN, NY 11204-1202
718-854-7200
TEPFERLAW@GMAIL.COM

John S. Hogan
Bergen County Clerk

**Bergen County Clerk**
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/





INSTRUMENT # 19-046734
V 03299 1125
RECORDED DATE: 07/19/2019 12:09:34 PM

| | |
|---|---|
| Document Type: NON ABSTRACTED DEED | Transaction #: 9261592 |
| | Document Page Count: 3 |
| | Operator Id: CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MADISON TITLE AGENCY, LLC<br>1125 OCEAN AVENUE<br>LAKEWOOD NJ 08701<br>ERECORDED | Madison Title Agency. LLC<br><br><br>(732) 333-2667 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| LENOX TEMPLE LLC | HERBERT TEPFER |

| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |
|---|---|
| TEANECK PLAZA VENTURES LLC<br>SETH LEVINE | |

MARGINAL REFERENCES:

| | |
|---|---|
| DOCUMENT DATE: 01/15/2019<br>MUNICIPALITY: TEANECK AND HACKENSACK<br>LOT: 1    11<br>BLOCK: 5008   511 | INSTRUMENT #: 19-046734<br>Recorded Date: 07/19/2019 12:09:34 PM |

FEES / TAXES:

| | |
|---|---|
| Recording Fee: NON ABSTRACTED<br>DEED | $30.00 |
| Additional Pages Fee | $20.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| Total: | $53.00 |

I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.

John S. Hogan
Bergen County Clerk

Recording Fees: $53.00
Realty Transfer Tax Fees: $0.00

**OFFICIAL RECORDING COVER PAGE**                    Page 1 of 4

# <u>PLEASE DO NOT DETACH</u>

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Bergen County Clerk      V BK 03299 PG 1126      07/19/2019 12:09 PM      2 of 4

## DECLARATION OF RESTRICTIONS

Declaration of Restrictions made this ___5 day of **JANUARY, 2019**, by SETH LEVINE, Managing Member(s) of:

**TEANECK PLAZA VENTURES LLC**, as to **PARCEL 1** and **LENOX TEMPLE LLC**, as to **PARCEL 2**, both with an address at, **210 RIVER ST, STE 24, HACKENSACK, NJ 07601**, herein called Declarant(s), do/es hereby state that,

### WITNESSETH:

**WHEREAS** the Declarant(s) is/are the Managing Member(s) of **TEANECK PLAZA VENTURES LLC**, as to **PARCEL 1** and **LENOX TEMPLE LLC**, as to **PARCEL 2**, both with an address at, **210 RIVER ST, STE 24, HACKENSACK, NJ 07601**, **NEW JERSEY** Limited Liability Company(ies); and

**WHEREAS** the LLC(s) is/are the owner(s) of premise(s):

**PARCEL 1: 1407 PALISADE AVE, TEANECK, NJ 07666**
County: BERGEN Block: 5008 Lot: 1

**PARCEL 2: 54-78 TEMPLE AVE, HACKENSACK, NJ 07601**
County: BERGEN Block: 511 Lot: 11

**WHEREAS** the Declarant(s) wishes to set forth herein a declaration of his intention with reference to the LLC and the premises.

**NOW, THEREFORE, THE DECLARANT(S) HEREBY DECLARES AS FOLLOWS.**

    1.     The LLC(s) shall not transfer nor assign nor encumber all or part of the fee estate and/or the interest of the Declarant(s), and nor enter into any lease or third-party agreement, in or relating to the premises without the written consent of HERBERT TEPFER, as Interested Party. Any such transfer, assignment, encumbrance or agreement, without the written consent of HERBERT TEPFER, as Interested Party, shall be null and void and of no force and effect.

    2.     This Declaration shall be binding upon the heirs, personal representatives, successors and assigns of the Declarant.

    3.     This Declaration may not be changed or modified orally.

**IN WITNESS WHEREOF**, the Declarant has executed this Declaration this ___5 day of **JANUARY, 2019**.

Consented and Agreed to by

_____
**HERBERT TEPFER**
as Interested Party

_____
**TEANECK PLAZA VENTURES LLC**,
as to **PARCEL 1**
BY: SETH LEVINE
as Declarant(s)

_____
**LENOX TEMPLE LLC**,
as to **PARCEL 2**
BY: SETH LEVINE
as Declarant(s)

State of __N.J.__, County of __Ber__ )ss.:

     On the __11__ day of JANUARY in the year 2019 before me, the undersigned, personally appeared   HERBERT TEPFER personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Diamond Diamanté
Notary Public NEW YORK
Reg #: 01DI6193371
Qualified: KINGS County
Comm Exp: 9-15-2020

State of ___New Jer___ County of ___Bergen___ ) ss.:

On the 1st day of JANUARY year 2019, before me, the undersigned, personally appeared SETH LEVINE personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

_____
*Notary Public*

ANDREW SELEVAN
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 1/25/2021

## DECLARATION OF RESTRICTIONS, EASEMENT & COVENANT

TITLE NO.: LT-1611-NJ / MTANJ-125489

================================================

TEANECK PLAZA VENTURES LLC, as to PARCEL 1
as Declarant(s)

                                        PARCEL 1: 1407 PALISADE AVE, TEANECK, NJ 07666
                                        County: BERGEN Block: 5008 Lot: 1

And

LENOX TEMPLE LLC, as to PARCEL 2
as Declarant(s)

                                          PARCEL 2: 54-78 TEMPLE AVE, HACKENSACK, NJ 07601
                                        County: BERGEN Block: 511 Lot: 11

TO

HERBERT TEPFER
as Interested Party

================================================

Return and Mail To:

        HERBERT TEPFER, ESQ.
        TEPFER & TEPFER P.C.
        4429 18th AVENUE
        BROOKLYN, NY 11204-1202
        718-854-7200
        TEPFERLAW@GMAIL.COM

John S. Hogan
Bergen County Clerk



Bergen County Clerk
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/

INSTRUMENT # 19-051175

V 03315 0857

RECORDED DATE: 08/07/2019 08:44:50 AM

| | |
|---|---|
| | Transaction #: 9267321 |
| **Document Type:** NON ABSTRACTED DEED | Document Page Count: 1 |
| | Operator Id: CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| BETTER RESEARCH LLC<br>1 PARAGON DRIVE<br>MONTVALE NJ 07645<br>ERECORDED | Better Research LLC<br><br><br>(718) 215-5138 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| TEANECK PLAZA VENTURES LLC | TEANECK PLAZA VENTURES LLC |
| **ADDITIONAL PRIMARY NAMES** | **ADDITIONAL SECONDARY NAMES** |
| LAW OFFICES OF DAVID FLEISCHMANN PC | SETH LEVINE<br>LAW OFFICES OF DAVID FLEISCHMANN PC |

**MARGINAL REFERENCES:**

| | |
|---|---|
| DOCUMENT DATE: 07/03/2019<br>MUNICIPALITY: TEANECK<br>LOT: 1<br>BLOCK: 5008 | INSTRUMENT #: 19-051175<br>Recorded Date: 08/07/2019 08:44:50 AM |
| | I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey. |

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: NON ABSTRACTED DEED | $30.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| Total: | $33.00 |



John S. Hogan
Bergen County Clerk

Recording Fees: $33.00
Realty Transfer Tax Fees: $0.00

**OFFICIAL RECORDING COVER PAGE**                Page 1 of 2

# <u>PLEASE DO NOT DETACH</u>

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

## DECLARATION OF RESTRICTION

**DECLARATION OF RESTRICTION** made as of the 3rd day of July, 2019, by Seth Levine ("Declarant").

### W I T N E S S E T H :

**WHEREAS**, Declarant is the Sole Member of **TEANECK PLAZA VENTURES, LLC**, a New Jersey limited liability company, (the "LLC") and

**WHEREAS**, the LLC is the (legal and/or beneficial) owner of the premises:
**1407 Palisade Ave. Teaneck, NJ 07666**, Block: 5008; Lot: 1 (the "Premises"); and

**WHEREAS**, Declarant wishes to set forth herein a declaration of his intentions with reference to the Companies and the Premises.

**NOW, THEREFORE, DECLARANT HEREBY DECLARES AS FOLLOWS:**

1.   The LLC shall not sell, further mortgage, assign, lease, convey, transfer, encumber, pledge, hypothecate or otherwise take any action creating a security interest in the LLC and/or the Premises without the written consent of Law Offices of David Fleischmann, P.C. with an address at 2233 Nostrand Avenue, 3rd Floor, Brooklyn, New York 11210. Any such transfer, assignment or encumbrance, without the written consent of Law Offices of David Fleischmann, P.C. shall be null and void and of no force and effect.

2.   This Declaration shall be binding on the heirs, personal representatives, successors and assigns of Declarant.

3.   This Declaration may not be changed or modified orally and may only be changed, modified or rescinded with the written consent of Law Offices of David Fleischmann, P.C.

4.   Law Offices of David Fleischmann, P.C. shall have the right to terminate or rescind this Declaration of Restriction by himself without the written consent of any other party.

**IN WITNESS WHEREOF**, Declarant has executed this Declaration as of the 3rd day of July, 2019.

TEANECK PLAZA VENTURES, LLC

SETH LEVINE, sole member

STATE OF  New Jersey )
COUNTY OF  Bronx )    ss.:

I certify that on June 3, 2019, Seth Levine personally came before me and stated to my satisfaction that this person (a) was the maker of the attached instrument; (b) was authorized to and did execute this instrument as sole member of TEANECK PLAZA VENTURES, LLC the entity named in this instrument and; (c) executed this instrument as the act of the entity named in this instrument.

Notary Public

**ANDREW SELEVAN**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires 1/25/2021**

**NEW JERSEY TAX & ASSESSMENT SEARCH**

*Charles Jones*
A DataTrace Company

| | |
|---|---|
| **For:** | BRENNAN TITLE ABSTRACT LLC |
| **Customer ID:** | 240195385 |
| **Reference #:** | BT18422 |
| **Order #:** | 6878749/MT-241-6878749 |
| **Completed Date:** | 08/30/2019    **Report Fee:**    $35.50 |

## CERTIFICATE OF CURRENT PROPERTY TAX AND ASSESSMENT STATUS FOR:

**Municipality:** TEANECK TWP(BERGEN)

(201) 837-4819

818 Teaneck Road
Teaneck Road & Cedar Lane
Teaneck, NJ 07666

| | | | |
|---|---|---|---|
| **Block:** | 5008 | **Owner:** TEANECK PLAZA VENTURES LLC | |
| **Lot:** | 1 | **Property Location:** 1407 PALISADE AVE | |
| **Also:** | | **Mailing:** 210 RIVER STREET #24 HACKENSACK, NJ 07601 | |
| **Lot Size:** | 185X106 | **Tax Rate:** 3.197 per $100 of Assessed Value | **Assessed Values:** |
| **Prop. Code:** | 4A-Commercial | | **Land:** $410,600 |
| | | | **Improvement:** $1,798,400 |

*\*Not to be used to determine the "residential use" for the purposes of P.L. 2004, c. 66 section 8.*     **Total:** $2,209,000

| | |
|---|---|
| **Deduction:** | None |
| **Cert. Of Occup.:** | New Construction & Commercial |
| **Smoke detector:** | Required as per NJAC 5:70-4.19 |
| | Call (201) 837-4861 for inspection     **Inspection Fee:** $75.00 for inspection |

| | | | | |
|---|---|---|---|---|
| **2018** | **Taxes:** | | $70,091.57 | PAID IN FULL |
| **2019** | **Qtr 1** | **Due: 02/01/2019** | $17,523.00 | PAID |
| **2019** | **Qtr 2** | **Due: 05/01/2019** | $17,523.00 | PAID |
| **2019** | **Qtr 3** | **Due: 08/01/2019** | $17,688.46 | PAID; ESTIMATED TAX BILL |
| **2019** | **Qtr 4** | **Due: 11/01/2019** | $17,887.27 | OPEN |
| **2020** | **Qtr 1** | **Due: 02/01/2020** | $17,655.00 | OPEN |
| **2020** | **Qtr 2** | **Due: 05/01/2020** | $17,655.00 | OPEN |
| **Added Assessments:** | | None | | |

| | |
|---|---|
| **Sewer:** | TEANECK TOWNSHIP SEWER 818 TEANECK RD TEANECK,NJ 07666 201-837-4843 |
| | Acct: 14-0069          01/01/2018 - 12/31/2018          $2.22 OPEN PLUS PENALTY |
| | $1,719.64 PAID |
| | Sewer excess charges. INTEREST TO 9/30/2019 $0.30 |
| **Water:** | PRIVATE - SUEZ 69 Devoe Pl. Hackensack,NJ 07601  800-422-5987 |

**Confirmed Assessments:** None

**Liens:** None

**General Remark:** SUBJECT TO ADD'L 6% PENALTY FOR BALANCES OVER $10,000.00

**UNCONFIRMED ASSESSMENTS:**

**Ordinance #:** None          **Adopted On:** None          **Improvement Type:** None

*Charles Jones LLC* guarantees that the above information accurately reflects the contents of the public record as of the completed date.



NEW JERSEY SUPERIOR COURT,
UNITED STATES DISTRICT COURT AND
UNITED STATES BANKRUPTCY COURT

240-1953-85                    RE: BT18422

**CERTIFIED TO:**


BRENNAN TITLE ABSTRACT LLC
457 HADDONFIELD RD STE 305
CHERRY HILL NJ 08002


CHARLES JONES LLC HEREBY CERTIFIES THAT IT HAS SEARCHED THE INDEX OF THE
CIVIL JUDGMENT AND ORDER DOCKET OF THE SUPERIOR COURT OF NEW JERSEY, THE
INDEX OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY,
AND THE INDEX OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF
NEW JERSEY AND DOES NOT FIND REMAINING UNSATISFIED OF RECORD IN ANY OF
THESE COURTS A JUDGMENT OR OTHER DOCKETED RECORD REFERRED TO BY THE
RESPECTIVE INDICES WHICH CONSTITUTES A GENERAL LIEN ON REAL PROPERTY IN
NEW JERSEY, NOR ANY CERCLA LIEN ON SPECIFIC REAL PROPERTY WITHIN NEW
JERSEY NOR ANY PETITION COMMENCING PROCEEDINGS IN BANKRUPTCY EXCEPT AS
BELOW SET FORTH AGAINST:

                                          FROM           TO

   TEANECK PLAZA VENTURES, LLC   (Entity)  08-30-1999   08-30-2019
        *** Name is CLEAR ***


DATED      08-30-2019
TIME       08:45 AM

FEES: $ 12.50
TAX:  $  0.00
TOTAL:$ 12.50                     CHARLES JONES LLC
                                  P.O. BOX 8488
RN19-247-02049  247   0632247 25  TRENTON, NJ 08650



```
******************************************
*** UNITED STATES PATRIOT NAME SEARCH ***
******************************************
```

240-1953-85                    RE: BT18422
**CERTIFIED TO:**


                BRENNAN TITLE ABSTRACT LLC
                457 HADDONFIELD RD STE 305
                CHERRY HILL NJ 08002


CHARLES JONES LLC HEREBY CERTIFIES THAT IT HAS SEARCHED THE
LIST OF "SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS"
MAINTAINED BY THE OFFICE OF FOREIGN ASSETS CONTROL, U.S.
DEPARTMENT OF THE TREASURY, PURSUANT TO EXECUTIVE ORDER 13224 AS
AMENDED BY EXECUTIVE ORDER 13268, AS WELL AS "THE CONSOLIDATED
SANCTIONS LIST" THAT INCLUDES THE LIST OF "FOREIGN SANCTIONS
EVADERS" PURSUANT TO EXECUTIVE ORDER 13608 AND MAINTAINED BY
THE OFFICE OF FOREIGN ASSETS CONTROL, U.S. DEPARTMENT OF THE
TREASURY AND REPORTS THE FOLLOWING FINDINGS WITH RESPECT TO THE
NAME(S) LISTED BELOW:

                                            THROUGH

TEANECK PLAZA VENTURES, LLC (Entity)        09-02-2019


```
              ***********************************
              ***** CLEAR PATRIOT NAME SEARCH *****
              ***********************************
```


NOTE:  According to the U.S. Department of Treasury, no U.S.
person may deal with any Libyan or Iraqi government official
whether their name appears on the list or not.


DATE ISSUED: 09-04-2019

FEES: $  2.00
TAX:  $  0.00
TOTAL:$  2.00
                            CHARLES JONES LLC
                            P.O. BOX 8488
PA19-247-02050  247   0624247 25        TRENTON, NJ 08650

# EXHIBIT Q

## FIRST AMENDMENT TO OPERATING AGREEMENT OF
## LENOX HUDSON LLC

This First Amendment to the Operating Agreement (this "**Amendment**") of Lenox Hudson LLC, a New Jersey limited liability company (the "**Company**"), dated as of January 16, 2019, is made by River Funding LLC (the "Member").

**WHEREAS**, Seth Levine and Shira Levine, were the original members of the Company and have assigned all of their membership interests in the Company to the Member, pursuant to that certain Assignment of Membership Interests dated January 15, 2019;

**WHEREAS**, the Member desires to amend that certain Operating Agreement ("**Operating Agreement**") of the Company dated as of May ___, 2008;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the individuals/entities signing this Amendment below agree to amend Operating Agreement as follows by adding the following provisions, which terms shall modify, amend and supersede any contrary terms of the Operating Agreement:

### 1.    Single Purpose Entity Provisions

Notwithstanding any other provision of the Operating Agreement, any other organizational documents or any provisions of law that empowers the Company, the following provisions shall be operative and controlling so long as those certain loan in the original principal sum of $1,100,000.00 (collectively, the "**Loan**") by JLS EQUITIES, LLC or its successors and/or assigns (collectively, the "**Lender**") to the Member is outstanding:

(a) Company has not owned, does not own and will not own any asset or property other than (i) that certain real property known as 107 Hudson Avenue, Hackensack, NJ 07601 (the "**Property**"), and (ii) incidental personal property necessary for the ownership, management or operation of the Property.

(b) Company has not engaged, does not engage, and will not engage in any business other than the ownership, management and operation of the Property and Company will conduct and operate its business as presently conducted and operated.

(c) Company has not entered and is not a party to and will not enter into or be a party to any contract or agreement with any affiliate of Company, any constituent party of Company or any affiliate of any constituent party, except in the ordinary course of business and on terms and conditions that are disclosed to Lender in advance and that are intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arms-length basis with third parties other than any such party.

1

(d) Company has not incurred and will not incur any indebtedness other than the loan of $2,165,000.00 made by Hunt Mortgage Partners, LLC (the "Mortgage Loan"). No indebtedness other than the Mortgage Loan may be secured (subordinate or pari passu) by the Property.

(e) Company has not made and will not make any loans or advances to any individual, sole proprietorship, partnership, limited liability partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, entity, party or government (whether territorial, national, federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body or department thereof) (including any affiliate or constituent party) (a "**Person**"), and has not acquired and shall not acquire obligations or securities of its affiliates.

(f) Company is and will endeavor to remain solvent and Company has paid and will pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due, to the extent there is sufficient revenue generated from the Property.

(g) Company has done or caused to be done and will do all things necessary to observe organizational formalities and preserve its existence, and Company will not (i) terminate or fail to comply with the provisions of its organizational documents, or (ii) unless Lender has consented, amend, modify or otherwise change its partnership certificate, partnership agreement, articles of incorporation and bylaws, operating agreement, trust or other organizational documents.

(h) Company has maintained and will maintain all of its accounts, books, records, financial statements and bank accounts separate from those of its affiliates and any other Person. Company's assets have not been and will not be listed as assets on the financial statement of any other Person; provided, however, that Company's assets may be included in a consolidated financial statement of its affiliates if (i) appropriate notation shall be made on such consolidated financial statements to indicate the separateness of Company and such affiliates and to indicate that Company's assets and credit are not available to satisfy the debts and other obligations of such affiliates or any other Person, and (ii) such assets shall be listed on Company's own separate balance sheet. Company has and will file its own tax returns (to the extent Company is required to file any such tax returns) and will not file a consolidated federal income tax return with any other Person. Company has maintained and shall maintain its books, records, resolutions and agreements as official records.

(i) Company has been and will be, and has held and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate of Company or any constituent party of Company), has corrected and shall correct any known misunderstanding regarding its status as a separate entity, has conducted and shall conduct business in its own name, has not identified and shall not identify itself or any of its affiliates as a division or part of the other, and has maintained and shall maintain and utilize separate stationery, invoices and checks bearing its own name.

2

Amendment to Operating Agreement

(j) Company has maintained and will endeavor to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations, to the extent there is sufficient revenue generated from the Property.

(k) Neither Company nor any constituent party has sought or will seek or effect the liquidation, dissolution, winding up, consolidation or merger, in whole or in part, of Company.

(l) Company has not commingled and will not commingle the funds and other assets of Company with those of any affiliate or constituent party or any other Person, and has held and will hold all of its assets in its own name.

(m) Company has maintained and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any affiliate or constituent party or any other Person.

(n) Company has not assumed or guaranteed or become obligated for the debts of any other Person and has not held itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person, and Company will not assume or guarantee or become obligated for the debts of any other Person and does not and will not hold itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person.

(o) Company hereby covenants and agrees that it will comply with or cause the compliance with, (i) all the representations, warranties and covenants contained within the Loan documents, and (ii) all the organizational documents of Company.

(p) Company has not permitted and will not permit any affiliate or constituent party independent access to its bank accounts.

(q) Company has paid and shall pay the salaries of its own employees (if any) from its own funds and has and shall maintain a sufficient number of employees (if any) in light of its contemplated business operations, to the extent there is sufficient revenue generated from the Property.

(r) Company has compensated and shall compensate each of its consultants and agents from its funds for services provided to it and pay from its own assets all obligations of any kind incurred.

(s) Company has not, and will not, take any action that might reasonably be expected to cause Company to become insolvent.

(t) Company has allocated and will allocate fairly and reasonably any shared expenses, including shared office space.

(u) Company has not pledged and will not pledge its assets for the benefit of any other Person.

(v) Company either (i) has no, and will have no, obligation to indemnify its officers, directors, managers, members, shareholders or partners, as the case may be, or (ii) if it has any such obligation, such obligation is fully subordinated to the Loan and will not constitute a claim against Company if cash flow in excess of the amount required to pay the Loan is insufficient to pay such obligation.

(w) Company will consider the interests of Company's creditors in connection with all limited liability company actions.

(x) Company has not and will not have any of its obligations guaranteed by any affiliate.

(z) As long as any portion of the Loan remains outstanding, the Company will not:

(A) dissolve, merge, liquidate or consolidate, except as provided in clause (z)(viii) below;

(B) sell all or substantially all of its assets;

(C) amend its organizational documents with respect to the matters set forth in this Amendment, without the consent of Lender; or

(D) take any Material Action with respect to itself or to any other entity in which it has a direct or indirect legal or beneficial ownership interest. For purposes herein, a "**Material Action**" shall mean: to institute proceedings to have the Company be adjudicated bankrupt or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against the Company or file a petition seeking, or consent to, reorganization or relief with respect to the Company under any applicable federal or state law relating to bankruptcy, or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of its property, or make any assignment for the benefit of creditors of the Company, or admit in writing the Company's inability to pay its debts generally as they become due, or take action in furtherance of any such action, or, to the fullest extent permitted by law, dissolve or liquidate the Company.

## 2.    Uniform Commercial Code

(a)    Each Membership Interest in the Company shall constitute and shall remain a "security" within the meaning of, and be governed by, (i) Article 8 of the Uniform Commercial Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of New Jersey, and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that

4

Amendment to Operating Agreement

now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995 and the Company hereby "opts-in" to such provisions for the purpose of the Uniform Commercial Code.

(b)     The Company shall maintain books for the purpose of registering the transfer of Membership Interests of the Company. Notwithstanding anything in this Amendment to the contrary, the transfer of any Membership Interest in the Company requires delivery of an endorsed Certificate and any transfer of Membership Interests in the Company shall not be deemed effective until the transfer is registered in the books and records of the Company.

(c)     Each Membership Interest in the Company shall be represented by a certificate, and shall contain the following legend: "THE TRANSFER OF THIS CERTIFICATE AND THE MEMBERSHIP INTEREST REPRESENTED HEREBY IS RESTRICTED AS DESCRIBED IN THE OPERATING AGREEMENT OF THE COMPANY, DATED DECEMBER 19, 2013, AS THE SAME MAY BE AMENDED OR AMENDED AND RESTATED FROM TIME TO TIME." Each such Certificate shall be denominated in terms of the percentage of membership interests in the Company evidenced by such Certificate and shall be signed by the Manager on behalf of the Company.

(d)     Notwithstanding any provision of this Amendment to the contrary, to the extent any provision of this Amendment is inconsistent with any non-waivable provision of Article 8 of the Uniform Commercial Code as in effect in the State of New York, the provisions of Article 8 of the Uniform Commercial Code as in effect in the State of New York, shall control.

(e)     THE TRANSFER OF THE MEMBERSHIP INTERESTS IN THE COMPANY DESCRIBED IN THIS AMENDMENT ARE RESTRICTED AS PROVIDED HEREIN.

(f)     To the fullest extent permitted by applicable law, without any further act, vote or approval of any Member, Person or officer the Company shall issue a new Certificate in place of any Certificate previously issued if the holder of the Membership Interests in the Company represented by such Certificate, as reflected on the books and records of the Company:

(i)     makes proof by affidavit, in form and substance satisfactory to the Company, that such previously issued Certificate has been lost, stolen or destroyed;

(ii)     requests the issuance of a new Certificate before the Company has notice that such previously issued Certificate has been acquired by a purchaser for value in good faith and without notice of an adverse claim;

(iii)     if requested by the Company, delivers to the Company a bond, in form and substance satisfactory to the Company, with such surety or sureties as the Company may direct, to indemnify the Company against any claim that may be made on account of the alleged loss, destruction or theft of the previously issued Certificate; and

(iv)    satisfies any other reasonable requirements imposed by the Company.

(g)    To the fullest extent permitted by applicable law, upon a Member's transfer or assignment, in whole or in part, of its Membership Interest in the Company represented by a Certificate, the transferee of such Membership Interests in the Company shall deliver the Certificate or Certificates representing such Membership Interest to the Company for cancellation (executed by such transferee on the reverse side thereof), and the Company shall thereupon issue a new Certificate to such transferee for the percentage of Membership Interests in the Company so transferred or assigned and, if applicable, cause to be issued to the transferring or assigning Member a new Certificate for that percentage of Membership Interests in the Company that were represented by the canceled Certificate and that are not so transferred or assigned.

## 2.    Additional Provisions

(a)    The Company shall not, without the prior written consent of the Lender, issue, and shall not permit the issuance of any additional Membership Interests in the Company.

(b)    For so long as the Loan is outstanding, SETH LEVINE shall be the sole manager of the Company (the "Manager"). The Manager is authorized to cause or permit the Company to take any action or do anything consistent with, and to execute any and all documents on behalf of the Company necessary or appropriate in connection with, the purposes of the Company, including, without limitation, consenting to the Loan and executing and delivering each of the documents evidencing or securing the Loan as required by Lender.

(c)    The Manager and the Member shall not, and shall cause the Company to not, amend, alter, change or repeal any Section or Schedule of the Operating Agreement without the prior written consent of Lender. The Lender shall be a third-party beneficiary of the Operating Agreement.

[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the Member conclusively evidences its agreement to the terms and conditions of this Amendment by so signing this Amendment.

**MEMBER:**

River Funding LLC

By:_____
Name: Seth Levine
Title: Manager

7

# EXHIBIT R

## FIRST AMENDMENT TO OPERATING AGREEMENT OF
## LENOX TEMPLE LLC

This First Amendment to the Operating Agreement (this "**Amendment**") of Lenox Temple LLC, a New Jersey limited liability company (the "**Company**"), dated as of January 16, 2019, is made by River Funding LLC (the "**Member**").

**WHEREAS**, Seth Levine, Shira Levine, Tara Levine, Jason Levine, Alexandra Levine, and Joshua Levine were the original members of the Company and have assigned all of their membership interests in the Company to the Member, pursuant to that certain Assignment of Membership Interests dated January 15, 2019;

**WHEREAS**, the Member desires to amend that certain Operating Agreement ("**Operating Agreement**") of the Company dated as of July 6, 2013;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the individuals/entities signing this Amendment below agree to amend Operating Agreement as follows by adding the following provisions, which terms shall modify, amend and supersede any contrary terms of the Operating Agreement:

1.     **Single Purpose Entity Provisions**

Notwithstanding any other provision of the Operating Agreement, any other organizational documents or any provisions of law that empowers the Company, the following provisions shall be operative and controlling so long as those certain loan in the original principal sum of $1,100,000.00 (collectively, the "**Loan**") by JLS EQUITIES, LLC or its successors and/or assigns (collectively, the "**Lender**") to the Member is outstanding:

(a) Company has not owned, does not own and will not own any asset or property other than (i) that certain real property known as 54-78 Temple Avenue, Hackensack, NJ 07601 (the "**Property**"), and (ii) incidental personal property necessary for the ownership, management or operation of the Property.

(b) Company has not engaged, does not engage, and will not engage in any business other than the ownership, management and operation of the Property and Company will conduct and operate its business as presently conducted and operated.

(c) Company has not entered and is not a party to and will not enter into or be a party to any contract or agreement with any affiliate of Company, any constituent party of Company or any affiliate of any constituent party, except in the ordinary course of business and on terms and conditions that are disclosed to Lender in advance and that are intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arms-length basis with third parties other than any such party.

1

(d) Company has not incurred and will not incur any indebtedness other than the loan of $6,675,000.00 made by Greystone Servicing Corporations, Inc. (the "Mortgage Loan"). No indebtedness other than the Mortgage Loan may be secured (subordinate or pari passu) by the Property.

(e) Company has not made and will not make any loans or advances to any individual, sole proprietorship, partnership, limited liability partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, entity, party or government (whether territorial, national, federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body or department thereof) (including any affiliate or constituent party) (a "**Person**"), and has not acquired and shall not acquire obligations or securities of its affiliates.

(f) Company is and will endeavor to remain solvent and Company has paid and will pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due, to the extent there is sufficient revenue generated from the Property.

(g) Company has done or caused to be done and will do all things necessary to observe organizational formalities and preserve its existence, and Company will not (i) terminate or fail to comply with the provisions of its organizational documents, or (ii) unless Lender has consented, amend, modify or otherwise change its partnership certificate, partnership agreement, articles of incorporation and bylaws, operating agreement, trust or other organizational documents.

(h) Company has maintained and will maintain all of its accounts, books, records, financial statements and bank accounts separate from those of its affiliates and any other Person. Company's assets have not been and will not be listed as assets on the financial statement of any other Person; provided, however, that Company's assets may be included in a consolidated financial statement of its affiliates if (i) appropriate notation shall be made on such consolidated financial statements to indicate the separateness of Company and such affiliates and to indicate that Company's assets and credit are not available to satisfy the debts and other obligations of such affiliates or any other Person, and (ii) such assets shall be listed on Company's own separate balance sheet. Company has and will file its own tax returns (to the extent Company is required to file any such tax returns) and will not file a consolidated federal income tax return with any other Person. Company has maintained and shall maintain its books, records, resolutions and agreements as official records.

(i) Company has been and will be, and has held and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate of Company or any constituent party of Company), has corrected and shall correct any known misunderstanding regarding its status as a separate entity, has conducted and shall conduct business in its own name, has not identified and shall not identify itself or any of its affiliates as a division or part of the other, and has maintained and shall maintain and utilize separate stationery, invoices and checks bearing its own name.

2

Amendment to Operating Agreement

(j) Company has maintained and will endeavor to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations, to the extent there is sufficient revenue generated from the Property.

(k) Neither Company nor any constituent party has sought or will seek or effect the liquidation, dissolution, winding up, consolidation or merger, in whole or in part, of Company.

(l) Company has not commingled and will not commingle the funds and other assets of Company with those of any affiliate or constituent party or any other Person, and has held and will hold all of its assets in its own name.

(m) Company has maintained and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any affiliate or constituent party or any other Person.

(n) Company has not assumed or guaranteed or become obligated for the debts of any other Person and has not held itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person, and Company will not assume or guarantee or become obligated for the debts of any other Person and does not and will not hold itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person.

(o) Company hereby covenants and agrees that it will comply with or cause the compliance with, (i) all the representations, warranties and covenants contained within the Loan documents, and (ii) all the organizational documents of Company.

(p) Company has not permitted and will not permit any affiliate or constituent party independent access to its bank accounts.

(q) Company has paid and shall pay the salaries of its own employees (if any) from its own funds and has and shall maintain a sufficient number of employees (if any) in light of its contemplated business operations, to the extent there is sufficient revenue generated from the Property.

(r) Company has compensated and shall compensate each of its consultants and agents from its funds for services provided to it and pay from its own assets all obligations of any kind incurred.

(s) Company has not, and will not, take any action that might reasonably be expected to cause Company to become insolvent.

(t) Company has allocated and will allocate fairly and reasonably any shared expenses, including shared office space.

3

(u) Company has not pledged and will not pledge its assets for the benefit of any other Person.

(v) Company either (i) has no, and will have no, obligation to indemnify its officers, directors, managers, members, shareholders or partners, as the case may be, or (ii) if it has any such obligation, such obligation is fully subordinated to the Loan and will not constitute a claim against Company if cash flow in excess of the amount required to pay the Loan is insufficient to pay such obligation.

(w) Company will consider the interests of Company's creditors in connection with all limited liability company actions.

(x) Company has not and will not have any of its obligations guaranteed by any affiliate.

(z) As long as any portion of the Loan remains outstanding, the Company will not:

(A) dissolve, merge, liquidate or consolidate, except as provided in clause (z)(viii) below;

(B) sell all or substantially all of its assets;

(C) amend its organizational documents with respect to the matters set forth in this Amendment, without the consent of Lender; or

(D) take any Material Action with respect to itself or to any other entity in which it has a direct or indirect legal or beneficial ownership interest. For purposes herein, a "**Material Action**" shall mean: to institute proceedings to have the Company be adjudicated bankrupt or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against the Company or file a petition seeking, or consent to, reorganization or relief with respect to the Company under any applicable federal or state law relating to bankruptcy, or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of its property, or make any assignment for the benefit of creditors of the Company, or admit in writing the Company's inability to pay its debts generally as they become due, or take action in furtherance of any such action, or, to the fullest extent permitted by law, dissolve or liquidate the Company.

## 2.   Uniform Commercial Code

(a)   Each Membership Interest in the Company shall constitute and shall remain a "security" within the meaning of, and be governed by, (i) Article 8 of the Uniform Commercial Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of New Jersey, and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that

4

Amendment to Operating Agreement

now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995 and the Company hereby "opts-in" to such provisions for the purpose of the Uniform Commercial Code.

(b)     The Company shall maintain books for the purpose of registering the transfer of Membership Interests of the Company. Notwithstanding anything in this Amendment to the contrary, the transfer of any Membership Interest in the Company requires delivery of an endorsed Certificate and any transfer of Membership Interests in the Company shall not be deemed effective until the transfer is registered in the books and records of the Company.

(c)     Each Membership Interest in the Company shall be represented by a certificate, and shall contain the following legend: "THE TRANSFER OF THIS CERTIFICATE AND THE MEMBERSHIP INTEREST REPRESENTED HEREBY IS RESTRICTED AS DESCRIBED IN THE OPERATING AGREEMENT OF THE COMPANY, DATED DECEMBER 19, 2013, AS THE SAME MAY BE AMENDED OR AMENDED AND RESTATED FROM TIME TO TIME." Each such Certificate shall be denominated in terms of the percentage of membership interests in the Company evidenced by such Certificate and shall be signed by the Manager on behalf of the Company.

(d)     Notwithstanding any provision of this Amendment to the contrary, to the extent any provision of this Amendment is inconsistent with any non-waivable provision of Article 8 of the Uniform Commercial Code as in effect in the State of New York, the provisions of Article 8 of the Uniform Commercial Code as in effect in the State of New York, shall control.

(e)     THE TRANSFER OF THE MEMBERSHIP INTERESTS IN THE COMPANY DESCRIBED IN THIS AMENDMENT ARE RESTRICTED AS PROVIDED HEREIN.

(f)     To the fullest extent permitted by applicable law, without any further act, vote or approval of any Member, Person or officer the Company shall issue a new Certificate in place of any Certificate previously issued if the holder of the Membership Interests in the Company represented by such Certificate, as reflected on the books and records of the Company:

(i)     makes proof by affidavit, in form and substance satisfactory to the Company, that such previously issued Certificate has been lost, stolen or destroyed;

(ii)     requests the issuance of a new Certificate before the Company has notice that such previously issued Certificate has been acquired by a purchaser for value in good faith and without notice of an adverse claim;

(iii)     if requested by the Company, delivers to the Company a bond, in form and substance satisfactory to the Company, with such surety or sureties as the Company may direct, to indemnify the Company against any claim that may be made on account of the alleged loss, destruction or theft of the previously issued Certificate; and

5

(iv)     satisfies any other reasonable requirements imposed by the Company.

(g)     To the fullest extent permitted by applicable law, upon a Member's transfer or assignment, in whole or in part, of its Membership Interest in the Company represented by a Certificate, the transferee of such Membership Interests in the Company shall deliver the Certificate or Certificates representing such Membership Interest to the Company for cancellation (executed by such transferee on the reverse side thereof), and the Company shall thereupon issue a new Certificate to such transferee for the percentage of Membership Interests in the Company so transferred or assigned and, if applicable, cause to be issued to the transferring or assigning Member a new Certificate for that percentage of Membership Interests in the Company that were represented by the canceled Certificate and that are not so transferred or assigned.

## 2.     Additional Provisions

(a)     The Company shall not, without the prior written consent of the Lender, issue, and shall not permit the issuance of any additional Membership Interests in the Company.

(b)     For so long as the Loan is outstanding, SETH LEVINE shall be the sole manager of the Company (the "Manager"). The Manager is authorized to cause or permit the Company to take any action or do anything consistent with, and to execute any and all documents on behalf of the Company necessary or appropriate in connection with, the purposes of the Company, including, without limitation, consenting to the Loan and executing and delivering each of the documents evidencing or securing the Loan as required by Lender.

(c)     The Manager and the Member shall not, and shall cause the Company to not, amend, alter, change or repeal any Section or Schedule of the Operating Agreement without the prior written consent of Lender. The Lender shall be a third-party beneficiary of the Operating Agreement.

[SIGNATURE PAGE TO FOLLOW]

6

Amendment to Operating Agreement

IN WITNESS WHEREOF, the Member conclusively evidences its agreement to the terms and conditions of this Amendment by so signing this Amendment.

**MEMBER**:

River Funding LLC

By:_____

Name: Seth Levine

Title: Manager

7

# ASSIGNMENT OF SHARES

The undersigned, **SETH LEVINE** owns 38%, **SHIRA LEVINE** owns 22%, **TARA LEVINE** owns 10%, **JASON LEVINE** owns 10%, **ALEXANDRA LEVINE** owns 10%, **JOSHUA LEVINE** owns 10% of the shares of

**LENOX TEMPLE LLC**, and does hereby assign my entire interest in the LLC, to

**RIVER FUNDING LLC,**

of all my right, title and interest in and to stock / member shares of

**LENOX TEMPLE LLC.**

Same to take effect immediately.

Dated: **JANUARY**     , 2019

[SIGNATURE PAGE TO FOLLOW]

_____
SETH LEVINE

_____
SHIRA LEVINE

_____
TARA LEVINE

_____
JASON LEVINE

_____
ALEXANDRA LEVINE

_____
JOSHUA LEVINE

# EXHIBIT S

## FIRST AMENDMENT TO OPERATING AGREEMENT OF
## TEANECK PLAZA VENTURES, LLC

This First Amendment to the Operating Agreement (this "**Amendment**") of Teaneck Plaza Ventures LLC, a New Jersey limited liability company (the "**Company**"), dated as of January 16, 2019, is made by River Funding LLC (the "Member").

**WHEREAS**, Seth Levine and Shira Levine, were the original members of the Company and have assigned all of their membership interests in the Company to the Member, pursuant to that certain Assignment of Membership Interests dated January 15, 2019;

**WHEREAS**, the Member desires to amend that certain Operating Agreement ("**Operating Agreement**") of the Company dated as of December ___, 2014;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the individuals/entities signing this Amendment below agree to amend Operating Agreement as follows by adding the following provisions, which terms shall modify, amend and supersede any contrary terms of the Operating Agreement:

### 1.    Single Purpose Entity Provisions

Notwithstanding any other provision of the Operating Agreement, any other organizational documents or any provisions of law that empowers the Company, the following provisions shall be operative and controlling so long as those certain loan in the original principal sum of $1,100,000.00 (collectively, the "**Loan**") by JLS EQUITIES, LLC or its successors and/or assigns (collectively, the "**Lender**") to the Member is outstanding:

(a) Company has not owned, does not own and will not own any asset or property other than (i) that certain real property known as 1407 Palisade Avenue, Teaneck, NJ 07666 (the "**Property**"), and (ii) incidental personal property necessary for the ownership, management or operation of the Property.

(b) Company has not engaged, does not engage, and will not engage in any business other than the ownership, management and operation of the Property and Company will conduct and operate its business as presently conducted and operated.

(c) Company has not entered and is not a party to and will not enter into or be a party to any contract or agreement with any affiliate of Company, any constituent party of Company or any affiliate of any constituent party, except in the ordinary course of business and on terms and conditions that are disclosed to Lender in advance and that are intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arms-length basis with third parties other than any such party.

1

(d) Company has not incurred and will not incur any indebtedness other than the loan of $3,900,000 made by Affinity Federal Credit Union (the "Mortgage Loan"). No indebtedness other than the Mortgage Loan may be secured (subordinate or pari passu) by the Property.

(e) Company has not made and will not make any loans or advances to any individual, sole proprietorship, partnership, limited liability partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, entity, party or government (whether territorial, national, federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body or department thereof) (including any affiliate or constituent party) (a "**Person**"), and has not acquired and shall not acquire obligations or securities of its affiliates.

(f) Company is and will endeavor to remain solvent and Company has paid and will pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due, to the extent there is sufficient revenue generated from the Property.

(g) Company has done or caused to be done and will do all things necessary to observe organizational formalities and preserve its existence, and Company will not (i) terminate or fail to comply with the provisions of its organizational documents, or (ii) unless Lender has consented, amend, modify or otherwise change its partnership certificate, partnership agreement, articles of incorporation and bylaws, operating agreement, trust or other organizational documents.

(h) Company has maintained and will maintain all of its accounts, books, records, financial statements and bank accounts separate from those of its affiliates and any other Person. Company's assets have not been and will not be listed as assets on the financial statement of any other Person; provided, however, that Company's assets may be included in a consolidated financial statement of its affiliates if (i) appropriate notation shall be made on such consolidated financial statements to indicate the separateness of Company and such affiliates and to indicate that Company's assets and credit are not available to satisfy the debts and other obligations of such affiliates or any other Person, and (ii) such assets shall be listed on Company's own separate balance sheet. Company has and will file its own tax returns (to the extent Company is required to file any such tax returns) and will not file a consolidated federal income tax return with any other Person. Company has maintained and shall maintain its books, records, resolutions and agreements as official records.

(i) Company has been and will be, and has held and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate of Company or any constituent party of Company), has corrected and shall correct any known misunderstanding regarding its status as a separate entity, has conducted and shall conduct business in its own name, has not identified and shall not identify itself or any of its affiliates as a division or part of the other, and has maintained and shall maintain and utilize separate stationery, invoices and checks bearing its own name.

2

Amendment to Operating Agreement

(j) Company has maintained and will endeavor to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations, to the extent there is sufficient revenue generated from the Property.

(k) Neither Company nor any constituent party has sought or will seek or effect the liquidation, dissolution, winding up, consolidation or merger, in whole or in part, of Company.

(l) Company has not commingled and will not commingle the funds and other assets of Company with those of any affiliate or constituent party or any other Person, and has held and will hold all of its assets in its own name.

(m) Company has maintained and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any affiliate or constituent party or any other Person.

(n) Company has not assumed or guaranteed or become obligated for the debts of any other Person and has not held itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person, and Company will not assume or guarantee or become obligated for the debts of any other Person and does not and will not hold itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person.

(o) Company hereby covenants and agrees that it will comply with or cause the compliance with, (i) all the representations, warranties and covenants contained within the Loan documents, and (ii) all the organizational documents of Company.

(p) Company has not permitted and will not permit any affiliate or constituent party independent access to its bank accounts.

(q) Company has paid and shall pay the salaries of its own employees (if any) from its own funds and has and shall maintain a sufficient number of employees (if any) in light of its contemplated business operations, to the extent there is sufficient revenue generated from the Property.

(r) Company has compensated and shall compensate each of its consultants and agents from its funds for services provided to it and pay from its own assets all obligations of any kind incurred.

(s) Company has not, and will not, take any action that might reasonably be expected to cause Company to become insolvent.

(t) Company has allocated and will allocate fairly and reasonably any shared expenses, including shared office space.

3

(u) Company has not pledged and will not pledge its assets for the benefit of any other Person.

(v) Company either (i) has no, and will have no, obligation to indemnify its officers, directors, managers, members, shareholders or partners, as the case may be, or (ii) if it has any such obligation, such obligation is fully subordinated to the Loan and will not constitute a claim against Company if cash flow in excess of the amount required to pay the Loan is insufficient to pay such obligation.

(w) Company will consider the interests of Company's creditors in connection with all limited liability company actions.

(x) Company has not and will not have any of its obligations guaranteed by any affiliate.

(z) As long as any portion of the Loan remains outstanding, the Company will not:

(A) dissolve, merge, liquidate or consolidate, except as provided in clause (z)(viii) below;

(B) sell all or substantially all of its assets;

(C) amend its organizational documents with respect to the matters set forth in this Amendment, without the consent of Lender; or

(D) take any Material Action with respect to itself or to any other entity in which it has a direct or indirect legal or beneficial ownership interest. For purposes herein, a "**Material Action**" shall mean: to institute proceedings to have the Company be adjudicated bankrupt or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against the Company or file a petition seeking, or consent to, reorganization or relief with respect to the Company under any applicable federal or state law relating to bankruptcy, or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of its property, or make any assignment for the benefit of creditors of the Company, or admit in writing the Company's inability to pay its debts generally as they become due, or take action in furtherance of any such action, or, to the fullest extent permitted by law, dissolve or liquidate the Company.

2.      **Uniform Commercial Code**

(a)      Each Membership Interest in the Company shall constitute and shall remain a "security" within the meaning of, and be governed by, (i) Article 8 of the Uniform Commercial Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of New Jersey, and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that

4

now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995 and the Company hereby "opts-in" to such provisions for the purpose of the Uniform Commercial Code.

(b) The Company shall maintain books for the purpose of registering the transfer of Membership Interests of the Company. Notwithstanding anything in this Amendment to the contrary, the transfer of any Membership Interest in the Company requires delivery of an endorsed Certificate and any transfer of Membership Interests in the Company shall not be deemed effective until the transfer is registered in the books and records of the Company.

(c) Each Membership Interest in the Company shall be represented by a certificate, and shall contain the following legend: "THE TRANSFER OF THIS CERTIFICATE AND THE MEMBERSHIP INTEREST REPRESENTED HEREBY IS RESTRICTED AS DESCRIBED IN THE OPERATING AGREEMENT OF THE COMPANY, DATED DECEMBER 19, 2013, AS THE SAME MAY BE AMENDED OR AMENDED AND RESTATED FROM TIME TO TIME." Each such Certificate shall be denominated in terms of the percentage of membership interests in the Company evidenced by such Certificate and shall be signed by the Manager on behalf of the Company.

(d) Notwithstanding any provision of this Amendment to the contrary, to the extent any provision of this Amendment is inconsistent with any non-waivable provision of Article 8 of the Uniform Commercial Code as in effect in the State of New York, the provisions of Article 8 of the Uniform Commercial Code as in effect in the State of New York, shall control.

(e) THE TRANSFER OF THE MEMBERSHIP INTERESTS IN THE COMPANY DESCRIBED IN THIS AMENDMENT ARE RESTRICTED AS PROVIDED HEREIN.

(f) To the fullest extent permitted by applicable law, without any further act, vote or approval of any Member, Person or officer the Company shall issue a new Certificate in place of any Certificate previously issued if the holder of the Membership Interests in the Company represented by such Certificate, as reflected on the books and records of the Company:

(i) makes proof by affidavit, in form and substance satisfactory to the Company, that such previously issued Certificate has been lost, stolen or destroyed;

(ii) requests the issuance of a new Certificate before the Company has notice that such previously issued Certificate has been acquired by a purchaser for value in good faith and without notice of an adverse claim;

(iii) if requested by the Company, delivers to the Company a bond, in form and substance satisfactory to the Company, with such surety or sureties as the Company may direct, to indemnify the Company against any claim that may be made on account of the alleged loss, destruction or theft of the previously issued Certificate; and

5

(iv)    satisfies any other reasonable requirements imposed by the Company.

(g)    To the fullest extent permitted by applicable law, upon a Member's transfer or assignment, in whole or in part, of its Membership Interest in the Company represented by a Certificate, the transferee of such Membership Interests in the Company shall deliver the Certificate or Certificates representing such Membership Interest to the Company for cancellation (executed by such transferee on the reverse side thereof), and the Company shall thereupon issue a new Certificate to such transferee for the percentage of Membership Interests in the Company so transferred or assigned and, if applicable, cause to be issued to the transferring or assigning Member a new Certificate for that percentage of Membership Interests in the Company that were represented by the canceled Certificate and that are not so transferred or assigned.

## 2.    Additional Provisions

(a)    The Company shall not, without the prior written consent of the Lender, issue, and shall not permit the issuance of any additional Membership Interests in the Company.

(b)    For so long as the Loan is outstanding, SETH LEVINE shall be the sole manager of the Company (the "Manager"). The Manager is authorized to cause or permit the Company to take any action or do anything consistent with, and to execute any and all documents on behalf of the Company necessary or appropriate in connection with, the purposes of the Company, including, without limitation, consenting to the Loan and executing and delivering each of the documents evidencing or securing the Loan as required by Lender.

(c)    The Manager and the Member shall not, and shall cause the Company to not, amend, alter, change or repeal any Section or Schedule of the Operating Agreement without the prior written consent of Lender. The Lender shall be a third-party beneficiary of the Operating Agreement.

[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the Member conclusively evidences its agreement to the terms and conditions of this Amendment by so signing this Amendment.

MEMBER:

River Funding LLC

By: _____
Name: Seth Levine
Title: Manager

7

# ASSIGNMENT OF SHARES

The undersigned, **SETH LEVINE** owns 90%, and **SHIRA LEVINE** owns 10% of the

shares of

**TEANECK PLAZA VENTURES LLC**, and does hereby assign my entire interest in the LLC,

to

**RIVER FUNDING LLC,**

of all my right, title and interest in and to stock / member shares of

**TEANECK PLAZA VENTURES LLC.**

Same to take effect immediately.

Dated: **JANUARY** l5 , **2019**

_____
**SETH LEVINE**

_____
**SHIRA LEVINE**

# EXHIBIT T

# STARK & STARK
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

**OFFICE:**   993 LENOX DRIVE  LAWRENCEVILLE, NJ  08648-2389

**MAILING:**   PO BOX 5315  PRINCETON, NJ  08543-5315

**PHONE:**   609-896-9060

WWW.STARK-STARK.COM

TIMOTHY P. DUGGAN
DIRECT DIAL NUMBER
(609) 895-7353
DIRECT FAX NUMBER
(609) 895-7395
E-MAIL
tduggan@stark-stark.com

August 26, 2019

## *VIA FEDERAL EXPRESS*

RIVER FUNDING LLC                                      NORSE HOLDINGS, LLC
Attn:  Seth Levine                                         Attn:  Seth Levine
210 River St, Suite 24                                   210 River St, Suite 24
Hackensack, New Jersey 07601                    Hackensack, New Jersey 07601

Re:  **JLS Equities, LLC to RIVER FUNDING LLC and NORSE HOLDINGS, LLC
     Notice of Default and Reservation of Rights**

Dear Mr. Levine:

This firm has been retained to represent JLS Equities, LLC (the "Lender").  Reference is made to a certain Secured Promissory Note dated January 17, 2019 (the "Note") executed by River Funding, LLC ("River Funding") and Norse Holding, LLC ("Norse"), Pledge and Security Agreement dated January 17, 2019 (the "Pledge Agreement") executed by River Funding and Norse, Loan Agreement dated January 17, 2019 (the "Loan Agreement") executed by River Funding and Norse, Irrevocable Proxy Coupled with Interest agreement dated January 17, 2019 (the "Proxy Agreement") executed by River Funding and Norse, and Guarantee Agreement dated January 17, 2019 (the "Guarantee") executed by Seth Levine and Shira Levine.  The Note, Pledge Agreement, Loan Agreement, Proxy Agreement, Guarantee, and all other loan documents executed in connection therewith (collectively the "Loan Documents").  The description of the Loan Documents is not exhaustive and failure to reference any specific loan document shall not be deemed a waiver of the Lender's rights.  The term "Pledge Agreement" shall include all exhibits to the Pledge Agreement, including but not limited to the Acknowledgement and Consent (Exhibit A), Instruction to Register Pledge (Exhibit B), and Confirmation Statement and Instruction Agreement (Exhibit C).

# STARK&STARK
### ATTORNEYS AT LAW

August 26, 2019
Page 2

River Funding and Norse are in default under the terms of the Loan Documents for, among other things, granting liens (mortgages and security interests) on the assets of the Issuers and incurring indebtedness in violation of the Amendments to the various Organizational Documents, including the applicable Operating Agreements. The actions of River Funding and Norse are a violation of the representations and warranties given by River Funding and Norse to Lender. The Events of Default are not entitled to any cure rights and authorize the Lender to make demand for payment in full.

Lender hereby:

1. Demands payment in full of all sums due and owing, including legal fees and expenses and any applicable prepayment fee. Please contact the undersigned for a payoff statement; and

2. Demands that any payments or other distributions payable or due to Seth Levine and/or Shari Levine be paid directly to Lender.

The delivery of this letter does not and shall not be deemed to constitute an exhaustive listing of all Events of Default that have occurred and are continuing under the Loan Documents, nor shall it be construed as a waiver by the Lender of any of its rights or remedies under the Loan Documents. Nothing contained in this letter is intended to create or constitute a waiver, modification, relinquishment or forbearance by the Lender of any of its rights and remedies under the Loan Documents, including without limitation, any and all rights or remedies in connection with any other defaults that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved. To the extent any additional payments are made to the Lender, acceptance of the payments shall be with an express reservation of all rights and shall not be deemed a waiver of any defaults.

4828-7697-6284, v. 1

# STARK & STARK
### ATTORNEYS AT LAW

August 26, 2019
Page 3

If you have retained counsel, please have your counsel contract me to discuss this matter.  If you have not retained counsel, please give me a call directly.  Thank you.

Very truly yours,

STARK & STARK
A Professional Corporation


By:     /s/ Timothy P. Duggan
        TIMOTHY P. DUGGAN, ESQ.


CERTIFIED MAIL

Seth Levine                      Shari Levine
636 South Forest Drive           636 South Forest Drive
Teaneck New Jersey 07666         Teaneck New Jersey 07666